Payam Shahian (State Bar No. 228406)
pshahian@slpattorney.com
Karen E. Nakon (State Bar No. 278423)
knakon@slpattorney.com
**Strategic Legal Practices, APC**
1875 Century Park East, Suite 700
Los Angeles, CA 90067
Telephone:     (310) 277-1040
Facsimile:     (310) 943-3838

Matthew R. Mendelsohn (*pro hac vice* forthcoming)
mmendelsohn@mskf.net
**Mazie Slater Katz & Freeman, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone:     (973) 228-9898
Facsimile:     (973) 228-0303

Dara Tabesh (SBN 230434)
dara.tabesh@ecotechlaw.com
**EcoTech Law Group, P.C.**
333 First St. Ste. C
San Francisco, CA 94105
Telephone:     (415) 503-9194
Facsimile:     (415) 651-8639

Attorneys for Plaintiff Melita Meyer

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MELITA MEYER, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BEBE STORES, INC.,<br><br>Defendant. | Case No.: 14-cv-00267-YGR<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT FOR DAMAGES PURSUANT TO F.R.C.P. RULES 12(B)(1) & (6) AND TO STRIKE PURSUANT TO F.R.C.P. RULE 12(F)**<br><br>Date:          August 12, 2014<br>Time:          2:00 p.m.<br>Location:      Courtroom 1<br><br>Complaint Filed:     Jan. 16, 2014 |

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    STATEMENT OF FACTS .................................................................................. 2

III.   ARGUMENT ....................................................................................................... 4

       A.    The TCPA Is Liberally Construed to Protect Consumers ........................ 4

       B.    Plaintiff's TCPA Claims Are Well-Pled ................................................. 4

             1.    Defendant Called Plaintiff's Cellular Telephone via an ATDS ..... 6

             2.    Defendant's Consent Defense Is Meritless .................................. 10

                   (a)    Prior Express Consent Is an Affirmative Defense That Does Not Defeat
                          the Elements of Plaintiff's Claim ........................................ 10

                   (b)    Defendant's Text Message Consists of Telemarketing and Advertising,
                          and Therefore, Defendant Was Required to Obtain Prior Express
                          *Written* Consent From Plaintiff Before Sending the Text Message, but
                          Failed to Do So ................................................................... 11

                          (i)     Defendant's Text Message Consists of Telemarketing and
                                  Advertising ............................................................... 12

                          (ii)    Defendant's Text Message Is, at Best, a "Dual Purpose" Call
                                  Requiring Prior Express *Written* Consent ................... 13

                          (iii)   Defendant's Cited Authority Is Inapposite ................... 14

                   (c)    Plaintiff Did Not Provide Consent to Defendant, Written or Otherwise ........... 18

       C.    Plaintiff Has Standing .......................................................................... 22

       D.    Plaintiff Sufficiently Alleges Defendant's Willful Violation of the TCPA ........................... 24

IV.    CONCLUSION ................................................................................................. 25

i

# TABLE OF AUTHORITIES

**CASES**

Agne v. Papa John's Int'l, 286 F.R.D. 559 (W.D. Wash. 2012) ...................................... 23

*Baird v. Sabre Inc.*, CV 13-999 SVW, 2014 WL 320205 (C.D. Cal. Jan. 28, 2014) ..................... 5, 20, 21

*Blair v. CBE Grp. Inc.*, 13-CV-134-MMA WVG, 2013 WL 2029155 (S.D. Cal. May 13, 2013) .......... 23

*Bridgeview Health Care Ctr. Ltd. v. Clark*, 09 C 5601, 2013 WL 1154206 (N.D. Ill. Mar. 19, 2013)

   *reconsideration denied in part,* 09 C 5601, 2013 WL 4495221 (N.D. Ill. Aug. 21, 2013) .................. 24

*Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012) ............................................. 13

*Connelly v. Hilton Grant Vacations Co., LLC*, 2012 WL 2129364 (S.D. Cal. June 11, 2012) .......... 10, 19

*DCD Programs, Ltd. V. Leighton*, 833 F. 2d 183 (9th Cir. 1987) ............................................. 25

*Edwards v. First American Corp.*, 610 F.3d 514 (9th Cir. 2010) ............................................. 23

*Emanuel v. Los Angeles Lakers, Inc.*, CV 12-9936-GW SHX, 2013 WL 1719035 (C.D. Cal. Apr. 18,

   2013) .............................................................................................................. 17, 20, 21

*Freidman v. Massage Envy Franchising, LCC*, No. 3:12-CV-02962-L-RBB, 2013 WL 3026641 (S.D.

   Cal. June 13, 2013) ................................................................................................. 17, 22

*Gager v. Dell Financial Services, LLC*, 727 F. 3d 265 (3d Cir. 2013) ........................................ 4

*Gragg v. Orange Cab Co., Inc.,* 2013 WL 195466 (W.D. Wash. Jan.17, 2013) .......................... 8

*Grant v. Capital Mgmt. Servs., L.P.*, 449 F. App'x 598 (9th Cir. 2011) ................................... 10

*Gutierrez v. Barclays Group*, 2011 WL 579238 (S.D. Cal. 2011) ........................................... 21, 23

*Hashw v. Dep't Stores Nat. Bank*, CIV. 13-727 RHK/JJK, 2013 WL 6184048 (D. Minn. Nov. 26, 2013)

   ........................................................................................................................ 24

*Hickey v. Voxernet LLC*, No. C12-373 MJP, 887 F. Supp. 2d 1125 (W.D. Wash. Aug. 13, 2012) .... 6, 8, 9

*Hicks v. Client Servs., Inc.*, No. 07–61822–CIV, 2009 WL 2365637 (S.D. Fla. June 9, 2009) ............... 12

*Hurrey-Mayer v. Wells Fargo Home Mortgage, Inc.*, 09 CV 1470 DMS NLS, 2009 WL 3647632 (S.D.

   Cal. Nov. 4, 2009) ................................................................................................. 10

*Ibey v. Taco Bell Corp.*, 12-CV-0583-H WVG, 2012 WL 2401972 (S.D. Cal. June 18, 2012), appeal

   dismissed (Nov. 28, 2012) ....................................................................................... 17, 21

*In re Jiffy Lube Intern., Inc., Text Spam Litig.,* 847 F.Supp.2d 1253 (S.D.Cal.2012) ............................9, 21

*Iniguez v. The CBE Group*, 969 F. Supp. 2d 1241 (E.D. Cal. 2013) ........................................7, 22

*Kazemi v. Payless Shoesource Inc.*, C 09-5142 MHP, 2010 WL 963225 (N.D. Cal. Mar. 16, 2010)........ 9

*Knutson v. ReplyA, Inc.*, 10-CV-1267 BEN WMC, 2011 WL 291076 (S.D. Cal. Jan. 27, 2011) ........... 10

*Kolinek v. Walgreen Co.*, 13 C 4806, 2014 WL 3056813 (N.D. Ill. July 7, 2014) .................................. 16

*Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010) ........................................4, 6, 9

*Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999 (N.D. Ill. 2010)..............................23

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990) ......................... 18

*Lusskin v. Seminole Comedy, Inc.*, 2013 LEXIS 86192 (S.D. Fla. June 19, 2013)...................................21

*Maier v. J.C. Penney Corp., Inc.*, 13CV0163-IEG DHB, 2013 WL 3006415 (S.D. Cal. June 13, 2013)
.............................................................................................................................. passim

*Mashiri v. Ocwen Loan Servicing, LLC*, 3:12-CV-02838-L-MDD, 2013 WL 5797584 (S.D. Cal. Oct.
28, 2013) ......................................................................................................8, 10, 11

*Meadows v. Franklin Collection Service, Inc.*, 414 Fed. Appx. 230 (11th Cir. 2011) ..............................21

*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012)................................. 6

*Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014) ..........................................23

*Pinkard v. Wal-Mart Stores, Inc.*, 3:12-CV-02902-CLS, 2012 WL 5511039 (N.D. Ala. Nov. 9, 2012) 11,
21

*Robbins v. Coca-Cola-Co.*, 13-CV-132-IEG NLS, 2013 WL 2252646 (S.D. Cal. May 22, 2013)...6, 8, 9,
10

*Roberts v. Paypal*, No. C 12–0622 PJH, 2013 WL 2384242 (N.D. Cal. 2013) ...................................20, 21

*Robinson v. Midland Funding, LLC*, 2011 WL 1434919 (S.D. Cal. April 13, 2011)................................. 6

*Roth v. BASF Corp.*, C07-106MJP, 2008 WL 2148803 (W.D. Wash. May 21, 2008)............................ 18

