UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MELITA MEYER**,<br>          Plaintiff,<br><br>     v.<br><br>**BEBE STORES, INC.**,<br>          Defendant. | Case No. 14-cv-00267-YGR<br><br>**ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS AND STRIKE**<br><br>Re: Dkt. No. 35 |

Plaintiff Melita Meyer instituted this putative class action on January 16, 2014. (Dkt. No. 1.) She filed her First Amended Complaint on May 16, 2014, alleging two counts for negligent and willful violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). (Dkt. No. 27 ("FAC").) She seeks to represent a class of individuals who received SMS messages (referred to herein as "text messages") from defendant Bebe Stores, Inc. ("Bebe") or its agents purportedly in violation of the TCPA. Count I alleges negligent violations of the TCPA and Count II alleges knowing and/or willful violations of the same statute (a predicate to receiving treble damages). On June 16, 2014, Bebe moved to dismiss the operative complaint for plaintiff's purported (1) failure to state a claim and (2) lack of standing. (Dkt. No. 35 ("Mot.").) Bebe also moved to strike all or part of the complaint on a number of grounds. (*Id.*) Plaintiff opposes the motions. (Dkt. No. 41 ("Oppo.").) The motions were heard on September 9, 2014.

Having carefully considered the papers submitted, the pleadings, and the arguments of counsel, and for the reasons stated herein, the Court hereby **DENIES** defendant's motions to dismiss and strike.

## I. FACTUAL ALLEGATIONS

Plaintiff is a California resident. (FAC ¶ 6.)[1] Defendant, a California corporation, operates retail clothing stores throughout the United States. (*Id*. ¶¶ 7-8, 15.) On or about December 10, 2013, plaintiff visited one of defendant's California retail locations. (*Id*. ¶ 15.) She returned one dress and purchased another. (*Id*.) In connection with the transaction, and "believing that it was necessary to complete an in-store return/purchase transaction and for no other purpose," plaintiff provided her cell phone number to the store. (*Id*. ¶ 16.) She was never advised that defendant would send her promotional text messages through an automatic telephone dialing system ("ATDS"). (*Id*. ¶ 17.)

Soon thereafter, on December 10, 2013, she received an unsolicited text message from defendant. (*Id*. ¶ 18.) The message read:

> From: 423-23
> bebe: Get on the list! Reply YES to confirm opt-in. 10% OFF reg-price in-store/online. Restrictions apply. 2msg/mo, w/latest offers. Msg&data rates may apply.

(*Id*.) Defendant intentionally sent this message to plaintiff in order to promote its goods and services and using an ATDS as that term is defined in the TCPA. (*Id*. ¶¶ 20-21.) The text messages invaded plaintiff's privacy. (*Id*. ¶ 26.)

Plaintiff seeks to represent a class of persons within the U.S. who received calls or messages from defendant or its agents in violation of the TCPA. (*Id*. ¶¶ 27-39.)

## II. ARTICLE III STANDING

Defendant challenges plaintiff's standing to bring this action and moves to dismiss pursuant to Rule 12(b)(1). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the subject matter jurisdiction of the Court. To establish Article III standing, a plaintiff must satisfy three elements: (1) "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2)

---

[1] The specific factual allegations in the complaint—but not its legal conclusions—are generally taken as true for purposes of this motion. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

2

1   causation—"there must be a causal connection between the injury and the conduct complained
2   of"; and (3) redressability—"it must be likely, as opposed to merely speculative, that the injury
3   will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61
4   (1992) (internal quotation marks, citations, and footnote omitted). A challenge to subject matter
5   jurisdiction "can be either facial, confining the inquiry to allegations in the complaint, or factual,
6   permitting the court to look beyond the complaint." *Savage v. Glendale Union High Sch.*, 343
7   F.3d 1036, 1039 n.2 (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).
8   Here, defendant challenges the Court's jurisdiction on the grounds that on its face, the facts
9   alleged in the FAC do not establish plaintiff suffered an injury in fact. In a facial attack, the
10  defendant challenges the sufficiency of the allegations of subject matter jurisdiction in the
11  complaint. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1990). Review is akin to that for
12  a Rule 12(b)(6) motion, i.e., all allegations of the complaint are taken as true and all reasonable
13  inferences are drawn in favor of the plaintiff. *Id*.
14      Defendant argues plaintiff has failed to allege injury in fact because (1) the only claimed
15  injury is economic and (2) plaintiff does not allege she incurred any carrier charges for the specific
16  text message at issue. Defendant cites only one case for the proposition that a plaintiff lacks
17  standing under the TCPA where, by virtue of an unlimited text messaging plan, the plaintiff did
18  not incur any additional charges as a result of receiving the prohibited text messages. *See Van*
19  *Patten v. Vertical Fitness Grp., LLC*, 22 F. Supp. 3d 1069 (S.D. Cal. 2014). However, that
20  decision is inapposite as it was made in connection with California's Unfair Competition Law,
21  under which standing requires a finding of economic injury and is therefore narrower than Article
22  III standing. *Id*. at 1080. If anything, *Van Patten* cuts against defendant's argument, because the
23  court reached the merits of plaintiff's TCPA claim, under the same set of facts, instead of
24  dismissing it for lack of standing. *Id*. at 1078. Furthermore, plaintiff provides a number of cases
25  where, under similar circumstances, courts have found an injury in fact for a purported TCPA
26  violation even where the plaintiff did not receive an additional charge for the messages received.
27  *See, e.g.*, *Smith v. Microsoft Corp.*, No. 11-CV-1958, 2012 WL 2975712, at *6 (S.D. Cal. July 20,
28  2012) (finding "that by alleging he received a text message in violation of the TCPA, [plaintiff]

