UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MELITA MEYER**,<br>Plaintiff,<br>v.<br>**BEBE STORES, INC.**,<br>Defendant. | Case No. 14-cv-00267-YGR<br><br>**ORDER DENYING DEFENDANT'S MOTION TO STAY LITIGATION**<br>Re: Dkt. No. 56 |

Plaintiff Melita Meyer instituted this putative class action on January 16, 2014, alleging negligent and willful violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). (Dkt. No. 1.) On June 16, 2014, defendant Bebe Stores, Inc. ("Bebe") moved to dismiss and strike the First Amended Complaint (Dkt. No. 27 ("FAC")). (Dkt. No. 35.) In part, Bebe argued that the FAC failed to allege properly the use of an "automatic telephone dialing system" ("ATDS") as that term is defined by the TCPA.

On January 28, 2015, Bebe filed a motion to stay the instant action pending a ruling from the Federal Communications Commission ("FCC") on the May 27, 2014 Petition for Expedited Declaratory Ruling on Autodialer Issue, CG Docket No. 02-278 (the "*Sensia* Petition") instituted by Milton H. Fried, Jr. and Richard Evans in connection with *Fried v. Sensia Salon, Inc.*, No. 4:13-cv-00312 (S.D. Tex.). (Dkt. No. 56 ("Mot.").)

On February 2, 2015, the Court denied Bebe's motion to dismiss and strike. *Meyer v. Bebe Stores, Inc.*, No. 14-cv-00267, 2015 WL 431148 (N.D. Cal. Feb. 2, 2015). Among other determinations, the February 2, 2015 Order held that the FAC sufficiently alleged the use of an ATDS. *Id.* at *4.

Thereafter, plaintiff filed an opposition to defendant's motion to stay. (Dkt. No. 61 ("Oppo.").)

Having carefully considered the papers submitted,[1] the record in this case,[2] and the matters appropriately subject to judicial notice,[3] and for the reasons stated herein, the Court hereby **DENIES** defendant's motion to stay this litigation.

## I. RELEVANT BACKGROUND

### A. Factual Allegations

The factual allegations in the FAC were detailed in this Court's February 2, 2015 Order. *Meyer*, 2015 WL 431148, at *1. Generally, plaintiff alleges she provided her cell phone number at a Bebe retail location in connection with a return/purchase transaction in December 2013—receiving no notice that it would be used for advertising purposes—and thereafter received the following text message:

> From: 423-23
> bebe: Get on the list! Reply YES to confirm opt-in. 10% OFF reg-price in-store/online. Restrictions apply. 2msg/mo, w/latest offers. Msg&data rates may apply.

(*Id*.) Plaintiff seeks to represent a class of persons within the U.S. who purportedly received calls or messages from defendant or its agents in violation of the TCPA. (FAC ¶¶ 27–39.) According to Bebe, Air2Web, Inc. ("Air2Web") was its "sole service provider for its text messaging program" between April 2007 and December 2013. (Declaration of Erik Lautier in Support of Motion to Stay Litigation [Dkt. No. 56-2 ("Lautier Dec.")], ¶ 4.)

---

[1] The Court **OVERRULES** plaintiff's evidentiary objections. As a threshold matter, they were not wholly included within the opposition brief's 25-page limit pursuant to Civil Local Rule 7-3. Moreover, the Court finds that the tenor underlying plaintiff's objections goes to the weight of the evidence at issue—namely, party and third-party declarations and a contract between defendant and Air2Web, Inc.—in light of the fact that defendant has not had an opportunity to obtain discovery to contradict the truth of the matters asserted therein. The Court has appropriately weighed the persuasiveness and relevance of those statements in light of the circumstances.

[2] The Court vacated the hearing on this motion pursuant to Civil Local Rule 7-1(b) and Federal Rule of Civil Procedure 78. (Dkt. No. 65.)

[3] Defendant's requests for judicial notice of the *Sensia* Petition and various related documents available on the FCC's website (Dkt. Nos. 56-3, 63-3) are **GRANTED** pursuant to Federal Rule of Evidence 201(b). *See, e.g.*, *Cellco P'ship v. F.C.C.*, 357 F.3d 88, 96 (D.C. Cir. 2004) (taking judicial notice of an FCC report). However, the Court does not necessarily accept as true all factual assertions contained within those documents.

