1   PILLSBURY WINTHROP SHAW PITTMAN LLP
    MARK E. ELLIOTT (CA Bar No. 157759)
2   mark.elliott@pillsburylaw.com
    AMY L. PIERCE (CA Bar No. 210539)
3   amy.pierce@pillsburylaw.com
    725 South Figueroa Street, Suite 2800
4   Los Angeles, CA 90017-5406
    Telephone: (213) 488-7100
5   Facsimile: (213) 629-1033

6   Attorneys for Defendant BEBE STORES, INC.

7

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10                   OAKLAND DIVISION

11  _____
                                      )
12  MELITA MEYER, individually, and on )   Case No.: 14-CV-00267-YGR
    behalf of all others similarly situated, )
13                                    )   **CLASS ACTION**
                          Plaintiff(s), )
14                                    )   **BEBE STORES, INC.'S**
         vs.                          )   **OPPOSITION TO PLAINTIFFS'**
15                                    )   **MOTION FOR CLASS**
    BEBE STORES, INC.,                )   **CERTIFICATION**
16                                    )
                          Defendant(s). )   **REDACTED VERSION OF**
17                                    )   **DOCUMENT SOUGHT TO BE**
    _____)   **SEALED**
18  SAMANTHA RODRIGUEZ, individually, )
    and on behalf of all others similarly situated, )   Date:      April 26, 2016
19                                    )   Time:      2:00 P.M.
                          Plaintiff(s), )   Dept.:     1, 4th Floor
20                                    )   Judge:     Hon. Yvonne Gonzalez
         vs.                          )              Rogers
21                                    )
    BEBE STORES, INC.,                )   Case No.:  14-CV-01968-YGR
22                                    )
                          Defendant(s). )
23  _____)

24

25

26

27

28

BEBE STORES, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
Case No. CV 14-00267-YGR

## Table of Contents

Page

I.     INTRODUCTION ...................................................................................1

II.    STATEMENT OF FACTS ....................................................................3

    A.     bebe Texts Was Introduced Through Numerous Marketing Channels ..........3

        1.     Enrollment in bebe Texts Was Available Through clubbebe ..............3

        2.     bebe Marketed bebe Texts on www.bebe.com, on Social Media Platforms and Via Email ........................................................4

        3.     bebe Marketed bebe Texts In-store .......................................................4

    B.     bebe Stylists Were Provided Extensive Training On and Scripts For Collecting Cell Phone Numbers For bebe Texts ...............................................4

    C.     bebe Exclusively Obtained Cell Phone Numbers From Customers ...............5

    D.     Potential Class Members Cannot Be Identified From bebe's Records ..........6

    E.     Certain Merits Issues Bear on Whether Class Certification is Appropriate ........................................................................................................7

        1.     Plaintiffs Have Identified "No Proof" That an ATDS Was Used ...............................................................................................................7

        2.     Plaintiffs Voluntarily Provided Their Cell Phone Number ...............8

        3.     bebe's Opt-In Text is Not Telemarketing ........................................10

III.   LEGAL STANDARD ........................................................................11

IV.    ARGUMENT ......................................................................................12

    A.     Plaintiffs Have Not and Cannot Meet Their Burden of Establishing that Potential Class Members Can Be Ascertained From the Available Evidence ........................................................................................12

        1.     Potential Class Members Cannot Be Identified From bebe's Records .................................................................................................13

        2.     Potential Class Members Cannot Be Identified From Others' Records .................................................................................................14

        3.     Potential Class Members Cannot Self-Identify ...............................14

    B.     Plaintiffs Have Not and Cannot Satisfy the Requirements Of Rule 23(a) ......................................................................................................15

        1.     Numerosity Cannot be Ascertained ..................................................15

BEBE STORES, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
Case No. CV 14-00267-YGR

|  |  | 2. | Commonality is Lacking ................................................ | 15 |
|  |  | 3. | Typicality is Lacking ................................................... | 19 |
|  |  | 4. | Adequacy of Representation is Also Questionable ................... | 20 |
|  | C. | | Plaintiffs' Request For Certification Under Rule 23(b)(2) Lacks Merit ..................................................... | 20 |
|  | D. | | Plaintiffs Have Not and Cannot Satisfy the Rule 23(b)(3) Requirements .................................................. | 21 |
|  |  | 1. | Common Issues Do Not Predominate Because the Issue of Consent Cannot Be Determined Based On Classwide Proof | 21 |
|  |  | 2. | A Class Action is Not Superior to Individual Prosecution in This Case ...................................... | 23 |

V. CONCLUSION ........................................................................ 25

1

Table of Authorities

2

Page

3

Cases

4

*Aderhold v. Car2go N.A., LLC,*
No. C13-489RAJ, 2014 WL 794802 (W.D. Wash. Feb. 27, 2014) .................. 11, 26

5

*Amchem Products, Inc. v. Windsor,*
521 U.S. 591 (1997) ........................................................................................ 25

6

7

*Baird v. Sabre Inc.,*
995 F. Supp. 2d 1100 (C.D. Cal. 2014) ........................................................... 9

8

*Berger v. Home Depot USA, Inc.,*
741 F.3d 1061 (2014) ...................................................................................... 21

9

10

*Bias v. Wells Fargo & Co.,*
No. 12-cv-00664 YGR, 2015 BL 416728 (N.D. Cal. Dec. 17, 2015).......... 18, 25, 28

11

*Blair v. CBE Group, Inc.,*
309 F.R.D. 621 (S.D. Cal. 2015) ............................................................... 21, 25

12

13

*Califano v. Yamasaki,*
442 U.S. 682 (1979) ........................................................................................ 12

14

*Cellco P'ship v. Wilcrest Health Care Mgmt. Inc.,*
No. 09-3534 (MLC), 2012 WL 1638056 (D.N.J. May 8, 2012) ............................. 29

15

16

*Chesbro v. Best Buy Stores, L.P.,*
697 F.3d 1230 (9th Cir. 2012) ........................................................................ 19

17

*Comcast Corp. v. Behrend,*
133 S. Ct. 1426 (2013) .............................................................................. 12, 25

18

19

*Connelly v. Hilton Grand Vacations Co., LLC,*
294 F.R.D. 574 (S.D. Cal. 2013) .......................................................... passim

20

*Cottle-Banks v. Cox Commc'ns, Inc.,*
No. 10cv2133-GPC (WVG), 2013 WL 2244333 (S.D. Cal. May 21,
2013),............................................................................................................. 13, 19

21

22

*Ed v. Skywest Airlines, Inc.,*
245 F.R.D. 453 (S.D. Cal. 2007) .................................................................... 24

23

24

*Ellis v. Costco Wholesale Corp.,*
657 F.3d 970 (9th Cir. 2011) .......................................................................... 18

25

*Emanuel v. Los Angeles Lakers, Inc.,*
No. CV 12-9936-GW(SHX), 2013 WL 1719035 (C.D. Cal. Apr. 18,
2013)............................................................................................................. 9, 18

26

27

*Erica P. John Fund, Inc. v. Halliburton Co.,*
131 S. Ct. 2179 (2011) .................................................................................... 25

28

- iii -

BEBE STORES, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
Case No. CV 14-00267-YGR

*Fine v. ConAgra Foods, Inc.,*
   No. CV 10-01848 SJO (CFOx), 2010 WL 3632469 (C.D. Cal. Aug.
   26, 2010) .................................................................................................... 22

*Forman v. Data Transfer, Inc.,*
   164 F.R.D. 400 (E.D. Pa. 1995) ................................................................. 29

*Galvan v. KDI Distrib.,*
   No. SACV 08-0999-JVS (ANx), 2011 WL 5116585 (C.D. Cal. Oct.
   25, 2011) .................................................................................................... 28

*Gannon v. Network Tel. Servs., Inc.,*
   No. CV-12-9777-RGK-PJWX, 2013 WL 2450199 (C.D. Cal. June 5,
   2013) .......................................................................................................... 16

*Garcia v. Johnson,*
   No. 14-cv-01775-YGR, 2014 BL 331447 (N.D. Cal. Nov. 21, 2014) .............. 13, 17

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith,
Inc.,*
   903 F.2d 176 (2nd Cir. 1990) .................................................................... 23

*Gen. Tel. Co. v. Falcon,*
   457 U.S. 147 (1982) .................................................................................. 17

*Gene & Gene LLC v. BioPay LLC,*
   541 F.3d 318 (5th Cir. 2008) ..................................................................... 25

*Hanon v. Dataproducts Corp.,*
   976 F.2d 497 (9th Cir. 1992) ..................................................................... 22

*Ibey v. Taco Bell Corp.,*
   No. 12-CV-0583-H WVG, 2012 WL 2401972 (S.D. Cal. June 18,
   2012) .......................................................................................................... 22

*In re Teflon Prods. Liab. Litig.,*
   254 F.R.D. 354 (S.D. Iowa 2008) .............................................................. 15

*Jamison v. First Credit Services, Inc.,*
   No. 12 C 4415, 2013 WL 3872171 (N.D. Ill. Jul. 29, 2013) ...................... 26

*Kline v. Coldwell, Banker & Co.,*
   508 F.2d 226 (9th Cir. 1974) ..................................................................... 29

*Knutson v. Schwan's Home Serv., Inc.,*
   No. 3:12–cv–0964–GPC–DHB, 2013 WL 4774763 (S.D. Cal. Sept.
   5, 2013) ...................................................................................................... 28

*Kosta v. Del Monte Foods, Inc.,*
   308 F.R.D. 217 (N.D. Cal. 2015) ........................................................ passim

