UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MELITA MEYER, ET AL.**, <br><br> Plaintiffs, <br><br> v. <br><br> **BEBE STORES, INC.**, <br><br> Defendant. | Case No.  14-CV-00267-YGR <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** <br><br> Re: Dkt. No. 83, 84, 86, 91, 103 |

Plaintiffs Melita Meyer and Samantha Rodriguez bring this putative class action against defendant bebe Stores, Inc. ("bebe") alleging two counts:  (i) negligent violations of the Telephone Consumer Protection Act ("TCPA"); and (ii) willful violations of the TCPA.  (Dkt. No. 77, "Compl.")  To prevail under the TCPA, plaintiffs must establish that a defendant:  (i) "made" text message calls (ii) using an automatic telephone dialing system ("ATDS")[1] (iii) without prior express consent.  47 U.S.C. § 227(b)(1).  Beginning on October 16, 2013, regulations became effective requiring prior express *written* consent before "deliver[ing] or caus[ing] to be delivered to the person called advertisements or telemarketing messages using an [ATDS]."  47 C.F.R. § 64.1200(a)(2), (f)(8).

Now before the Court is plaintiffs' motion for class certification.  (Dkt. No. 84, "Mtn.") Plaintiffs seek to represent a class of individuals who received SMS or text messages (referred to herein as "text messages") from bebe or its agents purportedly in violation of the TCPA.  Count I alleges negligent violations of the TCPA, and Count II alleges knowing and/or willful violations

---

[1] The term ATDS is defined as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator[, and] to dial such numbers."  47 U.S.C. § 227(a)(1).

of the same statute (a predicate to receiving treble damages). On March 3, 2016, bebe filed its opposition brief (Dkt. No. 87, "Opp'n") and on March 31, 2016, plaintiffs filed their reply brief (Dkt. No. 91-4, "Reply"). On June 22, 2016, the Court requested supplemental briefs from the parties requiring, among others, additional argument and information on plaintiffs' standing in light of the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). (Dkt. No. 100.)[2] The parties filed supplemental briefs on July 8, 2016. (Dkt. Nos. 102, 103.)[3]

Having carefully considered the papers submitted, the pleadings in this action, the admissible evidence,[4] and oral argument held on April 26, 2016, and for the reasons more fully set forth below, the Court **GRANTS IN PART** plaintiffs' motion to certify as to individuals who received text messages from bebe after October 16, 2013 only, as described herein.

## I.   BACKGROUND

Bebe is a California corporation that operates retail clothing stores throughout the United States. (Compl. ¶¶ 8–9.) In or about 2010, bebe began a text messaging campaign to cellular phones nationwide. (*Id.* ¶ 15.) As part of this campaign, bebe collected the phone numbers of customers and potential customers through various means: salesperson interactions after a transaction ("point-of-sale" or "POS"); "client capture cards"; and customer opt-ins via bebe's

---

[2] As part of this supplemental briefing, the parties provided additional arguments concerning the effect of membership in bebe's loyalty program on the issue of consent and additional information about discovery of records from Air2Web.

[3] Plaintiffs filed two administrative sealing motions (Dkt. Nos. 83, 91) and bebe filed an administrative sealing motion (Dkt. No. 86) in connection with their briefing on class certification. Plaintiffs also filed an administrative sealing motion in connection with their supplemental brief in support of class certification. (Dkt. No. 103.) The material in question is subject to an earlier Stipulated Protective Order, allowing the parties to designate certain documents produced in discovery as confidential. (Dkt. No. 53.) The Court finds the requests are sufficiently justified under the applicable "good cause" standard and, therefore, **GRANTS** the motions to seal the designated excerpts and documents in question solely for purposes of resolving the instant motion. *See Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179–80 (9th Cir. 2006).

[4] Bebe filed a document entitled "Defendant Bebe Stores, Inc.'s Objection to Evidence in Plaintiffs' Motion for Class Certification," appended to their twenty-five-page opposition. (Dkt. No. 87-1.) Bebe's objections were not filed in compliance with the Local Rules of this District. Pursuant to Local Rule 7-3(a), "[a]ny evidentiary and procedural objections to the motion must be contained within the brief or memorandum." Bebe filed its objections as a separate document outside of its opposition brief. On that basis, the objections are **OVERRULED.**

website.

