# EXHIBIT A

# Hooper, Irene

| | |
|---|---|
| **From:** | Davis, Sylvia A. |
| **Sent:** | Friday, November 18, 2016 12:30 PM |
| **To:** | Hooper, Irene |
| **Subject:** | FW: FCC ECFS Filing Confirmation 11-18-16 |
| **Attachments:** | bebe Petition for Expedited Declaratory Ruling 11 18 16.pdf |

Hi Irene - Filing done.  See below.

Sylvia


Sylvia A. Davis | Pillsbury Winthrop Shaw Pittman LLP Legal Secretary
1200 Seventeenth Street NW | Washington, DC 20036-3006 t 202.663.8559 | f 202.663.8007 | m 301.275.7778
sylvia.davis@pillsburylaw.com | pillsburylaw.com

-----Original Message-----
From: Richards, Glenn S.
Sent: Friday, November 18, 2016 3:23 PM
To: Pierce, Amy L.
Cc: Elliott, Mark E.; Bluth, Andrew D.; Davis, Sylvia A.
Subject: FW: FCC ECFS Filing Confirmation

Amy/Mark/Andrew  - the FCC filing for bebe has been completed - confirmation below.  A copy of the signed petition is attached for your records.  Have a great weekend and a restful Thanksgiving.

Glenn S. Richards | Partner and Chair, Communications Practice Section Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW | Washington, DC 20036-3006 t 202.663.8215 | f 202.513.8006 | m 301.518.1994
glenn.richards@pillsburylaw.com | pillsburylaw.com/glenn.richards

-----Original Message-----
From: no-reply@fcc.gov [mailto:no-reply@fcc.gov]
Sent: Friday, November 18, 2016 3:19 PM
To: Richards, Glenn S.
Subject: FCC ECFS Filing Confirmation

Thank you for your submission to the FCC Electronic Comment Filing System (ECFS).
Please Note that your filing will not be available for searching until it has been reviewed and posted by the FCC.

 Confirmation Number: 20161118032748401


Proceeding(s): 02-278 : Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991


Filer(s): bebe stores, inc.

Author(s): Glenn S. Richards, Mark E. Elliott, Amy L. Pierce, Andrew D. Bluth

Law firm(s): Pillsbury Winthrop Shaw Pittman LLP

Type of Filing: DECLARATORY RULING

File Number:

Report Number:

Bureau ID Number:

Documents(s) Attached: bebe Petition for Expedited Declaratory Ruling 11 18 16.pdf

Address: 1200 Seventeenth Street, NW , Washington, DC 20036

Before the
FEDERAL COMMUNICATIONS COMMISSION
Washington, D.C. 20554

| | |
|---|---|
| In the Matter of:<br><br>Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991<br><br>Petition for Expedited Declaratory Ruling of bebe stores, inc.<br><br>To:  The Commission | CG Docket No. 02-278 |

PETITION FOR EXPEDITED DECLARATORY RULING
GRANTING A LIMITED, RETROACTIVE WAIVER OF SECTION 64.1200(A)(2) OF
THE FEDERAL COMMUNICATIONS COMMISSION'S RULES

bebe stores, inc.

Glenn S. Richards, Esq.
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, D.C. 20036

Mark E. Elliott, Esq.
Amy L. Pierce, Esq.
PILLSBURY WINTHROP SHAW PITMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406

Andrew D. Bluth, Esq.
PILLSBURY WINTHROP SHAW PITMAN LLP
2600 Capitol Avenue, Suite 300
Sacramento, CA 95816-5930

Its Attorneys

Dated: November 18, 2016

# **TABLE OF CONTENTS**

                                                                                                                                       **Page**

I.     BEBE STORES, INC.'S CLUBBEBE ........................................................................... 1

II.    THE EVOLVING TCPA RULE, AND THE COMMISSION'S GRANTS OF LIMITED, RETROACTIVE WAIVERS OF SECTION 64.1200(A)(2) OF THE COMMISSION'S RULE ........................................................................................... 5

III.   IN LIGHT OF CONFUSION ABOUT AMENDMENTS TO THE COMMISSION'S RULES AND CONSISTENT WITH THE COMMISSION'S GRANT OF SIMILAR WAIVERS, BEBE SHOULD BE GRANTED A LIMITED, RETROACTIVE WAIVER of SECTION 64.1200(A)(2) OF THE COMMISSION'S RULE ........................................................................................... 8

