PILLSBURY WINTHROP SHAW PITTMAN LLP
MARK E. ELLIOTT (CA Bar No. 157759)
mark.elliott@pillsburylaw.com
AMY L. PIERCE (CA Bar No. 210539)
amy.pierce@pillsburylaw.com
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone: (213) 488-7100
Facsimile: (213) 629-1033

Attorneys for Defendant BEBE STORES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MELITA MEYER, individually, and on behalf of all others similarly situated, | Case No.: 14-CV-00267-YGR |
| Plaintiff(s), | **CLASS ACTION** |
| vs. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BEBE STORES, INC.'S MOTION TO DECERTIFY BOTH SUBCLASSES [F.R.C.P. RULE 23]** |
| BEBE STORES, INC., | |
| Defendant(s). | Date:     January 10, 2017 |
| | Time:     2:00 P.M. |
| SAMANTHA RODRIGUEZ, individually, and on behalf of all others similarly situated, | Dept.:    1, 4th Floor |
| | Judge:    Hon. Yvonne Gonzalez Rogers |
| Plaintiff(s), | |
| vs. | Case No.: 14-CV-01968-YGR |
| BEBE STORES, INC., | |
| Defendant(s). | |

4823-8286-2908.v1

Table of Contents

Page

I.     STATEMENT OF FACTS ........................................................................1

       A.     The Post-October 16, 2013 Non-Club Bebe Class .........................1

       B.     The Court's Certification of Two Subclasses...............................5

II.    LEGAL STANDARDS FOR A MOTION TO DECERTIFY A CLASS.................9

III.   ARGUMENT ..................................................................................10

       A.     Ms. Barrett is Not a Proper Representative Plaintiff for the Post-
              October 16, 2013 Club Bebe Class.........................................10

       B.     The Court Should Decertify Both Subclasses Because Members of
              the Subclasses Cannot Be Ascertained ....................................12

       C.     The Court Should Decertify Both Subclasses Because Plaintiffs Have
              No Common Proof to Establish Class-wide Liability ...................14

IV.    CONCLUSION ...............................................................................17

4823-8286-2908.v1

1

Table of Authorities

2

Page(s)

3

Cases

4    Besinga v. U.S.,
5        923 F.2d 133 (9th Cir. 1991) ......................................................................... 16

     Connelly v. Hilton Grand Vacations Co., LLC,
6        294 F.R.D. 574 (S.D. Cal. 2013) ................................................................... 17

7    Cruz v. Dollar Tree Stores, Inc.,
         270 F.R.D. 499 (N.D. Cal. 2010) ................................................................... 10
8
     Gaza v. LTD Fin. Serv., L.P.,
9        No. 8:14-CV-1012-T-30JSS, 2015 WL 5009741 (M.D. Fla. Aug. 24,
         2015) ............................................................................................................... 19
10
     General Tel. Co. of Sw. v. Falcon,
11       457 U.S. 147 (1982) ................................................................................... 9, 11

12   Jenkins v. mGage, LLC and LL Atlanta, LLC d/b/a Opera Nightclub,
         No. 1:14-cv-2791-WSD, 2016 WL 4263937 (D. Ga. Aug. 12, 2016) ..................... 18
13
     Leyse v. Lifetime Ent. Serv.,
14       No. 13 Civ. 5794 (AKH), 2015 WL 5837897 (S.D.N.Y. Sept. 22,
         2015)................................................................................................................ 14
15
     Marcus v. BMW of N. Am., LLC,
16       687 F.3d 583 (2012) ............................................................................... 15, 16

17   Marlo v. United Parcel Serv., Inc.,
         251 F.R.D. 476 (C.D. Cal. 2008)............................................................. 10, 11
18
     Marlo v. United Parcel Serv., Inc.,
19       639 F.3d 942 (9th Cir. 2011) ......................................................................... 11

20   O'Connor v. Boeing N. Am., Inc.,
         197 F.R.D. 404 (C.D.Cal.2000)..................................................................... 11
21
     Pimental v. Google Inc.,
22       No. C-11-02585-YGR, 2012 WL 691784 (N.D. Cal. Mar. 2, 2012) ....................... 17

23   Rodriguez v. West Publ'g Corp.,
         563 F.3d 948 (9th Cir. 2009) ......................................................................... 10
24
     Sherman v. YAHOO! Inc.,
25       No. 13cv0041-GPC-WVG, 2015 WL 5604400 (S.D. Cal. Sep. 23,
         2015)................................................................................................................ 14
26
     Smith v. Microsoft Corp.,
27       297 F.R.D. 464 (S.D. Cal. 2014) ................................................................... 15

28

- ii -

United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv.
        Workers Intern. Union, AFL-CIO, CLC v. ConocoPhillips Co.,
        593 F.3d 802 (9th Cir. 2010) ................................................................................. 10

Xavier v. Philip Morris USA, Inc.,
        787 F. Supp.2d 1075 (N.D.Cal.2011) .................................................................... 16

Statutes and Codes

United States Code
        Title 47, section 227(b)(1)(A)(iii) .......................................................................... 15

Rules and Regulations

Federal Rules of Civil Procedure
        Rule 23 ............................................................................................................. 3, 9, 10

Federal Rules of Civil Procedure
        Rule 23(a) ................................................................................................................. 2

Federal Rules of Civil Procedure
        Rule 23(b)(3) ............................................................................................................ 2

Federal Rules of Civil Procedure
        Rule 23(c)(1)(C) ....................................................................................................... 9

Code of Federal Regulations
        Title 47, section 64.1200(a)(1) ............................................................................... 15

MEMO OF POINTS AND AUTHORITIES ISO
BEBE STORES, INC.'S MOT TO
DECERTIFY BOTH SUBCLASSES
Case No. CV 14-00267-YGR

INTRODUCTION

On August 22, the Court certified what it referred to as a "Post-October 16, 2013 Club Bebe Class" and a "Post-October 16, 2013 Non-Club Bebe Class" (Dkt. No. 106). The Order contemplates that Plaintiff Meyer will represent the "Post-October 16, 2013 Non-Club Bebe Class;" however, Plaintiff Rodriguez will not represent a subclass. With respect to the second subclass, the Order required Plaintiffs to "present an amended complaint within sixty (60) days of this Order joining a proper class representative for the Post-October 16, 2013 Club bebe class. Otherwise, the Court will decertify the same."

