1
2
3
4
5
6
7
8

PILLSBURY WINTHROP SHAW PITTMAN LLP
MARK E. ELLIOTT (CA Bar No. 157759)
mark.elliott@pillsburylaw.com
AMY L. PIERCE (CA Bar No. 210539)
amy.pierce@pillsburylaw.com
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone: (213) 488-7100
Facsimile: (213) 629-1033

Attorneys for Defendant BEBE STORES, INC.

9
10
11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MELITA MEYER, individually, and on behalf of all others similarly situated, <br><br> Plaintiff(s), <br><br> vs. <br><br> BEBE STORES, INC., <br><br> Defendant(s). | Case No.: 14-CV-00267-YGR <br><br> **CLASS ACTION** <br><br> **BEBE STORES, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DECERTIFY BOTH SUBCLASSES** <br> **[F.R.C.P. RULE 23]** <br><br> Date:      February 7, 2017 <br> Time:     2:00 P.M. <br> Dept.:     1, 4th Floor <br> Judge:    Hon. Yvonne Gonzalez Rogers |
| SAMANTHA RODRIGUEZ, individually, and on behalf of all others similarly situated, <br><br> Plaintiff(s), <br><br> vs. <br><br> BEBE STORES, INC., <br><br> Defendant(s). | Case No.: 14-CV-01968-YGR |

<u>Table of Contents</u>

Page

I.   INTRODUCTION ........................................................................................................1

II.  argument ...............................................................**Error! Bookmark not defined.**

   A.  Ms. Barrett Is Not A Proper Representative For The Post-October 16, 2013 Club
       Bebe Class ........................................................................................................2

      1.  Ms. Barrett provided consent to be called by bebe at her mobile telephone
          number outside of the Class Period ..........................................................2

      2.  When Ms. Barrett provided consent to be called at her mobile telephone number
          is material 4

      3.  Plaintiff is not a proper representative for any subclass because she does not
          recall receiving an Opt-in Text .................................................................8

      4.  The Court has already confirmed that a subclass cannot be certified if it would
          require an individual assessment of each customer's experience ...............9

   B.  Proceeding As A Class Action Is Not A Superior Method For Adjudication
       Plaintiffs' TCPA Claims Because Of The Overwhelming Lack Of Evidence In This
       Case    9

      1.  The lack of evidence regarding who was "called" makes proceeding as a class
          action administrative infeasible ..............................................................10

      2.  The lack of evidence regarding the technology employed by Air2Web for bebe
          Texts also weighs against this case proceeding as a class action ...............15

   C.  Plaintiffs Should Not Be Granted Leave To Find a Proper Representative for the
       Post-October 16, 2013 Club Bebe Class .........................................................16

III. CONCLUSION ........................................................................................................17

BEBE STORES, INC.'S REPLY BRIEF IN SUPPORT OF
ITS MOTION TO DECERTIFY BOTH SUBCLASSES
Case No. CV 14-00267-YGR

Table of Authorities

Page(s)

Cases

Bates v. United Parcel Serv., Inc.,
    511 F.3d 974 (9th Cir. 2007) ............................................................................. 8

Briseno v. ConAgra Foods, Inc.,
    No. 15-55727, Opinion, p. 19 (9th Cir. Jan. 3, 2017) .................................... 8, 10, 13, 14

Casa del Caffe Vergnanos S.P.A. v. ItalFlavors, LLC,
    816 F.3d 1208 (2016) ........................................................................................ 7

Connelly v. Hilton Grand Vacations Co.,
    294 F.R.D. 574 (S.D. Cal. 2013) ................................................................... 10, 13

Gene & Gene LLC v. BioPay LLC,
    541 F.3d 318 (5th Cir. 2008) ......................................................................... 10

Jenkins v. mGage, LLC and LL Atlanta, LLC d/b/a Opera Nightclub,
    No. 1:14-cv-2791-WSD, 2016 WL 4263937 (D. Ga. Aug. 12, 2016) .......... 16

Knutson v. Sirius XM Radio Inc.,
    771 F.3d 559 (2014) .......................................................................................... 7

Kosta v. Del Monte Foods, Inc.,
    308 F.R.D. 217 (N.D. Cal. 2015) .................................................................... 13

Luna v. Shac, LLC,
    122 F. Supp. 3d 936 (N.D. Cal. 2015) ............................................................ 16

Marks v. Crunch San Diego, LLC,
    55 F. Supp. 3d 1288 (S.D. Cal. 2014) ............................................................ 16

Mazza v. Am. Honda Motor Co., Inc.,
    666 F.3d 581 (9th Cir. 2012) ............................................................................ 8

Mullins v. Direct Digital, LLC,
    795 F.3d 654 (7th Cir. 2015) .......................................................................... 14

Pimental v. Google Inc.,
    No. C-11-02585-YGR, 2012 WL 691784 (N.D. Cal. Mar. 2, 2012) ............... 9

Reigelsperger v. Siller,
    40 Cal. 4th 574 (2007) ....................................................................................... 7

Satterfield v. Simon & Schuster, Inc.,
    569 F.3d 946 (2009) ..................................................................................... 1, 16

BEBE STORES, INC.'S REPLY BRIEF IN SUPPORT OF
ITS MOTION TO DECERTIFY BOTH SUBCLASSES
Case No. CV 14-00267-YGR

Smith v. Microsoft Corp.,
    297 F.R.D. 464 (2014)................................................................... 11, 12, 14, 15

Story v. Mammoth Mountain Ski Area, LLC,
    2:14-cv-02422-JAM-DAD (E.D. Cal. May 12, 2015) .............................. 5

Zinser v. Accufix Research Inst., Inc.,
    253 F.3d 1180 (9th Cir.2001) ................................................................ 14

Statutes and Codes

California Civil Code
    Section 1589 ................................................................................................ 7

Code of Federal Regulations,
    Title 47, section 64.1200(a)(1) .............................................................. 10
    Title 47, section 64.1200(a)(2) ................................................................ 4

United States Code,
    Title 47, section 227(a)(1) ...................................................................... 17
    Title 47, section 227(a)(1)(A) ................................................................ 18
    Title 47, section 227(a)(1)(B) ................................................................ 18
    Title 47, section 227(b)(1)(A)(iii) ................................................... passim
    Title 47, section 227(b)(3) ...................................................................... 15