*Ryabyshchuk v. Citibank (S.Dakota) N.A.*, No. 11-CV-1236-IEG WVG, 2012 WL 5379143 (S.D. Cal.
Oct. 30, 2012) ......................................................................................... 12, 17, 22

*Satterfield v. Simon & Schuster, Inc.*, 569 F. 3d 946 (9th Cir. 2009) ........................................... 4, 5, 19, 22

*Sherman v. Yahoo! Inc.*, 13CV0041-GPC-WVG, --- F. Supp. 2d ---, 2014 WL 369384 (S.D. Cal. Feb. 3, 2014) .................................................................................................................................5, 17, 18

*Shupe v. JPMorgan Chase Bank of Arizona*, CV 11-00501-TUC-RCC, 2012 WL 1344820 (D. Ariz. Mar. 14, 2012) ..................................................................................................................... 11

*Smith v. Microsoft Corp.*, 11-CV-1958 JLS (BGS), 2012 WL 2975712 (S.D. Cal. July 20, 2012) ......... 22

*Stewart v. Regent Asset Mgmt. Solutions, Inc.*, No. 1:10–cv2552, 2011 WL 1766018 (N.D. Ga. May 4, 2011) ................................................................................................................................... 24

*Van Patten v. Vertical Fitness Grp., LLC*, 12CV1614-LAB MDD, 2014 WL 2116602 (S.D. Cal. May 20, 2014) .............................................................................................................................22, 24

## STATUTES

47 C.F.R. § 64.1200(a)(2) ................................................................................................................. 13

47 U.S.C. § 227(b)(2) ......................................................................................................................... 5

47 U.S.C. § 227(b)(3) ......................................................................................................................... 5

## OTHER AUTHORITIES

*Declaratory Ruling of the Federal Communications Commission Adopted on March 27, 2014, Regarding the In re GroupMe, Inc./Skype Communications S.A.R.L., Petition for Expedited Declaratory* ........................................................................................................................... 16

*Declaratory Ruling of the Federal Communications Commission Adopted on November 26, 2012, Regarding the In re SoundBite Commc'ns Inc.,Petition for Expedited Declaratory Ruling*, CG Docket No. 02-278, filed Feb. 16, 2012 ................................................................................................ 18

*In re Rules and Reg's Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1839, 1856-67 (Feb. 15, 2012) .................................................................................................... 13, 14, 22

S.Rep. No. 102–178, at 1, 1991 U.S.C.C.A.N. 1968 (1991) ............................................................... 4

1

## I.       INTRODUCTION

In December 2013, the following text message appeared—uninvited and unwanted—on Melita Meyer's cell phone:

> From: 423-23
> Bebe: Get on the list! Reply YES to confirm opt-in. 10% OFF reg-price in-store/online. Restrictions apply. 2msg/mo, w/latest offers. Msg&data rates may apply.

(Compl. ¶ 18.) Defendant's protestations to the contrary, this is exactly the sort of intrusive text message that Congress, in passing the Telephone Consumer Protection Act ("TCPA"), sought to prohibit.

Defendant's Motion to Dismiss (Docket No. 35)[1] is premised on three arguments, each of which fails: (1) Plaintiff has not adequately alleged that Defendant used an automatic telephone dialing system ("ATDS") to send the text message to Plaintiff; (2) Plaintiff gave prior express consent to receive communications from Defendant and its agents; and (3) Defendant's text message was purely administrative, and contained no telemarketing content, so Defendant was not required to obtain prior express written consent before sending it.

These arguments veer wildly from the wholly irrelevant (citing generic cases instead of decisive TCPA authority) to the patently erroneous (ignoring controlling case law adverse to Defendant's position). In truth, courts, time and again, (1) find ATDS allegations identical to the ones Plaintiff makes here sufficient to allege a TCPA claim, (2) decline to find prior express consent under nearly identical circumstances, and (3) hold that text messages like Defendant's constitute telemarketing and advertising[2]. In particular, Defendant's contention that its text message does not contain telemarketing defies credulity, and is belied by the plain language of the message. These arguments obscure the simple fact that Defendant did not obtain prior

---

[1] Citations to "Mot." or "Motion" refer to Defendant's Memorandum of Points and Authorities in Support of Defendant Bebe Stores, Inc.'s Motion to Dismiss Class Action Complaint for Damages Pursuant to F.R.C.P. Rules 12(B)(1) & (6), and to Strike Pursuant to F.R.C.P Rule 12(F) (Docket No. 35-1).

[2] In the remainder of the brief, Plaintiff uses the term "telemarketing" to include both telemarketing and advertising.

1   express <u>written</u> consent from Plaintiff, a requirement imposed on all telemarketing text

2   messages sent after October 16, 2013.

3         Defendant's repeated failure to acknowledge the existence of decisive authority adverse

4   to its position results in a gross mischaracterization of TCPA jurisprudence. Defendant's motion

5   to dismiss should therefore be denied in its entirety.

6   **II.     STATEMENT OF FACTS**

7         In recent years, marketers stymied by federal laws limiting solicitation by telephone,

8   facsimile machine, and email, have increasingly looked to alternative technologies to send bulk

9   solicitations to consumers easily and cheaply. (Compl. ¶ 9.) One of the newest methods of bulk

10  marketing is sending text message advertisements sent to mobile phones. (*Id*. ¶ 10.) Unlike

11  faxes and unanswered phone calls, a text message allows virtually instantaneous communication

12  with the recipient, almost anywhere in the world, day or night. (*Id*. ¶ 11.) Many cellular phones

13  immediately alert the recipient of new text messages. (*Id.*) Consumers frequently use text

14  messaging to stay in close contact with business colleagues and associates, family members, and

15  friends. (*Id.*) Text messaging is also used by schools, police departments, fire departments, and

16  emergency medical services across the country. (*Id.*)

17        The instantaneous nature of text message communication makes it very appealing to

18  telemarketers—and very annoying to consumers subjected to spam text messages. (*Id*. ¶ 12.)

19  And unlike other forms of advertisement, text messages actually cost its recipients money,

20  because cellular phone users must frequently pay their wireless service providers either for each

21  text message they receive, or incur a usage allocation deduction to their text plans, regardless of

22  whether or not the message is authorized. (*Id*. ¶ 13.)

23        Over the course of an extended period beginning no later than in 2010, Defendant and/or

24  its agents directed the mass transmission of text messages to cellular phones nationwide in an

25  attempt to reach customers or potential customers of Defendant's products. (*Id*. ¶ 14.) Using an

26  ATDS, Defendant sent text messages to Plaintiff and the other Class Members at telephone

27  numbers assigned to a paging service, cellular telephone service, specialized mobile radio

28  service, or other radio common carrier service, or any service for which the called party is

charged for the call. (*Id.* ¶¶ 41 & 47.) By using an ADTS, Defendant was able to effectively send thousands of text messages simultaneously to lists of thousands of cellular phone numbers of consumers without human intervention. (*Id.* ¶¶ 42 & 48.) These text messages were made *en masse* without the prior express consent of Plaintiff and the other members of the Class to receive such text messages. (*Id.*)

**Defendant's Text Message to Plaintiff Meyers**

On or about December 10, 2013, Plaintiff visited one of Defendant's store locations in California and purchased a new dress (after receiving an in-store credit for another dress that she returned at the same time that day). (Compl. ¶ 15.) In connection with her return and purchase of a new dress, Defendant and/or its agent asked Plaintiff for her telephone number. (*Id.*) Plaintiff provided it, believing it was necessary to complete an in-store return/purchase transaction and for no other purpose. (*Id.* ¶ 16.) Defendant never advised Plaintiff in writing or otherwise that it would use her cellular number to send her a promotional text message through an ATDS. (*Id.* ¶ 17.)

Shortly after providing her cellular telephone number to Defendant, on December 10, 2013, Defendant sent the following unsolicited SMS or "text" message to Plaintiff at her cellular telephone number:



(*Id.* ¶ 18.) Defendant did not send this text message for an emergency purpose. (*Id.* ¶ 19.) Rather, Defendant sent the text to promote its goods and services. (*Id.* ¶ 20.)

Defendant sent the message to Plaintiff's cellular telephone number using an ATDS, which had the capacity to store or produce and dial numbers randomly or sequentially, and to place telephone calls and/or send text messages to Plaintiff's cellular telephone number. (*Id.* ¶ 21.) Plaintiff's telephone number is, and at all relevant times was, assigned to a cellular telephone service. (*Id.* ¶ 22.)