3

1 has established a particularized injury in satisfaction of Article III premised on the invasion of his

2 privacy, even absent any economic harm"). Here, plaintiff alleged an invasion of privacy. (FAC ¶

3 26.) Defendant fails to distinguish plaintiff's authority, simply reiterating its basic argument.

4 (Dkt. No. 46 ("Reply") at 13.) The Court finds persuasive the reasoning in *Smith*, which cites the

5 TCPA's reference in section 227(b)(2)(C) to possible FCC exemptions in the case of "calls to a

6 telephone number assigned to a cellular telephone service that are not charged to the called party,"

7 language which would be superfluous if defendant's interpretation of the statute were adopted.

8 *See Smith*, 2012 WL 2975712, at *4. Thus, satisfied that it has subject matter jurisdiction over the

9 present dispute, the Court turns next to defendant's Rule 12(b)(6) challenge.[2]

### III. RULE 12(b)(6) MOTION

Defendant argues plaintiff fails to state a claim under the TCPA. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). All allegations of material fact are generally taken as true. *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Pursuant to Rule 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted against that defendant. Dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be

---

[2] Defendant argues perfunctorily that plaintiff also lacks standing for the same reasons presented in connection with defendant's Rule 12(b)(6) motion. Because the Court finds those arguments unavailing, as detailed below, they do not establish a lack of subject matter jurisdiction.

resolved in favor of the pleadings. *Walling v. Beverly Enters.*, 476 F.2d 393, 396 (9th Cir. 1973).

However, mere conclusions couched as factual allegations are not sufficient to state a cause of action. *Papasan*, 478 U.S. at 286; *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

### A. The TCPA

The TCPA prohibits the use of an "automatic telephone dialing system" to place certain calls to cellular telephones without the recipient's "prior express consent." 47 U.S.C. § 227(b)(1); *see Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (finding "a text message is a 'call' within the meaning of the TCPA"). The term "automatic telephone dialing system" is defined as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator[, and] to dial such numbers." 47 U.S.C. § 227(a)(1). For violations thereof, the TCPA provides a private right of action for injunctive relief and/or monetary damages. 47 U.S.C. § 227(b)(3). As monetary damages, a plaintiff may receive either actual damages or statutory damages in the amount of $500 per violation. *Id*. In the case of knowing or willful violations, statutory damages of up to $1,500 per violation may be awarded. *Id*. As "a remedial statute that was passed to protect consumers from unwanted automated telephone calls," the TCPA "should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013).

Defendant argues plaintiff fails to state a claim under the TCPA because plaintiff: (1) consented to receive the text message at issue; (2) did not sufficiently allege defendant's use of an ATDS; and (3) as to Count II, did not sufficiently allege defendant's knowing or willful violation of the TCPA. The Court addresses each in turn:

### 1. Consent

First, defendant argues plaintiff consented to receive the text message at issue.[3] The Federal Communications Commission ("FCC"), tasked with instituting implementing regulations for the TCPA, added an express *written* consent requirement in the case of messages "that include[] or introduce[] an advertisement or constitute[] telemarketing," which went into effect on October 16, 2013. *See* 47 C.F.R. § 64.1200(a)(2). The regulation defines an "*advertisement*" as "any material advertising the commercial availability or quality of any property, goods, or services." *Id.* at § 64.1200(f)(1) (emphasis in original). "*[T]elemarketing*" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id.* at § 64.1200(f)(12) (emphasis in original).

Defendant acknowledges that, generally, the TCPA required prior express consent for covered text messages sent before October 16, 2013. (Mot. at 1, 6, 8.) After that date, such consent had to be in writing in the case of advertising or telemarketing messages. (*Id.*) The text message now at issue was received after October 16, 2013 and therefore required written consent if related to advertising or telemarketing. Defendant argues the text at issue was merely an informational or administrative message "confirming" plaintiff's opt-in (not one sent for advertising or telemarketing purposes).