### B. The TCPA

The TCPA prohibits the use of an "automatic telephone dialing system" to place certain calls to cellular telephones without the recipient's "prior express consent." 47 U.S.C. § 227(b)(1); *see Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (finding "a text message is a 'call' within the meaning of the TCPA"). The term "automatic telephone dialing system" is defined as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator[, and] to dial such numbers." 47 U.S.C. § 227(a)(1).[4] For violations thereof, the TCPA provides a private right of action for injunctive relief and/or monetary damages. 47 U.S.C. § 227(b)(3). As monetary damages, a plaintiff may receive either actual damages or statutory damages in the amount of $500 per violation. *Id*. In the case of knowing or willful violations, statutory damages of up to $1,500 per violation may be awarded. *Id*. As "a remedial statute that was passed to protect consumers from unwanted automated telephone calls," the TCPA "should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013). Congress delegated implementing authority over the TCPA to the FCC. *Satterfield*, 569 F.3d at 953 (citing 47 U.S.C. § 227(b)(2)).

### C. The *Sensia* Petition

The *Sensia* Petition was filed on May 27, 2014. (Request for Judicial Notice in Support of Defendant's Motion to Stay Litigation [Dkt. No. 56-3 ("RJN")], Ex. A.) It sought an expedited declaratory ruling regarding *Fried v. Sensia Salon, Inc*. (*Id*. at 1.) Purportedly at issue in that case is a contract between Sensia Salon, Inc. ("Sensia") and Textmunications, Inc. ("Textmunications") whereby Textmunications would send advertising text messages on Sensia's behalf. (*Id*. at 4.) Textmunications, in turn, contracted with Air2Web to transmit the messages. (*Id*.) Specifically, the petition seeks a declaratory ruling that "Sensia used an auto-dialer to send SMS text messages"

---

[4] The Ninth Circuit has held that a system may qualify as an ATDS so long as it has the "*capacity* to store or produce telephone numbers to be called, using a random or sequential number generator," regardless of whether it was actually used in that manner. *See Satterfield*, 569 F.3d at 951 (emphasis in original) (internal quotations omitted).

3

by virtue of the combined equipment of Textmunications and Air2Web. (*Id*. at 6–9.)

The FCC issued a Public Notice regarding the petition on July 9, 2014, seeking comment on the issues raised in the petition. (RJN, Ex. B at 1.) The FCC construed the petition as seeking "clarification on whether the use of the combined equipment and capacities [of Sensia, Textmunications, and Air2Web] constitutes use of an ATDS." (*Id*. at 2.)[5]

Defendant acknowledges the timeline for the FCC to answer the *Sensia* Petition is presently "unknown." (Mot. at 2.)

## II. INHERENT AUTHORITY TO STAY LITIGATION

### A. Legal Framework

"A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). "This rule . . . does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id.* at 863–64. That being said, while a court's discretion to stay matters pending before it is broad, such discretion is not "unfettered." *See Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007). For instance, "'if there is even a fair possibility that the stay . . . will work damage to someone else,' the stay may be inappropriate absent a showing by the moving party of 'hardship or inequity.'" *Id.* (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). The length of a stay must be proportionate to "the strength of the justification given for it." *See Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000). A greater showing is required to justify especially long stays, or

---

[5] Defendant claims the petition will resolve "an issue of first impression" regarding whether a "Tier 1 Aggregator" (which has entered into agreements with cellular carriers to streamline the process of sending calls or text messages) actually "'dials' the telephone numbers" at issue. (Dkt. No. 63 at 6–7.) However, neither the petition nor the public notice at issue are focused on this particular question. Instead, the focus of the petition seems to be on whether the combined activities of Textmunications and Air2Web constituted use of an ATDS. While the FCC may ultimately address the "Tier 1 Aggregator" question as a sub-issue, there is no clear indication at this juncture that it will do so. The Court will not indefinitely stay this action based on speculation as to whether the FCC will address this question—one not squarely raised by the petition and which may or may not prove relevant to the instant dispute, depending on defendant's and Air2Web's actual conduct at issue here.