*Lerwill v. Inflight Motion Pictures, Inc.,*
   582 F.2d 507 (9th Cir. 1978) ..................................................................... 23

4815-3163-8829.v8

*Leyse v. Lifetime Entertainment Serv.*,
  No. 13 Civ. 5794 (AKH), 2015 WL 5837897 (S.D.N.Y. Sept. 22,
  2015) ................................................................................................................ 15

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (2012) .......................................................................... 14, 15, 16

*Marks v. Crunch San Diego, LLC*,
  55 F. Supp. 3d 1288 (S.D. Cal. 2014) ................................................................ 8

*Messner v. Northshore Univ. Healthsystem*,
  669 F.3d 802 (7th Cir.2012) ............................................................................ 25

*Mims v. Arrow Fin. Servs., LLC*,
  132 S. Ct. 740 (2012) ....................................................................................... 29

*Molski v. Gleich*,
  318 F.3d 937 (9th Cir. 2003) ........................................................................... 24

*Ott v. Mortgage Investors Corp. of Ohio, Inc.*,
  65 F. Supp. 3d 1046 (D. Or. 2014) ................................................................... 20

*Pimental v. Google Inc.*,
  No. C-11-02585-YGR, 2012 WL 691784 (N.D. Cal. Mar. 2, 2012) ...................... 26

*Robins v. Spokeo, Inc.*,
  742 F.3d 409 (9th Cir. 2014) ............................................................................. 2

*Rutledge v. Elec. Hose & Rubber Co.*,
  511 F.2d 668 (9th Cir. 1975) ...................................................................... 13, 28

*Ryabyshchuck v. Citibank (S.D.) N.A.*,
  No. 11-CV-1236-IEG (WVG), 2012 U.S. Dist. LEXIS 156176 (S.D.
  Cal. Oct. 30, 2012) ......................................................................................... 18

*Satterfield v. Simon & Schuster, Inc.*,
  569 F.3d 946 (9th Cir. 2009) ............................................................................. 9

*Sherman v. YAHOO! Inc.*,
  No. 13cv0041-GPC-WVG, 2015 WL 5604400 (S.D. Cal. Sept. 23,
  2015) ........................................................................................................ passim

*Smith v. Microsoft Corp.*,
  297 F.R.D. 464 (S.D. Cal. 2014) ........................................................ 15, 16, 28, 29

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011) ......................................................................... 21

*Stitt v. Citibank, Nat't. Assoc. and CitiMortgage, Inc.*,
  No. 12-cv-03892-YGR, 2015 U.S. Dist. LEXIS 169070 (N.D. Cal.
  Dec. 17, 2015) ........................................................................................... 18, 19

*Wal-Mart Stores, Inc., v. Dukes*,
  131 S. Ct. 2541 (2011) ................................................................................ passim

BEBE STORES, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
Case No. CV 14-00267-YGR

*Wolin v. Jaguar Land Rover N. Am., LLC,*
    617 F.3d 1168 (9th Cir. 2010) ................................................................ 22

*Xavier v. Phillip Morris USA, Inc.,*
    787 F. Supp. 2d 1075 (N.D. Cal. 2011)................................................ 14, 16

*Zinser v. Accufix Research Inst., Inc.,*
    253 F.3d 1180 (9th Cir. 2001) ................................................... 24, 25, 28

<u>Federal States and Codes</u>

United States Code
    Title 47, section 227(a)(1) ............................................................................ 7
    Title 47, section 227(a)(5) .......................................................................... 26
    Title 47, section 227(b)(1)(A)(iii) ............................................................. 26
    Title 47, section 227(b)(3) .......................................................................... 29

Code of Federal Regulations
    Title 47, section 64.1200(a)(1) .................................................................. 26
    Title 47, section 64.1200(a)(2) .................................................................. 26
    Title 47, section 64.1200(f)(1) ................................................................... 26
    Title 47, section 64.1200(f)(2) ..................................................................... 7
    Title 47, section 64.1200(f)(12) ................................................................ 27

<u>State Statutes and Codes</u>

California Public Utilities Code section 2891(a)(4) ........................................ 14

<u>Federal Rules and Regulations</u>

Federal Rules of Civil Procedure
    Rule 23(a)(1) ............................................................................................... 15
    Rule 23(a)(2) ............................................................................................... 15
    Rule 23(a)(3) ............................................................................................... 19
    Rule 23(a)(4) ............................................................................................... 20
    Rule 23(b)(3)(A)......................................................................................... 24

<u>Other Authorities</u>

Black's Law Dictionary 323 (8th ed. 2004) ...................................................... 8

In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991,
    7 F.C.C.R. 8752 (Oct. 16, 1992) ......................................................... 8, 22

In the Matter of Rules and Regulations Implementing the Telephone
    Consumer Protection Act of 1991, Declaratory Ruling and Order, CG
    Docket No. 02-278, 30 Rcd. 7961 (2015) ................................................. 7

Nagareda, Class Certification in the Age of Aggregate Proof, 84
    N.Y.U.L.Rev. 97, 132 (2009) ................................................................... 16

Petition for Expedited Declaratory Ruling Rules & Regulations
    Implementing the Tel. Consumer Prot. Act of 1991, 29 FCC Rcd.
    3442 (2014) ................................................................................................ 11

- vi -

I.       INTRODUCTION

This case is about a single confirmatory, opt-in text message ("Opt-in Text") sent by Defendant bebe stores, inc.'s ("bebe") vendor Air2Web, Inc. ("Air2Web") in response to a customer voluntarily and deliberately providing her cell phone number for the specific purpose of initiating her enrollment in bebe's text messaging program ("bebe Texts"). bebe extensively marketed and trained its stylists to emphasize to customers that by providing a cell phone number, they were *inviting* bebe to send an Opt-in Text that would enable them to complete enrollment in bebe Texts. After viewing bebe marketing and/or speaking with a stylist, customers, including Plaintiffs, understood that they were voluntarily and deliberately providing their cell phone number to initiate their enrollment in bebe Texts—*consenting to receive an Opt-in Text*. Upon receipt of an Opt-in Text, the customer could complete her enrollment by sending a response text ("Opt-in Response"), like Plaintiff Rodriguez did, entitling her to receive a discount code starting in early 2012. Nevertheless, Plaintiffs' Motion for Class Certification ("Motion") seeks to certify a class of potentially thousands of customers who allegedly received an Opt-in Text *without their consent*.

Plaintiff's Motion is flawed and no class should be certified. First, Plaintiffs have not demonstrated an objective or administratively feasible way to identify who was sent an Opt-in Text. Because bebe's core business is women's fashion and accessories, it hired Air2Web to manage bebe Texts. Air2Web vetted the numbers collected by bebe and maintained information regarding who was sent an Opt-in Text. Contrary to Plaintiffs' contention, potential class members are not ascertainable from bebe's records. Air2Web is not a party to the action and, approximately three years ago, filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code. Plaintiffs have identified no other records from which customers who were sent an Opt-in Text can be determined.

Second, Plaintiffs' Motion is premised on bebe's process for collecting its customers' cell phone numbers in-store at the point-of-sale ("POS") purportedly being "identical." This premise ignores that (1) approximately 80% of bebe's customers are

members of its "clubbebe" loyalty-based marketing program who expressly consented to bebe using contact information provided by the member for marketing purposes, (2) bebe broadly marketed bebe Texts and its stylists engaged with customers in different ways and places within bebe stores, and (3) bebe's marketing, training of and scripts for its stylists, and Opt-in Text content changed over time. Moreover, Plaintiffs purport to be the voice of these customers but their own consent profiles deviate substantially from each other and contradict the premise of their motion. Every potential class member has a *unique consent profile* and, thus, individualized issues of consent predominate, requiring individualized fact-finding or mini-trials to determine the issue of consent.

Third, Plaintiffs are not adequate representatives because, by their own admissions, their consent profiles are atypical and the facts do not support a conclusion that *any* potential class members had the "same experience" with bebe. Plaintiffs otherwise have not vigorously prosecuted the action with respect to their efforts to secure information from third parties regarding who was sent an Opt-in Text and the type of equipment used to transmit the Opt-in Text, leaving Plaintiffs' Motion vulnerable.

Finally, a class action is not a superior method for resolving Plaintiffs' claims. Fundamentally, Plaintiffs presume that everyone that received an Opt-in Text would deny that they gave prior express consent and want to participate in this action. Certain potential class members, like Plaintiff Rodriguez, completed their enrollment in bebe Texts and enjoyed the benefits of this program. The legislative history otherwise demonstrates that Congress envisioned that claims like Plaintiffs' would be brought by individuals in small claims court. This is underscored by what amounts to an effort by Plaintiffs to obtain a multi-million dollar range damages award that would be grossly disproportionate to any purported harm suffered[1] in the face of numerous merits issues that likely will defeat their own claims.

---

[1] bebe reserves its defense that Plaintiffs (and the putative class) lack Article III standing, and class certification should be denied on this ground, in light of the Supreme Court's decision to grant *certiorari* in *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014), *certiorari* granted, 82 U.S.L.W. 3689 (U.S. Apr. 27, 2015) (No. 13-1339).