Plaintiffs' claims center around text messages received after customers provided a cell phone number at a POS. At a POS, a salesperson—called "stylists" by bebe—would ask customers for their cell phone number. The salesperson would then enter the cell phone number into bebe's system, which would transmit the number to bebe's vendor, Air2Web. (*See* Dkt. No. 86-17, Def. Ex. DT-C at 48:13–23.) Air2Web would then verify that the number was a valid cell phone number, and then transmit a text message (the "Opt-in Text") to that number requiring the customer to confirm whether they wanted to receive further text messages from bebe ("bebe Texts"). (*See* Dkt. No. 83-20, Pls. Ex. 14; Dkt. No. 83-21, Pls. Ex. 15.) If the customer did not reply, no further texts were sent. At some point in 2012, the Opt-in Text was modified to include incentives for customers to enroll in bebe Texts, such as a 10% discount off of the next purchase. Prior to 2012, the Opt-in Text only asked customers if they wanted to enroll in the bebe Texts program, without an offer of a 10% discount. Bebe ended the bebe Texts program in or around January 2014. (*See* Dkt. 86-16, Ex. DT-B at 21:10–19.)

On June 21, 2013, plaintiff Rodriguez made an in-person purchase at defendant's Santa Ana store. (Dkt. No. 83-14, Pls. Ex. 8 at 7–8.) Rodriguez claims that bebe's employee asked her to confirm her phone number, after which Rodriguez provided her cell phone number orally. (*Id.*) Shortly thereafter, Rodriguez received an Opt-in Text from bebe. (*Id.*) Rodriguez avers that she did not provide consent to receive the Opt-in Text. (Dkt. No. 84-5, Declaration of Samantha Rodriguez, ¶ 2.)[5]

On December 10, 2013, plaintiff Meyer purchased a dress at one of bebe's stores after returning another. (Compl. ¶ 16.) Meyer alleges that one of bebe's employees asked her to provide a telephone number, which Meyer provided. (*Id.* at ¶¶ 17–18) Shortly thereafter, Meyer

---

[5] At the time, Rodriguez was already a member of "Club bebe," bebe's membership loyalty program. (Dkt. No. 83-14, Pls. Ex. 8 at 7–8.) According to the terms and conditions of membership in Club bebe, members "consent to the use of the member's personal information for administering the loyalty program, for marketing and promotional purposes unless the member has opted out, and for internal market research by bebe and its affiliates, and consents to the receipt of information provided by bebe." (Dkt. 87-3, Def. Ex. D.)

1  received an Opt-in Text from bebe.  (*Id.* at ¶ 19.)  Meyer avers that she did not provide consent to

2  receive the Opt-in Text.  (Dkt. No. 84-1, Declaration of Melita Meyer, ¶ 2.).

3  **II.    MOTION FOR CLASS CERTIFICATION**

4      **A.  Plaintiffs' Proposed Class Definitions**

5  Plaintiffs move to certify two nationwide classes:

> **1.  Post-January 16, 2010 ("Main Class")**
> All persons within the United States who provided their mobile telephone number to bebe in one of bebe's stores at the POS and were sent an SMS or text message from bebe during the period of time beginning January 16, 2010, and continuing until the date the Class is certified.
>
> **2.  Post-October 16, 2013 ("Subclass")**
> All persons within the United States who provided their mobile telephone number to bebe in one of bebe's stores at the POS and were sent an SMS or text message from bebe during the period of time beginning October 16, 2013 and continuing until the date the Class is certified.

Plaintiffs seek to certify the Main Class and Subclass as injunctive relief classes pursuant to Federal Rule of Civil Procedure 23(b)(2) and as damages classes pursuant to Rule 23(b)(3).

    **B.  Class Certification Standard**

Federal Rule of Civil Procedure 23 governs class certification and contains two sets of distinct requirements plaintiffs must satisfy before the Court may certify either of the proposed classes.  First, plaintiffs must meet all of the requirements under Rule 23(a).  Second, each class must meet one of the prongs of Rule 23(b), depending on the nature of the class.

Under Rule 23(a), the Court may certify a class only where "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  Courts refer to these four requirements as "numerosity, commonality, typicality[,] and adequacy of representation."  *Mazza v. Am. Honda Motor Co. Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

In addition to the four requirements set forth in Rule 23(a), most courts have implied an additional threshold requirement that the members of the class be readily ascertainable.  *See*

4

*Xavier v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) (finding that "the party seeking certification must demonstrate that an identifiable and ascertainable class exists"); *see also Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 672 (N.D. Cal. 2011). "While Rule 23(a) does not expressly require a class to be ascertainable, courts have read the rule to imply th[e] requirement . . . [that] its members can be ascertained by reference to objective criteria . . . [and] the description of the class is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 299 (N.D. Cal. 2010) (internal citations and quotations omitted), *abrogated on other grounds by In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012).[6]

Once plaintiffs establish that the threshold requirements of Rule 23(a) are met, plaintiffs must then show "through evidentiary proof" that a class is appropriate for certification under one of the provisions in Rule 23(b). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Here, plaintiffs seek certification under Rule 23(b)(2) and Rule 23(b)(3).

Rule 23(b)(2) requires plaintiffs to establish that the "party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Class certification under Rule 23(b)(2) is appropriate only where the primary relief is declaratory or injunctive." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011) (citation omitted). In a class action "predominately for money damages . . . th[e] absence of notice and opt-out violates due process" and renders certification of a Rule 23(b)(2) class inappropriate.