IV.   CONCLUSION ............................................................................................................ 10

Pursuant to Section 1.2 of the Commission's rules, bebe stores, inc. ("bebe") hereby respectfully submits this Petition For Expedited Declaratory Ruling Granting a Limited, Retroactive Waiver of Section 64.1200(a)(2) of the Federal Communications Commission's Rules ("Petition"). This Petition seeks, in part, an order that "prior express consent" under the Telephone Consumer Protection Act, 47 U.S.C. § 227 and 47 C.F.R. § 64.1200 (the "Commission's Rules") (collectively referred to herein as the "TCPA") includes all consents obtained by bebe prior to October 16, 2013 where the consumer provided her/his telephone number to bebe and bebe has a contractual right to contact the consumer at that number. This Petition further seeks an order granting bebe a limited, retroactive waiver of the Federal Communications Commission's ("Commission" or "FCC") prior express written consent rule set forth in Section 64.1200(a)(2) of the Commission's Rules in light of confusion about amendments to the TCPA and consistent with the Commission's grant of similar waivers.[1] In its 2016 TCPA Declaratory Ruling, the Commission declined to grant blanket relief to all entities subject to TCPA obligations. Rather, the Commission confirmed that it would address petitions for a limited, retroactive waiver of Section 64.1200(a)(2) on a case-by-case basis. By this Petition, bebe seeks such a waiver.

I.   **BEBE STORES, INC.'S CLUBBEBE**

bebe's core business is retail sales of women's fashion and accessories in both brick-and-mortar stores across the nation and from its commercial website www.bebe.com. A very large percentage of bebe's customers are members of its "clubbebe" loyalty-based marketing program ("clubbebe"). By enrolling in clubbebe, members agree to be bound by the full clubbebe Terms

---

[1] See, generally, In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Petitions for Wavier and/or Retroactive Waiver of 47 C.F.R. Section 64.1200(a)(2) Regarding the Commission's Prior Express Written Consent Requirement, Order, CG Docket No. 02-278 (October 14, 2016) ("2016 TCPA Declaratory Ruling"); In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Declaratory Ruling And Order (July 10, 2015), ¶¶ 149-51 ("2015 Declaratory Ruling").

and Conditions ("Terms & Conditions").[2] As part of their enrollment in clubbebe, customers provide personally-identifiable information that can include their name, mailing address, email address, date of birth and, relevant to this Petition, a telephone number. Enrolling in clubbebe is voluntary, and consumers are not required to provide their cell phone number to become a member. Members of clubbebe elect to be communicated with through various channels, including direct mail, email and/or text message. bebe's communications to clubbebe members include campaigns to alert them to, among other things, new products and sales promotions. These marketing efforts are an important way for bebe to communicate with its customers in the way the customers have indicated that they want to be communicated with by bebe.

The clubbebe Terms & Conditions confirm that members using the clubbebe membership "consent to the use of the [clubbebe] members' personal information…for marketing and promotional purposes unless the member has opted out, and…consent[] to the receipt of information provided by bebe." The Terms & Conditions further state "You also agree to review these Terms and Conditions periodically and shall be bound by any modifications. If you do not accept these Terms and Conditions, or any subsequent modifications, your sole and exclusive remedy is to terminate your membership in the program." Thus, whenever a member provided her cell phone number (e.g., on-line, at a point of sale or on a client capture card), the consumer's express consent to receive a single confirmatory, opt-in text message ("Opt-in Text") was confirmed through her/his participation in clubbebe. Customers can register their clubbebe number online and create a clubbebe account that the customer can then use to manager her/his account profile, preferences and rewards, and to utilize other benefits.