Although Plaintiffs' First Amended Consolidated Complaint on October 21 (the "Amended Complaint") (Dkt. No. 112) adds Plaintiff Courtney Barrett ("Ms. Barrett"), Ms. Barrett does not meet the criteria in the Court's Post-October 16, 2013 Club Bebe Class. Ms. Barrett allegedly received a single confirmatory, opt-in text message from bebe's vendor ("Opt-in Text") on or about December 12, 2013, but there are no allegations as to when Ms. Barrett provided her mobile telephone number to bebe. bebe's investigation confirmed that Ms. Barrett provided it to bebe on October 29, 2010 <u>not on or after October 16, 2013</u>. Accordingly, Ms. Barrett is not a proper representative for the Post-October 16, 2013 Club Bebe Class and decertification of this subclass is appropriate.

In addition to requesting that the Court decertify the Post-October 16, 2013 Club Bebe Class, bebe includes in this Motion its request that the Court decertify both subclasses on other grounds. Theoretical evidence that Plaintiffs and the Court relied on that purportedly was being obtained from mGage, LLC ("mGage") has not materialized and, in fact, does not appear to exist. Plaintiffs thus are left without the ability to ascertain who received an Opt-in Text or, for that matter, to establish that an automated telephone dialing system ("ATDS") was used for bebe Texts.

I.    STATEMENT OF FACTS

    A.    <u>The Post-October 16, 2013 Non-Club Bebe Class</u>

In its Order on Plaintiffs' Motion for Class Certification, the Court rejected Plaintiffs' proposed subclass definitions and, instead, defined two subclasses as follows:

**1. Post-October 16, 2013 Non-Club Bebe Class**

All persons within the United States who provided their mobile telephone number to bebe in one of bebe's stores at the point-of-sale and were sent an SMS or text message from bebe during the period of time beginning October 16, 2013 and continuing until the date the Class is certified, who were not members of Club bebe during the Class Period.

**2. Post-October 16, 2013 Club Bebe Class**

All persons within the United States who provided their mobile telephone number to bebe in one of bebe's stores at the point-of-sale and were sent an SMS or text message from bebe during the period of time beginning October 16, 2013 and continuing until the date the Class is certified, who were members of Club bebe during the Class Period.

Dkt. No. 106, pp. 18:23-19:4; <u>see also</u> p. 4:4-12. The Order contemplates that Plaintiff Meyer will represent the "Post-October 16, 2013 Non-Club Bebe Class." <u>Id</u>. p. 18:16-18. Plaintiff Rodriguez would have been one of the representatives for Plaintiffs' proposed Post-January 16, 2010 "Main Class;" however, with respect to the this proposed class, the Court confirmed that it could not find that the common questions of law and fact satisfy the commonality and predominance requirements under Rule 23(a) and Rule 23(b)(3). <u>Id</u>. p. 12:9-13. Otherwise, the Order confirms that certification of the Post-October 16, 2013 Club Bebe Class "is conditioned on class counsel's ability to find a proper representative for the class, who meets the class definition." <u>Id</u>. p. 19:5-9. Plaintiffs were given 60 days to present an amended complaint or this subclass would be decertified. <u>Id</u>.

Plaintiffs filed their Amended Complaint adding Ms. Barrett on October 21 (Dkt. No. 112). The Amended Complaint is sparse with details regarding Ms. Barrett:

> 8. Plaintiff Courtney Barrett is currently a citizen and resident of the State of Georgia. However, at the time she signed up for Club Bebe and received the illegal text message she was a citizen and resident of the State of New Jersey. She is, and at all times mentioned herein was, a 'person' as defined by 47 U.S.C. § 153 (39).

> …

> THE CALLS TO PLAINTIFF COURTNEY BARRETT

> 37. On information and belief, on or about December 12, 2013, Defendant sent Plaintiff Barrett an unsolicited and un-consented to text message.

- 2 -

MEMO OF POINTS AND AUTHORITIES ISO BEBE STORES, INC.'S MOT TO DECERTIFY BOTH SUBCLASSES
Case No. CV 14-00267-YGR

38. On information and belief, Plaintiff Barrett had signed up for Club Bebe prior to Defendant's sending of the December 12, 2013 text message.

The Amended Complaint is silent regarding when Ms. Barrett provided her mobile telephone number to bebe, failing to confirm that it was first provided "during the period of time beginning October 16, 2013 and continuing until the date the Class is certified."

Upon receipt of the Amended Complaint, bebe initiated an investigation into Ms. Barrett's patronage of bebe. See Declaration of Angela Kourtoglou in Support of bebe stores, inc.'s Motion to Decertify Pursuant to F.R.C.P. Rule 23 ("Kourtoglou Decl."), ¶ 2. bebe's records confirm that Ms. Barrett enrolled in clubbebe on October 29, 2010 in a brick-and-mortar bebe store located in Irvington, New Jersey. See id., ¶ 2.a. As part of her enrollment, Ms. Barrett provided a mailing address and telephone number. See id., ¶ 2.b. At that time, bebe point-of-sale software did not include a mobile telephone number field; the mobile telephone number field was later added to facilitate customers initiating their enrollment in bebe's text messaging program ("bebe Texts"). See bebe stores, inc.'s Opposition to Plaintiffs' Motion For Class Certification (Dkt. No. 86-3), p. 5:22-6:3.