Rules and Regulations

Federal Rules of Civil Procedure,
    Rule 23....................................................................................................... 3, 11
    Rule 23(b)(3) ....................................................................................... passim
    Rule 23(b)(3)(D)................................................................................ 12, 16, 19

Other Authorities

Cal. Juris. 3d Contracts
    Section 67 ................................................................................................... 7

Restatement (Second) of Contracts
    Sections 2, 17............................................................................................. 7

I.      INTRODUCTION

Plaintiffs are engaging in more game-playing. They rant for pages that bebe did not establish that Ms. Barrett provided her mobile telephone number to bebe before December of 2013. Plaintiffs had ready access to this fact: "Ms. Barrett, when did you first provide bebe with your mobile telephone number?", and bebe's database only confirms that she provided it to bebe in 2010. Ms. Barrett consented to be called by bebe at this number when she enrolled in clubbebe in 2010, as expressly contemplated by the clubbebe Terms & Conditions. Ms. Barrett never withdrew her consent. Rather, in December of 2013, after receiving the scripted information from a bebe stylist regarding bebe Texts, she again confirmed that bebe could communicate with her using this number and initiated her enrollment in bebe Texts.

Plaintiffs disingenuously argue that it doesn't matter anyway because she provided her number to bebe for bebe Texts in December 2013. The Ninth Circuit, Federal Communications Commission and Plaintiffs' expert Randall A. Snyder agree that, for purposes of the TCPA, calls include text messages.[1] bebe is otherwise eligible for a waiver of the FCC's new consent rules for Ms. Barrett and similarly situated clubbebe members. This is demonstrated in bebe's Motion and Petition. The Court's order and subclass definition, read in a fair and common sense manner, contemplate that Ms. Barrett must be subject to the FCC's new consent rules because the Court 1) declined to certify a pre-October 16, 2013 subclass and 2) included a "class period" "beginning October 16, 2013 and continuing until the date the Class is certified" in both subclass definitions. Plaintiffs' Amended Complaint fails to confirm that Ms. Barrett is a proper representative.

In addition, bebe's request that the Court decertify both subclasses should be granted because Plaintiffs have no evidence establishing who was "called" (i.e., received an Opt-in Text) — Plaintiff Rodriguez and Ms. Barrett do not recall receiving an Opt-in Text —

---

[1] See Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 949 (2009); Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, p. 5 (Feb. 15, 2012); Declaration of Randall A. Snyder (Dkt. No. 125-1) ("Snyder Decl."), ¶ 65 & Ex. A.

1   or that calls were placed using an ATDS. Plaintiffs make no effort to deny that the

2   theoretical evidence that they and the Court relied on for class certification does not exist

3   (i.e., evidence mGage, LLC purportedly would produce to Plaintiffs regarding Air2Web,

4   Inc.'s operations). Rather, Plaintiffs now purportedly expect to rely on Mr. Snyder[2] to

5   "create" a scrubbed list of mobile telephone numbers that theoretically may have been sent

6   an Opt-in Text and to theorize about the technology employed by Air2Web for bebe Texts.

7   Mr. Snyder's declaration does not overcome Air2Web's absence. The complexities of class

8   action treatment, the overwhelming lack of evidence in this case and the risk of fraudulent

9   claims outweigh the benefits of permitting this case to proceed as a class action.

10  II.    ARGUMENT

11         A.    Ms. Barrett Is Not A Proper Representative For The Post-October 16, 2013
                 Club Bebe Class

12
13               1.    Ms. Barrett provided consent to be called by bebe at her mobile
                       telephone number outside of the Class Period

14
15         Plaintiffs' Amended Complaint adds Ms. Barrett, at the direction of this Court,

16  purportedly to represent the Post-October 16, 2013 Club Bebe Class. See Dkt. No. 106, p.

17  19:4-9. The Post-October 16, 2013 Club Bebe Class definition is straightforward:

18               All persons within the United States who provided their mobile telephone
                 number to bebe in one of bebe's stores at the point-of-sale and were sent an
19               SMS or text message from bebe during the period of time beginning October
                 16, 2013 and continuing until the date the Class is certified, who were
20               members of Club bebe during the Class Period.

21  Id. p. 19:1-4. In an effort to avoid decertification of the subclass, Plaintiffs propose a

22  tortured reading of the Court's definition.

23         The Court's order and definition, read in a fair and common sense manner,

24  contemplate that Ms. Barrett must be subject to the FCC's new consent rules because the

25  Court 1) declined to certify a pre-October 16, 2013 subclass and 2) included a "class

26  period" "beginning October 16, 2013 and continuing until the date the Class is certified" in

27  _____

    [2] bebe objects to Plaintiffs' efforts to convert bebe's Motion into a merits motion. bebe has not been
28      provided with sufficient time to either engage an expert or to prepare a rebuttal expert report. By submitting
        this Reply, bebe is not waiving, and is expressly reserving, its right to engage an expert and to have its
        expert prepare a report and rebuttal report.

BEBE STORES, INC.'S REPLY BRIEF IN SUPPORT OF
ITS MOTION TO DECERTIFY BOTH SUBCLASSES
Case No. CV 14-00267-YGR

1  both subclass definitions. Order (Dkt. No. 106), pp. 18:23-19:4.  The Court found it

2  appropriate "to create a subclass of each of the proposed classes composed of putative class

3  members who were members of Club bebe <u>during the relevant Class Period</u>." <u>Id</u>., p. 9:23-25

4  (emphasis added). Plaintiffs' Amended Complaint fails to confirm that Ms. Barrett is a

5  proper representative.

6         Requiring Ms. Barrett to be subject to the FCC's new consent rules is consistent

7  with the Court declining to certify the proposed Main Class, which would have included

8  persons who provided their mobile telephone number to bebe prior to October 16, 2013.

9  <u>See id</u>., pp. 10:18-21, 18:20-22 ("the question of consent [is] not one that can be answered

10 on a classwide basis because it would require an individual assessment").

11            a.    <u>Ms. Barrett first provided her mobile telephone number to</u>
               <u>bebe when she enrolled in clubbebe in 2010</u>
12

13        Ms. Barrett provided her mobile telephone number to bebe in 2010 when she

14 enrolled in clubbebe, <u>a fact within Ms. Barrett's personal knowledge</u>. This is confirmed in

15 bebe's records. <u>See</u> Declaration of Angela Kourtoglou in Support of bebe stores, inc.'s

16 Motion to Decertify Both Subclasses Pursuant to F.R.C.P. Rule 23 (Dkt. No. 116-2)

17 ("Kourtoglou Decl."), ¶ 2.a, b, g; Declaration of Amy L. Pierce in Support of bebe stores,

18 inc.'s Reply Brief in Support of Its Motion to Decertify Both Subclasses ("Pierce Decl."),

19 ¶¶ 4-7. bebe has no record of Ms. Barrett withdrawing her consent to be called. <u>See id</u>.