Plaintiff is the authorized, intended, and/or sole user of the cellular telephone number that Defendant called and/or to which it sent a text message. (*Id.* ¶ 23.) Defendant intended to call and/or send a text message to—and in fact called and/or sent a text message to—Plaintiff's cellular telephone number, and Plaintiff received the call and/or text message. (*Id.* ¶ 24.) Plaintiff did not provide Defendant or its agents prior express consent either in writing or otherwise to receive unsolicited text messages. (*Id.* ¶ 25.) This text message invaded Plaintiff's privacy and violated the TCPA. (*Id.* ¶ 26.)

## III.   ARGUMENT

### A.   The TCPA Is Liberally Construed to Protect Consumers

The TCPA was enacted to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile machines and automatic dialers." *Satterfield v. Simon & Schuster, Inc.,* 569 F. 3d 946, 954 (9th Cir. 2009) (quoting S.Rep. No. 102–78, at 1, 1991 U.S.C.C.A.N. 1968 (1991)). "The TCPA is a remedial statute that was passed to protect consumers from unwanted automated telephone calls. *Gager v. Dell Financial Services, LLC*, 727 F. 3d 265, 271 (3d Cir. 2013). "Because the TCPA is a remedial statute, it should be construed to benefit consumers." *Id.*

### B.   Plaintiff's TCPA Claims Are Well-Pled

Whether a plaintiff has stated a claim under the TCPA turns on the statutory language of 47 U.S.C. § 227(b)(1)(A)(iii). *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1169 (N.D. Cal. 2010). Section 227 of the TCPA, entitled "Restrictions on use of telephone equipment," provides as follows:

(a) Definitions. As used in this section—

(1) The term "automatic telephone dialing system" means equipment which has the capacity—
> (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
> (B) to dial such numbers.

(b) Restrictions on use of automated telephone equipment.

(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
> ...
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

*Id.* at 1169 (quoting 47 U.S.C. § 227). Among other things, the TCPA made it unlawful for any person to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system to any cellular telephone number. *Baird v. Sabre Inc.*, No. CV 13-999 SVW, 2014 WL 320205, at *1 (C.D. Cal. Jan. 28, 2014).[3]

A text message is a call within the meaning of the act. *Id.*; *Maier v. J.C. Penney Corp., Inc.*, No. 13CV0163-IEG DHB, 2013 WL 3006415, at *2 (S.D. Cal. June 13, 2013) (citing *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 952 (9th Cir. 2009) ("The Ninth Circuit has established that text messages (also referred to as SMS) are encompassed within the term 'call' as used in the TCPA and are therefore subject to its restrictions.")).

Sending a single text message is actionable. *Satterfield*, 569 F.3d at 955 (finding single text message actionable under the TCPA in the context of a motion for summary judgment); *Sherman*, 2014 WL 369384, at *1 ("[A]bsent prior express consent, a single call or text with the use of an ATDS may be actionable under the TCPA."); *Hickey v. Voxernet LLC*, No. C12-373

---

[3] Congress authorized a private right of action to enforce the Act. *Sherman v. Yahoo! Inc.*, No. 13CV0041-GPC-WVG, --- F. Supp. 2d ---, 2014 WL 369384, at *1 (S.D. Cal. Feb. 3, 2014) (citing 47 U.S.C. § 227(b)(3)). Additionally, Congress directed the Federal Communications Commission to "prescribe regulations to implement the requirements of" the TCPA. *Id.* (citing 47 U.S.C. § 227(b)(2)).

MJP, 887 F. Supp. 2d 1125, 1133 (W.D. Wash. Aug. 13, 2012) (finding single text message actionable under the TCPA).

"[B]ecause the TCPA is designed to combat mass unsolicited commercial telemarketing, at times involving thousands of calls or text messages, notice pleading standards do not require a plaintiff to allege details at the pleading stage about the time and context of every text message." *Kramer*, 759 F. Supp. 2d at 1172.[4] "[T]he language of the TCPA makes no reference to the time, content, sequence, or volume of calls or messages as a prerequisite to liability; rather, the wording of the statute is expansive and content neutral." *Robbins v. Coca-Cola-Co.*, 13-CV-132-IEG NLS, 2013 WL 2252646, at *2 (S.D. Cal. May 22, 2013); *see also Robinson v. Midland Funding, LLC*, 2011 WL 1434919, at *3 (S.D. Cal. April 13, 2011) ("the federal notice pleading standards do not require a plaintiff to allege details ... about the [call's] time and context.").

"**[T]o plead a TCPA claim, Plaintiffs need only allege two elements: (1) a call to a cellular telephone; (2) via an ATDS.**" *Robbins*, 2013 WL 2252646, at *2, emphasis added.[5] Plaintiff has adequately alleged that Defendant called his cellular telephone[6] via an ATDS, as described in greater detail below. Nothing more is required to state a TCPA claim. Accordingly, her complaint is well pled.

### 1.     Defendant Called Plaintiff's Cellular Telephone via an ATDS

Apart from two unremarkable cases concerning generic Rule 12(b)(6) standards, Defendant does not cite a single case in support of its argument that Plaintiff's ATDS allegations are not well-pled. (*See* Mot. § C.) This is unsurprising, given that the overwhelming weight of authority is contrary to Defendant's position.

---

[4] Plaintiff, however, *does* allege the time and context of the text message at issue. (*See* Compl. ¶ 15 (alleging the time, substance, and originating short code of the text message).)

[5] Defendant, relying on *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012), manufactures a third pleading requirement, namely the absence of prior express consent. (*See* Mot. at 1:10-14.) This misstates the law and misconstrues the holding of *Meyer*, which discussed that third requirement in connection with a motion for summary judgment, not a motion to dismiss.

[6] Defendant does not dispute that it made a call to Plaintiff's cellular telephone for the purposes of the TCPA.

The requirements for an allegation of the use of an ATDS to survive a Rule 12(b)(6) motion to dismiss generally follow one of two approaches. *See Maier* 2013 WL 3006415, at *3. The first approach permits minimal allegations regarding use of an ATDS, in recognition of the fact that at the pleadings stage, the defendant likely has sole knowledge of the type of equipment it used to place the "call" in dispute, and will therefore only come to light once discovery has been undertaken. *Id.* Under this approach, the allegation of receipt of a text message, along with the allegation that this message was sent by a machine with the capacity to store and produce random telephone numbers, has been sufficient to plead a defendant's use of an ATDS. *Id.*; *see also Iniguez v. The CBE Group*, 969 F. Supp. 2d 1241, 1247-48 (E.D. Cal. 2013) (alleging that "Defendant used an automatic telephone dialing system" is "sufficient on its own to support Plaintiff's claims [with respect to Defendant's use of an automatic dialing system." ). "While additional factual details about the machines might be helpful, further facts are not required to move beyond the pleading stage." *Maier*, 2013 WL 3006415, at *3.

Plaintiff satisfies the standards of this first approach. She alleges Defendant sent her a text message using an ATDS—a machine with the capacity to store and produce random telephone numbers. (Compl. ¶¶ 17, 21.) *See also Maier*, 2013 WL 3006415, at *3 ("Plaintiff's Complaint alleges both that she received a 'call' in the form of a text message and that an ATDS, with the functional capacity required by the statute, placed this message, thereby satisfying the first approach as described above.").

The second approach has been that a TCPA plaintiff must go beyond using statutory language alleging the defendant's use of an ATDS and must include factual allegations about the "call" within the complaint allowing for a reasonable inference that an ATDS was used. *Id.* "With respect to the use of an automatic telephone dialing system ('ATDS'), which is defined as equipment with the capacity to store or produce numbers to be called using a random or sequential number generator, 'neither section 227(b)(1)(A)(iii) nor Federal Rule of Civil Procedure 8 requires Plaintiff to plead his claim with particularity.' [] Rather, courts consider whether, 'read as a whole, the complaint contains sufficient facts to show that it is plausible that Defendants used [an ATDS].'" *Mashiri v. Ocwen Loan Servicing, LLC*, No. 3:12-CV-02838-L-

MDD, 2013 WL 5797584, at *4 (S.D. Cal. Oct. 28, 2013); *see also Robbins*, 2013 WL 2252646, at *3 ("'The issue is whether the allegations of the complaint, taken as a whole and including the nature of the communication, give rise to a plausible belief that the message was sent using an ATDS.'") (quoting *Gragg v. Orange Cab Co., Inc.,* 2013 WL 195466, at *2 n.3 (W.D. Wash. Jan.17, 2013)). "'Plaintiffs alleging the use of a particular type of equipment under the TCPA are generally required to rely on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages, to raise an inference that an automated dialer was utilized. Prior to the initiation of discovery, courts cannot expect more.'" *Robbins*, 2013 WL 2252646, at *3 (quoting *Gragg v. Orange Cab Co., Inc.*, 2013 WL 195466, at *2 (W.D. Wash. Jan.17, 2013)); *Hickey*, 887 F. Supp. 2d at 1129-30 ("[C]ourts have noted 'the difficulty a plaintiff faces in knowing the type of calling system used without the benefit of discovery' and found that courts can rely on details about the call to infer the use of an ATDS."). The following are examples of indirect factual allegations supporting a reasonable inference of use of an ATDS: (1) generic content of a message; (2) impersonal advertising content of a text message received from a particular sender with no reason to contact the plaintiff; and (3) generic content and automatic generation of the message. *Maier*, 2013 WL 3006415, at *3.