Defendant's legal authorities do not persuade. Those cases arise from "opt-out" situations, rather than "opt-ins." Unlike the cases cited—where plaintiffs had previously consented to receive

---

[3] In its opening brief, defendant argues the absence of prior express consent is an element of the TCPA claims that plaintiff must plead. In response, plaintiff argues this issue is irrelevant at this stage of the case because prior express consent under the TCPA is an affirmative defense. *See Grant v. Capital Mgmt. Servs., L.P.*, 449 F. App'x 598, 600 n.1 (9th Cir. 2011) ("'[E]xpress consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof."). "Ordinarily affirmative defenses may not be raised by motion to dismiss but this is not true when . . . the defense raises no disputed issues of fact." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (internal citation omitted). In reply, defendant does not dispute these points, but instead apparently argues that plaintiff's allegations, taken as true, conclusively establish she gave her prior express consent to receive the message at issue. To the contrary, as detailed below, the Court finds that the complaint plausibly pleads the absence of prior express written consent.

the communications and the confirmatory opt-out message itself contained no advertisement or telemarketing content—the pleadings here establish a plausible lack of any prior express written consent by plaintiff to receive such messages. Moreover, the Court finds that the message at issue plausibly constitutes an "advertisement" and that it was plausibly sent for "telemarketing" purposes as the regulation defines those terms. Even if it also served a dual, administrative function of facilitating plaintiff's possible opt-in, "[t]he FCC has determined that so-called 'dual purpose' calls, those with both a customer service or informational component as well as a marketing component, are prohibited." *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 917 (9th Cir. 2012) (citing *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, *Report and Order*, 18 FCC Rcd. 14014, 14095 ¶¶ 140-142, 2003 WL 21517853 (F.C.C. July 3, 2003)). Here, the message offered "10% OFF reg-price in-store/online" on Bebe's goods, presumably to encourage future purchases.[4] Defendant argues the fact that the message asked plaintiff to "confirm [her] opt-in" conclusively demonstrates she previously consented to receive it. However, it is plausible that a marketing message might be sent with such language even in the absence of actual prior express consent.

Because the Court finds that written consent was required and the pleadings plausibly establish that it was not provided, the motion to dismiss on this ground is **DENIED**.

### 2. Use of an ATDS

Defendant next argues the complaint fails to allege properly the use of an ATDS in connection with the text message at issue. Paragraph 21 of the FAC includes the following allegation:

---

[4] Defendant attempts to distinguish this circumstance from the "dual purpose" calls that have resulted in liability on two grounds: (1) no product or service was being offered in this text message, just the prospect of *future* special offers should plaintiff opt-in and (2) she previously granted her consent to receive the message. However, as to the first, the FCC "provided that if the call, notwithstanding its free offer or other information, is intended to offer property, goods, or services for sale either during the call, or in the future, that call is an advertisement." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1842 (2012). Here, the message is offering products for sale in the future at a 10 percent discount. Because prior express *written* consent was required to send such a message, the second argument—that plaintiff consented merely by virtue of providing her phone number—also fails.

7

> Defendant made these calls to Plaintiff's cellular telephone number using an "automatic telephone dialing system" ("ATDS")—as defined by 47 U.S.C. § 227 (a)(1) and as prohibited by 47 U.S.C. § 227 (b)(1)(A)—which had the capacity to store or produce and dial numbers randomly or sequentially, and to place telephone calls and/or send text messages to Plaintiff's cellular telephone number.

The complaint also alleges the text messages at issue were sent "*en mass*." (FAC ¶¶ 42, 48 (emphasis in original).) Additionally, it includes the full text of the message, which appears to be a form message and requests the recipient send a "YES" response to opt-in. These facts render plausible the general allegation that the message was sent using an automated system capable[5] of storing or producing and dialing numbers randomly or sequentially. This Court has previously found such allegations sufficient at the pleadings stage. *See Pimental v. Google Inc.*, No. 11-cv-02585, 2012 WL 691784, at *2 (N.D. Cal. Mar. 2, 2012) (citing *Kazemi v. Payless Shoesource Inc.*, No. 09-cv-5142(MHP), 2010 WL 963225 (N.D. Cal. Mar. 16, 2010)). Other courts have found similarly. *See Maier v. J.C. Penney Corp., Inc.*, 13-CV-0163, 2013 WL 3006415, at *4 (S.D. Cal. June 13, 2013) (holding a message that could be interpreted as "generic or impersonal" rendered plausible a general allegation that an automated system with the requisite functional capacity was used); *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1129-30 (W.D. Wash. 2012) (quoting *Knutson v. Reply!, Inc.*, No. 10-CV-1267, 2011 WL 1447756, at *1 (S.D. Cal. Apr. 13, 2011)) ("[C]ourts have noted 'the difficulty a plaintiff faces in knowing the type of calling system used without the benefit of discovery' and found that courts can rely on details about the call to infer the use of an ATDS."). Thus, the motion to dismiss on this ground is **DENIED**.