1 those of "indefinite" term. *Id.*; *Dependable Highway Exp.*, 498 F.3d at 1066.

**B. Analysis**

The Court declines to exercise its inherent authority to stay this case indefinitely on efficiency grounds. Not only would the stay be indefinite, but the petition's relevance is questionable and defendant's proffer is insufficient. Defendant has acknowledged that the FCC has not established a specific timeline for ruling on the *Sensia* Petition. Even if the FCC were to find that the multi-party activity at issue in the *Sensia* Petition did not constitute use of an ATDS, it is not apparent that such a finding would necessarily apply to the instant case. Here, for example, no middleman appears to have been standing between Bebe and Air2Web. Additionally, Air2Web may have completed certain tasks that Textmunications undertook in *Sensia*.

The Court is not persuaded by defendant's proffer. Defendant submitted a declaration from Harvey Scholl, CTO of Air2Web, dated October 2013, and initially filed in connection with the *Sensia* litigation, which purports to describe Air2Web's system and states that it "does not include, and has not been paired in the previous two years with, hardware or software that has the capacity to dial numbers to be called at random, in sequential order, or from a database of numbers." (Lautier Dec., Ex. B at 6.) The declaration carries little weight. First, it is a self-serving declaration submitted by Air2Web in another action in which it is a defendant. The plaintiff here has not yet been able to obtain the necessary discovery to challenge these assertions. Second, the Scholl Declaration describes Air2Web's "Pertinent Business Operations"—namely, those pertinent to the *Sensia* litigation—which is not necessarily coextensive with all of its text messaging services, such as those provided to Bebe. (Lautier Dec., Ex. B at 1.) Third, the declaration contains certain legal conclusions regarding Air2Web's purported non-use of an ATDS. Even if credited, those retrospective statements have limited relevance here, where plaintiff allegedly received a text message from Bebe in December 2013, two months after the Scholl Declaration was signed. Fourth, the contract between Bebe and Air2Web—assuming no subsequent amendments or modifications thereto and complete performance—is not sufficiently clear on the question of whether Air2Web employed the identical system it used with Textmunications. (*See* Lautier Dec., Ex. A.)

5

1       Finally, even if the FCC issues a ruling that finds the combined operations of Sensia,
2  Textmunications, and Air2Web did not constitute the use of an ATDS, that would not, as
3  defendant claims, "end this Court's inquiry on whether an ATDS was used for purposes of the
4  instant litigation." (Dkt. No. 63 at 9.)  Defendant's suggestion assumes too much.  Defendant
5  assumes that Air2Web employed identical technology in servicing Bebe and that the relationship
6  between Bebe and Air2Web was sufficiently analogous to the circumstances in *Sensia*.  Plaintiff is
7  unable to disprove these assertions because it has received little to no relevant discovery.  Were
8  the case stayed, discovery would not progress and the parties and the Court would move no closer
9  to resolving these factual questions.

10      Staying this case indefinitely to await a potential, non-dispositive finding from the FCC
11 would prejudice plaintiff's ability to obtain relief in a timely fashion and could harm plaintiff's
12 ability to obtain necessary discovery (e.g., from third-party Air2Web, which is apparently
13 involved in Chapter 11 bankruptcy proceedings), whereas defendant would suffer no specific
14 hardship other than the typical costs of litigation should this case proceed in conjunction with the
15 pendency of the *Sensia* Petition.

**III.    THE DOCTRINE OF PRIMARY JURISDICTION**

   **A.    Legal Framework**

18      Defendant alternatively premises its motion on the doctrine of primary jurisdiction.  That
19 doctrine allows a court to stay or dismiss an action pending resolution "of an issue within the
20 special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110,
21 1114 (9th Cir. 2008).  Primary jurisdiction applies in a limited set of circumstances, "only if a
22 claim requires resolution of an issue of first impression, or of a particularly complicated issue that
23 Congress has committed to a regulatory agency, and if protection of the integrity of a regulatory
24 scheme dictates preliminary resort to the agency which administers the scheme." *Id*. (internal
25 citations and quotations omitted).

26      Although "[n]o fixed formula exists for applying the doctrine of primary jurisdiction,"
27 *Davel Comm'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086 (9th Cir. 2006), the Ninth Circuit has
28 considered whether (1) the issue is within the "conventional experiences of judges" or "involves

6

1  technical or policy considerations within the agency's particular field of expertise," (2) the issue
2  "is particularly within the agency's discretion," and (3) "there exists a substantial danger of
3  inconsistent rulings," *Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1048–49 (9th
4  Cir. 2011).[6] The Court must also balance the parties' need to resolve the action expeditiously
5  against the benefits of obtaining the federal agency's expertise. *Nat'l Comm'ns Ass'n, Inc. v. A.T.
6  & T. Co.*, 46 F.3d 220, 223 (2d Cir. 1995) (cited in *Maronyan*, 658 F.3d at 1049).

   **B.     Analysis**

   The Court finds that a stay is not appropriate under the doctrine of primary jurisdiction.

   First, judges are well-suited to resolve questions of statutory interpretation. Indeed, the question of whether a particular system constitutes an ATDS has been tackled by many courts, including the Ninth Circuit. *See, e.g.*, *Satterfield*, 569 F.3d at 951 (finding the focus must be on equipment's *capacity* to store, produce, or call randomly or sequentially generated telephone numbers, not on whether it was actually used in that manner). Courts have also addressed issues of vicarious liability in the TCPA context. *See, e.g.*, *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877–78 (9th Cir. 2014). Thus, the Court is not persuaded that the FCC, in answering the *Sensia* Petition, will ultimately reach an issue of first impression. Accordingly, this factor does not favor issuance of a stay.

   Second, the issue is not particularly within the FCC's discretion. As noted above, courts have frequently addressed whether a particular system constitutes an ATDS under the TCPA. Furthermore, Congress specifically defined "automatic telephone dialing system" within the statute, as opposed to delegating the task of proscribing the use of certain equipment to the FCC. *Cf.* 47 U.S.C. § 227(b)(2)(C) (specifically delegating authority to the FCC to exempt certain calls to cellular telephones from the scope of the TCPA); *Clark*, 523 F.3d at 1115 (noting "Congress

---

[6] In determining whether the doctrine of primary jurisdiction applies, the Ninth Circuit also has considered: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Clark*, 523 F.3d at 1115 (citing *Syntek Semiconductor Co., Ltd., v. Microchip Tech. Corp.*, 307 F.3d 775, 781 (9th Cir. 2002)).

7

has specifically delegated responsibility to the FCC to define 'slamming' violations"). Thus, this factor also does not weigh in favor of a stay.

Third, denial of a stay here does not create a substantial risk of inconsistent rulings, where the petition at issue involves a different set of corporations (other than Air2Web) operating under different circumstances. Thus, for the reasons noted above, any action by the FCC in connection with the *Sensia* Petition may ultimately have limited applicability—if any—to the present dispute. The FCC's potential ruling regarding whether a particular configuration of equipment between Sensia, Textmunications, and Air2Web constituted an ATDS may or may not have any bearing on the present litigation, depending on the scope of the FCC's findings and necessary factual determinations in this action. Moreover, if the FCC responds to the petition in a timely fashion, the Court will likely be able to consider the FCC's views prior to issuing a ruling on summary judgment or proceeding to trial even in the absence of a stay. Indeed, defendant admits "this action is in its infancy." (Mot. at 2.)

Finally, the Court finds that the importance of expeditiously resolving a case cuts against issuing a stay where, as here, the timeline for a ruling from the FCC is uncertain and such a ruling—potentially involving substantially different circumstances—may ultimately be of little utility to the Court in adjudicating the present dispute. *See Jordan v. Nationstar Mortgage LLC*, No. 14-cv-00787-WHO, 2014 WL 5359000, at *12 (N.D. Cal. Oct. 20, 2014) ("[A]waiting a ruling by the FCC would likely involve substantial delay, and . . . a ruling on the pending petitions would not be dispositive on the outcome of the litigation.").

## IV. CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** defendant's motion to stay this action.

This Order terminates Docket Number 56.

**IT IS SO ORDERED.**

Dated: March 17, 2015

YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE

8