1    Plaintiffs' Motion does not withstand the rigorous analysis required by Rule 23.

2    II.    STATEMENT OF FACTS

3    bebe Texts was launched to stay "relevant in the market," to attract "millennials and

4    new people in the door," and to "make customers happy." Declaration of Angela

5    Kourtoglou in Support of bebe stores, inc.'s Opposition to Plaintiffs' Motion for Class

6    Certification ("Kourtoglou Decl."), Exs. DT-B, p. 21:4-9, DT-A, pp. 19:24-20:10, 22:13-

7    23:2. It provided customers, *at their election*, with "an additional way to interact with

8    [b]ebe as part of an omni-channel strategy." *Id*., Ex. DT-A pp. 19:24-20:10.  How bebe

9    marketed bebe Texts, which led to customers providing their cell phone number to bebe,

10   bears on how bebe obtained consent from potential class members.

11       A.    bebe Texts Was Introduced Through Numerous Marketing Channels

12   bebe Texts was marketed across numerous channels and bebe collected cell phone

13   numbers in various ways, including on www.bebe.com, via a text message sent from a

14   customer's device to bebe's short code (Kourtoglou Decl., Exs. A, AL, DT-B, pp. 31:17-

15   32:5), at the POS (*id*., Exs. B, DT-B, pp. 29:12-25), and with client capture cards

16   (Declaration of Payam Shahian in Support of Plaintiff's Motion for Class Certification

17   (Unredacted Version) ("Shahian Decl."), Ex. 9). *See also* Kourtoglou Decl., Ex. DT-A, pp.

18   23:25-25:8. bebe's POS was not the "singular platform" from which bebe Texts was

19   launched. *See* Plaintiffs' Memorandum of Points and Authorities in Support of Motion for

20   Class Certification ("Mot."), p. 18.

21       1.    Enrollment in bebe Texts Was Available Through clubbebe

22   Approximately 80% of bebe's customers are members of clubbebe. Kourtoglou

23   Decl., Ex. DT-B, pp. 36:2-10, 41:6-17. Members of clubbebe could elect to be

24   communicated with through various channels, including direct mail, email and/or text

25   message. *Id*., Ex. C. Fundamentally, the clubbebe Terms & Conditions confirm that

26   members "consent to the use of the members' personal information…for marketing and

27   promotional purposes unless the member has opted out, and…consent[] to the receipt of

28   information provided by bebe." *Id*., Exs. D, E, F, G. Thus, whenever a member provided

- 3 -

BEBE STORES, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
Case No. CV 14-00267-YGR

1  her cell phone number (*e.g.*, on-line, at a POS or on a client capture card), express consent

2  to receive an Opt-in Text was confirmed through her participation in clubbebe. *Id.*, Ex. H.

3     2.     bebe Marketed bebe Texts on www.bebe.com, on Social Media Platforms

4            and Via Email

5     bebe Texts was marketed on www.bebe.com, including on the homepage (*e.g.*,

6  "SIGN UP: bebe TEXTS") (Kourtoglou Decl., Ex. I), at new customer registration (*id.*, Ex.

7  J), in bebe's Terms of Use of Our Website (*id.*, Ex. F) and at the customer preference center

8  (*id.*, Exs. K, L, M, N, O, P). It also marketed bebe Texts on social media platforms

9  frequented by customers, including on Facebook (*id.*, Exs. Q, AI, AJ, AK) and Myspace

10  (*id.* ¶ 4). It also cross-marketed bebe Texts through its email program. *Id.*

11    3.     bebe Marketed bebe Texts In-store

12    bebe Texts was marketed in retail locations in different ways, including, as

13  discussed, *infra*, Section II.B, by training stylists to introduce clients to bebe Texts

14  throughout the customers' experience in a store, including ███████████████████

15  ████████████████████████████████████████ (Kourtoglou Decl., Exs. R, S;

16  Shahian Decl., Ex. 9) and during checkout at a POS (Kourtoglou Decl., Ex. T; Shahian

17  Decl., Ex. 9). bebe also used "window clings" (Kourtoglou Decl., Ex. DT-B, p. 19: 23-

18  20:13) and "client capture cards" that customers could also fill out "at their convenience

19  and drop it in the plexi box when they are done" (Shahian Decl., Ex. 9). The latter is but

20  one method by which bebe obtained customers' prior express *written* consent to participate

21  in bebe Texts.

22    B.     bebe Stylists Were Provided Extensive Training On and Scripts For

23            Collecting Cell Phone Numbers For bebe Texts

24    bebe provided its stylists with extensive and continuous training on bebe Texts and,

25  in particular, how to explain the features and benefits of bebe Texts to customers.

26  Kourtoglou Decl., Ex. DT-B, pp. 22:3-23:9, 25:6:22. This included providing stylists with

27  scripts and "Cell Phone Capture Tips." *See, e.g.*, Shahian Decl., Exs. 7, 11. For example,

28  stylists were told,███████████████████████████████████████

4815-3163-8829.v8

1 ████████████████████████████████████

2 ██████ Shahian Decl., Ex. 7; Kourtoglou Decl., Exs. T, V, W. ████████

3 █████████████████████████████████████ Kourtoglou

4 Decl., Exs. X, Y, Z, AA, AB. bebe recognized that ██████████████████

5 ███████ Kourtoglou Decl., Ex. AC.██████████████████████████

6 █████████████████████████████████ *Id.*, Exs. AC,

7 AD. ███████████████████████████████████████

8 ██████████ *Id.*, Exs. AE, AF, AG. ████████████████

9 ████████████████████████████████████

10 ███████████ Shahian Decl., Ex. 7. ███████████████

11 █████████████████████████████████ Kourtoglou

12 Decl., Ex. AC; Shahian Decl., Ex. 7. ███████████████████

13 █████████████████████ Shahian Decl., Ex. 7.

14     As bebe Texts changed over time, training and scripts provided to stylists also

15 changed. For example, in 2012, bebe added an incentive for customers to enroll in bebe

16 Texts. Shahian Decl., Ex. 6; Kourtoglou Decl., Exs. AH ███████████████

17 █████████████████████████, AM, AN, AO, AP, DT-B, p. 50:6-51:16.

18 *If a customer completed her enrollment*, she received an offer "valid for 10% off [of her]

19 next in-store purchase of regular price merchandise." Shahian Decl., Ex. 6. Stylists were

20 trained to tell customers that "to receive the discount code, they must respond to the initial

21 text to opt-in to the program." Kourtoglou Decl., Ex. V*;* Shahian Decl., Ex. 6.

22     C.     bebe Exclusively Obtained Cell Phone Numbers From Customers

23     bebe's *sole source* for cell phone numbers was its customers. Kourtoglou Decl. ¶ 3.

24 ████████████████████████████████████

25 ████████████████████████████████████

26 ███████████████████ *Id.*, Exs. BD, DT-B, pp. 28:14-29:7,

27 29:16-25; Shahian Decl., Ex. 7. ████████████

28 █████████████████████████████ Kourtoglou Decl.,

1    Ex. DT-B, pp. 28:14-29:7, 29:16-25. ████████████████████████

2    ████████████████████████████████████████████████████████████████

3    ████ *Id*., Ex. DT-C pp. 48:7-50:17. Thus, the Opt-in Text is not the type of annoying,

4    intrusive, *en masse* communication forced onto consumers by telemarketers that the TCPA

5    was enacted to prevent. If the customer did not send an Opt-in Response, she received no

6    further texts. *Id*., Exs. AR (bebe005333), DT-B, pp. 25:6-22, 47:25-48:3, DT-A, p. 66:2-23.

7    She could opt out of bebe Texts at any time. *Id*., Ex. AR (bebe005333), BC.

8         D.    <u>Potential Class Members Cannot Be Identified From bebe's Records</u>

9    ██████████████████████████████████████████████

10   ████████████████████████████████████████████████████████████

11   ████████████    Kourtoglou Decl., Ex. DT-C pp. 13:9-16, 20:24-21:7. Information that bebe

12   collects from its customers is entered into a POS (Kourtoglou Decl., DT-B, pp. 28:3-30:6)

13   ████████████████████████████████████████████████████████████

14   (Kourtoglou Decl., Ex. DT-C, pp. 41:17-42:5). ████████████████████████████

15   ████████████████████████████████    *Id*., Ex. DT-C, pp. 48:7-50:17, 53:2-

16   12. bebe's database only contains customers' information provided by a customer and

17   transaction-related information. *Id*., Exs. AS, DT-C, pp. 54:2-17, 54:24-56:16, 64:10-22.

18        After receiving a number, Air2Web confirmed that the number was registered with

19   a carrier (*i.e.*, it was "valid") (Mot. p. 17; Shahian Decl., Ex. 14; Kourtoglou Decl., Ex. AR)

20   *and* that the carrier was identified in the Air2Web Application and Service Agreement

21   ("Air2Web Agreement") (Kourtoglou Decl., Ex. AT, Schedule F). If both criteria were met,

22   an Opt-in Text was sent to the carrier. *Id*., Ex. AR; Mot. p. 17. There are various reasons

23   why an Opt-in Text was not sent to a cell phone number, including that the mobile carrier

24   declined to transmit it. Kourtoglou Decl., Exs. AS, AT, Schedule E, AU; Shahian Dec., Ex.

25   14. Air2Web, not bebe, would have information, if any still exists, that an Opt-in Text was

26   sent. Kourtoglou Decl., Ex. DT-C, pp. 54:2-17. For these reasons, identifying potential

27   class members from bebe's records is *impossible. Compare to* Mot. p. 15.

28

- 6 -

E.      Certain Merits Issues Bear on Whether Class Certification is Appropriate

Plaintiffs acknowledge that certain merits issues bear on their Motion. Plaintiffs'

burden at this stage includes advancing a viable theory employing "generalized proof" to

demonstrate that an Opt-in Text was sent to the potential class members using an ATDS

without the requisite consent. Plaintiffs have not advanced such a theory.

1.      Plaintiffs Have Identified "No Proof" That an ATDS Was Used

a.      bebe's Equipment is Not an ATDS

As discussed, *supra*, Section II.D, ███████████████████████████

and its role in sending Opt-in Texts was limited to collecting cell phone numbers.

Kourtoglou Decl., Ex. DT-B, pp. 29:16-25. Once entered and manually saved in the POS,

the number was programmatically transmitted to Air2Web. *Id*., Ex. DT-C, pp. 41:17-42:5.

████████████████████████████████████████████████

██████████████████████ *Id*., Ex. DT-C, p. 13:9-18. This software and

equipment, even combined, does not have the capacity to store or produce telephone

numbers to be called using a random or sequential number generator or dial such numbers,

as required by the TCPA. *See* 47 U.S.C. § 227(a)(1); 47 C.F.R. § 64.1200(f)(2).

b.      Air2Web's Equipment Has Not Been Found to be ATDS, and
        There is No Evidence That an ATDS Was Used

The FCC *did not* conclude that Air2Web's equipment is an ATDS. Rather, it found

that "such equipment *can be* deemed an autodialer *if* the net result of such voluntary

combination enables the equipment to have the capacity to store or produce telephone

numbers to be called, using a random or sequential number generator, and to dial such

numbers." Mot. pp. 11-12 (emphases added). The FCC *did not* address whether a "Tier 1

Aggregator" "dials" a number. *See* Order Denying Defendant's Motion to Stay Litigation

(Dkt. 66) p. 4 n.5 ("Stay Order"); In the Matter of Rules and Regulations Implementing the

Telephone Consumer Protection Act of 1991, Declaratory Ruling and Order, CG Docket

No. 02-278, 30 Rcd. 7961 (2015); *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288,

1291-93 (S.D. Cal. 2014) (platform that used a SMS gateway aggregator was not an

1   ATDS). This Court confirmed that it cannot be assumed that "Air2Web employed identical

2   technology in servicing [b]ebe," and that Plaintiffs are in a difficult position because they

3   have "received little to no relevant discovery."[2] Stay Order p. 6.[3]  It further found that

4   Harvey Scholl's declaration in *Fried v. Sensia Salon, Inc.*, No. 4:13-cv-00312, "carries little

5   weight" and the Air2Web Agreement "is not sufficiently clear on the question of whether

6   Air2Web employed the identical system it used with [others]." *Id.* p. 5.

7           2.      Plaintiffs Voluntarily Provided Their Cell Phone Number

8           Given the varied consent profiles, whether the potential class members provided the

9   requisite consent can only be answered for all in "one stroke" if this Court finds that they

10  all *ipso facto* provided consent by voluntarily and deliberately providing bebe with their

11  cell phone number. The FCC and myriad courts agree that persons who knowingly release

12  their phone numbers have in effect given their invitation or permission to be sent a text to

13  the cell phone number provided, absent instructions to the contrary.[4] Thus, the potential

14

15  ─────────────────────

16  [2]  On November 4, 2013, Air2Web filed a voluntary petition for relief under Chapter 11 of
    Title 11 of the United States Code. *See Fried v. Sensia Salon, Inc.*, No. 4:13-cv-00312
    (Dkt. 85) (Nov. 27, 2013), p. 1 n.1. Air2Web's absence poses significant problems for
17  Plaintiffs' Motion through no fault of bebe.
    [3]  *See also* Plaintiff's Evidentiary Objections To and Motion to Strike Portions of
18  Defendant's Motion to Stay Litigation (Dkt. 62) p. 7 ("Mr. Lautier's understanding of that
    equipment seems to derive entirely from his review of the Scholl Declaration filed in the
19  *Sensia* action[.] This is insufficient to make a determination that the equipment used in
    this case and the *Sensia* action are, in fact, identical, as [bebe] seems to suggest.").
20  [4]  Fundamentally, in 1992, the FCC confirmed that "persons who knowingly release their
    phone numbers have in effect given their invitation or permission to be called at the
21  number which they have given, absent instructions to the contrary." In re Rules & Reg's
    Implementing the Tel. Consumer Prot. Act of 1991, 7 F.C.C.R. 8752, 8769 (Oct. 16,
22  1992) ¶ 31 ("1992 FCC Order"). In 2014, the FCC confirmed the continued applicability
    of the 1992 FCC Order. *See* Petition for Expedited Declaratory Ruling Rules &
23  Regulations Implementing the Tel. Consumer Prot. Act of 1991, 29 FCC Rcd. 3442, 3445
    (2014) ("Groupme"). The Ninth Circuit has defined "express consent" as "[c]onsent that
24  is clearly and unmistakably stated." *See Satterfield v. Simon & Schuster, Inc.,* 569 F.3d
    946, 952 (9th Cir. 2009) (citing Black's Law Dictionary 323 (8th ed. 2004)). Following
25  the FCC's guidance, many federal courts have found that "when a customer provides a
    company his or her phone number in connection with a transaction, he or she consents to
26  receiving calls about that transaction." *Sherman v. YAHOO! Inc.,* No. 13cv0041-GPC-
    WVG, 2015 WL 5604400, at * 6 (S.D. Cal. Sept. 23, 2015) (quoting *Emanuel v. Los*
27  *Angeles Lakers, Inc.,* No. CV 12-9936-GW(SHX), 2013 WL 1719035 (C.D. Cal. Apr. 18,
    2013)); *see, e.g., Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100, 1107 (C.D. Cal. Jan. 28,
28  2014) (By voluntarily providing her cell phone number, Baird consented to be contacted
                                                                        (continued…)

1    class members, after, at a minimum, engaging with a stylist, as illustrated, *supra*, Section

2    II.B, *ipso facto* gave prior express consent to receive an Opt-in Text and, accordingly, there

3    are no TCPA violations. Otherwise, as illustrated, *supra*, Sections II.A, II.B, II.C, the

4    events leading up to the potential class members providing their cell phone numbers bear on

5    whether bebe obtained consent. That it collected numbers at a POS is irrelevant.

6        Plaintiffs' own experiences demonstrate that they have no viable theory to employ

7    generalized proof to demonstrate that bebe did not obtain consent. Both Plaintiffs

8    voluntarily and deliberately provided a cell phone number to bebe after engaging with a

9    stylist. Plaintiff Meyer alleges that in December of 2013 she visited a bebe store and made a

10   return and purchased a dress. Plaintiffs' Consolidated Complaint for Damages and

11   Injunctive Relief Pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et*

12   *seq.* ("Complaint" or "Compl.") ¶ 16; Mot. p. 3; Kourtoglou Decl., Ex. AV. During the

13   transaction, she admits that she was asked for her *telephone* number (*id.*) but, without

14   explanation or limitation, "provided her cellular telephone number" (Compl. ¶ 17; Mot. p.

15   3[5]; Kourtoglou Decl., Ex. AW). In contrast to the premise of Plaintiffs' Motion, she claims

16   the stylist did not tell her that bebe would send her an Opt-in Text. Compl. ¶ 18. She alleges

17   that, on that same day, bebe sent her an Opt-in Text. Compl. ¶ 19; Mot. p. 3. She does not

18   allege that she was charged by her carrier for the message. Compl. ¶ 18; *compare to id.* ¶¶

19   20-22, 24-27.

20       In the *Complaint*, Plaintiff Rodriguez alleges that in June of 2013 bebe sent an

21   unsolicited text message to her cell phone number; she does not explain how bebe obtained

22   her number, quote the Opt-in Text sent, or deny that she voluntarily provided her number.

23   Compl. ¶ 19. In contrast, in the *Motion*, Plaintiffs allege that, "[h]aving been asked by

24

25   (…continued)
     on her cellphone about flight-related matters.)*, affirmed by the Ninth Circuit on February

26   3, 2016 in an *unpublished* opinion.
     [5] *Compare to* Mot. p. 12 ("any 'scripts or disclosures' that would be provided to their

27   customers at the POS would have been the same"); *see also id.* p. 9 ("the issue of consent
     is identical to all potential class members"); *see also id.* p. 10 (the potential class

28   members' "shared experience gives rise to the common question").

BEBE STORES, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
Case No. CV 14-00267-YGR

1    [bebe's] employees to 'confirm' that [bebe] had current contact information for her,

2    Plaintiff Rodriguez provided her telephone number orally to the clerk. Then, [bebe] sent

3    Plaintiff an [Opt-in Text]." Mot. p. 3. *Plaintiffs cite to bebe's responses to Plaintiff*

4    *Rodriguez's special interrogatories, confirming that Plaintiff Rodriguez does not recall the*

5    *transaction, the Opt-in Text or her Opt-in Response.*[6] Mot. p. 3 n.13. Plaintiff Rodriguez, a

6    member of clubbebe for 10+ years, in fact, updated her clubbebe profile by adding her cell

7    phone number when she made her purchase. Shahian Decl., Ex. 8 p. 6; Kourtoglou Dec.,

8    AX. As part of bebe's investigation, Air2Web or its successor confirmed that Plaintiff

9    Rodriguez was sent an Opt-in Text on June 21, 2013 at 7:18:14 p.m. and that she texted an

10   Opt-in Response—"Yes"— at 7:21:39 p.m. from the same number. Shahian Decl., Ex. 8 p.

11   7; Kourtoglou Decl. ¶ AY; *see also* Compl. ¶ 28. bebe does not know whether Plaintiff

12   Rodriguez opted out of bebe Texts. Kourtoglou Decl. ¶ 6. Like Plaintiff Meyer, she does

13   not allege that she was charged for the Opt-in Text.

14         3.    bebe's Opt-In Text is Not Telemarketing

15         The Opt-in Text served two purposes—first, it *responded* to a customer-initiated

16   invitation to bebe to send an Opt-in Text so that the she could complete her enrollment. *See,*

17   *e.g.*, *Aderhold v. Car2go N.A., LLC,* No. C13-489RAJ, 2014 WL 794802, at *9 (W.D.

18   Wash. Feb. 27, 2014) ("text was intended…to permit Mr. Aderhold to complete

19   registration"). It *recited* the benefits and features of bebe Texts described in marketing and

20   explained by a stylist, noting that she must send an Opt-in Response to complete her

21   enrollment and receive the discount code. *See, e.g.*, 47 C.F.R. § 64.1200(a)(2), (f)(1),

22   (f)(12); 47 U.S.C. § 227(a)(5). Second, it *requested* the recipient to confirm in writing, by

23   sending an Opt-in Response, that she wanted to receive future texts from bebe.

24         Plaintiff Meyer's Opt-in Text stated: "Bebe: Get on the List! Reply YES to confirm

25   opt-in. 10% OFF reg-price in-store/online. Restrictions apply. 2msg/mo, w/latest offers.

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [6]  In her initial complaint, she included the content of texts sent after she sent her Opt-in
28   Response. *See* Class Action Complaint for: Violations of the Telephone Consumer
         Protection Act, 47 U.S.C. § 227, No. CV 14-01968-MEJ (Dkt. 1), ¶¶ 12, 14.

BEBE STORES, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
Case No. CV 14-00267-YGR

1  Msg & data rates may apply." Compl. ¶ 19. Plaintiff Rodriguez's Opt-in Text stated:

2  "Bebe: Style on the go! Reply 'YES' to confirm opt in. 10% OFF a reg-price in-store purch

3  (restrictions apply) 4msgs/mo w/latest offers. bebe POS USA Msg&Data Rates May

4  Apply." Mot. p. 3.[7] As contemplated by the Opt-in Text, Plaintiff Rodriguez sent the

5  required Opt-in Response; Plaintiff Meyer contends that she did not.

6      The Opt-in Text did not *introduce* bebe Texts and it was not an *offer* of a

7  discount—it did not include a "promo code." Kourtoglou Decl., Exs. V, AR; Shahian Decl.,

8  Ex. 6.[8] Rather, as illustrated in Sections II.A. and II.B, *supra*, bebe marketing and stylists

9  introduced customers to bebe Texts and the concept of the promotional discount as an

10  incentive for customers to enroll in bebe Texts. Prior to March of 2012, bebe Texts did not

11  offer a promotional discount. Kourtoglou Decl., Exs. AQ, AS, BA, BB; Shahian Decl., Ex.

12  6. Even if prior express written consent were required for certain Opt-in Texts, potential

13  class members provided the requisite consent by their participation in clubbebe (Kourtoglou

14  Decl., Exs. D, E, F, G, DT-B, pp. 36:2-10, 41:6-17) and/or filled out a client capture card to

15  enroll in bebe Texts (Shahian Decl., Ex. 9).

16  III.    LEGAL STANDARD

17      A "class action is 'an exception to the usual rule that litigation is conducted by and

18  on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 133 S. Ct.

19  1426, 1432 (2013) *(*quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). To come

20  within the exception, the moving party "must affirmatively demonstrate [] compliance with

21  [Rule 23]." *Wal-Mart Stores, Inc., v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The moving

22  party must next "satisfy at least one of the three requirements listed in Rule 23(b)." *Id.* at

23  2548. "Plaintiffs must [also] establish ascertainability by demonstrating that class members

24

25  [7]  For a period of time, there was more than one version of Opt-in Text because bebe had
     two different brands—bebe and 2b. Kourtoglou Decl., Ex. DT-A, pp. 34:3-10.

26  [8]  *See, e.g.*, Groupme, 29 FCC Rcd. at 3444-45. Like in *GroupMe*, the Opt-in Text was
     *expected* by the customer who provided her cell phone numbers after being introduced to

27  bebe Texts by marketing and/or a stylist and *desired* because it enabled her to complete
     her enrollment in bebe Texts and to, among other things, receive the promised discount

28  code.

1   can be identified readily by clear, objective criteria." *Kosta v. Del Monte Foods, Inc.*, 308

2   F.R.D. 217, 223 (N.D. Cal. 2015).

3          Rule 23 is not "a mere pleading standard." *Dukes*, 131 S. Ct. at 2551. Certification

4   is proper only if, after "rigorous analysis," which "may entail some overlap with the merits"

5   of the claims, the prerequisites of Rule 23 are satisfied. *Id.*; *Cottle-Banks v. Cox Commc'ns,*

6   *Inc.*, No. 10cv2133-GPC (WVG), 2013 WL 2244333, at *5 (S.D. Cal. May 21, 2013) (Rule

7   23 requirements must be proven by a preponderance of the evidence). "The failure to meet

8   'any one of Rule 23's requirements destroys the alleged class action.'" *Garcia v. Johnson*,

9   No. 14-cv-01775-YGR, 2014 BL 331447, at *18 (N.D. Cal. Nov. 21, 2014) (citing

10  *Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975)).

11  IV.    ARGUMENT

12         Plaintiffs have failed to affirmatively demonstrate compliance with Rule 23 or the

13  attendant requirement that the proposed class be ascertainable. The class for which

14  certification is sought ("Class") is defined as:

15         "All persons within the United States who provided his or her mobile telephone
        number to Defendant in one of Defendant's stores at the point-of-sale and was sent
16         an SMS or text message from Defendant during the period of time beginning
        January 16, 2010 and continuing until the date the Class is certified."

17
18  Compl. pp. 9-10. Plaintiff's proposed post-October 16, 2013 subclass is defined as:

19         "All persons within the United States who provided his or her mobile telephone
        number to defendant in one of Defendant's stores at the point-of-sale and was sent
        an SMS or text message from Defendant during the period of time beginning
20         October 16, 2013 and continuing until the date the Class is certified."

21  Compl. p. 10. Plaintiff Meyer purports to represent both classes. Neither is certifiable.

22         A.     Plaintiffs Have Not and Cannot Meet Their Burden of Establishing that

23                Potential Class Members Can Be Ascertained From the Available Evidence

24         "To establish ascertainability for purposes of class certification, Plaintiffs must

25  demonstrate that: (*i*) members of the proposed class are readily identifiable by objective

26  criteria, and (*ii*) it is administratively feasible to determine whether a particular person is a

27  member of the class." *Kosta*, 308 F.R.D. at 227 (citing *Xavier v. Phillip Morris USA, Inc.*,

28  787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011)). This requirement protects the court by

- 12 -

1    "eliminat[ing] 'serious administrative burdens that are incongruous with the efficiencies

2    expected in a class action' by insisting on the easy identification of class members"

3    (*Marcus v. BMW of N. Am.*, LLC, 687 F.3d 583, 593 (3d Cir. 2012)), putative class

4    members by making it "clear later on whose rights are merged into the judgment" (*Xavier*,

5    787 F. Supp. 2d at 1089), and "defendants by ensuring that those persons who will be

6    bound by the final judgment are clearly identifiable" (*Marcus,* 687 F.3d at 593). Plaintiffs

7    have not demonstrated how this Court can identify who was sent an Opt-in Text.

8         1.    Potential Class Members Cannot Be Identified From bebe's Records

9         Plaintiffs' Motion rests on the false premise that class membership is

10   "straightforward" because it can be based on the cell phone numbers contained in bebe's

11   database. Mot. p. 15. As discussed, *supra*, Section II.D, bebe's ███ database can *only*

12   produce a list of names and cell phone numbers—not a list of those who were sent an Opt-

13   in Text. Thus, it is not an objective way to *identify* class members. *See, e.g., Sherman*,

14   2015 WL 5604400, at *5-7, 10 (Class members could not be ascertained through

15   YAHOO!'s database.); *Leyse v. Lifetime Entertainment Serv.,* No. 13 Civ. 5794 (AKH),

16   2015 WL 5837897, at *5 (S.D.N.Y. Sept. 22, 2015) (Class certification denied where there

17   was "no copy of the list of called numbers that the parties have been able to discover.");

18   *Marcus*, 687 F.3d at 894 (District court "must resolve…whether the defendants' records

19   can ascertain class members and, if not, whether there is a reliable, administratively feasible

20   alternative."); *see also Smith v. Microsoft Corp.*, 297 F.R.D. 464, 472 (S.D. Cal. 2014)

21   ("'scrubbed' list does not conclusively establish who is a party to this action").

22        As discussed, *supra*, Section II.D, there are various reasons why an Opt-in Text

23   would not have been sent to a cell phone number in bebe's ███ database, including, but

24   not limited, to the number being invalid. Kourtoglou Decl., Ex. AR (bebe005334-35); *see,

25   e.g., Smith*, 297 F.R.D. at 472 ("it is possible for a cell phone subscriber to disable text

26   messaging capabilities"); Mot. p. 17. And, Air2Web, not bebe, confirmed a number's

27   validity. *See* Mot. p. 17. Plaintiffs acknowledge that an Opt-in Text was *only* sent out after

28   it was *first* confirmed that "it was being sent to a valid wireless phone number." Mot. pp.

1   10-11. Thus, bebe has *not* admitted that "every time a new cellular phone number was

2   entered into [its] system at the POS and [] saved in its database, that person would receive

3   an [Opt-in Text]." *See* Mot. p. 15. bebe can only admit to its limited role in bebe Texts.

4        2.      Potential Class Members Cannot Be Identified From Others' Records

5        Plaintiffs have not demonstrated an objective way to identify class members from

6   third-party records. As noted, *supra*, Section II.E.1.b, Air2Web filed for bankruptcy. If any

7   data exists, whether it can be obtained and authenticated is merely hypothesis and

8   conjecture. *See, e.g.*, *In re Teflon Prods. Liab. Litig.*, 254 F.R.D. 354, 361 (S.D. Iowa 2008)

9   (court should not be required to resort to speculation as to whether certain records exist).

10  Carriers have opposed efforts to obtain their customer records due to a well-established

11  right to privacy in telecommunications subscriber information, which prohibits carriers

12  from disclosing information without the subscriber's consent. *See, e.g.*, *Sherman,* 2015 WL

13  5604400, at *6-7; Cal. Pub. Util. Code § 2891(a)(4).

14       3.      Potential Class Members Cannot Self-Identify

15       Individuals cannot be relied on to self-identify as a potential class member. *See, e.g.,*

16  *Smith*, 297 F.R.D. at 473 ("Even notifying all potential class members of the lawsuit and

17  asking them to opt-in if they remember receiving one of the Xbox Texts is likely to be

18  ineffective, because it is highly unlikely that, more than five years out, an individual would

19  remember receiving that single unsolicited text message."). bebe customers would have "to

20  engage in a complicated memory test to establish class membership." *See, e.g.*, *Kosta*, 308

21  F.R.D. at 229. Although Plaintiff Meyer purportedly kept a copy of the Opt-in Text sent to

22  her (Compl. ¶ 19), Plaintiff Rodriguez has not demonstrated that she has any recollection or

23  proof of her receipt of an Opt-in Text (Mot. p. 4; Shahian Decl., p. 3 & Ex. 8 pp. 6-7).

24       Even if they were to utilize a combination of "methods and attempt to cross-

25  reference massive amounts of data to identify class members, Plaintiffs still would be left

26  with a data set of questionable reliability that covered only some unknown fraction of the

27  putative class." *See Sherman*, 2015 WL 5604400, at *7. "Without an objective, reliable way

28  to ascertain class membership, the class quickly would become unmanageable." *Id.* at *4

1    (citing *Xavier*, 787 F. Supp. 2d at 1089, and *Gannon v. Network Tel. Servs., Inc.,* No. CV-

2    12-9777-RGK-PJWX, 2013 WL 2450199, at *2 (C.D. Cal. June 5, 2013)); *Marcus,* 687

3    F.3d at 893. Here, class members are impossible to identify in an objective and

4    administratively feasible way and, accordingly, the class definitions fail.

5         B.      Plaintiffs Have Not and Cannot Satisfy the Requirements Of Rule 23(a)

6         Rule 23(a) requires that: "(1) the class is so numerous that joinder of all members is

7    impracticable; (2) there are questions of law or fact common to the class; (3) the claims or

8    defenses of the representative parties are typical of the claims or defenses of the class; and

9    (4) the representative parties will fairly and adequately protect the interests of the class."

10   *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 576 (S.D. Cal. 2013).

11   "[A]ctual, not presumed, conformance with Rule 23(a) [is] indispensable." *Garcia*, 2014

12   BL 331447, at *18 (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982)). Plaintiffs

13   have failed to meet Rule 23's requirements.

14        1.      Numerosity Cannot be Ascertained

15        The numerosity requirement has not been met because, as discussed, *supra*, Section

16   IV.A, Plaintiffs have not demonstrated that class members are ascertainable. Fed.R.Civ.P.

17   23(a)(1). The cell phone numbers in bebe's ███ database do not demonstrate that an Opt-

18   in Text was, in fact, sent to the number. Kourtoglou Decl., Ex. AR; *compare to* Mot. p. 15.

19   Plaintiffs are the only two ascertainable potential class members. Thus, joinder of all class

20   members is "not impracticable." Fed.R.Civ.P. 23(a)(1).

21        2.      Commonality is Lacking

22        Plaintiffs have not demonstrated that "there are questions of law or fact common to

23   the class." Fed.R.Civ.P. 23(a)(2). "The existence of common questions itself will not

24   satisfy the commonality requirement, and instead, '[w]hat matters to class certification...

25   is...the capacity of a classwide proceeding to generate common *answers* apt to drive the

26   resolution of the litigation.'" *Bias v. Wells Fargo & Co*., No. 12-cv-00664 YGR, 2015 BL

27   416728, at *5 (N.D. Cal. Dec. 17, 2015) (citing *Dukes*, 131 S. Ct. at 2551). "Dissimilarities

28   within the proposed class are what have the potential to impede the generation of common

- 15 -

BEBE STORES, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
Case No. CV 14-00267-YGR

1   answers." *Dukes*, 131 S. Ct. at 2551 (quoting Nagareda, Class Certification in the Age of

2   Aggregate Proof, 84 N.Y.U.L.Rev. 97, 132 (2009)). "The Court considers the merits to the

3   extent that they overlap with the Rule 23 requirements." *Stitt v. Citibank, Nat't. Assoc. and*

4   *CitiMortgage, Inc.*, No. 12-cv-03892-YGR, 2015 U.S. Dist. LEXIS 169070, at *6 (N.D.

5   Cal. Dec. 17, 2015) (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir.

6   2011)[9]). "[C]ontext is indisputably relevant to determining whether a particular call is

7   actionable under the TCPA." *Emanuel*, 2013 WL 1719035 at *3 (quoting *Ryabyshchuck v.*

8   *Citibank (S.D.) N.A.*, No. 11-CV-1236-IEG (WVG), 2012 U.S. Dist. LEXIS 156176, at *5-

9   6 (S.D. Cal. Oct. 30, 2012) (citing *Chesbro v. Best Buy Stores, L.P.*, 697 F.3d 1230, 1234-

10  35 (9th Cir. 2012)). Plaintiffs' premise that there is commonality with respect to the consent

11  issue "unravels upon an examination." *See, e.g., Stitt*, 2015 U.S. Dist. LEXIS 169070, at *9.

12      Plaintiffs argue that commonality exists because the methods by which bebe

13  collected its customers' cell phone numbers and "any 'scripts or disclosures' that would be

14  provided to their customers at the POS would have been the same." Mot. p. 12. In fact,

15  these scripts and disclosures support bebe's position. As discussed, *supra*, Section II.B,

16  potential class members engaged with a stylist in different ways while shopping and

17  therefore have differing consent profiles; each customer, after, at a minimum, engaging

18  with a stylist, voluntarily and deliberately provided her cell phone number, consenting to

19  receive an Opt-in Text. *See, e.g.*, *Cottle-Banks*, 2013 WL 2244333 at *8-9; *Stitt*, 2015 U.S.

20  Dist. LEXIS 169070, at *9 ("individual circumstances must be considered"). As further

21  explained, while the double-opt in process stayed constant, bebe's training and scripts

22  changed over time as bebe Texts changed over time, including when the discount

23  promotion was added. *See, e.g.*, Kourtoglou Decl., Exs. V, AR (bebe005334); Shahian

24

25

---

26  [9]   The Ninth Circuit has confirmed that the district courts are "required to resolve any
       factual disputes necessary to determine whether there was a common pattern and practice
27     that could affect the class *as a whole*." *Ellis*, 647 F.3d at 983 (emphasis in original) ("If
       there is no evidence that the entire class was subject to the same allegedly discriminatory
28     practice, there is no question common to the class.").

1  Decl., Ex. 6. These dissimilarities preclude a finding of commonality with respect to the

2  issue of consent.

3       The court in *Connelly v. Hilton Grand Vacations Company*, finding that the

4  "context of class members' interactions with Hilton is sufficiently varied to provide

5  dissimilar opportunities for the expression of consent," explained:

6         "[C]lass members who provided a cell phone number over the telephone
          when making a reservation at a Hilton hotel had non-scripted, non-uniform
7         interactions with Hilton. It is likely that each individual received a different
          amount of information regarding how his cell phone number would be used
8         and there is at least a non-trivial possibility that some class members
          expressed consent in a manner that was colored by these circumstances. This
9         diversity suggests that the issue of consent should be evaluated individually,
          rather than on a classwide basis."

10  294 F.R.D. at 578 (internal citations omitted). Diversity of consent profiles is true here.

11       Plaintiffs' premise further unravels upon an examination of Plaintiffs' individual

12  consent profiles. Compl. ¶¶ 16-35. Although Plaintiff Meyer admits that her cell phone

13  number was collected in-store at a POS, she denies that a stylist told her that she would

14  receive an Opt-in Text. Compl. ¶ 17. Although Plaintiff Rodriguez admits that she provided

15  her cell phone number to update her clubbebe profile, she denies that she provided consent

16  to receive an Opt-in Text *even though immediately after receiving one, she sent an Opt-in*

17  *Response*. Motion p. 3; Comp. ¶¶ 28-35; *compare to* Kourtoglou Decl., Exs. D, E, F, G,

18  AY, DT-B, pp. 22:3-23:9, 25:6:22. Plaintiffs' experiences do not demonstrate commonality

19  because of bebe's "POS collection activity."  Mot. p. 18.

20       Other factors bear on the potential class members' consent profiles. As discussed,

21  *supra*, Sections II.A.1 and II.E.2, certain potential class members, like Plaintiff Rodriguez,

22  as a clubbebe member, confirmed that bebe may communicate with them via any contact

23  information provided by them. Kourtoglou Decl., Exs. D, E, F, G; *see, e.g.*, *Sherman*, 2015

24  WL 5604400, at *9. Approximately 80% of bebe's customers are clubbebe members *who*

25  *provided prior express consent by their participation in clubbebe*. Kourtoglou Decl., Exs.

26  D, E, F, G, DT-B, pp. 36:2-10, 41:6-17. As discussed, *supra*, Section II.A, bebe Texts was

27  widely marketed. Potential class members voluntarily and deliberately provided their cell

28

BEBE STORES, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
Case No. CV 14-00267-YGR

1  numbers at the POS after learning about bebe Texts from sources other than a stylist. *See,*

2  *e.g., Connelly,* 294 F.R.D. at 578 ("context of class members' interactions with Hilton is

3  sufficiently varied to provide dissimilar opportunities for the expression of consent").[10] As

4  discussed, *supra*, Sections II.B and II.D, customers that were members of bebe Texts who

5  changed their cell phone number triggered their receipt of an Opt-in Text at the new

6  number. *See* Shahian Decl., Ex. 7. As discussed, *supra*, Section II.A.2, others learned about

7  bebe Texts through social media channels. Some customers filled out a "client capture

8  card" that was deposited with bebe for later entry into the POS. *See* Shahian Decl., Ex. 9.

9      These dissimilarities confirm that there is no "list of homogeneously unconsenting

10  recipients." *See, e.g.*, *Connelly,* 294 F.R.D. at 578. There is "no cohesion among the

11  [potential class] members because they were exposed to quite disparate information."

12  *Kosta*, 308 F.R.D. at 229 (quoting *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th

13  Cir. 2011), and *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1069 (9th Cir. 2014)).

14  Thus, consent is not "capable of classwide resolution." *Dukes*, 131 S. Ct. at 2551.

15      Commonality is also absent under Plaintiffs' other theories. As discussed, *supra*,

16  Section IV.A, Plaintiffs can only speculate as to whether bebe sent Opt-in Texts to potential

17  class members that provided their cell phone number at a POS. Likewise, as discussed,

18  *supra*, Section II.E.1, Plaintiffs can only speculate as to whether Air2Web's equipment

19  used over time for bebe Texts was an ATDS, as required by the TCPA. Plaintiffs further

20  assume that all potential class members suffered the same injury, which Plaintiffs

21  characterize as "privacy invasion when sent the unsolicited text messages." Mot. p. 19.

22  Plaintiffs offer no evidence that others would agree that their receipt of an Opt-in Text was

23  ---

[10]     *See, also, Ryabyshchuck*, 2012 WL 5379143 at *3 ("[C]ontext is indisputably
relevant to determining whether a particular call is actionable under the TCPA."); *Ott v.
Mortgage Investors Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046, 1067 (D. Or. 2014) ("issue
of consent cannot be resolved on a classwide basis" because the defendant "obtained
consent from consumers from multiple sources: several webpages, responses to mailings,
spontaneous calls seeking information, or prior business relationships"); *Blair v. CBE
Group, Inc.*, 309 F.R.D. 621, 630-31 (S.D. Cal. 2015)  (individualized inquiries would
predominate where "the interaction between Plaintiffs and their respective creditors, and
the circumstances in which Plaintiffs … may or may not have provided consent, also
varie[d] significantly").

1   an unwarranted invasion of their privacy or an uninvited text.  *See, e.g.*, Mot. p. 19; *see,*

2   *e.g.*, *Ibey v. Taco Bell Corp.*, No. 12-CV-0583-H WVG, 2012 WL 2401972, at *3 (S.D.

3   Cal. June 18, 2012) ("Defendant's sending a single, confirmatory text message in response

4   to an opt-out request from Plaintiff, who voluntarily provided his phone number by sending

5   the initial text message, does not appear to demonstrate an invasion of privacy

6   contemplated by Congress in enacting the TCPA."). Plaintiffs ignore that the varying

7   consent profiles are also relevant to the damages issue (*i.e.*, $500 for a negligent violation

8   or $1,500 for a willful and/or knowing violation of the TCPA). *See* Compl. ¶¶ 52, 58.

9          3.     Typicality is Lacking

10          Plaintiffs have not demonstrated that their claims or defenses "are typical of the

11   claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). "The purpose of the typicality

12   requirement is to assure that the interest of the named representative aligns with the

13   interests of the class." *Sherman*, 2015 WL 5604400 at *7 (quoting *Hanon v. Dataproducts*

14   *Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)) (citation omitted); *see also Fine v. ConAgra*

15   *Foods, Inc.*, No. CV 10-01848 SJO (CFOx), 2010 WL 3632469, at *3 (C.D. Cal. Aug. 26,

16   2010) (individual would have seen and relied on different statements). "The test of

17   typicality is whether other members have the same or similar injury, whether the action is

18   based on conduct which is not unique to the named plaintiffs, and whether other class

19   members have been injured by the same course of conduct." *Kosta*, 308 F.R.D. at 225

20   (quoting *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010)).

21          As discussed, *supra*, Section IV.B.2, typicality is not present here because

22   Plaintiffs' consent profiles are atypical. "These distinctions put Plaintiff in a position of

23   having interests that are not typical of the entire class and, thus, being preoccupied with

24   unique defenses." *Sherman*, 2015 WL 5604400 at *9; *see also Gary Plastic Packaging*

25   *Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990),

26   cert. denied, 498 U.S. 1025 (1991) ("[C]lass certification is inappropriate where a putative

27   class representative is subject to unique defenses which threaten to become the focus of the

28   litigation," resulting in the "danger that absent class members will suffer if their

- 19 -

1   representative is preoccupied with defenses unique to it." (internal citations omitted)).

2   Ultimately, Plaintiffs may be incentivized to litigate the case in a manner favorable to their

3   consent profiles or to take positions inconsistent with other class members' preferences.

4   4.   Adequacy of Representation is Also Questionable

5   Plaintiffs have not demonstrated that they have or will continue to "fairly and

6   adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). "First, the named

7   representatives must appear able to prosecute the action vigorously through qualified

8   counsel, and second, the representatives must not have antagonistic or conflicting interests

9   with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d

10  507, 512 (9th Cir. 1978). As discussed, *supra*, Sections E.1 and IV.A, Plaintiffs have not

11  "prosecute[d] the action vigorously" with respect to their efforts to secure third-party

12  records for bebe Texts, leaving their Motion vulnerable.  And, as discussed, *supra*, Sections

13  II.E.2 and IV.B.2, their consent profiles are antagonistic to other potential class members',

14  incentivizing Plaintiffs to litigate the case in a manner favorable to their consent profiles.

15  C.   Plaintiffs' Request For Certification Under Rule 23(b)(2) Lacks Merit

16  Rule 23(b)(2) requires this Court to examine the specific facts and circumstances

17  and focus predominantly on Plaintiffs' intent in filing this action. *See Molski v. Gleich,* 318

18  F.3d 937, 950 (9th Cir. 2003). To certify a class, the Court must find that the *primary relief*

19  sought is injunctive and declaratory, while monetary damages are secondary. *Zinser v.*

20  *Accufix Research Inst., Inc.,* 253 F.3d 1180, 1195 (9th Cir. 2001), opinion amended on

21  denial of reh'g, 273 F.3d 1266 (9th Cir. 2001). Plaintiffs must prove that the monetary

22  damages sought are *merely incidental*. *Ed v. Skywest Airlines, Inc.*, 245 F.R.D. 453, 465-66

23  (S.D. Cal. 2007). Plaintiffs' proposed class definitions in the Motion significantly narrow

24  the group of potential class members, undermining their argument that the *predominant*

25  *relief* sought is injunctive and declaratory. Mot. pp. 9-10; *compare to* Compl. ¶ 36. Given

26  that Plaintiffs seek damages in the multi-million dollar range for potential class members'

27  receipt of an Opt-in Text under the facts present here, it is also readily apparent that they

28  are focused on money damages. *See* Compl. ¶ 43. An argument to the contrary is superficial

1   given that Plaintiffs have spent little time addressing equitable relief and, moreover,

2   because bebe Texts is no longer active. Mot. pp. 18-19; Kourtoglou Decl., Exs. DT-B, p.

3   21:10-19, 32:6-33:18, DT-A, pp. 16:8-20.

4     Rule 23(b)(2) also "does not authorize class certification when each individual class

5   member would be entitled to a *different* injunction or declaratory judgment against the

6   defendant." *Dukes*, 131 S. Ct. at 2557 (emphasis in original). "[I]ndividualized monetary

7   claims belong in Rule 23(b)(3)." *Id.* at 2558. Plaintiffs seek $500 per negligent violation

8   and $1,500 per willful and/or knowing violation of the TCPA. Compl. ¶¶ 52, 58. Here,

9   certain potential class members, premised on their consent profile, would at best have a

10  negligence claim whereas others, theoretically, could have willful or knowing claim.

11    D. <u>Plaintiffs Have Not and Cannot Satisfy the Rule 23(b)(3) Requirements</u>

12     1. <u>Common Issues Do Not Predominate Because the Issue of Consent Cannot</u>

13      <u>Be Determined Based On Classwide Proof</u>

14    "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)."

15  *Comcast*, 133 S. Ct. at 1432; s*ee also Connelly*, 294 F.R.D. at 577 (citing *Gene & Gene*

16  *LLC v. BioPay LLC,* 541 F.3d 318, 326 (5th Cir. 2008)). A central concern is "whether

17  'adjudication of common issues will help achieve judicial economy.'" *Blair*, 309 F.R.D. at

18  625 (citing *Zinser*, 253 F.3d at 1189). Plaintiffs' burden at this stage is to advance a viable

19  theory employing "generalized proof" to establish liability with respect to the class

20  involved. *See Connelly*, 294 F.R.D. at 577. Whether Rule 23(b)(3) has been met "begins, of

21  course, with the elements of the underlying cause of action." *Bias*, 2015 BL 416728, at *11

22  (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011)

23  (quoting Fed.R.Civ.P. 23(b)(3)). The Rule 23(b)(3) "inquiry trains on the legal or factual

24  questions that qualify each class member's case as a genuine case or controversy,' with the

25  purpose being to determine whether a proposed class is 'sufficiently cohesive to warrant

26  adjudication by representation.'" *Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802,

27  814 (7th Cir. 2012) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

28

4815-3163-8829.v8

1    "In TCPA actions, the predominance inquiry is satisfied only when Plaintiffs

2    'advance a viable theory employing generalized proof to establish liability with respect to

3    the class involved.'" *Connelly*, 294 F.R.D. at 577. To prevail on their claims, Plaintiffs are

4    required to prove that (1) a call was made, (2) using an ATDS, (3) to a cell phone number,

5    (4) without the recipient's consent. *See Pimental v. Google Inc.*, No. C-11-02585-YGR,

6    2012 WL 691784, at *2 (N.D. Cal. Mar. 2, 2012) (citing 47 U.S.C. § 227(b)(1)(A)(iii); 47

7    C.F.R. § 64.1200(a)(1)). "[C]lass certification is warranted only when the 'unique facts' of

8    a particular case indicate that individual adjudication of the pivotal element of prior express

9    consent is unnecessary." *Connelly*, 294 F.R.D. at 577; *see also Jamison v. First Credit*

10   *Serv., Inc.*, No. 12 C 4415, 2013 WL 3872171, at *3 (N.D. Ill. Jul. 29, 2013).

11   The TCPA requires *only* prior express consent for a text message sent prior to

12   October 16, 2013 and for a non-telemarketing, informational text message sent on or after

13   October 16, 2013. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2); In re Rules

14   and Reg's Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C.R. 1830, 1839,

15   1856-67 (Feb. 15, 2012) ("2012 TCPA Order") ¶ 28; *see also Aderhold,* 2014 WL 794802

16   at *9 (text that was intended to permit plaintiff to complete registration was not

17   telemarketing). It only requires prior express written consent for text messages sent on or

18   after October 16, 2013 "that include[] or introduce[] an advertisement or constitutes

19   telemarketing, using an [ATDS]." 47 C.F.R. § 64.1200(a)(2); *see also* 2012 TCPA Order;

20   47 U.S.C. § 227(a)(5) (definition of unsolicited advertisement); 47 C.F.R. § 64.1200(f)(1)

21   (definition of advertisement); 47 C.F.R. § 64.1200(f)(12) (definition of telemarketing).

22   Recent guidance from the FCC confirmed that "a one-time text sent in response to a

23   consumer's request for information does not violate the TCPA or the [FCC's] rules" under

24   certain circumstances. *See* In the Matter of Rules and Regulations Implementing the

25   Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Declaratory Ruling

26   And Order (July 10, 2015) ("Omnibus Ruling") ¶ 106; *see* Kourtoglou Decl., Ex. AZ.

27   As illustrated, *supra*, Section IV.B.2, consent is a predominate issue in this case and

28   resolution of this issue will require the separate adjudication of potential class members'

- 22 -

BEBE STORES, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
Case No. CV 14-00267-YGR

1   claims and defenses based upon their unique consent profiles and, in turn, as discussed,

2   *supra*, Sections II.B and II.E.2, the differing content of the Opt-in Texts over time.

3   "[I]ssues of individualized consent predominate when a defendant sets forth specific

4   evidence showing a significant percentage of the putative class consented to receiving calls

5   on their wireless phone." *Jamison*, 2013 WL 3872171, at *5.Plaintiffs have not and cannot

6   advance a theory "employing generalized proof" to establish that prior express consent was

7   not obtained. *See Connelly*, 294 F.R.D. at 577. The diversity of the potential class

8   members' consent profiles necessitates the individual adjudication of the pivotal element of

9   prior express consent. *Id*. As illustrated, *supra*, Section E.1, Plaintiffs have also failed to

10  identify generalized proof demonstrating that bebe sent Opt-in Texts using an ATDS.

11         2.      A Class Action is Not Superior to Individual Prosecution in This Case

12         Rule 23(b)(3) requires the moving party to demonstrate that "a class action is

13  superior to other available methods for fairly and efficiently adjudicating the controversy."

14  "[S]uch a determination lies in an area where the trial court's discretion is paramount."

15  *Smith*, 297 F.R.D. at 468 (citing *Rutledge,* 511 F.2d at 673). "[T]he Court may certify a

16  class under Rule 23(b)(3) only upon a finding that a class action is superior to individual

17  suits." *Bias*, 2015 BL 416728, at *15. To make this determination, the Court considers,

18  among other factors, "the difficulties likely to be encountered in the management of a class

19  action." *Id.* (citing Fed.R.Civ.P. 23(b)(3)(A)-(D)). "This determination necessarily involves

20  a comparative evaluation of alternative mechanisms of dispute resolution." *Smith*, 297

21  F.R.D. at 468 (quoting *Knutson v. Schwan's Home Serv., Inc.,* No. 3:12–cv–0964–GPC–

22  DHB, 2013 WL 4774763, at *10 (S.D. Cal. Sept. 5, 2013)). "If a class action is merely 'just

23  as good as' an alternative method of handling the controversy, certification is improper."

24  *Smith*, 297 F.R.D. at 468 (citing *Rutledge*, 511 F.2d at 673).[11]

25

26  _____

    [11] In the Ninth Circuit, the moving party "bears the burden of presenting a workable trial
    plan." *Galvan v. KDI Distrib. Inc.,* No. SACV 08-0999-JVS (ANx), 2011 WL 5116585,

27  at *12 n.10 (C.D. Cal. Oct. 25, 2011) (citing *Zinser*, 253 F.3d at 1190). Plaintiffs have left
    open issues regarding how potential class members will be identified, and how express

28  consent, liability and whether an ATDS was used will be determined.

BEBE STORES, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
Case No. CV 14-00267-YGR

1     Fundamentally, as discussed, *supra*, Sections II.A, II.B, II.E.1, and II.E.2, Plaintiffs

2   purport to be the voice of thousands of class members notwithstanding that their consent

3   profiles deviate substantially from each other as well as from other potential class members.

4   *See, e.g.,* Fed.R.Civ.P. 23(b)(3)(A). This is a particularly poignant concern given that

5   Plaintiffs are seeking a multi-million dollar range damages award based upon the

6   assumption that everyone that voluntarily and deliberately provided a cell phone number

7   and received an Opt-in Text was "annoyed." *See, e.g.*, *Kline v. Coldwell, Banker & Co.*,

8   508 F.2d 226, 234-35 (9th Cir. 1974) (potential damages awards that "shock the

9   conscience" require denial of class certification under Rule 23(b)(3)). This is also

10   particularly troubling given that, as discussed, *supra*, Sections II.E and IV.A, there are

11   "significant evidentiary concerns." *See, e.g.*, *Smith* 297 F.R.D. at 471. It may be

12   impossible— or, at the least, certainly unduly difficult and burdensome—to resolve certain

13   merits issues because "it does not seem likely that discovery will provide the necessary

14   answers, [given that] the information simply no longer exists." *Id.* at 471.

15     As for those potential class members that were "annoyed," "[t]he [TCPA's]

16   statutory remedy is designed to provide adequate incentive for an individual plaintiff to

17   bring suit on his own behalf." *See Smith*, 297 F.R.D. at 469 (citing *Forman v. Data*

18   *Transfer, Inc.*, 164 F.R.D. 400, 404 (E.D. Pa. 1995)). "Even though the TCPA, unlike many

19   consumer protection statutes, does not provide for attorney's fees, an alternative method of

20   handling the instant controversy exists: namely, individual plaintiffs may bring TCPA cases

21   in small claims court without an attorney." *Id.* (citing 47 U.S.C. § 227(b)(3); *Mims v. Arrow*

22   *Fin. Servs., LLC*, 132 S. Ct. 740 (2012); *Cellco P'ship v. Wilcrest Health Care Mgmt. Inc.*

23   No. 09-3534 (MLC), 2012 WL 1638056, at *8 (D.N.J. May 8, 2012) (citing 137 Cong. Rec.

24   S16,204 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings)) (Congress intended plaintiffs

25   to pursue TCPA claims in small claims courts)).

26   //

27   //

28   //

V.     CONCLUSION

For the reasons stated above, bebe respectfully requests that this Court deny Plaintiffs' Motion for Class Certification.

Dated:  March 3, 2016

PILLSBURY WINTHROP SHAW PITTMAN LLP
MARK E. ELLIOTT (CA Bar No. 157759)
AMY L. PIERCE (CA Bar No. 210539)


By:    _____/s/ Amy L. Pierce_____
                    Amy L. Pierce

Attorneys for Defendant BEBE STORES, INC.

- 25 -

BEBE STORES, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
Case No. CV 14-00267-YGR