---

[6] Although the Ninth Circuit has not yet reached the question of whether there is an ascertainability requirement in Rule 23, it has held in other cases that district courts did not abuse their discretion in decertifying or refusing to certify a class due to difficulties in identifying class members. *See, e.g.*, *Pierce v. Cty. of Orange*, 526 F.3d 1190, 1200 (9th Cir. 2008) (district court did not abuse its discretion in decertifying a damages class because "Rule 23(b)(3) would not offer a superior method for fair and efficient adjudication in light of expected difficulties identifying class members"); *Martin v. Pac. Parking Sys. Inc.*, 583 F. App'x 803, 804 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 962 (2015) (holding that district court did not abuse discretion in denying class certification for lack of ascertainability). Other circuits have held that "ascertainability is an implicit prerequisite to certifying a class which requires class members to be identifiable by objective, verifiable criteria 'without extensive and individualized fact-finding or minitrials.'" *Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 223 (N.D. Cal 2015) (citing cases).

1    *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011).

2         Rule 23(b)(3) requires plaintiffs to establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry focuses on "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

        "[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194 (2013) (quoting *Wal-Mart*, 564 U.S. at 351); *see also Mazza*, 666 F.3d at 588. The Court considers the merits to the extent they overlap with the Rule 23 requirements. *Ellis*, 657 F.3d at 983. The Court must resolve factual disputes as "necessary to determine whether there was a common pattern and practice that could affect the class *as a whole*." *Id.* (emphasis in original). "When resolving such factual disputes in the context of a motion for class certification, district courts must consider 'the persuasiveness of the evidence presented.'" *Aburto v. Verizon Cal., Inc.*, No. 11-CV-03683, 2012 WL 10381, at *2 (C.D. Cal. Jan. 3, 2012) (quoting *Ellis*, 657 F.3d at 982). "A party seeking class certification must affirmatively demonstrate [its] compliance with the Rule." *Wal-Mart*, 564 U.S. at 350. Ultimately, the Court exercises its discretion to determine whether a class should be certified. *Califano v. Yamasaki*, 442 U.S. 682, 703 (1979).

### C. Discussion

Plaintiffs contend that they have established all requirements for certification of the Main Class and Subclass under both Rule 23(b)(2) and Rule 23(b)(3). Bebe, on the other hand, argues that plaintiffs have failed to meet their burden with respect to all class certification requirements. For efficiency, the Court will first address commonality under Rule 23(a) together with predominance under Rule 23(b)(3). *See, e.g.*, *Collins v. ITT Educ. Servs., Inc.*, No. 12-CV-1395, 2013 WL 6925827, at *3 (S.D. Cal. July 30, 2013) (addressing commonality and predominance

together) (citing *Amchem Prods.*, 521 U.S. at 609 ("Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions.")); *Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*, No. 13-CV-2468, 2014 WL 4627271, at *8 (C.D. Cal. Sept. 8, 2014). The Court will then address the threshold inquiry of ascertainability, and then the remaining factors under Rules 23(a) and 23(b)(3)—Numerosity, Typicality, Adequacy, and Superiority—in turn.[7]

### 1. Commonality and Predominance

Rule 23(a)(2) requires that the party seeking certification show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, a common question "must be of such a nature that it is capable of classwide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. The existence of common questions itself will not satisfy the commonality requirement, and instead, "[w]hat matters to class certification . . . is . . . the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (citation omitted) (emphasis in original). The predominance inquiry under Rule 23(b)(3) is "far more demanding." *See Amchem Prods.*, 521 U.S. at 623–24. "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (quoting Fed. R. Civ. P. 23(b)(3)).

Plaintiffs contend that each element of their TCPA claim and the calculation of damages under the TCPA present questions that would satisfy Rule 23(a)(2)'s commonality and Rule 23(b)(3)'s predominance requirements. Thus, the Court addresses each of the elements of a

---

[7] Plaintiffs have also moved to certify the classes as injunctive relief classes under Rule 23(b)(2), arguing that their claims for statutory monetary damages are only incidental to the injunctive and declaratory relief sought in the complaint. However, it is undisputed that bebe ended its text program in or around January 2014. (*See* Dkt. No. 86-16, Def. Ex. DT-B at 21:10–19.) Thus, certification under Rule 23(b)(2) is inappropriate. *See, e.g.*, *Knutson v. Schwan's Home Serv., Inc.*, No. 12-CV-0964, 2013 WL 4774763, at *9 (S.D. Cal. Sept. 5, 2013) (finding certification under Rule 23(b)(2) inappropriate where it was "undisputed that [d]efendants [had] ceased calling . . . customers."); *cf. Wal-Mart*, 564 U.S. at 363. Accordingly, the Court **DENIES** plaintiffs' motion to certify the classes under Rule 23(b)(2).

plaintiff's TCPA claim, i.e. whether a defendant (a) made text message calls (b) using an ATDS (c) without prior express written consent, which after October 16, 2013 had to be in writing; and, (d) the topic of statutory damages. 47 U.S.C. § 227(b)(1); 47 C.F.R. § 64.1200(a)(2), (f)(8); 47 U.S.C. § 227(b)(3).

### a. Whether Defendant Sent Messages to Cellular Phones

With respect to the issue of whether the text messages at issue is a common question, bebe argues that plaintiffs can only speculate as to whether bebe sent Opt-in Texts to potential class members that provided their cell phone number at a POS. Both named plaintiffs have submitted evidence that they received text messages from bebe after providing their cell phone numbers at a POS. Plaintiffs have also provided evidence that bebe's text program was designed to send an Opt-in Text to customers who provided their cell phone numbers at a POS, and that Air2Web attempted to send a text message to every valid cell phone number provided to it.[8] Thus, the Court finds a sufficient proffer as to the commonality requirement on this topic as to both proposed classes.

### b. Whether an ATDS Was Used to Transmit the Text Messages

Plaintiffs next argue that the issue of whether bebe employed an ATDS is a common question. Air2Web was the only vendor bebe used in its text message campaign during the class period. However, bebe argues that plaintiffs can only speculate as to whether Air2Web's equipment used over time for bebe Texts was an ATDS. Plaintiffs have not submitted evidence regarding the system used. However, nothing in the record suggests that the type of equipment used by Air2Web varied during the class period such that this element would not be subject to proof on a classwide basis.

---

[8] Bebe has raised the argument that the text messages sent changed over time, and that the language contained in some of the texts was not an advertisement and therefore not covered by the TCPA. However, bebe has identified only one such change in 2012 when the 10% discount offer was added to the Opt-in Text. (*See* Dkt. No. 86-11, Def. Ex. AQ; Dkt. No. 83-12, Pls. Ex. 6.) Moreover, the Court need not reach the merits to find that the nature of the texts is a common question to the class.

8

### c. Whether Defendant Can Establish that Class Members Provided Prior Express Consent

With respect to the issue of whether consent can be shown on a common basis, the primary conflict centers on the fact that the form of consent differs between the Main Class and the Subclass. The Court thus addresses each separately. However, as a threshold matter, the Court first addresses the effect of membership in Club bebe on the class certification motion as it is common to both the Main Class and Subclass.

**Club Bebe:** As to both the Main Class and Subclass, bebe argues that plaintiffs fail to satisfy the commonality requirement under Rule 23(a) because a large majority of its customers are members of Club bebe. As explained above, Club bebe is bebe's membership loyalty program, which allows members to earn points that can be redeemed for rewards at a later time. (Dkt. 87-3, Def. Ex. D at 3.) As part of the agreement, members agree to the following:

> By using the clubbebe membership card, members consent to the use of the member's personal information for administering the loyalty program, **for marketing and promotional purposes** unless the member has opted out, and for internal market research by bebe and its affiliates, and **consents to the receipt of information provided by bebe.**

(*Id.* at 3 (emphases supplied).) Bebe avers that approximately 80% of its customers, including plaintiff Rodriguez, were members of Club bebe. (Dkt. No. 86-16, Def. Ex. DT-B at 36:2–10.) By virtue of that membership, bebe argues that these customers consented in writing to receive the text messages at issue here.

Whatever the merits of this Club bebe consent argument, it appears to be subject to common proof since the terms of the Club bebe agreement are not represented to have varied in any material way. Thus, whether or not membership in Club bebe constitutes consent is a common question that can be answered on a classwide basis. The Court finds it appropriate, however, to create a subclass of each of the proposed classes composed of putative class members who were members of Club bebe during the relevant Class Period.

**Main Class:** To prevail on their TCPA claim, plaintiffs must show that bebe did not have plaintiffs' prior express consent before sending the Opt-in Text. Plaintiffs argue that whether bebe obtained consent is a common question because consent was obtainable from only one source—

9

1   defendant's POS collection activity.  Plaintiffs contend that every POS interaction was materially
2   identical and that defendant failed to obtain prior express consent at the POS.
3         Bebe argues, on the other hand, that consent cannot be determined on a classwide basis.
4   Bebe contends that the question of whether the potential class members provided the requisite
5   consent can only be answered for the whole class in 'one stroke' to the extent the answer is "yes"
6   because they all gave consent when they voluntarily and deliberately provided bebe with their cell
7   phone number.  Otherwise, bebe argues plaintiffs' burden to show the text was without consent
8   will require individual inquiries because each potential class member had a unique interaction with
9   bebe and its salespersons, which is relevant to whether bebe obtained consent at the POS.
10        Bebe argues the only common proof shows that salespersons obtained consent of
11  customers to be texted.  For instance, bebe cites a document providing instructions to bebe's
12  salespersons, which reads:  "If a Client provides her cell phone number, let her know that she will
13  receive a text message where she can opt in to our NEW text messaging promotion program."
14  (Dkt. No. 83-13, Pls. Ex. 7.)  In other scripts, the salesperson only informs the customer that she
15  will receive a text message after the number had already been entered into the system:  "I just
16  entered your cell phone number into our system.  You will be receiving a text message from bebe
17  shortly asking you to validate your number."  (Dkt. No. 86-9, Def. Ex. V.)
18        The Court thus finds that the varied scripts and instructions provided to different stores at
19  different times as demonstrated by bebe's evidence renders the question of consent not one that
20  can be answered on a classwide basis because it would require an individual assessment of what
21  each customer was told.  And apart from the declarations provided by plaintiffs Meyer and
22  Rodriguez averring that they did not provide consent prior to receiving a text message, there is no
23  evidence on the record about what actually was said to customers at the POS.  *See, e.g.*, *Connelly*
24  *v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 578 (S.D. Cal. 2013) (finding that, because
25  it was likely that each individual "received a different amount of information regarding how his
26  cell phone number would be used" and that "there is at least a non-trivial possibility that some
27  class members expressed consent," that the "issue of consent should be evaluated individually").
28        **Subclass:**  Plaintiffs also seek certification of the Subclass, defined as only persons who

1  provided cell phone numbers at a POS and received text messages after October 16, 2013. On that
2  date, a new regulation issued by the Federal Communications Commission ("FCC") went into
3  effect requiring that prior express consent be "written" in the case of messages "that include[] or
4  introduce[] an advertisement or constitute[] telemarketing." 47 C.F.R. § 64.1200(a)(2), (f)(1),
5  (f)(12). Thus, the evidence on this element would be the existence or non-existence of written
6  consent. Whether bebe obtained written consent is a common question that can be answered on a
7  classwide basis.

8  Bebe argues that the TCPA only requires express written consent for text messages that
9  include or introduce an advertisement or which constituted telemarketing, but that a one-time text
10 sent in response to a consumer's request for information does not violate the TCPA or the FCC's
11 rules. However, the issue of whether or not bebe's text messages fall under the TCPA
12 prohibitions is a common legal question that can be answered in one stroke as to the entire
13 Subclass. Thus, the Court finds that common issues of consent are present with respect to the
14 Subclass.

### d. Whether Class Members Suffered the Same Injury and Are Entitled to Damages

16 Under the TCPA, a plaintiff may receive either actual damages or statutory damages in the
17 amount of $500 per violation. 47 U.S.C. §227(b)(3). In the case of knowing or willful violations,
18 statutory damages of up to $1,500 per violation may be awarded. *Id.*

19 Plaintiffs argue that all potential class members suffered the same injury as defined by the
20 TCPA and their entitlement to the same statutory damages under the TCPA is subject to common
21 proof. Thus, plaintiffs contend, calculating statutory damages, as well as proving whether bebe's
22 conduct was willful and damages should be trebled will be a collective task, giving rise to a
23 common question. *See, e.g.*, *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, 296
24 F.R.D. 299, 322 (D.N.J. 2013) (finding that whether defendants' actions were willful in a TCPA
25 case was a common legal question which satisfied the commonality requirement); *APB Assocs.,*
26 *Inc. v. Bronco's Saloon, Inc.*, No. 09-CV-14959, 2016 WL 1394646, at *13 (E.D. Mich. Apr. 7,
27 2016) (same); *cf. Abdeljalil v. Gen. Elec. Cap. Corp.*, 306 F.R.D. 303, 311 (S.D. Cal. Mar. 26,
28 2015) (finding that defendant's "intent is a damages issues . . . that does not preclude certification"

11

1 as the TCPA is a strict liability statute).

2   Bebe argues that potential class members' "varying consent profiles" are relevant to treble
3 damages, so that the inquiry would require individualized determinations. However, a
4 determination of whether bebe's conduct was willful would appear to depend on bebe's intent, not
5 any unique or particular characteristics related to potential class members. Bebe offers no
6 authority to the contrary, whereas plaintiffs provided cases in which the district court found such
7 questions to be common. Thus, the question of whether damages will be awarded—and whether
8 they will be trebled—is a common question.

9   For reasons stated in this section, with respect to the Main Class the Court cannot find that
10 the common questions of law and fact satisfy the commonality and predominance requirements
11 under Rule 23(a) and Rule 23(b)(3). Therefore, the Court **DENIES** plaintiffs' motion to certify the
12 Main Class. The Court, on the other hand, finds that the Subclass satisfies the commonality and
13 predominance requirements, and, thus, proceeds with its analysis only as to the Subclass.

### 2. Ascertainability

15   The Court must next resolve whether (i) the ascertainability test exists in the Ninth Circuit
16 and (ii) if so, do plaintiffs meet the test for ascertainability. However, because the Court finds that
17 plaintiffs meet the test for ascertainability, it need not answer the first question because the result
18 would be the same, in any event. To establish ascertainability, plaintiffs must demonstrate that
19 members of the proposed classes are readily identifiable by objective criteria, and it is
20 administratively feasible to determine whether a particular person is a member of the class.
21 *Xavier*, 787 F. Supp. 2d at 1089; *see also In re TFT-LCD*, 267 F.R.D. at 299.

22   Plaintiffs argue that the potential class members are readily ascertainable because the cell
23 phone numbers and names of potential class members are in bebe's database. Documents
24 produced by bebe make clear that "any client" whose cell phone number was captured by bebe's
25 sales staff would receive a text message. (Dkt. No. 83-13, Pls. Ex. 7.) Thus, plaintiffs argue, the
26 members of the proposed classes can be readily ascertained by simply reviewing bebe's database.

27   Bebe counters, however, that this assumption is not supported by the actual facts. Bebe's
28 internal database can only produce a list of names and cell phone numbers, but not a list of those

1  who were sent an Opt-in Text. The list of customers who were actually sent an Opt-in Text is
2  only a subset of the larger database because bebe's vendor, Air2Web, was responsible for first
3  verifying the validity of a wireless phone number and, second, sending the Opt-in Text after
4  verification. For instance, in one exhibit submitted by bebe showing an analysis of the bebe Text
5  program, a chart shows that there were a total of 10,284 text messages sent, of those, 8,104 were
6  valid mobile numbers, and of those, only 7,202 messages were successfully transmitted. (Dkt. 86-
7  11, Def. Ex. AR.) Bebe further argues that plaintiffs have not demonstrated that class members
8  could be ascertained from third-party records given that Air2Web has filed for bankruptcy and,
9  thus, the records may no longer exist.

10  Plaintiffs argue, in reply, that despite bebe's assertions, the potential members are still
11  ascertainable from bebe's records because bebe's list should be "virtually co-extensive" with the
12  list of customers who received text messages. Air2Web was contractually obligated to send the
13  Opt-in Text to every valid cell phone number it received from defendant. (*See* Dkt. 86-17, Def.
14  Ex. DT-C at 48:13–23).) Additionally, plaintiffs have produced supplemental evidence indicating
15  that plaintiffs have subpoenaed mGage, the company now in possession of Air2Web's records,
16  and that mGage is currently cooperating with plaintiffs to produce the necessary records. (*See*
17  Dkt. No. 103-9, July 5, 2016 Email from mGage ("While our client makes no promises regarding
18  the result, we expect that this search will produce the logs for the requested short code and time
19  period.").)

20  The Court finds that plaintiffs' showing of ascertainability is sufficient. "Readily
21  ascertainable" does not mean that plaintiffs must, at this stage, precisely be able to "identify every
22  potential member of the class to meet the standard for ascertainability." *Bee, Denning, Inc. v.*
23  *Capital All. Grp.*, 310 F.R.D. 614, 623 (S.D. Cal. 2015); *see also Galvan v. KDI Distribuation*
24  *Inc.*, No. 08-CV-0999, 2011 WL 5116585, at *5 (C.D. Cal. Oct. 25, 2011). "[T]here is no
25  requirement that the identity of the class members should be . . . known at the time of
26  certification." *Saulsberry v. Meridian Fin. Servs., Inc.*, No. 14-CV-6256, 2016 WL 3456939, at
27  *14 (C.D. Cal. Apr. 14, 2016) (citation omitted). The Court thus finds that plaintiffs have made a
28  sufficient showing of ascertainability for class certification.

### 3. Numerosity

Rule 23(a) requires that each proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs need not state an exact number to meet the threshold requirements of Rule 23. Rather, the rule "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw. Inc. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 330 (1980); *see also Gold v. Midland Credit Mgmt., Inc.*, 306 F.R.D. 623, 630 (N.D. Cal. 2014); *see, e.g.*, *Patrick v. Marshall*, 460 F. Supp. 23, 29 (N.D. Cal. 1978) (certifying class with at least thirty-nine potential members).

Plaintiffs offer evidence that the Subclass on its own contains tens of thousands of members. (Compl. ¶ 38; *see, e.g.*, Dkt. No. 83-6, Shahian Decl. ¶ 26; Dkt. No. 83-23, Pls. Ex. 17.) Bebe does not dispute this assertion, but only repeats its argument that the numbers cannot be ascertained because the class is not ascertainable. The Court has rejected that argument above. The Subclass plainly includes a sufficient number of members that joinder of their claims in a single action would be impracticable. This requirement is therefore satisfied. *See Gold*, 306 F.R.D. at 631; *R.P-K ex rel. C.K. v. Dep't of Educ.*, 272 F.R.D. 541, 547 (D. Hawai'i 2011).

### 4. Typicality

To satisfy typicality, plaintiffs must establish that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (citation omitted).[9]

---

[9] Defendant also argues that plaintiff Rodriguez is not a proper class representative because she accepted the opt-in and was a member of Club bebe at the time. However, the illegal conduct alleged was bebe's solicitation of plaintiffs and the class members via text message, regardless of whether the campaign succeeded.

14

1        Plaintiffs argue that typicality is met here because plaintiffs' claims arise from the same
2 practice or course of conduct that gives rise to the claims of other class members. Bebe contends
3 that the circumstances surrounding each of the named plaintiffs' provision of cell phone numbers
4 to bebe—e.g., membership in Club bebe, what information was provided to them in the store,
5 what information was provided to them at a POS, etc.—may differ from the class members',
6 which would incentivize them to take positions inconsistent with other class members'
7 preferences. Given that the Court has denied certification of the Main Class and is only
8 considering certification of the Subclass, the Court finds bebe's concerns as to plaintiff Rodriguez,
9 who received an Opt-in Text prior to the October 2013 amendment to the regulations which
10 required consent to be in writing, to be valid. Plaintiff Rodriguez would need to defend against
11 assertions that she, in fact, provided consent, whereas the Subclass need only show a lack of
12 written consent. As to plaintiff Meyer, bebe's concerns about divergent interests are vague and
13 unsubstantiated. Plaintiff Meyer provided a cell phone number at a POS and received an Opt-in
14 Text from bebe, allegedly without providing express written consent, as was required after
15 October 2013. Therefore, plaintiff Meyer would have the same claims as other potential members
16 of the Subclass.

### 5. Adequacy

18        Rule 23(a)'s adequacy requirement considers "(1) [whether] the representative plaintiffs
19 and their counsel have any conflicts of interest with other class members, and (2) [if] the
20 representative plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the
21 class." *Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003).
22        Bebe argues that plaintiffs' counsel is not adequate because they have failed to secure
23 third-party records for bebe Texts, leaving their motion vulnerable. Additionally, bebe argues that
24 lack of common questions here means plaintiffs' interests are antagonistic to those of other
25 potential class members.
26        The Court finds both arguments unavailing. First, bebe offers no basis for finding that, at
27 least as to plaintiff Meyer, the differences in the factual circumstances surrounding each potential
28 class members would create any antagonism. Second, bebe's inadequacy argument is undermined

15

1  by its own acknowledgement that obtaining Air2Web's records has proven exceedingly difficult
2  due to its bankruptcy. Moreover, counsel for plaintiffs have made significant progress in their
3  efforts to secure Air2Web's records of sent Opt-in Texts. There is also no dispute that plaintiffs'
4  counsel have extensive experience in consumer class actions, including TCPA cases, and have
5  vigorously prosecuted this action.

Bebe also briefly argued that plaintiffs are not proper class representatives because they do not have standing.[10] The Court ordered the parties to submit supplemental briefs on the effect of the Supreme Court's recent decision in *Spokeo*, if any, on plaintiffs' Article III standing. To establish Article III standing, a plaintiff must satisfy three elements: (1) "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) causation—"there must be a causal connection between the injury and the conduct complained of"; and (3) redressability—"it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks, citations, and footnote omitted). The Supreme Court in *Spokeo* specifically addressed the requirement that an injury must be "concrete." *Spokeo*, 136 S. Ct. at 1548. The Supreme Court held that a "bare procedural violation" of a statute does not generally, without more, "satisfy the demands of Article III" standing because such a violation may result in no actual harm. *Id.* at 1550.

Plaintiffs alleged in the complaint and have averred in declarations submitted in connection with their motion for class certification that bebe "illegally contacted [p]laintiffs and the other Class Members via their cellular telephone numbers by using unsolicited SMS or text messages and invading the privacy of said [p]laintiffs and the other Class Members." (Compl. ¶ 39; *see also* Dkt. No. 84-1, Declaration of Melita Meyer, ¶ 2; and Dkt. No. 84-5, Declaration of Samantha Rodriguez, ¶ 2.) Several courts addressing TCPA claims in the wake of *Spokeo* have found allegations that calls or texts have violated privacy rights sufficiently concrete to confer Article III

---

[10] Bebe contends not only should the motion for class certification be denied but that the Court should dismiss the action.

16

standing. *See Cour v. Life360, Inc.*, No. 16-CV-00805, 2016 WL 4039279, at *2 (N.D. Cal. July 28, 2016) (finding sufficient allegations of invasions of privacy related to TCPA violations); *Caudill v. Wells Fargo Home Mortg., Inc.*, No. 16-CV-066, 2016 WL 3820195, at *2 (E.D. Ky. July 11, 2016) (finding sufficient allegations of intangible harms such as "invasion of privacy," which "have traditionally been regarded as providing a basis for a lawsuit in the United States"); *Mey v. Got Warranty, Inc.*, No. 15-CV-101, 2016 WL 3645195, at *2–3 (N.D.W. Va. June 30, 2016) (same); *see also Booth v. Appstack, Inc.*, No. 13-CV-1533, 2016 WL 3030256, at *5–6 (W.D. Wash. May 25, 2016) (Article III standing established where plaintiffs' alleged harm was the time spent addressing calls from defendants).

Bebe concedes that a nuisance or an invasion of privacy is sufficient under *Spokeo*. Bebe instead contends that the plaintiffs have suffered no such injury because they consented to receiving the text message from bebe. This, however, is a disputed issue not suitable for resolution at a motion for class certification. The Court thus finds that plaintiffs have sufficiently alleged a "concrete" injury for the purposes of Article III standing.[11]

Therefore, the Court finds that plaintiff Meyer has satisfied the adequacy requirement of Rule 23(a).

### 6. Superiority

Lastly, the Court may certify a class under Rule 23(b)(3) only upon a finding that a class action is superior to individual suits. To make this determination, the Court considers the following four non-exhaustive factors: (1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P.

---

[11] Because *Spokeo* does not reexamine any other elements of standing apart from "concrete injury," the Court need not now address the other elements of standing, which it previously examined and found sufficient to meet the requirements of Article III standing. (Dkt. No. 57, Order at 2–4.) Therefore, the Court again rejects bebe's challenge to plaintiffs' Article III standing here and finds that the Court properly has subject matter jurisdiction over this case.

1  23(b)(3)(A)–(D).  "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d. 1227, 1235 (9th Cir. 1996).

Bebe's main argument against finding that a class action would be superior is that individual plaintiffs may bring TCPA cases in small claims courts and that the TCPA is designed to provide adequate incentive for an individual plaintiff to bring suit on his own behalf.

However, the statutory damages provided by the TCPA are "not sufficient to compensate the average consumer for the time and effort that would be involved in bringing a small claims action against a national corporation." *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 571–72 (W.D. Wa. 2012) (citing cases); *see also Whitaker v. Bennett Law, PLLC*, No. 13-CV-3145, 2014 WL 5454398, at *7 (S.D. Cal. Oct. 7, 2014) (finding that given the damages allowed under the TCPA, "requiring the putative class members to adjudicate their claims independently would be too economically burdensome and would deprive many of a chance to recover under the law").

In light of these considerations, the Court finds that a class action is superior to individual adjudication.

The Court, thus finds, that the Post-October 2013 class satisfies all the requirements under Rules 23(a) and 23(b)(3) for class certification, and **GRANTS** plaintiffs' motion to certify the Subclass represented by plaintiff Meyer, as defined below.

### III.  CONCLUSION

For the foregoing reasons, plaintiffs' motion to certify the Main Class under either Rule 23(b)(2) or Rule 23(b)(3) is **DENIED**, and plaintiffs' motion to certify the Subclass under Rule 23(b)(2) is **DENIED**.

Plaintiffs' motion to certify the Subclass under Rule 23(b)(3) is **GRANTED** as follows**:**

> **1.  Post-October 16, 2013 Non-Club Bebe Class**
> All persons within the United States who provided their mobile telephone number to bebe in one of bebe's stores at the point-of-sale and were sent an SMS or text message from bebe during the period of time beginning October 16, 2013 and continuing until the date the Class is certified, who were not members of Club bebe during the Class Period.

**2. Post-October 16, 2013 Club Bebe Class**
All persons within the United States who provided their mobile telephone number to bebe in one of bebe's stores at the point-of-sale and were sent an SMS or text message from bebe during the period of time beginning October 16, 2013 and continuing until the date the Class is certified, who were members of Club bebe during the Class Period.

The Court's certification of the Club bebe class is conditioned on class counsel's ability to find a proper representative for the class, who meets the class definition. Class counsel must present an amended complaint within sixty (60) days of this Order joining a proper class representative for the Post-October 16, 2013 Club bebe class. Otherwise, the Court will decertify the same.

The Court **APPOINTS** plaintiffs' counsel as class counsel. A case management conference is hereby **SCHEDULED for October 3, 2016** at **2:00 p.m.**, with joint statements due per the Local Rules. Additionally, two weeks prior thereto, plaintiffs shall file a trial plan which outlines the nature of proof expected to be used at trial including witnesses and exhibits.

This Order terminates Docket Numbers 83, 84, 86, 91, and 103.

**IT IS SO ORDERED.**

Dated: August 22, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**