In or around mid-to-late 2010, bebe initiated its text messaging program ("bebe Texts"); initially, bebe Texts was promoted exclusively on www.bebe.com and was later bebe rolled enrollment in bebe Texts out to its brick-and-mortar stores. Under the program, bebe customers were asked to provide their cell phone number for the specific purpose of initiating their

---

[2] The clubbebe Terms & Conditions are available at https://www.bebe.com/custserv/custserv.jsp?pageName=RewardsConditions.

enrollment in bebe Texts.[3] After viewing bebe Texts marketing materials and/or speaking with a bebe stylist that provided information about bebe Texts, customers understood that they were voluntarily and deliberately providing their cell phone number to initiate their enrollment in bebe Texts. Once the customer provided her/his cell phone number, bebe's vendor, after confirming that the number was, in fact, a cell phone number, forwarded an Opt-in Text to the provider for the cell phone number provided by the customer. Upon receipt of an Opt-in Text, the customer could complete her/his enrollment by sending a response text ("Opt-in Response"). If the customer did not text an Opt-in Response, no further texts were sent to the customer. bebe terminated its collection of cell phone numbers at its brick-and-mortar stores on January 21, 2014. It terminated bebe Texts when its contract with its service provider expired in July of 2015.

On January 17, 2014, a single plaintiff initiated a putative class action lawsuit alleging that bebe sent her an Opt-in Text without her consent, and that this text message violated the TCPA. In December of 2013, this plaintiff voluntarily provided her cell phone number to bebe in connection with a purchase and return, consented to the number being included in the cell phone field for her account profile, and received an Opt-in Text shortly thereafter. This plaintiff was not a clubbebe member when she received the Opt-in Text and she is not currently a clubbebe member. On May 16, 2014, this plaintiff filed an amended complaint, confirming that she voluntarily provided bebe with her cell phone number. This plaintiff did not text an Opt-in Response and did not receive any other texts from bebe. On April 29, 2014, another single plaintiff initiated a copycat putative class action lawsuit alleging that bebe sent her a text message without her consent, and that this text message violated the TCPA. On June 21, 2013, this plaintiff voluntarily provided her cell phone number to bebe in connection with a purchase, consented to the number being included in the cell phone field for her clubbebe account profile,

---

[3] bebe does not purchase contact information from third parties or vendors, and has only ever contacted by text message those consumers who voluntarily provided their cell phone number to bebe in order to initiate their enrollment in bebe Texts.

received an Opt-in Text shortly thereafter, and sent an Opt-in Response on June 21, 2013 only minutes after she received the Opt-in Text. This plaintiff was a clubbebe member when the Opt-in Text was sent to her and she continues to be a clubbebe member. The two actions were consolidated and these plaintiffs filed a consolidated complaint on June 15, 2015.

On August 22, 2016, the U.S. District Court for the Northern District of California issued its Order Granting in Part and Denying in Part Plaintiffs' Motion For Class Certification, certifying two sub-classes ("Order"):

> **1. Post-October 16, 2013 Non-Club Bebe Class**
>
> All persons within the United States who provided their mobile telephone number to bebe in one of bebe's stores at the point-of-sale and were sent an SMS or text message from bebe during the period of time beginning October 16, 2013 and continuing until the date the Class is certified, who were not members of Club bebe during the Class Period.
>
> **2. Post-October 16, 2013 Club Bebe Class**
>
> All persons within the United States who provided their mobile telephone number to bebe in one of bebe's stores at the point-of-sale and were sent an SMS or text message from bebe during the period of time beginning October 16, 2013 and continuing until the date the Class is certified, who were members of Club bebe during the Class Period.

The Court's Order required the class counsel to present an amended complaint within sixty days of the Order joining a proper class representative for the Post-October 16, 2013 clubbebe class ("clubbebe class"). Otherwise, the Court confirmed that it would decertify the clubbebe class.

On October 21, 2016, plaintiffs filed their first amended consolidated complaint ("Operative Complaint"), purporting to add a class representative for the clubbebe class. The Operative Compliant states, with respect to this individual that:

> 37.   On information and belief, on or about December 12, 2013, Defendant sent Plaintiff [] an unsolicited and un-consented to text message.
>
> 38.   On information and belief, Plaintiff [] had signed up for Club Bebe [sic] prior to Defendant's sending of the December 12, 2013 text message.

Upon receipt of the Operative Complaint, bebe initiated an internal investigation regarding this newly identified individual. bebe's records confirm that this individual provided her cell phone number to bebe on October 29, 2010, when she enrolled in clubbebe. When this plaintiff enrolled in clubbebe, she did so in a brick-and-mortar store, and she received a plastic clubbebe membership card with her unique clubbebe number along with a pamphlet that included the clubbebe Terms & Conditions. This individual continues to be a member of clubbebe and has made three purchases associated with her clubbebe membership number since 2010.

bebe initiated thousands of text messages to its current and prior customers, including the Opt-in Text initiated to each of the plaintiffs described above. Both of the clubbebe plaintiffs voluntarily provided their cell phone number to bebe prior to October 16, 2013. By enrolling and continuing to enjoy the uninterrupted benefits of membership in clubbebe, both plaintiffs are subject to the clubbebe Terms & Conditions discussed above. If bebe is found liable for violating the TCPA for calling the thousands of customers alleged in the Operative Complaint and, in particular, the clubbebe class, bebe faces significant statutory penalties under the TCPA.

## II. THE EVOLVING TCPA RULE, AND THE COMMISSION'S GRANTS OF LIMITED, RETROACTIVE WAIVERS OF SECTION 64.1200(A)(2) OF THE COMMISSION'S RULE

Congress passed the TCPA in 1991, prohibiting entities from using automated telephone dialing systems ("ATDS") or pre-recorded messages to call telephone numbers for commercial purposes unless the caller has obtained "prior express consent." 47 U.S.C. § 227(b). The term "prior express consent" was not defined in the text of the TCPA. Congress delegated authority to the Commission to "implement" the TCPA's provisions. 47 U.S.C. § 227(b)(2), (f).

The Commission released its first Report and Order (the "1992 Order"), instituting the rules relating to the TCPA, on October 16, 1992. In the 1992 Order, the Commission explained that:

> [P]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary. Hence, telemarketers will not violate our rules by calling a number

> which was provided as one at which the called party wishes to be reached.

Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, FCC 92-443, Report and Order, 7 FCC Rcd. 8752, 8769, ¶ 31 (1992) (footnote omitted).

The Commission again updated its rules in 2003, establishing a national do-not-call registry with the Federal Trade Commission ("FTC"). Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, FCC 03-153, Report and Order, 18 FCC Rcd. 14014, 14017, ¶ 1 (2003).

In 2005, on reconsideration of its 2003 Order, the Commission specifically affirmed that the "existing business relationship" exception still existed, stating: "the existence of financial agreements, including bank accounts, credit cards, loans, insurance policies and mortgages, constitute ongoing relationships that should permit a company to contact the consumer to, for example, notify them of changes in terms of a contract or offer new products and services that may benefit them." Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, FCC 05-28, Second Order on Reconsideration, 20 FCC Rcd. 3788, 3798, ¶ 26 (2005).

In 2008, the Commission issued an Order in response to a petition seeking clarification on the TCPA's rules regarding debt collection calls (the "2008 Order"), and again had occasion to address the meaning of "prior express consent." In the specific context of debt collection calls, the Commission explained:

> [W]e clarify that autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party. . . . We conclude that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.

Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, FCC 07-232, Declaratory Ruling, 23 FCC Rcd. 559, 559, ¶ 1, 564, ¶ 9 (2008) (footnote omitted). The 2008 Order did not disturb or affect the established business relationship exception to the TCPA.

On June 19, 2009, the U.S. Court of Appeals for the Ninth Circuit, in Satterfield v. Simon & Schuster, Inc., 569 F.3d 946 (9th Cir. 2009), held "that it is reasonable to interpret 'call' under the TCPA to include both voice calls and text messages," citing 47 U.S.C. § 227(b)91)(A). Id. at 949, 951-52. Hundreds of putative class actions have been filed challenging that text messages sent to consumers violate the TCPA.

On February 15, 2012, altering years of prior regulations and orders, the Commission released a Report and Order that provided that "prior express consent" must be provided in writing in order to bring the Commission's rules in line with the FTC's telemarketing rules. See Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, FCC 12-21, Report and Order, 27 FCC Rcd. 1830, 1838, ¶ 20 (2012) (the "2012 Order"). The 2012 Order altered "prior express consent" to require "prior express written consent." Id. Specifically, the 2012 Order adopted a set of stringent new requirements regarding the content and form of consents. The 2012 Order required, among other things, that consents be "signed" such that the signature is recognized as valid under state or federal laws (e.g., consistent with The Electronic Signatures in Global and National Commerce Act, 15 U.S.C. Ch. 96 (aka the "E-SIGN Act"). Further, the Commission concluded that written consent must:

> [B]e sufficient to show that the consumer: (1) received 'clear and conspicuous disclosure' of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained 'without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.'

Id. at 1844, ¶ 33 (footnotes omitted). These requirements — which require the consumer to sign a document stating that she/he will be contacted by an ATDS — are a substantial departure from the previous "prior express consent" rules that did not specify the form of consent required. Finally, the 2012 Order noted that "[o]nce [the] written consent rules become effective, however, an entity will no longer be able to rely on non-written forms of express consent to make

autodialed or prerecorded voice telemarketing calls, and thus could be liable for making such calls absent prior written consent." Id. at 1857, ¶ 68. The rules went into effect on October 16, 2013.

### III. IN LIGHT OF CONFUSION ABOUT AMENDMENTS TO THE COMMISSION'S RULES AND CONSISTENT WITH THE COMMISSION'S GRANT OF SIMILAR WAIVERS, BEBE SHOULD BE GRANTED A LIMITED, RETROACTIVE WAIVER OF SECTION 64.1200(A)(2) OF THE COMMISSION'S RULE

On two different occasions the Commission has granted limited, retroactive waivers of Section 64.1200(a)(2) of the Commission's Rule. See 2015 Declaratory Ruling; 2016 Declaratory Ruling. In the 2015 Declaratory Ruling, the Commission granted the National Association of Broadcasters (including their members as of the release date of this Declaratory Ruling) a limited, retroactive waiver of its prior express written consent rule from October 16, 2013, to release of the 2015 Declaratory Ruling, and then a waiver from the release of the 2015 Declaratory Ruling through a period of 89 days. It did so in light of confusion about the Commission's prior express written consent rule and consistent with its authority to grant such waivers. In the 2016 Declaratory Ruling, the Commission granted limited, retroactive waivers of this rule to seven petitioners[4]; the waivers granted continue until the date specified by the Commission when it granted the waivers in its 2015 Declaratory Ruling.

As noted in the 2016 Declaratory Ruling, "[a] waiver may be granted if: (1) the waiver would better serve the public interest than would application of the rule; and (2) special

---

[4] See Petition for Expedited Declaratory Ruling or Forbearance, CG Docket No. 02-278, filed by Mammoth Mountain Ski Area, LLC on Feb. 23, 2015; Petition of Kale Realty, LLC for Retroactive Waiver of 47 CFR § 64.1200(a)(2), CG Docket No. 02-278 filed July 23, 2015; Petition of F-19 Holdings, LLC, and All Affiliated Franchisees for Retroactive Waiver of 47 U.S.C. § 227, CG Docket No. 02-278 filed July 29, 2015; National Association of Broadcasters Petition for Retroactive Waiver, CG Docket No. 02-278 filed Aug. 18, 2015; National Cable & Telecommunications Association Petition for Waiver, CG Docket No. 02-278 filed Oct. 1, 2015; Petition for Retroactive Waiver filed by Rita's Water Ice, CG Docket No. 02-278 on Dec. 2, 2015; Petition for Waiver filed by Papa Murphy's Holdings, Inc. and Papa Murphy's International L.L.C., CG Docket No. 02-278 (filed on Feb. 22, 2016); see also Letter from Angela Giancarlo, counsel for Mammoth Mountain Ski Area, LLC, to Marlene H. Dortch, Secretary, FCC, CG Docket No. 02-278, at 1-3 filed Dec. 10, 2015.

circumstances warrant a deviation from the general rule," citing <u>Northeast Cellular Tel. Co. v. FCC, 897 F.2d 1164, 1166 (D.C. Cir. 1990).</u> 2016 Declaratory Ruling ¶ 11. Generally, the Commission or the Consumer and Governmental Affairs Bureau, "through properly exercised delegated authority, may grant a waiver of the Commission's rules if the relief requested would not undermine the policy objectives of the rule in question, and would otherwise serve the public interest," citing <u>WAIT Radio v. FCC</u>, 418 F.2d 1153, 1157 (D.C. Cir. 1969). <u>Id</u>. The Commission found "that good cause exists to grant retroactive waivers to all seven of the petitioners on the same terms provided in the 2015 [] Declaratory Ruling and, as applicable, to their members, noting

> The Commission previously found, in the 2015 [] Declaratory Ruling, that special circumstances warranted deviation from the general rule at issue. Specifically, the Commission acknowledged confusion about the 2012 written-consent rules and granted petitioners waiver relief for a limited period within which they could obtain the prior express written consent required by the 2012 rule. The Commission found that language in the 2012 order could reasonably have been interpreted by the petitioners to mean that written consent obtained prior to the current rule's effective date would remain valid even if it does not satisfy the current rule. For the same reasons that the Commission cited in previously granting relief, we believe it is also reasonable to recognize a limited period within which each of these petitioners could be expected to obtain the prior express written consent required by the Commission's current rules. We find that the seven petitioners before us have adequately demonstrated that they are similarly situated to the initial waiver recipients, and should receive similar limited waivers for the same period, <u>i.e.</u>, up to October 7, 2015. (Footnotes omitted).

2016 Declaratory Ruling ¶ 12. In the 2016 Declaratory Ruling, the Commission declined to grant blanket relief to all entities subject to TCPA obligations. <u>Id</u>., ¶ 18. Rather, the Commission confirmed that it "will address petitions for retroactive waiver of the Commission's prior-

- 9 -

express-written-consent rule on a case-by-case basis, as we are already doing. Should other parties request waivers for the same reason, we will address them as warranted." Id.[5]

As set forth herein, bebe is similarly situated to the petitioners who received waivers in the 2015 Declaratory Ruling and 2016 Declaratory Ruling and, in particular, Mammoth Mountain Ski Area, LLC. bebe could reasonably have interpreted the Commission's new rule to mean that written consent obtained by bebe prior to the current rule's effective date would remain valid even if it does not satisfy the current rule. bebe now seeks a ruling that "prior express consent" under the TCPA includes all consents obtained by bebe prior to October 16, 2013 from clubbebe members voluntarily providing their cell phone number to bebe. Specifically, bebe seeks an order granting bebe a limited, retroactive waiver of Section 64.1200(a)(2) of the Commission's Rules for these clubbebe members in light of confusion about amendments to the Commission's Rules and consistent with the Commission's grant of similar waivers of in its 2015 Declaratory Ruling and 2016 Declaratory Ruling. Such a waiver would be retroactive from October 16, 2013, to release of the 2015 Declaratory Ruling, and then from the release of the 2015 Declaratory Ruling through a period of 89 days.

## IV.   CONCLUSION

bebe asks the Commission to order that bebe is similarly situated to the petitioners who received waivers in the 2015 Declaratory Ruling and 2016 Declaratory Ruling, and to grant bebe

---

[5] In the 2016 Declaratory Ruling, the Commission noted that when it granted the waiver relief in the 2015 Declaratory Ruling, the argument that
> granting limited prospective relief would have a bearing on [TCPA] litigation. But the essential basis for the relief provided under our rules was the 'uncertainty' of the Commission's 2012 language, the 'confusion' resulting therefrom, and the conclusion that it was 'reasonable to recognize a limited period within which [petitioners there] could be expected to obtain the prior express written consent required by our recently effective rule.

2016 Declaratory Ruling ¶ 19. Accordingly, bebe is asking the Commission to consider its circumstances and not to deny bebe's Petition simply because it is facing putative class action claims in the U.S. District Court for the Northern District of California.

a limited, retroactive waiver of Section 64.1200(a)(2) of the Commission's Rules in light of confusion about amendments to the Commission's Rules and consistent with the Commission's grant of similar waivers. This limited waiver would be a retroactive from October 16, 2013, to release of the 2015 Declaratory Ruling on July 10, 2015, and from the release of the 2015 Declaratory Ruling up to October 7, 2015.

Respectfully submitted,

bebe stores, inc.

By: *[signature]*

Glenn S. Richards
Mark E. Elliott, Esq.
Amy L. Pierce, Esq.
Andrew D. Bluth, Esq.

Its Attorneys

PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, D.C. 20036
glenn.richards@pillsburylaw.com

PILLSBURY WINTHROP SHAW PITMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
mark.elliott@pillsburylaw.com
amy.pierce@pillsburylaw.com

PILLSBURY WINTHROP SHAW PITMAN LLP
2600 Capitol Avenue, Suite 300
Sacramento, CA 95816-5930
andrew.bluth@pillsburylaw.com

Dated: November 18, 2016