When she enrolled in clubbebe, Ms. Barrett was given a packet that included a plastic membership card with Ms. Barrett's unique member number and a copy of the clubbebe Terms & Conditions governing her clubbebe membership by a bebe stylist. See id., ¶ 2.c. The clubbebe Terms & Conditions in effect at that time stated, in relevant part:

…By enrolling in the clubbebe Rewards Program, you agree to be bound by the full clubbebe Terms and Conditions stated herein.

… MISCELLANEOUS

… By enrolling in the clubbebe Rewards Program, you agree to be bound by the full Terms and Conditions stated herein. You also agree to review these Terms and Conditions periodically and shall be bound by any modifications. If you do not accept these Terms and Conditions, or any subsequent modifications, your sole and exclusive remedy is to terminate your membership in the program…. You may cancel your membership in the clubbebe Rewards Program by calling the following toll-free number 1-877-bebe-777...

PRIVACY

MEMO OF POINTS AND AUTHORITIES ISO
BEBE STORES, INC.'S MOT TO
DECERTIFY BOTH SUBCLASSES
Case No. CV 14-00267-YGR

> … By using the clubbebe membership card, members consent to the use of the clubbebe member's personal information for administering the loyalty program, for marketing and promotional purposes unless the member has opted out, and for internal market research by bebe and its affiliates, and consents to the receipt of information provided by bebe. We do record information regarding the purchases made with your clubbebe membership card to help us conduct market research and analysis, and we provide you with special offers and other information unless you have opted out of receiving such offers…

See id., ¶ 2.d & Ex. A. The current clubbebe Terms & Conditions include the same disclosures. See id., ¶ 2.f.

bebe has confirmed that the number that Ms. Barrett provided to it on October 29, 2010 is Ms. Barrett's mobile telephone number. See id., ¶ 2.g. In connection with her December 12, 2013 purchase (see id., ¶ 2.j, k), Ms. Barrett consented to her mobile telephone number being included in the mobile telephone number field of her clubbebe profile to initiate her enrollment in bebe Texts, as explained in bebe's Opposition to Plaintiffs' Motion for Class Certification ("Opposition") (Dkt. No. 86-3, pp. 5:22-6:7). Ms. Barrett has maintained her enrollment in clubbebe since October 29, 2010; Ms. Barrett made a purchase on October 29, 2010, another on July 5, 2012 and another on December 12, 2013, and each purchase was associated with her clubbebe number. See id., ¶ 2.h, i, j.

As explained in its Opposition (Dkt. No. 86-3, p. 6:8-27), bebe has no way to confirm whether Ms. Barrett actually received an Opt-in Text or completed her enrollment in bebe Texts by sending a response text ("Opt-in Response") (see Kourtoglou Decl., ¶ 2.l). bebe's customer service database, however, includes Ms. Barrett's mobile telephone number in both the home phone number and mobile telephone number fields. See id. ¶ 2.3.

In addition to investigating Ms. Barrett's patronage of bebe, on November 18, bebe filed a Petition for Expedited Declaratory Ruling Granting a Limited, Retroactive Waiver of Section 64.1200(A)(2) of the Commission's Rules ("Petition").[1] In its Petition, bebe seeks a limited, retroactive waiver of the Federal Communication Commission's ("Commission" or

---

[1] See Request or Judicial Notice in Support of Bebe Stores, Inc.'s Motion to Strike and Motion for a More Definite Statement Pursuant to F.R.C.P. Rule 12(F) and F.R.C.P. 12(E) ("RJN"), Ex. A.

4823-8286-2908.v1

MEMO OF POINTS AND AUTHORITIES ISO BEBE STORES, INC.'S MOT TO DECERTIFY BOTH SUBCLASSES
Case No. CV 14-00267-YGR

1    "FCC") prior express written consent rules for those clubbebe members who provided their

2    mobile telephone number to bebe prior to October 16, 2013. Twice recently the FCC has

3    granted waivers to similarly situated petitioners. <u>See</u> In the Matter of Rules and Regulations

4    Implementing the Telephone Consumer Protection Act of 1991, Petitions for Wavier and/or

5    Retroactive Waiver of 47 C.F.R. Section 64.1200(a)(2) Regarding the Commission's Prior

6    Express Written Consent Requirement, CG Docket No. 02-278, Order (October 14, 2016)

7    ("2016 Declaratory Ruling"); In the Matter of Rules and Regulations Implementing the

8    Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Declaratory Ruling

9    And Order (July 10, 2015), ¶¶ 149-151 ("2015 Declaratory Ruling").

10            bebe's Petition is timely because neither Plaintiff Meyer nor Plaintiff Rodriguez

11    were clubbebe members who provided their mobile telephone number to bebe before

12    October 16, 2013 and received an Opt-in Text on or after October 16, 2013, and Ms. Barrett

13    was first identified in the Amended Complaint filed in October 2016 (Dkt. No. 112). In the

14    2016 Declaratory Ruling, the FCC declined to grant blanket relief to all entities subject to

15    TCPA obligations. <u>See id.</u>, ¶ 18. Rather, the FCC confirmed that it "we will address

16    petitions for retroactive waiver of the Commission's prior-express-written-consent rule on a

17    case-by-case basis, as we are already doing. Should other parties request waivers for the

18    same reason, we will address them as warranted." <u>Id</u>.

19            B.      The Court's Certification of Two Subclasses

20            From the outset, bebe has voiced its concern that Air2Web, Inc.'s absence poses

21    significant problems for Plaintiffs' case through no fault of bebe.[2] Notwithstanding that

22    Plaintiff Myer filed her initial complaint on January 16, 2014 (Dkt. No. 1), that Plaintiffs

23    were made aware of Air2Web's role in bebe Texts in early 2014, that Plaintiffs' filed their

24    Motion For Class Certification over two years later (Dkt. No. 83) and that the hearing on

25    the Motion For Class Certification was held on April 26, 2016, Plaintiffs first issued

26    subpoenas to mGage, one of the successors to Air2Web, in very late May of 2016 (Dkt. No.

27    _____

28    [2]  Air2Web, the vendor that transmitted the text messages to the carriers for bebe Texts,
         filed voluntary Chapter 11 petition for relief on November 4, 2013.

4823-8286-2908.v1

MEMO OF POINTS AND AUTHORITIES ISO
BEBE STORES, INC.'S MOT TO
DECERTIFY BOTH SUBCLASSES
Case No. CV 14-00267-YGR

103-4, p. 10:20-26). bebe is not aware of any other subpoenas being issued by Plaintiffs (see, e.g., Dkt. No. 109).

When certifying the two subclasses identified, supra, Section I.A, the Court considered to a very limited extent Air2Web's role in bebe Texts. With respect to the members of the class being ascertainable, the Court concluded, in part, that:

> [P]laintiffs have produced supplemental evidence indicating that plaintiffs have subpoenaed mGage, the company now in possession of Air2Web's records, and that mGage is currently cooperating with plaintiffs to produce the necessary records. (See Dkt. No. 103-9, July 5, 2016 Email from mGage ('While our client makes no promises regarding the result, we expect that this search will produce the logs for the requested short code and time period.').)… The Court finds that plaintiffs' showing of ascertainability is sufficient.

(Order, p. 13:14-20); see also Order Requiring Supplemental Briefing on Plaintiffs' Motion for Class Certification (Dkt. No. 100); Plaintiffs' Supplemental Briefing in Response to the Court's June 22, 2016 Order (Dkt. No. 103-4), p. 10:20-28. Plaintiffs' Motion for Class Certification also rested on their theory that there is common proof that an ATDS was used for bebe Texts without identifying any such proof or the source of such proof. See, e.g., Order, p. 8:19-20 ("Plaintiffs have not submitted evidence regarding the system used.").

On August 25, Plaintiffs' counsel confirmed that mGage's efforts to locate data that it may have obtained from Air2Web have been "unsuccessful" and otherwise Plaintiffs have not obtained any such information from other sources. Declaration of Amy L. Pierce In Support of Bebe Stores, Inc.'s Objections to Plaintiffs' Proposed Trial Plan ("Pierce Decl."), Ex. A. Notwithstanding this confirmation, Plaintiffs' September 19 Proposed Trial Plan (Dkt. No. 108) states that it expects to obtain this same evidence from mGage:

**A. Whether Defendant Sent Text Messages to a Cellular Phone Number**

With respect to both the Non-Club Bebe Class and Club Bebe Class, Plaintiffs intend to submit the following proof that Defendant sent text messages to Class Members:

1. Exhibits

• Defendant's customer records, including records from Defendant's confidential and proprietary databases;

• Defendant's records regarding communications with customers at the point of sale;

• Air2Web Agreement; and

• <u>MGage's outbound call records</u>.[3]

2. Witnesses

• Defendant's database and records custodian(s);

• <u>MGage's outbound call records custodian(s)</u>;

• Plaintiffs; and

• Plaintiffs' expert witness(es).

<u>Id</u>., p. 2: 4-17 (emphases added) (Footnote 3 in Plaintiff's Trial plan states "Air2Web, the company that transmitted the text messages to the carrier, filed a voluntary Chapter 11 petition for relief on November 4, 2013. (<u>See</u> Def.'s Cert. Opp. at 6:21- 22 and n.2.) Mgage is the company in possession of Air2Web's records."); <u>see also generally</u> bebe stores, inc.'s Response to Plaintiffs' Proposed Trial Plan (filed herewith). As confirmed in their August 25 correspondence, Plaintiffs' purported reliance on "MGage's outbound call records" in their Trial Plan is misleading — mGage has been unable to locate Air2Web's data for bebe Texts and mGage was not the service provider for any of the at-issue Opt-in Texts so its call logs are irrelevant. <u>See</u> Pierce Decl., Ex. A; <u>see also</u> Joint Case Management Statement (Dkt. No. 109), pp. 2:3-3:6.

In the parties' September 26 Joint Case Management Statement (Dkt. No. 109), Plaintiffs again confirm that:

> [W]ith regard to the Class list and the issue of the use of an ATDS, Plaintiffs are currently pursuing a response to their subpoena served on mGage, LLC ("mGage") (the successor to Defendant's text messaging vendor, Air2Web, Inc. ("Air2Web"), the vendor that sent the text messages at issue in this case), and may require additional follow up discovery on mGage depending on the response. Counsel for Plaintiffs has engaged in multiple conversations with multiple counsel for mGage in order to obtain a response to the subpoena. <u>Currently, it appears that, according to counsel for mGage, it may not be possible for mGage to provide a responsive list of phone numbers to which mGage sent text messages on behalf of Defendant due to changes in mGage's storage facilities and encryption protocols</u>. Counsel is following up on this issue and is pursuing a statement under oath from mGage regarding its inability to respond to the subpoena on this ground. In addition, Plaintiffs are seeking information from mGage regarding the technology that was used by Air2Web to send the text messages at issue in this matter so that this information may be presented to the Court (or potentially to a jury) to determine if the technology is an ATDS.

<u>Id</u>., pp. 2:3-3:6 (emphasis added). Without records from Air2Web regarding the Opt-in Texts sent and received, Plaintiffs' sole evidence is bebe's database and the "Air2Web

Agreement." Conspicuously absent from the parties' September 26 Joint Case Management Statement in is any representation that mGage has confirmed that it has any information about Air2Web's equipment and technology.

Plaintiffs' September 19 Proposed Trial Plan (Dkt. No. 108) otherwise states that it expects to obtain evidence regarding whether an ATDS was used for bebe texts, in part, from mGage:

> **B. Whether Defendant Used an ATDS**
>
> The term "automatic telephone dialing system" means equipment that has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers. 47 U.S.C. § 227(a)(1).
>
> 1. Exhibits
>
> • Documents, such as schematics and manuals, concerning the operation of "bebe's computer system[,]" including its "server and terminal" (see Def.'s Cert. Opp. At 7:12-13);
>
> • Documents, such as schematics and manuals, concerning Defendant's confidential and proprietary software;
>
> • Documents, such as schematics and manuals, concerning MGage's outbound call equipment and software;
>
> • Air2Web Agreement; and
>
> • Documents submitted by Air2Web to the FCC regarding its systems.
>
> 2. Witnesses
>
> • Defendant's representative(s) regarding its point-of-sale, confidential and proprietary software, databases, and systems.
>
> • MGage's outbound call equipment/software representative(s); and
>
> • Plaintiffs' ATDS expert witness.

Id., pp. 2:18-3:10 (emphases added). Conspicuously absent is the identification of any evidence regarding Air2Web's equipment and technology beyond that evidence that the Court has already concluded does not suffice to establish that an ATDS was used. See Stay Order (Dkt. 66) pp. 5:11-28, 6:4-7. Plaintiffs' purported reliance on "[d]ocuments, such as schematics and manuals, concerning MGage's outbound call equipment and software" and "MGage's outbound call equipment/software representative(s)" in their Trial Plan is misleading — mGage and Air2Web are not one-in-the-same entity and mGage was not the

1  service provider for any of the at-issue Opt-in Texts so its equipment and technology are

2  irrelevant. See id., pp. 2:18-3:3, 9, 5:20-21.

3       Otherwise, Plaintiffs confirm in the September 26 Joint Case Management

4  Statement that they "believe only minimal discovery needs to be taken from [bebe]." Id., p.

5  2:18-19. Plaintiffs do not identify any other sources for evidence in support of their case in

6  the September 26 Joint Case Management Statement. See id., p. 2:18-3:6.

7  II.     LEGAL STANDARDS FOR A MOTION TO DECERTIFY A CLASS

8       Federal Rule of Civil Procedure 23(c)(1)(C) specifically contemplates that "[a]n

9  order that grants or denies class certification may be altered or amended before final

10  judgment." Id.; see, e.g., Falcon, 457 U.S. at 160 (noting that "[e]ven after a certification

11  order is entered, the judge remains free to modify it in the light of subsequent developments

12  in the litigation"); United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. &

13  Serv. Workers Intern. Union, AFL-CIO, CLC v. ConocoPhillips Co., 593 F.3d 802, 809

14  (9th Cir. 2010) ("court retains the flexibility to address problems with a certified class as

15  they arise, including the ability to decertify"). A "court may decertify a class at any time."

16  Id.  (citing Rodriguez v. West Publ'g Corp., 563 F.3d 948, 966 (9th Cir.2009)).

17       Decertification of a class after subsequent discovery, motion practice, or trial

18  preparations may reveal that Rule 23 has not been satisfied. See Marlo v. United Parcel

19  Serv., Inc., 251 F.R.D. 476, 488 (C.D. Cal. 2008) ("Although certification decisions are not

20  to focus on the merits of a plaintiff's claim, a district court reevaluating the basis for

21  certification may consider its previous substantive rulings in the context of the history of

22  the case, and may 'consider the nature and range of proof necessary to establish the

23  [classwide] allegations'" (internal citations omitted)). Decertification is appropriate if, in

24  the course of litigation, the existing class fails to meet the requirements of Rule 23. See,

25  e.g., Cruz v. Dollar Tree Stores, Inc., 270 F.R.D. 499, 502 (N.D. Cal. 2010) ("The standard

26  applied by the courts in reviewing a motion to decertify is the same as the standard used in

27  evaluating a motion to certify; namely, whether the requirements of Rule 23 are met," citing

28  O'Connor v. Boeing N. Am., Inc., 197 F.R.D. 404, 410 (C.D.Cal.2000)). And, the party

1    seeking certification continues to bear the burden of showing compliance with Rule 23.

2    See, e.g., Marlo v. United Parcel Serv., Inc., 639 F.3d 942, 947 (9th Cir. 2011).

3         In deciding whether to decertify, the Court is to consider "subsequent developments

4    in the litigation" (General Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982)), and "the

5    nature and range of proof necessary to establish the [class-wide] allegations" (Marlo, 251

6    F.R.D. at 479-80). As explained in Marlo, "the burden at the class certification stage is

7    slight, and that a court need only be able to make a reasonable judgment that Rule 23

8    requirements are satisfied… At a later stage, however, a court will sometimes need to

9    reevaluate the certification decision." 251 F.R.D. at 487-88.

10   III.    ARGUMENT

11        The parties are at a critical juncture. Discovery, except for expert-related discovery,

12   is nearly completed or completed if mGage produces nothing in response to the subpoenas.

13   The parties agree that the next phase of this litigation likely will involve one or both parties

14   filing a motion for summary judgment. In addition, the Court expects the parties to prepare

15   a plan for class notice and opt-outs in the near future. Therefore, the Court's consideration

16   of the issues in this Motion is in the interest of averting wasteful litigation.

17        A.   Ms. Barrett is Not a Proper Representative Plaintiff for the Post-October 16,
              2013 Club Bebe Class

18

19        Plaintiffs' Amended Complaint adds Ms. Barrett as a representative for the Post-

20   October 16, 2013 Club Bebe Class at the direction of this Court. See Dkt. No. 106, p. 19:4-

21   9. The Order required: "Class counsel must present an amended complaint within sixty (60)

22   days of this Order joining a proper class representative for the Post-October 16, 2013 Club

23   bebe class." Id. p. 19:6-8. Plaintiffs' Amended Complaint fails to allege that Ms. Barrett is

24   "a proper representative for the class, who meets the class definition." Id. p. 19:5-9.

25        The Post-October 16, 2013 Club Bebe Class includes material subparts:

26        All persons within the United States who provided their mobile telephone
          number to bebe in one of bebe's stores at the point-of-sale and were sent an
          SMS or text message from bebe during the period of time beginning October
27        16, 2013 and continuing until the date the Class is certified, who were
          members of Club bebe during the Class Period.

28

- 10 -

1   Id. p. 19:1-4 (emphasis added). Ms. Barrett provided her mobile telephone number to bebe

2   on October 29, 2010 not in December of 2013. See Kourtoglou Decl., ¶ 2.a, b, g.

3   Accordingly, Ms. Barrett is not a proper representative for the Post-October 16, 2013 Club

4   Bebe Class. Order (Dkt. No. 106), p. 19:1-4.

5          When Ms. Barrett provided her mobile telephone number to bebe is material. The

6   Court declined in its Order to certify Plaintiffs' proposed "Main Class" (Dkt. No. 106, p.

7   4:4-12),[3] because "the varied scripts and instructions provided to different stores at different

8   times as demonstrated by bebe's evidence renders the question of consent not one that can

9   be answered on a classwide basis because it would require an individual assessment of what

10  each customer was told" (Dkt. No. 106, p. 10:18-21). By omitting that Ms. Barrett provided

11  her mobile telephone number in October 2010, Plaintiffs are trying to circumvent the

12  Court's findings for the pre-October 16, 2013 Main Class on this point and, otherwise, to

13  avoid providing bebe with a basis to file a motion to dismiss challenging Ms. Barrett.

14         When Ms. Barrett provided her mobile telephone number to bebe is material for the

15  reason set forth in bebe's Petition. See RJN, Ex. A; see also 2015 Declaratory Ruling, ¶¶

16  149-151;  see, generally, 2016 Declaratory Ruling and bebe's Petition. According to

17  guidance from the FCC in its 2016 Declaratory Ruling, ¶¶ 149-151 and 2015 Declaratory

18  Ruling, bebe is eligible for a limited, retroactive waiver of the FCC's prior express written

19  consent rule.  This limited waiver would be a retroactive from October 16, 2013, to release

20  of the 2015 Declaratory Ruling on July 10, 2015, and from the release of the 2015

21  Declaratory Ruling up to October 7, 2015. Accordingly, Ms. Barrett would not be a proper

22  representative for the Post-October 16, 2013 Club Bebe Class because such a class would

23  be subject to a different consent standard than Ms. Barrett.

24

25

---

26  [3] Plaintiffs' proposed a "Post-January 16, 2010 ('Main Class')" of "All persons within the
    United States who provided their mobile telephone number to bebe in one of bebe's stores
27  at the POS and were sent an SMS or text message from bebe during the period of time
    beginning January 16, 2010, and continuing until the date the Class is certified." Order
28  (Dkt. No. 106), p. 4:6-9.

1    Resolution of this issue now is important because, if the Post-October 16, 2013 Club

2    Bebe Class is decertified, it will simplify the proceedings going forward, including, but not

3    limited to, the parties' motions for summary judgment. It will also materially alter the

4    parties' plan to provide class notice and ultimately reduce the burden to provide notice.

5            B.      The Court Should Decertify Both Subclasses Because Members of the
                     Subclasses Cannot Be Ascertained

6

7    In its Order Requiring Supplemental Briefing on Plaintiffs' Motion for Class

8    Certification (Dkt. No. 100), the Court directed the parties to address "[t]he status of any

9    discovery on the question of records from Air2Web (or other sources) that would establish

10   class membership." In their supplemental briefing (Dkt. No. 103-4), Plaintiffs discuss the

11   records they have subpoenaed from mGage, representing to the Court that they "anticipated

12   that Plaintiffs should have responsive records [from mGage] in the near future." Id., p.

13   10:20-28.[4] At that time, mGage had produced no records to Plaintiffs.

14           In its Order, the Court declined to find that Plaintiffs' showing of ascertainability

15   was insufficient. See id. (Dkt. No. 106), p. 12:14-13:20. It noted that "there is no

16   requirement that the identity of the class members should be . . . known at the time of

17   certification." The Court's conclusion appears to be relying, in part, on Plaintiffs'

18   representation that mGage is "now in possession of Air2Web's records, and that mGage is

19   currently cooperating with plaintiffs to produce the necessary records." Id., p. 13:14-19. As

20   explained, supra, Section I.B, mGage has confirmed that it cannot provide a responsive list

21   of mobile telephone numbers to which Opt-in Texts were sent due to changes in mGage's

22   storage facilities and encryption protocols, and Plaintiffs have otherwise confirmed that

23   they have not made any efforts to obtain this "list" from another source.

24   _____

25   [4]   In contrast, in its supplemental briefing (Dkt. No. 102), bebe noted that, even if mGage
     were to produce any such documents or information, "Plaintiffs have no way to
     authenticate these documents, as required by Federal Rule of Evidence 901(a)" and

26   "mGage employees should not be assumed to be witnesses with knowledge of Air2Web's
     business activities and records, as contemplated by Federal Rule of Evidence 901(b)(1),

27   and mGage employees should also not be assumed to be able to provide evidence about
     any data compilations or processes or systems Air2Web had in place, as contemplated by

28   Federal Rule of Evidence 901(b)(8), (9), respectively." Id. p. 8:4-15.

4823-8286-2908.v1

1    The ascertainability of the members of the subclasses now rest entirely on bebe's

2    database. See, e.g., Sherman v. YAHOO! Inc., No. 13cv0041-GPC-WVG, 2015 WL

3    5604400, at *5-7, 10 (S.D. Cal. Sep. 23, 2015) (Class members could not be ascertained

4    through YAHOO!'s database.); Leyse v. Lifetime Ent. Serv., No. 13 Civ. 5794 (AKH),

5    2015 WL 5837897, at *5 (S.D.N.Y. Sept. 22, 2015) (Class certification denied where there

6    was "no copy of the list of called numbers that the parties have been able to discover.");

7    Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 594 (2012) (District court "must resolve

8    the critical issue of whether the defendants' records can ascertain class members and, if not,

9    whether there is a reliable, administratively feasible alternative."); Smith v. Microsoft

10   Corp., 297 F.R.D. 464, 472 (S.D. Cal. 2014) ("'scrubbed' list does not conclusively

11   establish who is a party to this action"). Undeniably, members of the subclasses are not

12   readily ascertainable relying exclusively on bebe's database.

13   As the Court recognized in its Order, one of bebe's business records (Dkt. 86-11,

14   Def. Ex. AR) confirms that out of total of 10,284 mobile telephone numbers collected by

15   bebe, of those, 8,104 were valid mobile telephone numbers, and of those, only 7,202

16   messages were successfully transmitted. See id. (Dkt. No. 106), pp. 12:27-13:7. By way of

17   example only, what this would mean is that if 100,000 numbers were in bebe's database in

18   the mobile telephone number field, approximately 30,000 of those numbers would not be

19   valid mobile telephone numbers and, thus, they would not have received an Opt-in Text;

20   overinclusion of 30,000 class members would equate to potentially an additional $15-$45

21   million in statutory penalties. Accordingly, any list of mobile telephone numbers from

22   bebe's database would not be "'virtually co-extensive' with the list of customers who

23   received" an Opt-in Text. Order (Dkt. No. 106), p. 13:10-12.

24   Even if bebe's list were used to contact prospective subclass members, there is no

25   "objective, verifiable criteria" to confirm that such individuals are, in fact, class members

26   without resorting to administratively burdensome individual inquiries. Relying solely on

27   statements by individuals to confirm that they are class members would have serious due

28   process implications for bebe ─ these individuals would be incentivized to falsely confirm

- 13 -

1   receipt of an Opt-in Text because of the tempting $500-$1,500 in statutory penalties. <u>See,</u>

2   <u>e.g.</u>, <u>Marcus</u>, 687 F.3d at 594 ("We caution, however, against approving a method that

3   would amount to no more than ascertaining by potential class members' say so.").[5]

4          Because the members of the subclasses are not ascertainable, Plaintiffs face further

5   challenges, including, but not limited to, providing members of the subclasses with notice

6   of the proceedings and, in turn, depriving bebe of the power to bind class members to the

7   outcome of any motion or trial practice. <u>See, e.g.</u>, <u>Besinga v. U.S.</u>, 923 F.2d 133, 137 (9th

8   Cir. 1991) ("Where the basis for applying res judicata is [the purported class action status of

9   a prior adjudication] and where it is clear that the trial court and the parties in [the prior

10  action] failed to [provide notice] to absent class members, it would defy logic and law to

11  hold that such putative class members are bound by res judicata."). It will also deter any

12  early dispute resolution discussions because Plaintiffs no doubt will expect to include those

13  putative class members that, in fact, do not have claims in any settlement because there is

14  no "objective, verifiable criteria" to exclude them without an individualized inquiry.

15         Plaintiffs have not demonstrated that members of the subclasses are readily

16  identifiable by objective criteria or that it will be administratively feasible to determine

17  whether a particular person is a member one of the subclasses, as required.

18         C.      <u>The Court Should Decertify Both Subclasses Because Plaintiffs Have No</u>
               <u>Common Proof to Establish Class-wide Liability</u>
19

20         Ruling on Plaintiffs' Motion for Class Certification, the Court was not troubled by

21  the Plaintiffs' theory that common proof could be used to establish that Air2Web used an

22  ATDS for bebe Texts without Plaintiffs identifying any proof or source for such proof. <u>See,</u>

23  <u>e.g.</u>, Order, p. 8:19-20 ("Plaintiffs have not submitted evidence regarding the system

24  used."). In their Trial Plan (Dkt. No. 108) and otherwise, Plaintiffs have failed to carry their

---

25  [5] "[S]imply having potential class members submit affidavits that their Bridgestone RFTs
       have gone flat and been replaced may not be 'proper or just.'" <u>Marcus</u>, 687 F.3d at 594

26  (citing <u>Xavier v. Philip Morris USA, Inc.</u>, 787 F. Supp.2d 1075, 1089-90 (N.D.Cal.2011)
       (court rejected plaintiffs' ascertainability proposal to have potential class members submit

27  affidavits). It reasoned, that "[f]orcing BMW and Bridgestone to accept as true absent
       persons' declarations that they are members of the class, without further indicia of

28  reliability, would have serious due process implications." <u>Id</u>.

1   burden to advance a viable theory employing actual common proof to establish liability

2   with respect to the class involved. See, e.g., Connelly v. Hilton Grand Vacations Co., LLC,

3   294 F.R.D. 574, 577 (S.D. Cal. 2013). To prevail on their claims, Plaintiffs are required to

4   prove, among other things, that a call was made using an ATDS. See Pimental v. Google

5   Inc., No. C-11-02585-YGR, 2012 WL 691784, at *2 (N.D. Cal. Mar. 2, 2012) (citing 47

6   U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)). As discussed, supra, Section I.B,

7   Plaintiffs have advanced no viable theory for establishing that an ATDS was used to send

8   the Opt-in Texts, ignoring the evidentiary hurdles that they face.

9           In a motion to decertify a class, when faced with the lack of common proof to

10  support a class-wide judgment, the Marlo court reasoned:

11          Normally, a plaintiff will develop common evidence and a trial management
            plan with an eye toward maintaining the requirements for a class action. This
12          is the unusual case where, in spite of earlier indications that class treatment
            was feasible, the subsequent discovery, motion practice, and trial
13          preparations has revealed that the requirement of predominate common
            issues is not satisfied. If there is any lesson to take from the circumstances
14          here, it is that a plaintiff in a class action … must think through how to
            enable a fact-finder to make a [classwide] decision… Common proof of
15          some kind is necessary to support this class-wide determination. Plaintiff has
            not provided that proof here. As a result, the predominance and superiority
16          requirements are not met."

17  251 F.R.D. at 488 (emphasis added). As was the case in Marlo, Plaintiffs have no proof

18  regarding what equipment or technology was used for bebe Texts aside from bebe's own

19  equipment and technology, which is definitively not an ATDS. Although the burden at the

20  class certification stage "is slight, and that a court need only be able to make a reasonable

21  judgment that Rule 23 requirements are satisfied," "[a]t a later stage, however, a court will

22  sometimes need to reevaluate the certification decision." Id. at 487-88.

23          As set forth, supra, Section I.B, Plaintiffs' September 19 Trial Plan falls far short of

24  identifying any admissible common evidence on the issue of whether an ATDS was used to

25  send the Opt-in Texts. To date, Plaintiffs have recovered no evidence beyond what was

26  available when bebe filed its Motion for a Stay. The Court, ruling on this motion, confirmed

27  that it cannot be assumed that "Air2Web employed identical technology in servicing

28  [b]ebe," and that Plaintiffs are in a difficult position because they have "received little to no

1 │ relevant discovery." Stay Order (Dkt. No. 66), p. 6. This Court further found that Harvey

2 │ Scholl's declaration in <u>Fried v. Sensia Salon, Inc.</u>, No. 4:13-cv-00312, "carries little

3 │ weight" and the Air2Web Agreement "is not sufficiently clear on the question of whether

4 │ Air2Web employed the identical system it used with [others]." <u>Id</u>. p. 5.

5 │     Even if mGage were to produce information or documents purportedly obtained

6 │ from Air2Web, Plaintiffs have otherwise ignored the evidentiary objections raised in bebe's

7 │ Supplemental Briefing on Plaintiffs' Motion for Class Certification regarding Plaintiffs'

8 │ plan to rely on mGage to, among other things, authenticate information and documents

9 │ purportedly belonging to <u>Air2Web</u> (<u>e.g.</u>, "information from mGage regarding the

10 │ technology that was used by Air2Web to send the text messages"). Dkt. No. 102, pp. 8:4-

11 │ 21; <u>see, generally</u>, Plaintiffs' Proposed Trial Plan (Dkt. No. 108).

12 │     As noted in Section IV of bebe's Response to Plaintiffs' Trial Plan (filed herewith),

13 │ Plaintiffs otherwise improperly propose to use information about <u>mGage's</u> own equipment

14 │ and technology even though mGage was not bebe's service provider for the at-issue text

15 │ messages. <u>See</u> Plaintiffs' Trial Plan (Dkt. No. 108), pp. 2:18-3:10. Even so, a court recently

16 │ confirmed that mGage's equipment and technology is not an ATDS. <u>See</u> <u>Jenkins v. mGage,</u>

17 │ <u>LLC and LL Atlanta, LLC d/b/a Opera Nightclub</u>, No. 1:14-cv-2791-WSD, 2016 WL

18 │ 4263937, *7 (D. Ga. Aug. 12, 2016) (Court found that "the uncontested evidence shows

19 │ human intervention was required to send each text message. 'In sum, [Plaintiff's] claims

20 │ fail as a matter of law because [s]he failed to establish a genuine issue for trial with respect

21 │ to whether the [texts] were [sent] using an ATDS, a necessary element of [her] claims,"

22 │ citing <u>Gaza v. LTD Fin. Serv., L.P.</u>, No. 8:14-CV-1012-T-30JSS, 2015 WL 5009741, at *4

23 │ (M.D. Fla. Aug. 24, 2015)); <u>see also</u> <u>Luna v. Shac, LLC</u>, 122 F. Supp. 3d 936, 940-41 (N.D.

24 │ Cal. Aug. 19, 2015) ("human intervention was involved in several stages of the process

25 │ prior to Plaintiff's receipt of the text message").

26 │     At this juncture, requiring a showing that there is common proof of some kind to

27 │ support a class-wide determination on the issue of whether an ATDS was used for bebe

28 │ Texts in the interest of averting wasteful litigation.

IV.     CONCLUSION

        The Amended Complaint fails to establish that Ms. Barrett is a proper class representative because it omits that Ms. Barrett provided her mobile telephone number to bebe on or after October 16, 2013. Plaintiffs omit this allegation because Ms. Barrett, in fact, provided her mobile telephone number to bebe in October of 2010. bebe submits that Ms. Barrett is not proper class representative for the Post-October 16, 2013 Club Bebe Class and decertification of the Post-October 16, 2013 Club Bebe Class is required.

        In addition, Plaintiffs have confirmed that evidence that they purportedly planned to rely on to ascertain the members of the subclasses has not materialized and, in fact, Plaintiffs understand that it no longer exists. Plaintiffs simply cannot demonstrate that members of the subclasses are readily identifiable by objective criteria and that it will be administratively feasible to determine whether a particular person is a member one of the subclasses. Likewise, Plaintiffs have failed to identify any common proof to support a class-wide determination on the issue of whether an ATDS was used for bebe Texts. In the interest of averting wasteful litigation, for these reasons, bebe submits that both subclasses should be decertified.

Dated: November 28, 2016

                        PILLSBURY WINTHROP SHAW PITTMAN LLP
                        MARK E. ELLIOTT (CA Bar No. 157759)
                        AMY L. PIERCE (CA Bar No. 210539)


                        By:  _____/s/ Amy L. Pierce_____
                                   Amy L. Pierce

                        Attorneys for Defendant BEBE STORES, INC.