20            b.    <u>The bebe List confirms only that Ms. Barrett's number was</u>
               <u>captured in the mobile telephone number field in 2013</u>
21

22        Plaintiffs discuss at some length the data provided by bebe to Plaintiffs during

23 discovery (the "bebe List"). <u>See id.</u> (Dkt. No. 123-4) ("Opp."), p. 6:14-9:17. Ms. Sheela

24 Agarwal, bebe's Director of Customer Relationship Management, explained what data was

25 collected, how it was displayed in the bebe List (<u>id.</u>, p. 7:6-20), and that for each new data

26 point (<u>e.g.</u>, home phone number, mobile telephone number, email address, etc.) a new

27 record is created in bebe's database and the new record captures the date on which the new

28 data point was added (<u>see</u> Pierce Decl., ¶ 9 & Ex. A; <u>see</u> Opp., p. 7:6-20). Ms. Angela

BEBE STORES, INC.'S REPLY BRIEF IN SUPPORT OF
ITS MOTION TO DECERTIFY BOTH SUBCLASSES
Case No. CV 14-00267-YGR

Kourtoglou, bebe's Director of Store Operations, clarified that the home phone number field could include "any phone number [a customer provides] — home, work, office, cell." Pierce Decl., ¶ 11 & Ex. C. She explained that if a customer provides a cell phone number as her/his "main phone number, it would go in the 'home [field].' Only if the client said, 'Yes, I would like to receive text messaging. It sounds like a great program.' Then they would input that phone number in the cell field." Id.

Collectively, Ms. Agarwal's and Ms. Kourtoglou's testimony simply demonstrates that Ms. Barrett consented to her number being included in the mobile telephone number field on December 12, 2013. As is apparent from Plaintiffs' Opposition, the bebe List does not include a home telephone number field or date field for when this field was populated. See Opp., p. 6:23-7:6. Accordingly, if a customer, like Ms. Barrett, provided her/his mobile telephone number and it was captured by bebe in the home telephone number field, neither the number nor the date the number was captured will be reflected in the bebe List.[3]

## 2.   When Ms. Barrett provided consent to be called at her mobile telephone number is material

October 16, 2013 is a pivotal date. When Ms. Barrett enrolled in clubbebe, providing consent to bebe to call her mobile telephone number to bebe, is material to the issue of consent, as explained in the Court's Order (Dkt. No. 106) and bebe's Motion (Dkt. No. 115-1) , Petition (Dkt. 115-3, Ex. A), and recent FCC guidance.[4] According to the FCC's two declaratory rulings, bebe is eligible for a limited, retroactive waiver of the FCC's new consent rules retroactive from October 16, 2013 up to October 7, 2015. The waiver would cover Ms. Barrett and those clubbebe members similarly situated.

---

[3]  The mobile telephone number field was later added to facilitate customers initiating their enrollment in bebe's bebe Texts. See, e.g., bebe stores, inc.'s Opposition to Plaintiffs' Motion For Class Certification (Dkt. No. 86-3), p. 5:22-6:3.

[4]  See also In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Declaratory Ruling And Order (July 10, 2015) ("2015 Declaratory Ruling"), ¶¶ 149-151; see, generally, In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Petitions for Wavier and/or Retroactive Waiver of 47 C.F.R. Section 64.1200(a)(2) Regarding the Commission's Prior Express Written Consent Requirement, CG Docket No. 02-278, Order (October 14, 2016) ("2016 Declaratory Ruling").

Accordingly, Ms. Barrett is not be a proper representative for the Post-October 16, 2013 Club Bebe Class because she is not similarly situated to a clubbebe members who enrolled in clubbebe and provided their mobile telephone number to bebe during the Class Period.

In their Opposition to Bebe Stores, Inc.'s Petition for Retroactive Waiver filed with the FCC on January 6, 2017, Plaintiffs argue that bebe never obtained the requisite consent from clubbebe members, relying heavily on the Eastern District of California's Order Granting Defendant's Motion To Stay in Story v. Mammoth Mountain Ski Area, LLC, No. 2:14-cv-02422-JAM-DAD (E.D. Cal. May 12, 2015) ("As an initial matter, the Court does not find support for the proposition that Plaintiff's provision of his phone number to Defendant constituted written consent.").[5] Plaintiffs erroneously contend that bebe "nebulously suggests—without ever fully articulating its argument—that the mere provision of phone numbers constituted written consent" (id., p. 4) and that bebe is seeking a waiver that far exceeds in scope the one sought by Mammoth because it would cover bebe's collection of mobile telephone numbers in-store at the point-of sale (id., p. 5-6).[6] The Story court has not issued any substantive rulings since its order granting the stay.

To the contrary, bebe is relying on its customers' enrollment in clubbebe and the consent obtained as part of the customer's enrollment. As blatantly ignored by Plaintiffs, Ms. Barrett enrolled in bebe's clubbebe loyalty-based marketing program while making a

---

[5] See also id, p. 6 (Mammoth contended that "'prior express consent,' as interpreted prior to the 2013 rule change, was given by Plaintiff, not through the privacy policy on [Mammoth's] website, but through his provision of his phone number to [Mammoth]."); compare to Petition For Expedited Declaratory Ruling or Forbearance of Mammoth Mountain Ski Area, LLC's Petition, Mammoth Mountain Ski Area, LLC, CG Docket No. CG 02-278 (filed on or about February 23, 2015) (Mammoth contended that "[b]y using [its] website, users are subject to a Privacy Policy in which the user 'agrees to be bound by all of [the] terms and conditions' of the website Privacy Policy, and the Policy explains that '[i]f you do not agree to these terms, please do not access or use this site.'" Mammoth's Privacy Policy allegedly contemplated that these individuals may be required to provide, for example, their telephone number and explained "that Mammoth can use a guest's telephone number to 'offer you specially tailored deals,' to 'fill orders, improve our marketing and promotional efforts, improve our product and service offerings, [and] to deliver information to you and to contact you regarding administrative notices.'"). See Request for Judicial Notice in Support of bebe Stores, inc.'s Reply Brief in Support of Its Motion to Decertify Both Subclasses, Ex. A.

[6] Plaintiffs' objections highlight that different consent scenarios likely exist, including, but not limited to, that a customer enrolled in clubbebe 1) online and later initiated her/his enrollment in bebe Texts in a bebe store, 2) in a bebe store, updated her/his profile on bebe.com and later initiated her/his enrollment in bebe Texts in a bebe store, 3) by calling customer service and later initiated her/his enrollment in bebe Texts in a bebe store, 4) online, initiated her/his enrollment in bebe Texts in a bebe store prior to October 16, 2013, and later updated her/his mobile telephone number, etc.

- 5 -

BEBE STORES, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DECERTIFY BOTH SUBCLASSES
Case No. CV 14-00267-YGR

purchase in a bebe store in October of 2010. <u>See</u> Kourtoglou Decl., ¶ 2(b). As trained, the bebe stylist provided Ms. Barrett with a clubbebe packet that included a plastic clubbebe membership card with Ms. Barrett's unique clubbebe member number and a copy of the clubbebe Terms & Conditions governing her membership in clubbebe. <u>Id.</u>, ¶ 2(c). The clubbebe Terms & Conditions confirm

> …By enrolling in the clubbebe Rewards Program, you agree to be bound by the full clubbebe Terms and Conditions stated herein…

> MISCELLANEOUS

> … By enrolling in the clubbebe Rewards Program, you agree to be bound by the full Terms and Conditions stated herein. You also agree to review these Terms and Conditions periodically and shall be bound by any modifications. If you do not accept these Terms and Conditions, or any subsequent modifications, your sole and exclusive remedy is to terminate your membership in the program…. You may cancel your membership in the clubbebe Rewards Program by calling the following toll-free number 1-877-bebe-777...

> PRIVACY
> … By using the clubbebe membership card, members consent to the use of the clubbebe member's personal information for administering the loyalty program, for marketing and promotional purposes unless the member has opted out, and for internal market research by bebe and its affiliates, and consents to the receipt of information provided by bebe. We do record information regarding the purchases made with your clubbebe membership card to help us conduct market research and analysis, and we provide you with special offers and other information unless you have opted out of receiving such offers…"

<u>Id.</u>, ¶ 2(d); <u>see also id.</u>, ¶ 2(e) & Ex. A. Thus, on October 29, 2010, it was disclosed to Ms. Barrett in writing that she was consenting to being called by bebe at the number that she provided, and bebe's records confirm that Ms. Barrett's purchase that same day was associated with here clubbebe number and she received clubbebe points for the purchase. <u>Id.</u>, ¶ 2(g). On two subsequent occasions, she made purchases at bebe and, on each occasion, her purchase was associated with her clubbebe number enabling her to earn more clubbebe points. <u>Id.</u>, ¶ 2(h), (i).

BEBE STORES, INC.'S REPLY BRIEF IN SUPPORT OF
ITS MOTION TO DECERTIFY BOTH SUBCLASSES
Case No. CV 14-00267-YGR

1    In addition to being able to update her clubbebe profile in-store, like she did, Ms.

2    Barrett could easily login into her clubbebe member account profile on bebe.com at any

3    time to update her information and preferences, to check her clubbebe points and to browse

4    the "clubbebe lounge." See Declaration of Angela Kourtoglou in Support of Bebe Stores,

5    Inc.'s Opposition to Plaintiffs' Motion for Class Certification (Dkt. No. 89-2), Exs. H, K.

6    Ms. Barrett could also opt-out of receiving communications from bebe at any time, which

7    she did not do.

8    Ordinary state-law principles govern the formation of the contract between bebe and

9    Ms. Barrett with respect to her clubbebe membership. See, e.g., Cal. Civ. Code § 1589 ("A

10    voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the

11    obligations arising from it, so far as the facts are known, or ought to be known, to the

12    person accepting."); see also Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 566 (2014).

13    "The mutual intention to be bound by an agreement is the *sine qua non* of legally

14    enforceable contracts and recognition of this requirement is nearly universal." See, e.g.,

15    Casa del Caffe Vergnanos S.P.A. v. ItalFlavors, LLC, 816 F.3d 1208, 1212 (2016) (citing

16    Restatement (Second) of Contracts §§ 2, 17; Cal. Juris. 3d Contracts § 67 ("Mutual consent

17    for a contract is determined under an objective standard applied to the outward

18    manifestations or expressions of the parties. . .")). "[M]utual consent is gathered from the

19    reasonable meaning of the words and acts of the parties, and not from their unexpressed

20    intentions or understanding." Id. (citing Reigelsperger v. Siller, 40 Cal. 4th 574 (2007)).

21    Ms. Barrett voluntarily enrolled in clubbebe and, by her participation in clubbebe on and

22    after October 29, 2010, including, but not limited to, completing purchases by signing the

23    receipts which reflected her clubbebe membership number, earning clubbebe points,

24    receiving other clubbebe benefits and declining to change her profile preferences, she

25    manifested her assent to be bound by the written clubbebe Terms & Conditions, which

26    included her consent to be called by bebe at the number she provided.

27    In addition to the foregoing, when Ms. Barrett's mobile telephone number was

28    added to the mobile telephone number field on December 12, 2013, the bebe stylist, as

BEBE STORES, INC.'S REPLY BRIEF IN SUPPORT OF
ITS MOTION TO DECERTIFY BOTH SUBCLASSES
Case No. CV 14-00267-YGR

1   trained by bebe, provided the scripted information regarding bebe Texts to Ms. Barrett. <u>See</u>

2   bebe's Opp. to Plffs' Mot. for Class Cert. (Dkt. No. 86-3) ("bebe's Opp."), pp. 4:22-6:7

3   ("In store, only if a customer voluntarily and deliberately provided her number for the

4   specific purpose of initiating enrollment in bebe Texts would the stylist enter the number

5   into the 'cell phone field' in the POS."). Here, as Plaintiffs concede in their Motion for

6   Class Certification, Ms. Barrett would have received the scripted information from a bebe

7   stylist when she was asked and provided her mobile telephone number to bebe for inclusion

8   in the mobile telephone number field. <u>Id.</u> (Dkt. No. 91-4), pp. 1: 3-11, 8:20-9:6, 9 n.8, 10:7-

9   9, 11:6-9. Accordingly, Ms. Barrett understood that, by voluntarily agreeing to include her

10  mobile telephone number in the mobile telephone number field, she would receive an Opt-

11  in Text. bebe is unable to confirm whether or not Ms. Barrett received an Opt-in Text; and

12  bebe continues to believe that the Opt-in Text only required prior express consent because it

13  simply confirmed what the bebe stylist told Ms. Barrett about bebe Texts and served

14  exclusively an administrative purpose.

15          3.   <u>Plaintiff is not a proper representative for any subclass because she</u>
              <u>does not recall receiving an Opt-in Text</u>
16

17          Even under <u>Briseno v. ConAgra Foods, Inc.</u>, Ms. Barrett "must establish standing,"

18  <u>i.e.</u>, among other things, that she was "called" (<u>i.e.</u>, she received an Opt-in Text). <u>See id.</u>,

19  No. 15-55727, Opinion, p. 19 (9th Cir. Jan. 3, 2017) (citing <u>Mazza v. Am. Honda Motor</u>

20  <u>Co.</u>, Inc., 666 F.3d 581, 595 (9th Cir. 2012); <u>Bates v. United Parcel Serv., Inc.</u>, 511 F.3d

21  974, 985 (9th Cir. 2007). Here, Ms. Barrett alleges "[o]n information and belief" that bebe

22  sent her Opt-in Text. <u>Id.</u>, ¶ 37. Like Plaintiff Rodriguez, Ms. Barrett has no recollection of

23  receiving an Opt-in Text. <u>Id.</u>, ¶¶ 29, 37. As discussed, <u>infra</u>, neither the bebe List nor the

24  Scrubbed List will confirm who was sent or received an Opt-in Text. Otherwise, if

25  "annoyances and invasions of privacy" are "the harms the Legislature sought to prevent in

26  enacting the TCPA," as contended by Plaintiffs (Dkt. No. 91-3, p. 14:14-20), Ms. Barrett

27  did not suffer any such annoyance or invasion of privacy if she doesn't recall receiving an

28  Opt-in Text (Dkt. No. 112, ¶ 37), if she did receive one.

BEBE STORES, INC.'S REPLY BRIEF IN SUPPORT OF
ITS MOTION TO DECERTIFY BOTH SUBCLASSES
Case No. CV 14-00267-YGR

4. <u>The Court has already confirmed that a subclass cannot be certified if it would require an individual assessment of each customer's experience</u>

In a final effort to save Ms. Barrett, Plaintiffs contend that bebe "apparently does not dispute that Ms. Barrett can represent those individuals who gave their phone numbers to [bebe] prior to October 16, 2013." Opp., p. 9:18-20. To the contrary, bebe made it abundantly clear in its Opposition to Plaintiffs' Motion for Class Certification that such a class cannot be certified. And, the Court agreed when it declined to certify the Main Class, leaving Plaintiff Rodriguez to represent only her individual claims. <u>See id.</u>, p. 18:20-22. Accordingly, Ms. Barrett is not a proper representative for any such subclass.

As the Court found with respect to Plaintiffs' proposed Main Class, for those clubbebe members that Ms. Barrett would purportedly represent, the varied circumstances pursuant to which those customers enrolled in clubbebe "renders the question of consent not one that can be answered on a classwide basis because it would require an individual assessment" of each customer's experience. <u>See id.</u> (Dkt. No. 106), p. 10:18-27.

B. <u>Proceeding As A Class Action Is Not A Superior Method For Adjudication Plaintiffs' TCPA Claims Because Of The Overwhelming Lack Of Evidence In This Case</u>

To prevail on their claims, Plaintiffs are required to prove that (1) a call was made, (2) using an ATDS, (3) to a cell phone number, (4) without the recipient's consent. <u>See Pimental v. Google Inc.</u>, No. C-11-02585-YGR, 2012 WL 691784, at *2 (N.D. Cal. Mar. 2, 2012) (citing 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)). In their response to bebe's objections to Plaintiffs' Proposed Trial Plan ("Response") (Dkt. No. 125), Plaintiffs profess that "this case is readily triable based on common proof <u>presently available</u> to the parties." <u>Id.</u>, p. 2:15:17 (emphasis added). As explained fully in bebe's Reply Brief in Support of Its Objections To Plaintiffs' Proposed Trial Plan (filed herewith) ("Objections Reply"), Plaintiffs' changed strategy does not save their Trial Plan because they cannot overcome Air2Web's absence by Mr. Snyder "creating" some of the missing evidence and theorizing about the technology employed by Air2Web to establish their claims.

4811-8601-2735.v4

1    TCPA cases are not suitable for class resolution when the "unique facts" of a

2    particular case indicate that individual adjudication of a pivotal element is necessary. See

3    Connelly v. Hilton Grand Vacations Co., 294 F.R.D. 574, 577 (S.D. Cal. 2013) (citing Gene

4    & Gene LLC v. BioPay LLC, 541 F.3d 318, 326 (5th Cir. 2008)). "[P]redominance in

5    TCPA cases primarily turns on whether a class-based trial on the merits could actually be

6    administered." Connelly, 294 F.R.D. at 577. "[T]he predominance inquiry for class

7    certification based on predominant questions of law or fact common to class members is

8    satisfied only when plaintiffs advance a viable theory employing generalized proof to

9    establish liability with respect to the class involved." Id. (emphasis added). Here, there are

10   two pivotal issues. First, there is a lack generalized proof that can be employed by Plaintiffs

11   to establish who was "called" and, second, there is a lack of any proof that can be employed

12   by Plaintiffs to establish that an ATDS was used to place the calls. See 47 U.S.C. §

13   227(b)(1)(A)(iii).

14   Although the Briseno court declined to interpret Rule 23 to "impose a freestanding

15   administrative feasibility prerequisite to class certification," it confirmed that "Supreme

16   Court precedent also counsels in favor of hewing closely to the text of Rule 23." Id., No.

17   15-55727, Opinion, p. 10. Here, Rule 23(b)(3) weighs strongly in favor of decertifying both

18   subclasses due to the lack of evidence regarding who received an Opt-in Text and the

19   technology employed by Air2Web for bebe Texts.

20        1.    The lack of evidence regarding who was "called" makes proceeding
               as a class action administrative infeasible
21

22   Due to Air2Web's absence, Plaintiffs has no "generalized proof" regarding who

23   actually was sent and received an Opt-in Text and, without it, it is impossible for Plaintiffs

24   to establish who was "called," as required by 47 U.S.C. § 227(b)(1)(A)(iii), without

25   engaging in individualized inquiries. See Connelly, 294 F.R.D. at 577; Smith, 297 F.R.D. at

26   473. In Briseno, the Court confirms Rule 23(b)(3) contains a specific, enumerated

27   mechanism to achieve that goal of administrative feasibility:

28

BEBE STORES, INC.'S REPLY BRIEF IN SUPPORT OF
ITS MOTION TO DECERTIFY BOTH SUBCLASSES
Case No. CV 14-00267-YGR

[T]he manageability criterion of the superiority requirement. Rule 23(b)(3) requires that a class action be 'superior to other available methods for fairly and efficiently adjudicating the controversy,' and it specifically mandates that courts consider 'the likely difficulties in managing a class action.'

<u>Id.</u>, p. 13 (citing F.R.C.P. 23(b)(3)(D)). Rule 23(b)(3)(D) requires "courts to balance the benefits of class adjudication against its costs."

As explained by the Court, in <u>Smith v. Microsoft Corp.</u>, for purposes of determining whether class action is a superior method of adjudicating claims under TCPA relating to unsolicited text messages, likely management difficulties may weigh against permitting the case to proceed as a class action. 297 F.R.D. 464, 471-473 (2014). Rule 23(b)(3)(D) "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." <u>See id</u> at 471. Here, a significant management difficulty is that individualized inquiry will be required to establish who was "called." 47 U.S.C. § 227(b)(1)(A)(iii).

As tacitly admitted by Plaintiffs and Mr. Snyder, who was sent and received an Opt-in Text from bebe, including, for example, Ms. Barrett and Plaintiff Rodriguez, is not readily ascertainable from the bebe List. Under Plaintiffs' current theory, "[e]ven though Air2Web's records will be unavailable, Plaintiffs still have bebe's customer database and <u>merely need to recreate the Air2Web's validation protocol</u>." Response, p. 5:25-27 (emphasis added). Plaintiffs falsely represent that they have engaged Mr. Snyder "to recreate" the list of consumers who "received" an Opt-in Text from bebe through Air2Web from the evidence listed in its Response. <u>Id.</u>, p. 6:16-27.

Even if we assume that Mr. Snyder will be able to "create" an "outbound call list" of numbers that theoretically may have been sent an Opt-in Text (herein, referred to as a "Scrubbed List"), he has neither been tasked with nor is he able to "create" a list of numbers that were actually sent or "received" an Opt-in Text. Declaration of Randall A. Snyder (Dkt. No. 125-1) ("Snyder Decl." or "Snyder Declaration"), ¶¶ 88-90; <u>compare to</u> Response, p. 6:26-27. In the Snyder Declaration, Mr. Snyder opines:

BEBE STORES, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DECERTIFY BOTH SUBCLASSES
Case No. CV 14-00267-YGR

> Based on my knowledge, education, experience, expertise and training, it is my opinion that consumers' telephone numbers can be definitively and clearly determined to be either cellular or landline numbers…

<u>Id.</u>, ¶ 88-89; <u>see also</u> <u>id.</u>, ¶¶ 83, 84. This conclusion is <u>misleading</u> given that

> If the telephone number in the query is not in service, or otherwise not a verifiable number, an error response is returned to the SMS aggregator and a message is not transmitted. If a carrier identifier value and carrier type is returned from the database to the SMS aggregator for the query, and if the carrier type is cellular, and if the SMS aggregator maintains a connection to the indicated cellular carrier, only then can the automatic text message be transmitted by the SMS aggregator to the carrier indicated in the query response.

<u>Id.</u>, ¶ 86. "If the carrier is not a cellular carrier or if a connection to the carrier identified is not supported by the SMS aggregator, a message is not transmitted." <u>Id.</u>, ¶ 87; bebe's Opp., pp. 6:18-28, 13:22-14:3. As the <u>Smith</u> court noted, "it is possible for a cell phone subscriber to disable text messaging capabilities to his cellular number." 297 F.R.D. at 472. Mr. Snyder will not confirm that numbers on the Scrubbed List were "in service" or that an Opt-in Text was actually transmitted to or received by any of the numbers.

As reasoned by the <u>Smith</u> court, a "scrubbed" list does not establish that the numbers actually received a text. <u>Id.</u> at 472 ("knowing which numbers were cellular numbers that were sent the Xbox Texts is far different from knowing which of those numbers received the Xbox Texts"). According to Air2Web, at one point in time, out of total of 10,284 mobile telephone numbers collected by bebe, of those, <u>8,104 were valid mobile telephone numbers</u>, and of those, <u>only 7,202 messages were successfully transmitted</u>. See bebe's Motion (Dkt. No. 116-1), p. 13:13-23 (citing Dkt. No. 86-11, Ex. AR ("Exhibit AR")). Exhibit AR confirms that Mr. Snyder's Scrubbed List would have error rate of 11-12% or more, as demonstrated by Plaintiffs' Amended Complaint (<u>see id.</u>, ¶¶ 29, 37). Neither Plaintiffs nor Mr. Snyder attempt to rebut Exhibit AR.

As confirmed by the <u>Smith</u> court, requesting members of the subclasses to self-certify receipt of an Opt-in Text is not a solution.  297 F.R.D. at 472-73 ("Even notifying all potential class members of the lawsuit and asking them to opt-in if they remember

1   receiving one of the Xbox Texts is likely to be ineffective, because it is highly unlikely that,

2   more than five years out, an individual would remember receiving that single unsolicited

3   text message."); see also Kosta v. Del Monte Foods, Inc., 308 F.R.D. 217, 229 (N.D. Cal.

4   2015) (Customers would have "to engage in a complicated memory test to establish class

5   membership."). Two out of the three Plaintiffs in this litigation do not recall receiving an

6   Opt-In Text. See Amended Compl., ¶¶ 29, 37. Plaintiff Rodriguez does not recall the

7   transaction, the Opt-in Text or her Opt-in Response. See id. (Dkt. No. 86-3), p. 10:3-5; see

8   also Amended Compl., ¶ 29. It is unclear how Ms. Barrett expects to establish that she

9   received an Opt-in Text. See id., ¶ 37.

10          Fundamentally, Plaintiffs cannot advance a viable theory employing "generalized

11   proof" whereby they will be able to establish that members of the subclasses were "called."

12   47 U.S.C. § 227(b)(1)(A)(iii). F.R.C.P. 23(b)(3); Connelly, 294 F.R.D. at 577. And,

13   Plaintiffs have otherwise advanced no viable theory to identify class members through

14   "reasonable effort" (see, Briseno, p. 15) and, for this reason, they will be unable to ascertain

15   true members of the class without engaging in individualized inquiry (Connelly, 294 F.R.D.

16   at 578-79; Smith, 297 F.R.D. at 473 ("determining whether each of the numbers on the

17   'scrubbed' list received a text message and thus is properly within the class would require

18   the Court and the parties to engage in timely and individualized fact-finding that would be

19   extremely inefficient and unmanageable on a class-wide basis")).

20          The absence of generalized proof regarding who received an Opt-in Text will affect

21   all stages of this litigation. See, e.g., Briseno, p. 17 n.8, 20-21. As noted by the Smith court,

22   "[a]mong other considerations, [t]his 'manageability' requirement includes consideration of

23   the potential difficulties in notifying class members of the suit, calculation of individual

24   damages, and distribution of damages." Smith, 297 F.R.D. at 471, 473. Identifying who was

25   called will be required to both establish liability, if any, and to determine the extent of

26   liability, again, if any. Accurate identification of the subclass members will significantly

27   affect any determination regarding the extent of liability given 47 U.S.C. § 227(b)(3).

28   Compare to Briseno, p. 22.  Otherwise, if there is liability, without evidence of who actually

BEBE STORES, INC.'S REPLY BRIEF IN SUPPORT OF
ITS MOTION TO DECERTIFY BOTH SUBCLASSES
Case No. CV 14-00267-YGR

1    received an Opt-in Text, it will be nearly impossible for any claims administrator to use

2    reasonable efforts determine which claims are valid or not. Id. at 15, 17. Like in Smith, the

3    Court should have "significant qualms about the manageability of this class action" due to

4    the overwhelming lack of evidence. 297 F.R.D. at 471.

5         Unlike in "class actions involving low-cost consumer goods," fraudulent claims are

6    a valid concern here given the $500 to $1,500 per call. Individuals who do not recall

7    receiving an Opt-in Text may be financially motivated to lie by 47 U.S.C. § 227(b)(3).

8    Compare to Briseno, p. 17 (citing Mullins v. Direct Digital, LLC, 795 F.3d 654, 667 (7th

9    Cir. 2015) ("The fraud concern may be valid in theory, but 'in practice, the risk of dilution

10   based on fraudulent or mistaken claims seems low, perhaps to the point of being

11   negligible.'"). Here, Plaintiff Rodriguez has continued to prosecute her claims even though,

12   under governing law, she provided the requisite consent by voluntarily providing her

13   mobile telephone number to bebe in June of 2013. In support of Plaintiffs' Motion for Class

14   Certification, Plaintiff Rodriguez admitted that she "provided her telephone number orally

15   to the clerk. Then, [bebe] sent [her] an "opt-in" text message[.]" Pltfs' Memo. of Pts and

16   Auth. in Sup. of Mot. for Class Cert. (Dkt. 83-5), p. 3:12-15; see also Pltfs' Reply In Sup.

17   of Pltfs' Mot. for Class Cert. (Dkt. No. 91-4), p. 13 n.14. Plaintiff Rodriguez has also been

18   a member of clubbebe for 10+ years, as admitted by her. bebe's Opp., pp. 9:20-10:13. Like

19   Ms. Barrett, as a clubbebe member, Plaintiff Rodriguez "consent[ed] to the use of [her]

20   personal information for… marketing and promotional purposes unless [she] and

21   consent[ed] to the receipt of information provided by bebe." Id., p. 3:25-4:2. Plaintiff

22   Rodriguez even sent bebe an Opt-in Response, confirming her enrollment in bebe Texts.

23   Id., p. 10:8-11. Nonetheless, in the Amended Complaint, she alleges that "[o]n information

24   and belief, on or about June 21, 2013, Defendant sent [her] an unsolicited and un-consented

25   to text message." Id., ¶29.

26        "[W]hen the complexities of class action treatment outweigh the benefits of

27   considering common issues in one trial, class action treatment is not the 'superior' method

28   of adjudication." Smith, 297 F.R.D. at 471 (citing Zinser v. Accufix Research Inst., Inc.,

BEBE STORES, INC.'S REPLY BRIEF IN SUPPORT OF
ITS MOTION TO DECERTIFY BOTH SUBCLASSES
Case No. CV 14-00267-YGR

253 F.3d 1180, 1192 (9th Cir.2001) (citations omitted). Like <u>Smith</u>, the Court should conclude that Rule 23(b)(3)(D) weighs in favor of allowing individual plaintiffs who know that they received an Opt-in Text to decide whether to bring suit. 297 F.R.D. at 473.

> 2.   <u>The lack of evidence regarding the technology employed by Air2Web for bebe Texts also weighs against this case proceeding as a class action</u>

Again, fundamentally, Plaintiffs have not and cannot advance a viable theory employing any proof let alone "generalized proof" to establish that an ATDS was employed for bebe Texts (47 U.S.C. § 227(b)(1)(A)(iii)). F.R.C.P. 23(b)(3); <u>Connelly</u>, 294 F.R.D. at 577. Due to the absence of Air2Web, Plaintiffs have no evidence establishing the technology actually employed by Air2Web and, without it, it is impossible to establish that it had "the capacity— (i) to store or produce telephone numbers to be called, using a random or sequential number generator; and (ii) to dial such numbers," as required by 47 U.S.C. § 227(a)(1). This lack of evidence is clear in Plaintiff's trial plan.

It is well established that the first five categories of exhibits identified by Plaintiff, alone, cannot be used to establish what technology was employed by Air2Web. <u>See</u> bebe's Opp., p. 7:7-16; Joint Case Management Statement (Dkt. No. 120), p. 4:11-18; Response, p. 2:18-22; Order Denying Defendant's Motion to Stay Litigation (Dkt. No. 66), pp. 5:11-28, 6:4-7; Plfs' Opp.  to Def.'s Mot. to Stay Litig. (Dkt. No. 61), p. 3:9; bebe's Motion (Dkt. No. 117-1), p. 5:17-26.[7] At issue is the newly added exhibit "Expert Snyder's report regarding Air2Web's technology." <u>Id.</u>, p. 8:23.

Mr. Snyder has no personal knowledge of the technology employed by Air2Web for bebe Texts. Nowhere does he identify or provide any analysis of what he refers to as "equipment employed by bebe and Air2Web's automatic text messaging system." <u>Id.</u>, ¶

---

[7]   Plaintiff further purportedly expects to rely on witness testimony from bebe's representative(s) regarding its point-of-sale, confidential and proprietary software, databases and systems, mGage's outbound call equipment/software representative(s), and Mr. Snyder. Response, pp. 8:24-9:4. <u>None of these individuals has actual knowledge of Air2Web's operations</u>. Even though they do not include a category for former Air2Web employees, they claim that Mr. Scholl could be subpoenaed. <u>Id.</u>, p. 7 n.2. They provide no explanation regarding his purported knowledge of bebe Texts and Plaintiffs' view is that "the issues presented in the <u>Sensia</u> Petition are irrelevant." <u>Id.</u> (Dkt. No. 61), p. 3:9.

104. The Snyder Declaration simply states that Air2Web "was the mobile marketing and SMS aggregation company employed by the Defendant to automatically transmit cellular text messages <u>en masse</u> using the short code '42323.'" Snyder Decl., ¶¶ 24, 25, 54-61; <u>compare to id.</u>, ¶ 104. Without source documents, because none exists, he theorizes

> Based on my analysis of the equipment employed by bebe and Air2Web's automatic text messaging system, I conclude that this equipment has the capacity to, and does, store telephone numbers to be called, dials (sends messages to) telephone numbers from a stored list of numbers and automatically dials (sends text messages to) those telephone numbers without human intervention.

Snyder Decl., ¶ 104. Mr. Snyder does not opine that Air2Web's technology had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (47 U.S.C. § 227(a)(1)(A)) or to dial numbers (47 U.S.C. § 227(a)(1)(B)), and his "opinion" that bebe Texts did not require human intervention runs contrary to the evidence provided by bebe (<u>see</u> bebe's Opp., pp. 2:5, 5:24-27, 6:14-9:17, 6:1-3, 6:14-15, 6:18-27, 11 n.7) and governing legal authority.[8] <u>See also</u>, <u>generally</u>, bebe's Objections Reply (filed herewith).

    Mr. Snyder's declaration is self-serving and lacks a sufficient foundation, leaving him to speculate regarding the technology employed by Air2Web. Plaintiffs' inability to advance a viable theory employing "generalized proof" to establish that an ATDS was employed for bebe Texts (47 U.S.C. § 227(b)(1)(A)(iii)) weighs against this litigation proceeding as a class action. F.R.C.P. 23(b)(3).

    C.    <u>Plaintiffs Should Not Be Granted Leave To Find a Proper Representative for the Post-October 16, 2013 Club Bebe Class</u>

    Plaintiffs argue that the Court should grant them leave to find a proper representative for the Post-October 16, 2013 Club Bebe Class because they "relied" on bebe's "documents and testimony in vetting additional class representatives." <u>Id.</u>, p. 9:12-

---

[8]    <u>See</u> <u>Satterfield</u>, 569 F.3d at 951; <u>Luna v. Shac, LLC</u>, 122 F. Supp. 3d 936, 940-41 (N.D. Cal. 2015); <u>Marks v. Crunch San Diego, LLC</u>, 55 F. Supp. 3d 1288, 1292 (S.D. Cal. 2014) ("FCC's statutory interpretation of the term ATDS is not binding on the courts in the Ninth Circuit."); <u>Jenkins v. mGage, LLC and LL Atlanta, LLC d/b/a Opera Nightclub</u>, No. 1:14-cv-2791-WSD, 2016 WL 4263937, *7 (D. Ga. Aug. 12, 2016)).

1    17. This is a ridiculous contention. Ms. Barrett has personal knowledge of the facts that

2    Plaintiffs' purportedly relied on. It is readily apparent that they did not vet Ms. Barrett or, if

3    they did, they are attempting to mislead the Court, denying that they knew that she first

4    provided her mobile telephone number to bebe in 2010. There was nothing preventing them

5    from contacting numerous individuals identified in the bebe List years ago and actually

6    vetting these individuals, including, by way of example only, asking 1) when they enrolled

7    in clubbebe, 2) when they first provided bebe with their mobile telephone number, 3) what

8    the bebe stylist said to them about bebe Texts, and 4) when they received an Opt-in Text.

9    Otherwise, on October 26, 2016, bebe's counsel confirmed to Plaintiffs' counsel

10   that Ms. Barrett first provided her mobile telephone number to bebe on October 29, 2010

11   and, therefore, she was not a proper representative for the Post-October 16, 2013 Club Bebe

12   Class. Pierce Decl., ¶ 2 & Ex. A. By their own admission, Plaintiffs have made no effort to

13   identify another subclass representative for the Post-October 16, 2013 Club Bebe Class.

14   Plaintiffs were given a gift when the Court gave them 60 days to identify a proper

15   representative for the Post-October 16, 2013 Club Bebe Class and they squandered it by

16   failing to fully vet Ms. Barrett or to identify potential other representatives for this subclass.

17   And, of course bebe will be prejudiced if Plaintiffs are permitted to continue with their

18   fishing expedition, especially given the lack of evidence supporting any of the Plaintiffs'

19   claims. The gift giving season is over.

20   III.    CONCLUSION

21   Ms. Barrett is not a proper class representative for the Post-October 16, 2013 Club

22   Bebe Class because she consented to bebe calling her at her mobile telephone number in

23   2010 when she enrolled in clubbebe and provided bebe with her mobile telephone number,

24   and because she does not even recall ever receiving an Opt-in Text. Decertification of this

25   subclass is required. Otherwise, fundamentally, Plaintiffs have not and cannot advance a

26   viable theory employing "generalized proof" to establish bebe's liability under 47 U.S.C. §

27   227(b)(1)(A)(iii), as required by Rule 23(b)(3). The overwhelming lack of evidence in this

28   case and the risk of fraudulent claims outweigh the benefits of considering common issues

in one trial. Rule 23(b)(3)(D) weighs in favor of allowing individual plaintiffs who know that they received an Opt-in Text to decide whether to bring suit. For this reason, bebe submits that class action treatment is not the superior method of adjudication and, in the interest of averting wasteful litigation, both subclasses should be decertified for failure to satisfy Rule 23(b)(3).

Dated: January 13, 2017

PILLSBURY WINTHROP SHAW PITTMAN LLP
MARK E. ELLIOTT (CA Bar No. 157759)
AMY L. PIERCE (CA Bar No. 210539)


By:    _____/s/ Amy L. Pierce_____
           Amy L. Pierce
           Attorneys for Defendant BEBE STORES, INC.