Plaintiff satisfies the standards of this second approach as well. She alleges: (i) "Defendant and/or its agents directed the mass transmission of text messages to cellular phones nationwide in an attempt to reach customers or potential customers of Defendant's products (Compl. ¶ 14); (ii) "By using an ADTS, Defendant was able to effectively send thousands of text messages simultaneously to lists of thousands of cellular phone numbers of consumers without human intervention" (*id.* ¶¶ 42, 48); and (iii) "These text messages were made *en masse* without the prior express consent of Plaintiff and the other members of the Class to receive such text messages" (*id.* ¶¶ 42, 48). Additionally, Plaintiff alleges the content of the text message— which, on its face, obviously consists of impersonal, generic advertising content that has been automatically generated—as well as the SMS short code from which it was received. (*Id.* ¶ 18.)

Courts repeatedly hold that allegations analogous to the ones Plaintiff makes here are adequate under the second approach. *See, e.g.*, *Maier*, 2013 WL 3006415, at *4 (finding plaintiff's ATDS allegation satisfied the second approach because she "supplement[ed] her ATDS allegation with a factual allegation of the specific content of the text message and the number from which it was received[,]" and because "the generic and impersonal content of the message support[ed] the reasonable inference of use of an ATDS."); *Robbins*, 2013 WL 2252646, at *3 ("Here, Plaintiffs allege numerous text messages received without prior consent, sent nationwide and en masse via SMS, promoting Coke Zero and other Coke products. . . . These allegations, though indirect, suffice to plead the use of an ATDS in connection with Plaintiffs' TCPA claims.") (internal citations omitted); *In re Jiffy Lube Intern., Inc., Text Spam Litig.,* 847 F.Supp.2d 1253, 1260 (S.D. Cal.2012) ("Plaintiffs have stated that they received a text message from an SMS short code and that the message was sent by a machine with the capacity to store or produce random telephone numbers. While additional factual details about the machines might be helpful, further facts are not required to move beyond the pleading stage. It is possible that further litigation will determine that no ATDS was used, but the complaint has pleaded enough facts 'to raise a right to relief above the speculative level."); *Kazemi v. Payless Shoesource Inc.*, No. C 09-5142 MHP, 2010 WL 963225, at *2 (N.D. Cal. Mar. 16, 2010) ("[P]laintiff's description of the received messages as being formatted in SMS short code licensed to defendants, scripted in an impersonal manner and sent en masse supports a reasonable inference that the text messages were sent using an ATDS. This is sufficient to meet federal pleading requirements."); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) ("However, read as a whole, the complaint contains sufficient facts to show that it is plausible that Defendants used such a system. Kramer described messages from SMS short code 77893, a code registered to B2Mobile. The messages were advertisements written in an impersonal manner. Kramer had no other reason to be in contact with Defendants."); *Hickey,* 887 F. Supp. 2d at 1130 (finding "Plaintiff's allegation regarding the generic content and automatic generation of the message [was] sufficient to infer the use of an ATDS[,]" and that

1  "Plaintiff ha[d] . . . provided sufficient detail to make a plausible claim under the TCPA and to

2  allow for discovery of further evidence related to Voxer's ATDS functionality.").

3      In short, Plaintiff adequately alleges Defendant's use of an ATDS. Because she also

4  alleges that Defendant called her for the purposes of the TCPA (an allegation Defendant does

5  not dispute), Plaintiff's complaint meets both requirements to plead a TCPA claim. (*See* § III.B,

6  *supra*.)

7          **2.      Defendant's Consent Defense Is Meritless**[7]

8              **(a)      Prior Express Consent Is an Affirmative Defense That Does**

9                      **Not Defeat the Elements of Plaintiff's Claim**

10     Defendant next contends that "Plaintiff knowingly released her cell phone number to

11 Defendant and, by doing so, gave her prior express consent to receive communications from

12 Defendant and its agent acting on its behalf at that number." (*See* Mot. at 5:26-6:2.) This

13 argument is misguided.

14     As a threshold matter, it is well-settled that "[e]xpress consent 'is not an element of a

15 TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant

16 bears the burden of proof.'" *See, e.g.*, *Grant v. Capital Mgmt. Servs., L.P.*, 449 F. App'x 598,

17 600 n.1 (9th Cir. 2011); *Mashiri*, 2013 WL 5797584, at *5 (same); *Robbins*, 2013 WL 2252646,

18 at *2 ("Whether Plaintiffs gave the required prior express consent is an affirmative defense to be

19 raised and proved by a TCPA defendant, however, and is not an element of Plaintiffs' TCPA

20 claim.") (quoting *Connelly v. Hilton Grant Vacations Co., LLC*, 2012 WL 2129364, at *3 (S.D.

21 Cal. June 11, 2012)); *Knutson v. ReplyA, Inc.*, No. 10-CV-1267 BEN WMC, 2011 WL 291076,

22 at *1 (S.D. Cal. Jan. 27, 2011) ("The statute indicates that these types of calls are not unlawful if

23 made with the express consent of the calling party, but the FCC has clarified that this argument

24 is a defense and not an element that must be pled by Plaintiff."); *Hurrey-Mayer v. Wells Fargo

25 Home Mortgage, Inc.*, 09 CV 1470 DMS NLS, 2009 WL 3647632, at *4 (S.D. Cal. Nov. 4,

26 2009) ("Defendant asserts that Plaintiff consented to its calls, but that argument is a defense to

27 ────────────────

28     [7] Defendant does not claim that its text message was sent for emergency purposes, and
    therefore the exemption is inapplicable here. (*See generally* Mot.)

Plaintiff's claim."); *Shupe v. JPMorgan Chase Bank of Arizona*, No,. CV 11-00501-TUC-RCC, 2012 WL 1344820, at *4 (D. Ariz. Mar. 14, 2012), report and recommendation adopted, No. CV 11-501-TUC-RCC, 2012 WL 1344786 (D. Az. Apr. 18, 2012) ("The 'express consent' provision, however, is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof.").

"Thus, arguing that the Plaintiff provided prior express consent is an affirmative defense which does not defeat the elements of Plaintiff's claim." *Mashiri*, 2013 WL 5797584, at *5. Notwithstanding this well-settled principle of law, however, Defendant argues that Plaintiff has not established an absence of express consent. Given the abundance of case law on this score, Defendant's failure to acknowledge this adverse authority is puzzling.

Because Plaintiff has adequately alleged defendant's use of an ATDS to send the text message, her complaint is well-pled. Defendant asserts several other arguments—all relating to consent. Plaintiff addresses these as well, even though they are completely irrelevant to, and do not defeat, Plaintiff's *prima facie* case.[8]

> **(b)**    **Defendant's Text Message Consists of Telemarketing and Advertising, and Therefore, Defendant Was Required to Obtain Prior Express *Written* Consent From Plaintiff Before Sending the Text Message, but Failed to Do So**

Defendant does not dispute that, under the FCC's amended regulations, telemarketing text messages sent on or after October 16, 2013, require a customer's prior express *written* consent. (*See* Mot. at 8:25-27 (citing 47 C.F.R. § 64.1200(a)(2) and *In re Rules and Reg's Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1839, 1856-67 (Feb. 15,

---

[8] In *Pinkard v. Wal-Mart Stores, Inc.*, No. 3:12-CV-02902-CLS, 2012 WL 5511039, at *4 (N.D. Ala. Nov. 9, 2012), a non-binding, Alabama district court case, the court held that an affirmative defense may be considered in resolving a motion to dismiss when the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action. Such conditions do not exist here, where Plaintiff expressly alleges that "Defendant never advised Plaintiff in writing or otherwise that it would use her cellular number to send her promotional text messages through an ATDS." (Compl. ¶ 17; *see also id.* ¶ 25.) As such, the complaint does not clearly show the conclusive applicability of the consent defense, and the defense should not be considered in resolving Defendant's motion to dismiss.

2012) ["2012 TCPA Order"]).) Moreover, Defendant does not dispute that it failed to obtain such written consent from Plaintiff prior to sending the text message.

Rather, Defendant argues that non-telemarketing, purely informational messages require only prior express *oral* consent, and that because its text message was "administrative," Defendant was only required to obtain prior express oral consent from Plaintiff. (*See* Mot. at 6:8-9.) Setting aside for the moment whether Defendant ever obtained oral consent—and it did not—Defendant's claim that its text message does not include telemarketing defies credulity.[9]

### (i)   Defendant's Text Message Consists of Telemarketing and Advertising

The content of Defendant's text message bears repeating:

> From: 423-23
> Bebe: Get on the list! Reply YES to confirm opt-in. 10% OFF reg-price in-store/online. Restrictions apply. 2msg/mo, w/latest offers. Msg&data rates may apply.

(Compl. ¶ 18.) This is plainly a telemarketing text message, particularly insofar as it prompts consumers to avail themselves of discounts off of in-store and online prices of Bebe goods.

Under the relevant regulations, "[t]he term *telemarketing* means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12). "The term *advertisement* means any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1). Indeed, Defendant cites these same definitions without discussing the details of its own soliciting text. (*See* Mot. at 9:20-10:8.)

---

[9] As a preliminary matter, whether Defendant obtained prior express consent (written or otherwise) is a disputed factual matter that should not be resolved on a motion to dismiss. A motion for summary judgment—rather than a motion to dismiss—is the proper place for a defendant to establish that a consumer's claim fails due to the presence of prior express consent. *See Connelly*, 2012 WL 2129364, at *3; *Ryabyshchuk*, 2011 WL 5976230, at *5 (citing *Gutierrez v. Barclays Group*, No. 10cv1012 DMS (BGS), 2011 WL 579238, at *2 (S.D. Cal. Feb. 9, 2011) (placing the burden on the creditor to establish prior express consent) and *Hicks v. Client Servs., Inc.*, No. 07–61822–CIV, 2009 WL 2365637, at *5 (S.D. Fla. June 9, 2009) ("The burden of establishing prior express consent is on the Defendant.")).

The instant text message encourages the purchase of and states the commercial availability of Bebe clothing: *e.g.*, "10% OFF reg-price in-store/online." (*See* Compl. ¶ 18.) Accordingly, even under Defendant's own logic, the text message at issue constitutes both telemarketing and an advertisement.

This interpretation is consistent with the 2012 TCPA Order, which notes that "purely information calls" consist of the following: "those by or on behalf of tax-exempt non-profit organizations, calls for political purposes, and calls for other noncommercial purposes," as well as "bank account balance, credit card fraud alert, package delivery, and school closing information[.]" 2012 TCPA Order §§ 20 & 28. These enumerated types of "purely informational" calls are of a category distinct from Defendant's text message.

Because Defendant's text message consists of telemarketing and advertising, Defendant was obligated to obtain <u>written</u> consent from Plaintiff. Defendant failed to do so.

### (ii)   Defendant's Text Message Is, at Best, a "Dual Purpose" Call Requiring Prior Express *Written* Consent

Even assuming, for the sake of argument, that the text message contains an "informational" or "administrative" component, the presence of *any* telemarketing content would have required Defendant to have first obtained prior express *written* consent. *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012), is instructive:

> The FCC has determined that so-called "dual purpose" calls, those with both a customer service or informational component as well as a marketing component, are prohibited. The FCC explains:
>
> The so-called "dual purpose" calls described in the record—calls from mortgage brokers to their clients notifying them of lower interest rates, calls from phone companies to customers regarding new calling plans, or calls from credit card companies offering overdraft protection to existing customers—would, in most instances, constitute "unsolicited advertisements," regardless of the customer service element to the call. The Commission explained in the 2002 Notice that such messages may inquire about a customer's satisfaction with a product already purchased, but are motivated in part by the desire to ultimately sell additional goods or services. If the call is intended to offer property, goods, or services for sale either during the call, or in the future (such as in response to a message that provides a toll-free number), that call is an advertisement.
>
> . . .

Best Buy argues that its calls were purely informational courtesy calls to RZ members. It further maintains that, because the scripts did not explicitly reference any property, goods, or services within the meaning of 47 U.S.C. § 227(a)(5), the calls did not run afoul of the TCPA and its implementing regulations. We disagree.

We approach the problem with a measure of common sense. The robot-calls urged the listener to "redeem" his Reward Zone points, directed him to a website where he could further engage with the RZP, and thanked him for "shopping at Best Buy." Redeeming Reward Zone points required going to a Best Buy store and making further purchases of Best Buy's goods. There was no other use for the Reward Zone points. Thus, the calls encouraged the listener to make future purchases at Best Buy. Neither the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context. Any additional information provided in the calls does not inoculate them.

*Id.* at 917-18 (internal citations omitted). Here, the text message was intended to offer goods. It directed Plaintiff to take advantage of a 10% discount at either Bebe's store locations or on its website, thereby encouraging her to make further purchases from Bebe. The telemarketing content of this message is self-evident. Any additional information provided in the text message does not inoculate it from the requirement to obtain prior express written consent.[10]

### (iii)    Defendant's Cited Authority Is Inapposite

Defendant cites the *GroupMe* declaratory ruling as "guidance on what constitutes an *administrative* text message (*i.e.*, a non-advertising/non-telemarketing text message). (*See* Mot. at 10:14-11:5 (emphases in original).) The *GroupMe* ruling, however, narrowly addressed the following issue: whether "text-based social networks may send administrative texts confirming consumers' interest in joining such groups without violating the TCPA because, when

---

[10] Defendant inexplicably cites *Chesbro* for the broad proposition that "questions regarding the application and reach of the TCPA must be approached 'with a measure of common sense.'" (*See* Mot. at 2:12-14.) According to Defendant, the application of this standard to the instant case compels the conclusion that its text message did not involve telemarketing. This misconstrues—indeed, completely inverts—the holding of *Chesbro*. The important part of *Chesbro*, which Defendant omits, is not the standard itself, but the application of the standard to the presented facts. Applying the "common sense" standard, the *Chesbro* court underlined rejected an argument almost identical to the one Defendant makes here.

In *Chesbro*, the Court rejected defendant's argument that its calls were purely informational courtesy calls on the grounds they did not explicitly reference any property, goods, or services. *Chesbro*, 705 F.3d at 918. The Court, approaching the problem "with a measure of common sense," found that the calls clearly encouraged the listener to make future purchases at defendant's store, and that any informational content that happened to be included in the calls did not inoculate them. *Id.*

consumers give express consent to participate in the group, they are the types of expected and desired communications TCPA was not designed to prohibit, even when that consent is conveyed to the text-based social network by an intermediary." *See Declaratory Ruling of the Federal Communications Commission Adopted on March 27, 2014, Regarding the In re GroupMe, Inc./Skype Communications S.A.R.L., Petition for Expedited Declaratory Ruling*, CG Docket No. 02-278, filed Mar. 1, 2012 ("*GroupMe*"), § I.1; *see also id.* § III.3 ("On March 1, 2012, GroupMe filed its Petition seeking clarification of the TCPA as it <u>applies to the type of group texting service offered by GroupMe.</u>") (emphasis in original).[11]

The FCC concluded that texts sent by GroupMe to group members that "relate[d] to using and canceling GroupMe's group texting service" were "administrative" and constituted "normal business communications," and that "it [was] reasonable to conclude that such communications [were] expected and desired by consumers who ha[d] given their prior express consent to participate in a GroupMe group and to receive such texts. *Id.* § 8. In reaching this conclusion, however, the FCC simply adopted the facts presented by GroupMe and assumed that (1) GroupMe's texts were "administrative" in nature, and (2) GroupMe members had provided adequate consent: "To the extent that a consumer, in the absence of instructions to the contrary, agrees to participate in a GroupMe group, agrees to receive associated calls and texts, and provides his or her wireless telephone number to the group organizer for that purpose, we interpret that as encompassing consent for GroupMe to send certain administrative texts that relate to the operation of that GroupMe group." *See id.* § 11; *see also id.* § 12 ("In this regard, we further clarify that where the consumer has agreed to participate in a GroupMe group, agreed to receive associated calls and texts, and provided his or her wireless telephone number to the group organizer for that purpose, the TCPA's prior express consent requirement is

---

[11] At issue in *GroupMe* was a social networking service providing free group text messaging for groups of up to 50 members. *See GroupMe*, § II.3. A user who wished to create a group using GroupMe's service was required to register with GroupMe and agree to its terms of service, which required the group creator to represent that each individual added to the group had consented to be added and to receive text messages. *Id.*

satisfied with respect to both GroupMe and the group members regarding that particular group, but only regarding that particular group.").

In stark contrast, here, Plaintiff did not consent to receive any calls or texts from Defendant. Rather, Plaintiff provided her cellular telephone number to Defendant for the sole purpose of completing an in-store return/purchase transaction. (*See* Compl. ¶ 16.) Moreover, the instant matter does not involve a social network-based group messaging service. As such, *GroupMe* is inapposite, and *Chesbro* makes clear that Plaintiff's conduct does not amount to prior express written consent.[12]

The other authorities cited by Defendant for the proposition that its text message is not actionable—*SoundBite*, *Ibey*, *Emanuel*, *Ryabyshchuk*, and *Freidman*[13]—fare no better. (*See*

---

[12] The Seventh Circuit has greatly circumscribed the scope of *GroupMe*. *See Kolinek v. Walgreen Co.*, 13 C 4806, 2014 WL 3056813, at **2-4 (N.D. Ill. July 7, 2014). In *Kolinek*, the plaintiff alleged he gave Walgreens his cellular phone number in response to a request from a pharmacist who said it was needed for potential identity verification purposes. *Id.* at *4. The court held that this did not amount to consent to automated calls reminding him to fill his prescription. *Id.* According to the court, "the FCC made it clear [in its *GroupMe* ruling] that turning over one's wireless number for the purpose of joining one particular private messaging group did not amount to consent for communications relating to something other than that particular group." *Id.* at *3. Further, the court held that "[t]he FCC has established no general rule that if a consumer gives his cellular phone number to a business, she has in effect given permission to be called at that number for any reason at all, absent instructions to the contrary. Rather, to the extent the FCC's orders establish a rule, it is that the scope of a consumer's consent depends on its context and the purpose for which it is given. Consent for one purpose does not equate to consent for all purposes." *Id.* at *4.

Here, Plaintiff believed she was giving Defendant her cell phone number for the sole purpose of completing her return and purchase transactions. (*See* Compl. ¶ 16.) Turning over her number for this limited purpose does not amount to consent for communications relating to Bebe's sales promotion.

[13] Defendant also cites "*Holt v. Redbox Automated Retail LLC*, No. 3:11-CV-03046, Dkt. No. 42, order at 5 (C.D. Cal. 2013)" for the same proposition. (*See* Mot. at 10:11-12.) Defendant, however, never requested judicial notice of the case. Its failure to do so perfectly illustrates the need for the requirement that a party file a formal request for judicial notice. First, Docket No. 42 corresponds to the defendant's motion to dismiss, not an order, as Defendant asserts. Second, even if this error constituted an oversight and Defendant had instead meant to reference the order at Docket No. 57, *Holt* is venued in the Southern District of California, not the Central District, as Defendant asserts. Had Defendant timely filed a request for judicial notice, together with a copy of the relevant order, it likely would have caught those errors, thereby obviating the need for Plaintiff and the Court to expend finite resources monitoring its citations.

Finally, even if the order were judicially noticeable, *Holt* is distinguishable on the same grounds as the other cases cited by Defendant: the text message that formed the basis of the lawsuit was a response to Plaintiff's antecedent text message to Defendant. (*See* Mot. at 13:17.)

Mot. at 12:3-19). In each and every one of these, unlike here, <u>the consumer first voluntarily sent a text message to the company</u>, to which the company then responded. *See Declaratory Ruling of the Federal Communications Commission Adopted on November 26, 2012, Regarding the In re SoundBite Commc'ns Inc.,Petition for Expedited Declaratory Ruling*, CG Docket No. 02-278, filed Feb. 16, 2012 ("*SoundBite*"), § 1 ("In this Declaratory Ruling, we . . . confirm that sending a one-time text message confirming a consumer's request that no further text messages be sent does not violate the Telephone Consumer Protection Act (TCPA) or the Commission's rules as long as the confirmation text has the specific characteristics described in the petition."); *Ibey v. Taco Bell Corp.*, No. 12-CV-0583-H WVG, 2012 WL 2401972, at *1 (S.D. Cal. June 18, 2012), appeal dismissed (Nov. 28, 2012) (plaintiff sent opt-out text to defendant, who responded with a text confirming that he had opted out of receiving text message notifications); *Emanuel v. Los Angeles Lakers, Inc.*, No. CV 12-9936-GW SHX, 2013 WL 1719035, at *4 (C.D. Cal. Apr. 18, 2013) (plaintiff admitted that he first voluntarily texted the defendant); *Ryabyshchuk*, 2012 WL 5379143, at *3 (plaintiff first sent opt-out text message to defendant, who then sent a text message confirming that opt-out); *Freidman v. Massage Envy Franchising, LCC*, No. 3:12-CV-02962-L-RBB, 2013 WL 3026641, at *4 (S.D. Cal. June 13, 2013) (plaintiff first sent two text messages to defendant, and defendant sent a clarifying text message in response).

Indeed, the Southern District has expressly rejected exactly the same argument Defendant makes here:

> Yahoo! relies on the recent decision *Ibey v. Taco Bell Corp.,* 2012 WL 2401972 (S.D.Cal. June 18, 2012), in support of their argument. In opposition, Plaintiff argues *Ibey* is inapplicable and the notification message at issue was unsolicited by Plaintiff. The Court finds *Ibey* and other similar district court cases finding prior express consent are distinguishable. In *Ibey,* the allegedly unsolicited text message was sent in response to a voluntary text message sent from plaintiff to cease communications. 2012 WL 2401972 at *3. The plaintiff had initially agreed to receive text messages from the defendant, but then changed his mind. *Id.* He then sent the text message "STOP" to the defendant. *Id.* In response, defendant sent plaintiff a confirmation text message that plaintiff had opted out of receiving text message notifications. *Id.* Based off this single text message, plaintiff filed a lawsuit alleging a violation of the TCPA. *Id.* In granting defendant's motion to dismiss, the court reasoned that "[d]efendant's sending a single, confirmatory text message in response to an opt-out request from Plaintiff, who voluntarily provided his phone number by sending the initial text message, does not appear to

demonstrate an invasion of privacy contemplated by Congress in enacting the TCPA." *Id.* Unlike the plaintiff in *Ibey,* Plaintiff Sherman did not send a voluntary message to Yahoo! prior to receipt of the unsolicited text message. Plaintiff did not provide Yahoo! prior express consent or take any action which would have justified a response or confirmation by Yahoo! Based on these facts, the Court concludes Plaintiff did not offer his prior express consent to Yahoo! to be contacted within the meaning of § 227(b)(1).

*Sherman v. Yahoo! Inc.*, No. 13CV0041-GPC-WVG, 2014 WL 369384 (S.D. Cal. Feb. 3, 2014)

(footnotes and internal citations to record omitted). Likewise, Plaintiff here never sent a text

message to Defendant or otherwise took any action that would have justified a response from

Bebe. (*See* Compl. ¶ 16.) Accordingly, Plaintiff did not offer her prior express consent to Bebe

to be contacted within the meaning of the TCPA.[14]

### (c)   Plaintiff Did Not Provide Consent to Defendant, Written or Otherwise

Defendant argues that Plaintiff "knowingly released" her cell phone number to

Defendant, thereby giving her prior express consent to receive the text message. (*See* Mot. at

9:13-18.)[15] However, the mere act of providing a cell phone number to a company in connection

---

[14] Defendant, in fact, apparently acknowledges that these cases involve a plaintiff who first voluntarily sends a text message to defendant. (*See, e.g.*, Mot. at 12:5-9 ("In resolving SoundBite's petition, the FCC considered whether prior express consent within the meaning of 47 U.S.C. § 227(b)(1)(A) is revoked <u>when the consumer sends an opt-out request</u> or whether such consent extends to a text message confirming that the consumer has opted-out from further text messages."); 12:22-24 ("[I]n *Emanuel*, <u>the plaintiff admitted that he voluntarily sent a text to the Lakers</u> seeking to display the contents of his text message on the scoreboard at Staples Center.") (emphasis added).) Even so, Defendant (wrongly) insists that these authorities are applicable to the instant case and justify Defendant's text message.

[15] Defendant has neither proffered any facts in support of its argument that Plaintiff "knowingly" released her cell phone number nor specified what such state-of-mind evidence might consist of—nor has it sought judicial notice of such evidence. (*See generally* Mot.)

In *Maier*, 2013 WL 3006415, at *4, defendant argued that the text message in question was sent to plaintiff after she allegedly submitted her cell phone number to a Rewards Program website and agreed to be contacted by defendant at that number. Defendant contended that this prior contact made use of an ATDS less plausible than an alternative inference of a customer specific text through human agency. *Id.* The court found that because this argument was based upon a factual allegation outside of plaintiff's complaint, such an allegation could not be considered for the purpose of ruling on the Rule 12(b)(6) motion absent a showing that it was based on documents incorporated by reference in the complaint, or was a matter of judicial notice, and that because no such showing was made by defendant, the argument need not be addressed further. *Id.*

Defendant should not be permitted to offer new evidence in its reply brief. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 894-95, 110 S. Ct. 3177, 3991-92, 111 L. Ed. 2d 695, 720 (1990) (a court has discretion to disregard late-filed factual matters); *Roth v. BASF Corp.*, C07-

with a retail transaction does <u>not</u> constitute prior express consent to receive text messages that are wholly unrelated to that transaction. *Connelly* is instructive:

> Regarding the booking of reservations, Hilton has failed to explain how the mere registration of a cellular telephone number at the time of booking a hotel reservation constitutes prior express consent for the telephone calls at issue here. "Express consent is '[c]onsent that is clearly and unmistakably stated.'" *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 955 (9th Cir. 2009) (quoting Black's Law Dictionary 323 (8th ed.2004)). Unlike the Honors Program application, Hilton points to no evidence that in booking a hotel reservation Merritt agreed to Hilton's terms and conditions, including the possibility that contact information might be used to make special offers or promotions by telephone. Without more, the Court cannot conclude that one who provides a contact telephone number in booking a hotel reservation is "clearly and unmistakably" consenting to receive promotional calls. *Id.*

*Connelly*, 2012 WL 2129364 at *4. *See also Kolinek*, 2014 WL 3056813, at *4 (holding that the scope of a consumer's consent depends on its context and the purpose for which it is given, and that consent for one purpose does not equate to consent for all purposes).

Plaintiff alleges here that she provided her cellular telephone number to Defendant for the sole purpose of completing an in-store return/purchase transaction. (Compl. ¶ 16.) As in *Connelly*, Defendant does not—and, under *Maier* (*see* fn. 16, *supra*), cannot—point to any evidence that in providing her cell phone number to Defendant that she contemplated the possibility that the contact information might be used to make special offers or promotions via text message. Defendant's text message, in other words, is completely unrelated to the limited purpose for which Plaintiff provided her phone number. Moreover, merely providing a phone number is conduct that, at best, suggests consent; it is not a direct expression thereof. Any consent under these circumstances would be implied and insufficient under the TCPA.

Even Defendant's cited authority undermines its argument that the mere provision of a cell phone number constitutes blanket assent to receive all telemarketing calls (even those that go beyond the scope of the original transaction):

---

106MJP, 2008 WL 2148803, at *3 (W.D. Wash. May 21, 2008) ("It is not acceptable legal practice to present new evidence or new argument in a reply brief . . . .").

One commenter, USAA, appears to suggest that oral consent is sufficient to permit any autodialed or prerecorded calls to wireless numbers. It argues that its customers may orally provide their wireless phone number as a point of contact and therefore those customers expect marketing and service calls.[] We disagree. Consumers who provide a wireless phone number for a limited purpose – for service calls only – do not necessarily expect to receive telemarketing calls that go beyond the limited purpose for which oral consent regarding service calls may have been granted. Moreover, as use of wireless numbers continues to increase, we believe that increased protection from unwanted telemarketing robocalls is warranted.

2012 TCPA Order ¶ 25.

Defendant's other cited cases do not compel a different conclusion. In *Roberts*, the court's holding (finding the existence of prior express consent) is confined to instances where "the content of the complained-about text message is closely related to the circumstances under which [a] plaintiff provide[s] his [or her] cell phone number." *See Roberts v. Paypal*, No. C 12–0622 PJH, 2013 WL 2384242, at *4 (N.D. Cal. 2013) (finding consent where plaintiff gave cell phone number to receive information regarding mobile services and then received text message from company regarding mobile services).[16] Similarly, in *Baird*, the court held that plaintiff consented only to be contacted about matters "f[alling] within the scope of her 'prior express consent.'" *Baird*, 2014 WL 320205 at *6. And in *Emanuel*, "[d]efendant's message provided [p]laintiff with information relevant to his request." *Emanuel*, 2013 WL 1719035 at *4; *see also id.* at *3 ("[M]any federal courts have concluded that when a customer provides a company his or her phone number in connection with a transaction, he or she consents to receiving calls about that transaction.") (emphasis added). In short, where the text message is not closely related to the purpose for providing a phone number, no consent can be given.

**More important, Defendant does not dispute that it failed to obtain prior express <u>written</u> consent, which was necessary because it sent a telemarketing text message after October 16, 2013, when the June 11, 2012 amendments to 47 C.F.R. 64.1200 became effective.** The amended regulations create a stringent set of rules for obtaining written consent:

---

[16] *Roberts* is also distinguishable because the term of the user agreement in *Roberts* expressly disclosed the following: "By providing PayPal a telephone number (including a wireless/cellular telephone), you consent to receiving autodialed and prerecorded message calls from PayPal at that number." *Roberts*, 2013 WL 2384242, at *1. No such disclosure occurred in this case.

(8) The term prior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.
(i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that:
(A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.
(ii) The term ''signature'' shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

47 U.S.C. § 64.1200(f)(8). Defendant clearly has not satisfied these requirements. Indeed, even if the text might generally be understood as a form of written consent, it certainly does not satisfy the strictures of the statute's definition, which requires, among other things, Plaintiff's signature, as well as the specific disclosures required under § (f)(8)(i)(A) and (B).

Because Defendant sent its text message after October 16, 2013, the cases it cites, all of which involve texts sent <u>prior</u> to October 16, 2013, are inapplicable to the instant matter.[17] *See Roberts*, 2013 WL 2384242 at *1 (text message sent on or about December 8, 2010); *Baird v. Sabre Inc.* (C.D. Cal. Cal. Case No. CV13-999), Dkt. No. 1 (Complaint) ¶ 23 (text message sent on or about January 14, 2013); *Emanuel*, 2013 WL 1719035, at *1 (text message sent on or about October 13, 2012); *Ibey*, 2012 WL 2401972, at *1 (text message sent on or about February 14, 2012); *Pinkard*, 2012 WL 5511039 at **1-2 (finding that "[e]xpress *written* consent not yet required" in connection with defendant's text messages, which were sent prior to

---

[17] Even as to texts sent prior to October 16, 2013, authority supports Plaintiff's position that the mere providing of a telephone number does not constitute express consent to receive telemarketing messages. *See, e.g.*, *Lusskin v. Seminole Comedy, Inc.*, 2013 LEXIS 86192, at *9 (S.D. Fla. June 19, 2013) ("Lusskin's admission that he provided his cell number to Seminole Comedy as part of the online ticket purchase does not mean that, as a matter of law, he consented to receive promotional text messages by Seminole Comedy through an automatic-dialing system."); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, 847 F. Supp. 2d at 1258 n.7 (doubting that provision of telephone number on invoice constitutes express consent under statute); *Connelly*, 2012 WL 2129364 at *4 ("Hilton has failed to explain how the mere registration of a cellular telephone number at the time of booking a hotel reservation constitutes prior express consent for the telephone calls at issue here.").

21

July 26, 2012) (emphasis in original).); *Gutierrez v. Barclays Group*, 2011 WL 579238, at *1

(S.D. Cal. 2011) (text messages sent on or before May 13, 2010)[18]; *Van Patten v. Vertical*

*Fitness Grp.*, *LLC*, No. 12CV1614-LAB MDD, 2014 WL 2116602, at *4 (S.D. Cal. May 20,

2014) ("[The amended FCC regulations] took effect on October 16, 2013, well after the texts at

issue in this case were second [sic]."); *Freidman*, 2013 WL 3026641 at *2 (defendant sent text

messages in November 2012); *Ryabyshchuk*, 2012 WL 5379143, at *1 (text messages sent on

May 16, 2012).[19] Therefore, even assuming that Court agreed that Plaintiff merely providing her

cell phone number during a purchase requested constituted express consent to receive text

messages—and it should not—there is no dispute that the required express <u>written</u> consent was

never obtained.

### C.    Plaintiff Has Standing

Defendant claims that Plaintiff lacks standing because she does not allege that she

sustained economic injury as a result of the text message—specifically, that "[s]he does not

allege that she was charged for the single, opt-in confirmatory text message sent by Defendant."

(*See* Mot. at 14:27-15:7.) This argument is unavailing.

Defendant's (wholly unsupported) assertions to the contrary, it is well-settled that a

plaintiff need not allege economic injury (*i.e.*, that she was forced to pay for the offending text

message) to establish standing. *Iniguez*, 969 F. Supp. 2d at 1248.

> [B]ased on the plain language of the TCPA and supported by the legislative
> history [], the Court finds that by alleging he received a text message in violation
> of the TCPA, [a plaintiff] has established a particularized injury in satisfaction of
> Article III premised on the invasion of his privacy, even absent any economic
> harm. Courts interpreting other federal statutes aimed at curbing invasions of

---

[18] *Gutierrez* is also inapposite because it involves debt collection calls, which differ from
the telemarketing text message at issue in this case. *See Gutierrez*, 2011 WL 579238 at *1; *see
also Meadows v. Franklin Collection Service, Inc.*, 414 Fed. Appx. 230, 236 (11th Cir. 2011)
("[T]he FCC has unequivocally stated that 'calls solely for the purpose of debt collection are not
telephone solicitations and do not constitute telemarketing' and 'calls regarding debt collection .
. . are not subject to the TCPA's separate restrictions on "telephone solicitations."'"). In short, the
rules applying to, and the policies underlying, the text message here are more stringent than
those applying to debt collection calls.

[19] As set forth in § III.B.2.b.iii, *supra*, *Ibey*, *Emanuel*, *Ryabyshchuck*, and *Freidman* are
also inapposite because they involve plaintiffs who initiated contact with defendant by text
message.

1    individual privacy with similarly broad private rights of action have arrived at the same conclusion.

2    *Smith v. Microsoft Corp.*, 11-CV-1958 JLS (BGS), 2012 WL 2975712, *6 (S.D. Cal. July 20,

3    2012); *see also* Satterfield, 569 F.3d at 950 (holding for the plaintiff despite the defendant's

4    allegation that the plaintiff's TCPA claim was deficient because she was not charged for call);

5    *Iniguez*, 969 F. Supp. 2d at 1248 ("Based on the plain language of the [TCPA], Plaintiff's

6    allegations are sufficient without an allegation that she was charged for Defendant's calls to her

7    cellular telephone."); *id.* at 1247 ("("[T]here is no statutory requirement that a recipient be

8    charged for an incoming call on a cellular line in order for a [TCPA] violation to occur."); *Blair*

9    *v. CBE Grp. Inc.*, No. 13-CV-134-MMA WVG, 2013 WL 2029155, at *4 (S.D. Cal. May 13,

10    2013) ("Because Plaintiff need not allege she was charged for the calls she received, CBE

11    Group's motion is DENIED insofar as it seeks dismissal on this basis."); *Gutierrez*, 2011 WL

12    579238 ("Thus, based on this Court's reading of the statute, Plaintiffs need not show that they

13    were charged for ... text messages to their cellular phones to prevail on their TCPA claims.");

14    *Agne v. Papa John's Int'l*, 286 F.R.D. 559, 571 (W.D. 2012) ("[C]lass members are not required

15    to show that they were charged for the text message advertisements they received."); *Lozano v.*

16    *Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1009-10 (N.D. Ill. 2010) ("The Court

17    therefore finds that the plain language of the TCPA does not require Plaintiff to allege that he

18    was charged for the relevant call at issue in order to state a claim pursuant to § 227.").[20, 21]

19       Plaintiff has alleged that Defendant sent her a text message in violation of the TCPA that

20    invaded her privacy. (*See* Compl. ¶ 26 ("These calls and/or text messages invaded Plaintiff's

21    privacy. These telephone text messages by Defendant or its agents violated 47 U.S.C. §

22    227(b)(1).")) Plaintiff therefore has standing.

23

24

---

25    [20] The Fourth, Ninth, and Eleventh Circuits all interpret the TCPA as not requiring that the called party be charged for the call. *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242,

26    1258 (11th Cir. 2014) (citing Fourth and Ninth Circuit cases).

27    [21] *See also Edwards v. First American Corp.*, 610 F.3d 514, 516-517 (9th Cir. 2010), cert. granted in part, 131 S. Ct. 3022 (2011), and cert. dismissed as improvidently granted, No.

28    10-708, 2012 WL 2427807 (U.S. June 28, 2012) ("[T]he invasion of [] statutorily protected rights establishes standing on its own, even absent additional allegations of harm.").

Given the overwhelming amount of authority on this score, there is simply no justification for Defendant's argument that an allegation of economic injury is required to establish a prima facie TCPA case. Defendant (ostensibly) quotes *Van Patten* in support of its argument that an allegation of economic injury is necessary to establish standing. (*See* Mot. at 15:5-7 ("'[B]ecause the only injury claimed was economic injury and, in light of the plaintiff's unlimited texting plan, any economic injury was nothing more than trivial . . . .'") Defendant's purported quotation suffers from at least two problems, both equally egregious. First, the purported quotation appears nowhere in the opinion. *See generally Van Patten*, 2014 WL 2116602. Rather, it appears to be a manifestation of Defendant's wishful thinking. Second, *Van Patten* involves standing under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"), <u>not the TCPA</u>. *Id.* at *10. Indeed, the *Van Patten* court explicitly noted the differences between the injury standards of the UCL and TCPA. *Id.* at *11. In *Van Patten*, the plaintiff cited three TCPA cases in support of his argument that paying for an unlimited texting plan constituted economic injury under the UCL. *Id.* The court stated as follows: "Those cases are of no help at all to his assertion that he has suffered a cognizable injury under California's Unfair Competition Law." *Id.* Defendant, however, never references this discussion.

**D.     Plaintiff Sufficiently Alleges Defendant's Willful Violation of the TCPA**

Defendant, again citing generic Rule 12(b)(6) standards instead of TCPA-specific cases, argues that Plaintiff has not adequately alleged that Defendant willfully violated the TCPA, and therefore has not established her demand for treble damages. (*See* Mot. at 15:24-16:21.) And again, the weight of authority is directly contrary to Defendant's position. *Hashw v. Dep't Stores Nat. Bank*, CIV. No. 13-727 RHK/JJK, 2013 WL 6184048, at *3 (D. Minn. Nov. 26, 2013) (a plaintiff need only allege that defendant "'willfully . . . ma[de] the ATDS calls[]'" to plead willfulness) (quoting *Stewart v. Regent Asset Mgmt. Solutions, Inc.*, No. 1:10–cv2552, 2011 WL 1766018, at *7 (N.D. Ga. May 4, 2011)); *Bridgeview Health Care Ctr. Ltd. v. Clark*, No. 09 C 5601, 2013 WL 1154206, at *7 (N.D. Ill. Mar. 19, 2013) *reconsideration denied in part*, No. 09 C 5601, 2013 WL 4495221 (N.D. Ill. Aug. 21, 2013) ("[A TCPA] plaintiff 'need not prove that defendant had knowledge of the TCPA's provisions in order to establish that the

24

defendant willfully or knowingly violated the TCPA[,]'" finding that defendant's admission that he hired a vendor to send facsimiles on his behalf containing his commercial advertisement was sufficient to make his violation willful within the meaning of the TCPA).

Here, Plaintiff alleges that Defendant willfully sent a text message to Plaintiff using an ATDS. (*See* Compl ¶ 1 ("Melita Meyer [] brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Bebe Stores, Inc. [], in negligently and/or willfully contacting Plaintiff through SMS or "text" messages on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, [] thereby invading Plaintiff's privacy."); *see also id.* ¶¶ 46-51.) Defendant does not dispute that it sent a text message to Plaintiff containing the content alleged in her complaint, which self-evidently consists of telemarketing. (*See generally* Mot.) (Instead, Defendant merely asserts, incorrectly, that the message does not contain telemarketing.) Accordingly, Plaintiff sufficiently alleges that Defendant willfully violated the TCPA.

## IV.     CONCLUSION

For these reasons, Plaintiff respectfully requests that Defendant's motion to dismiss/strike be denied in its entirety.[22] Inasmuch as the Court is inclined to grant Defendant's motion, either in whole or in part, Plaintiff respectfully requests leave to amend her complaint. *See DCD Programs, Ltd. v. Leighton*, 833 F. 2d 183, 186 (9th Cir. 1987) (Rule 15's policy of favoring amendments to pleadings should be applied with "extreme liberality.').

Dated: July 14, 2014                                   Respectfully submitted,

                                                       EcoTech Law Group, P.C.

                                       By:   /s/
                                             _____
                                             Dara Tabesh
                                             Attorneys for Plaintiff Melita Meyer

---

[22] Defendant's motion to strike is nested within its motion to dismiss. (*See* Mot. at 16:22-17:26.) The motion to strike regurgitates the same arguments as in its motion to dismiss and, for the same reasons, should be denied.