### 3. Knowing or Willful Violations

Finally, defendant argues Count II—alleging "knowing and/or willful" TCPA violations for purposes of seeking treble damages—must be dismissed as bare, conclusory allegations that do not support a finding that defendant had reason to know its conduct violated the TCPA. Defendant cites only a single TCPA case, *Adamcik v. Credit Control Servs., Inc.*, 832 F. Supp. 2d

---

[5] The Ninth Circuit has held that a machine may qualify as an ATDS so long as it has the "*capacity* to store or produce telephone numbers to be called, using a random or sequential number generator," regardless of whether it was actually used in that manner. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (emphasis in original) (internal quotations omitted).

744, 755 (W.D. Tex. 2011), which arose in the context of a judgment as a matter of law—not a motion to dismiss—and found that "[n]o evidence was presented which would support a finding that [defendant] was more than negligent in its TCPA violation." Plaintiff cites a number of cases that establish her pleadings are sufficient at this early stage to allege that defendant plausibly acted knowingly or willfully. *Compare Hashw v. Dep't Stores Nat. Bank*, 986 F. Supp. 2d 1058, 1062 (D. Minn. 2013) (finding "a plaintiff need only allege a defendant 'willfully . . . ma[de] the ATDS calls'" (emphasis and alteration in original)), *with* FAC ¶¶ 46-51 ("Defendant, using an ADTS [*sic*], sent text messages to Plaintiff [in] knowing and/or willful violation[] of the TCPA."). Defendant having failed to present any binding, relevant authority to the contrary, the motion to dismiss on this ground is **DENIED**.

## IV.   MOTION TO STRIKE

### A.   Legal Framework

A court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a [Rule] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) *rev'd on other grounds*, 510 U.S. 517 (1994)). "Motions to strike 'are generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice.'" *Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873, 879 (N.D. Cal. 2011) (quoting *Rosales v. Citibank, Fed. Sav. Bank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001)). Given the disfavored status of Rule 12(f) motions, "courts often require a showing of prejudice by the moving party before granting the requested relief." *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1122 (E.D. Cal. 2012) (quoting *California Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002)). "If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Holmes v. Elec. Document Processing, Inc.*, 966 F. Supp. 2d 925, 930 (N.D. Cal. 2013) (quoting *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D.

9

1  Cal. 2004)). Whether to grant a motion to strike is a matter committed to the sound discretion of

2  the district court. *See Whittlestone*, 618 F.3d at 973 (citing *Nurse v. United States*, 226 F.3d 996,

3  1000 (9th Cir. 2000)).

### B. Analysis

Defendant's only specific examples of material that should be stricken as impertinent (or on other, unspecified grounds) are: (1) references to multiple text messages; (2) inclusion in the proposed class definition of purchasers within a four year period prior to the initiation of this action; and (3) plaintiff's request for treble damages and the supporting allegations of knowing and willful TCPA violations by defendant. All three requests to strike lack merit, as none of the allegations are "redundant, immaterial, impertinent, or scandalous."[6]

As to the first, although only one specific example is given, the complaint nowhere states that plaintiff only received a single text message from defendant. (*See* FAC ¶ 35 (alleging plaintiff "received *at least* one unsolicited telephone SMS or text message" from defendant (emphasis added)).) Additionally, a TCPA violation does not require multiple messages be sent. *Sherman v. Yahoo! Inc.*, 997 F. Supp. 2d 1129, 1135 (S.D. Cal. 2014) ("[A]bsent prior express consent, a single call or text with the use of an ATDS may be actionable under the TCPA."). Moreover, this case was brought as a putative class action, so certain references to multiple text messages would apply even if plaintiff herself only received a single message. Therefore, the Court declines to strike these references. As to the second, the issue is more appropriately raised at the class certification stage. As to the third, for the reasons detailed above, plaintiff's willfulness allegations are sufficient at this early stage of the case.

Finally, defendant requests that the complaint in its entirety be stricken. Defendant, however, fails to provide a basis for that request. Thus, defendant's motion to strike is **DENIED**.

### V. CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** Defendant's Motions to Dismiss and Strike.

---

[6] Defendant has also failed to explain how it is prejudiced by the inclusion of this material.

1   This Order terminates Docket No. 35.

2   **IT IS SO ORDERED.**

3   Dated: February 2, 2015

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE