PILLSBURY WINTHROP SHAW PITTMAN LLP
MARK E. ELLIOTT (CA Bar No. 157759)
mark.elliott@pillsburylaw.com
AMY L. PIERCE (CA Bar No. 210539)
amy.pierce@pillsburylaw.com
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone: (213) 488-7100
Facsimile: (213) 629-1033

Attorneys for Defendant BEBE STORES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MELITA MEYER, individually, and on behalf of all others similarly situated,<br><br>  Plaintiff(s),<br><br>  vs.<br><br>BEBE STORES, INC.,<br><br>  Defendant(s).<br><br>SAMANTHA RODRIGUEZ, individually, and on behalf of all others similarly situated,<br><br>  Plaintiff(s),<br><br>  vs.<br><br>BEBE STORES, INC.,<br><br>  Defendant(s). | Case No.: 14-CV-00267-YGR<br><br>**CLASS ACTION**<br><br>**BEBE STORES, INC.'S SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF ITS MOTION TO DECERTIFY BOTH SUBCLASSES [F.R.C.P. RULE 23]**<br><br>Date:   February 7, 2017<br>Time:   2:00 P.M.<br>Dept.:   1, 4th Floor<br>Judge:   Hon. Yvonne Gonzalez Rogers<br><br>Case No.: 14-CV-01968-YGR |

I.      INTRODUCTION

As confirmed by the Ninth Circuit in Briseno v. ConAgra Foods, Inc., Rule 23(b)(3) itself permits a Court to decline to certify, or in this case, to decertify a TCPA class action when proceeding as a class action is not superior to other available methods for fairly and efficiently adjudicating the controversy, as it the case here.[1] Id., No. 15-55727, Opinion (9th Cir. Jan. 3, 2017). Rule 23(b)(3) provides that

> A class action may be maintained if Rule 23(a) is satisfied and if:…
> (3)     the court finds that <u>the questions of</u> law or <u>fact</u> common to class members predominate over any questions affecting only individual members, and that <u>a class action is superior to other available methods for fairly and efficiently adjudicating the controversy</u>. The matters pertinent to these findings include:
> (A)     the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B)     the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C)     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D)     <u>the likely difficulties in managing a class action</u>. (Emphases added).

bebe is not asking the Court to impose a separate administrative feasibility requirement. Rather, bebe is asking the Court to consider the current posture of this action, again with a "rigorous analysis of the Rule 23 requirements." Briseno, p. 10 (citing Sandusky Wellness Ctr., LLC, v. Medtox Sci., Inc., 821 F.3d 992, 996 (8th Cir. 2016)); id., p. 13 (citing F.R.C.P. 23(b)(3)(D)); see also Smith v. Microsoft Corp., 297 F.R.D. 464, 471-73 (2014).

Here, like in Smith, discovery did not and will not provide necessary material facts, including but not limited to, who was "called." 297 F.R.D. at 471 (Court confirmed that "it does not seem likely that discovery will provide the necessary answers, because the information simply no longer exists"). The lack of generalized proof and resulting "difficulties in managing [this case as] a class action," among other things,[2] "outweigh the

---

[1] Briseno is not relevant to bebe's argument that there is no generalized proof that could be used to establish who was called and that any calls were made by an ATDS.

[2] If the FCC grants bebe's Petition, whether bebe had the requisite written consent to send the Opt-in Text will be a question of state contract law in each state in which a clubbebe subclass member resides. Accordingly, for at least the Post-October 16, 2013 Club Bebe Class, this new legal issue weighs against the case proceeding as a class action under Rule 23(b)(3)(C). This is consistent with the Ninth Circuit confirming that, "where the

benefits of considering common issues in one trial." 297 F.R.D. at 471-73; Briseno, p. 13 (citing F.R.C.P. 23(b)(3)(D)). bebe's proposed approach is consistent with both Briseno and Smith and, accordingly, its Motion should be granted.

II.   ARGUMENT

The Briseno court confirmed that "the language of Rule 23 does not impose a freestanding administrative feasibility prerequisite to class." Id., p. 10. It reasoned that "Rule 23's enumerated criteria already address the policy concerns that have motivated some courts to adopt a separate administrative feasibility requirement." Id., p. 11-12 (emphasis added). The Briseno court confirms that

> Rule 23(b)(3) already contains a specific, enumerated mechanism to achieve that goal: the manageability criterion of the superiority requirement. Rule 23(b)(3) requires that a class action be 'superior to other available methods for fairly and efficiently adjudicating the controversy,' and it specifically mandates that courts consider 'the likely difficulties in managing a class action.'

Id., p. 13 (citing Fed. R. Civ. P. 23(b)(3)(D)). The premise for bebe's Motion is that proceeding with this case as a class action is not superior to other available methods for fairly and efficiently adjudicating the controversy because of the overwhelming lack of evidence. The lack of evidence regarding who was called will, among other things, lead to "difficulties" and inefficiencies in managing this case as a class action for all of the reasons delineated in Smith.

As explained in bebe's Motion, courts agree that TCPA cases are not suitable for class resolution when the "unique facts" of a particular case indicate that individual adjudication of a pivotal element is necessary. See, e.g., Connelly v. Hilton Grand Vacations Co., 294 F.R.D. 574, 577 (S.D. Cal. 2013) (citing Gene & Gene LLC v. BioPay

---

potential plaintiffs are located across the country and where the witnesses and the particular evidence will also be found across the country, plaintiffs have failed to establish any particular reason why it would be especially efficient for this Court to hear such a massive class action lawsuit." Smith, 297 F.R.D. at 470 (citing Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1191-92, opinion amended on denial of reh'g, 273 F.3d 1266 (9th Cir. 2001) (quoting Haley v. Medtronic, Inc., 169 F.R.D. 643, 653 (N.D. Cal. 1996)).

1  LLC, 541 F.3d 318, 326 (5th Cir. 2008)); see also Order Granting in Part and Denying in
2  Part Plaintiffs' Motion for Class Certification (Dkt. No. 106), p. 10 ("The Court thus finds
3  that the varied scripts and instructions provided to different stores at different times as
4  demonstrated by bebe's evidence renders the question of consent not one that can be
5  answered on a classwide basis because it would require an individual assessment of what
6  each customer was told."). "[P]redominance in TCPA cases primarily turns on whether a
7  class-based trial on the merits could actually be administered." Connelly, 294 F.R.D. at
8  577. "[T]he predominance inquiry for class certification based on predominant questions of
9  law or fact common to class members is satisfied only when plaintiffs advance a viable
10 theory employing generalized proof to establish liability with respect to the class involved."
11 Id. (emphasis added). Plaintiffs brushed over in both their Motion for Class Certification
12 and their opposition to bebe's Motion that there is a lack generalized proof that can be
13 employed by them to establish who was "called" and, moreover, that an ATDS was used to
14 place any calls. See 47 U.S.C. § 227(b)(1)(A)(iii). In their reply brief, they fail to even
15 mention or address Smith and otherwise ignore that the Smith court denied class
16 certification in a nearly identical TCPA class action involving the plaintiff's proposed use
17 of a "scrubbed" list of individuals to identify who was called by the defendant.
18      The Smith court explained that, for purposes of determining whether class action is
19 a superior method of adjudicating claims under TCPA relating to unsolicited text messages,
20 likely management difficulties may weigh against permitting the case to proceed as a class
21 action. 297 F.R.D. at 471-73. In particular, it noted that Rule 23(b)(3)(D) "encompasses the
22 whole range of practical problems that may render the class action format inappropriate for
23 a particular suit." See id. at 471 ("it would be extraordinarily difficult to identify the class
24 members, communicate to the proposed class members the required Rule 23(c)(2)(B)
25 notices, and send the proposed class members their share of any recovery"). Here, like in
26 Smith, a significant management difficulty is that individualized inquiry will be required to
27 establish who was "called." 47 U.S.C. § 227(b)(1)(A)(iii). This difficulty is demonstrated
28 by the fact that two of the three Plaintiffs alleged on information and belief that they

BEBE STORES, INC.'S SUPP. REPLY BRIEF ISO ITS
MOTION TO DECERTIFY BOTH SUBCLASSES
Case No. CV 14-00267-YGR

received an Opt-in Text confirming that they do not recall receiving one. Am. Compl. (Dkt. No. 106), ¶¶ 29, 37; Fed. R. Civ. P. 23(b)(3)(D); compare to Briseno, p. 19 ("Class representatives must establish standing by, for example, showing that they bought the product or used the service at issue.") (citing Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 595 (9th Cir. 2012)).

In support of their argument that it doesn't matter that they cannot identify who was called, Plaintiffs cite to the Briseno court's statement

> Rule 23 specifically contemplates the need for such individualized claim determinations after a finding of liability.

Id., p. 21 (citing Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment (explaining that certification may be proper "despite the need, if liability is found, for separate determinations of the damages suffered by individuals within the class"); see also Levya v. Medline Indus. Inc., 716 F.3d 510, 513–14 (9th Cir. 2013) (reaffirming, after Comcast Corp. v. Behrend, 133 S. Ct. 1426 (2013), that the need for individualized damages determinations after liability has been adjudicated does not preclude class certification). However, Plaintiffs' ignore they must first establish liability by introducing evidence that the TCPA has been violated by, among other things, identifying who was "called" and that an ATDS was used.[3] "[I]f the case proceeds past the certification stage, the plaintiff class must carry the burden of proving every element of its claims to prevail on the merits." Briseno, p. 19-20.

In their Motion for Class Certification, Plaintiffs only theorized about what generalized proof could be used to establish a TCPA claim. None of this evidence has materialized and, for this reason, bebe has asked the Court to reconsider its order certifying

---

[3] In Briseno, "Plaintiffs argue[d] that the '100% Natural' label is false or misleading because Wesson oils are made from bioengineered ingredients (genetically modified organisms, or GMOs) that Plaintiffs contend are 'not natural.'" Id., pp. 4-5. Thus, theoretically, the plaintiffs could establish liability by proving that the labels were false or misleading and, thereafter, identify who had a claim.

two subclasses. The absence of generalized proof regarding who received an Opt-in Text will affect all stages of this litigation. See, e.g., Briseno, p. 17 n.8, 20-21; compare to Smith, 297 F.R.D. at 471, 473 ("[a]mong other considerations, [t]his 'manageability' requirement includes consideration of the potential difficulties in notifying class members of the suit, calculation of individual damages, and distribution of damages."). At the outset, identifying who was called impacts who will receive notice of the class action. See Smith, 297 F.R.D. at 473 (Court voiced concern "about identifying and providing notice to the class members as individuals, not merely numbers on a list. Before Plaintiff 'scrubbed' the m-Qube List, one of Microsoft's experts calculated that approximately 25% of the numbers were disconnected or no longer in service.").

Presumably, Plaintiffs will argue that everyone on the Scrubbed List should receive notice. Plaintiffs' theory appears to be that if they can identify one individual who can recall receiving an Opt-in Text (i.e., Plaintiff Meyer), then the burden shifts to bebe to establish that all other individuals on the Scrubbed List did not. That is not the law. It is Plaintiffs' affirmative burden to establish each element of a TCPA cause of action for each subclass member, including, but not limited to, establishing that each subclass member was called without her/his consent. See 47 U.S.C. § 227(b)(1)(A)(iii); see also Smith, 297 F.R.D. at 472 ("Without [Microsoft's vendor's] business records, however, Plaintiff simply will not be able to prove … his TCPA claim.") (citing Meyer v. Portfolio Recovery Associates, LLC, 707 F.3d 1036 (9th Cir. 2012)).

Identifying who was called will be required to both establish liability, if any, and to determine the extent of liability, again, if any. Unlike in Briseno and cases cited by the Briseno court, accurate identification of the subclass members will significantly affect any determination regarding the extent of liability given 47 U.S.C. § 227(b)(3). Compare to Briseno, p. 22 ("identification of class members will not affect a defendant's liability in every case"); id., p. 22 (citing Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1307 (9th Cir. 1990) ("Where the only question is how to distribute damages, the interests affected are not the defendant's but rather those of the silent class members.")).

Plaintiffs' argument is premised on theoretical liability, ignoring that it is their burden to establish liability and their ability to do so hinges on their ability to identify who actually received an Opt-in Text. Compare to Briseno, pp. 15, 17.

Plaintiffs otherwise make no effort to demonstrate how they can rehabilitate Mr. Snyder's declaration or establish who was sent and received an Opt-in Text. Instead, they actively try to mislead the Court by claiming that the "scrubbed list" is a "reliable method for identifying Class Members," which it is not. Id., p. 5. As explained in bebe's reply brief, even if we assume that Mr. Snyder will be able to "create" a Scrubbed List, he cannot "create" a list of numbers that were actually sent or "received" an Opt-in Text. Declaration of Randall A. Snyder (Dkt. No. 125-1), ¶¶ 88-90; compare to Plaintiffs' Response to bebe's Objections to Plaintiffs' Proposed Trial Plan (Dkt. No. 125), p. 6:26-27. The Smith court confirmed that a "scrubbed" list does not establish that the numbers actually received a text. Id. at 472 ("knowing which numbers were cellular numbers that were sent the Xbox Texts is far different from knowing which of those numbers received the Xbox Texts").

Plaintiffs are left without a viable theory employing "generalized proof" or "reasonable efforts" to establish that members of the subclasses were "called" and therefore are entitled to damages. See 47 U.S.C. § 227(b)(1)(A)(iii); F.R.C.P. 23(b)(3); Connelly, 294 F.R.D. at 577-79; Briseno, p. 15; Smith, 297 F.R.D. at 473. The Briseno court confirms that "[r]equiring plaintiffs to propose a mechanism for eventually determining whether a given class member is entitled to damages is different from requiring plaintiffs to demonstrate an administratively feasible way to identify all class members at the certification stage." Id., p. 11 n.6.[4] Declining to certify a class, the Smith court reasoned that "determining whether

---

[4] The Briseno Court noted that, although the Fourth Circuit reversed class certification based in part on potential "administrative barrier[s]" to ascertaining class members and cited the Third Circuit in doing so, the "administrative barriers" identified by the court in "sounded in definitional deficiencies, numerosity questions, predominance problems, and management difficulties—issues that all implicate other class certification criteria." Id., p. 11 n.6 (citing EQT Prod. Co. v. Adair, 764 F.3d 347, 358–60 (4th Cir. 2014) (internal citations omitted). Thus, the lack of ascertainability is not determinative that the issue is beyond the reach of Rule 23.

each of the numbers on the 'scrubbed' list received a text message and thus is properly within the class would require the Court and the parties to engage in timely and individualized fact-finding that would be extremely inefficient and unmanageable on a class-wide basis." Id. at 473.

Plaintiffs evidently believe that it is appropriate to postulate that the claims adjuster will figure out who was called without identifying how she/he will be able to audit the claims if the only evidence is the Scrubbed List. The Smith court confirmed that in a TCPA case requesting members of the subclasses to self-certify receipt of a text message is not a solution. 297 F.R.D. at 472-73 ("Even notifying all potential class members of the lawsuit and asking them to opt-in if they remember receiving one of the Xbox Texts is likely to be ineffective, because it is highly unlikely that, more than five years out, an individual would remember receiving that single unsolicited text message."); see also Kosta v. Del Monte Foods, Inc., 308 F.R.D. 217, 229 (N.D. Cal. 2015) (Customers would have "to engage in a complicated memory test to establish class membership."). Again, here, two out of the three Plaintiffs simply do not recall receiving an Opt-In Text. See Amended Compl. (Dkt. No. 112), ¶¶ 29, 37. Plaintiffs make no attempt to rehabilitee Ms. Rodriguez's and Ms. Barrett's allegations on information and belief that they received an Opt-in Text. See Amended Compl., ¶¶ 29, 37.

The Briseno court did not confirm that fraud is never a valid concern. Rather, in concluded that the risk of fraud and mistaken claims would be low especially in "class actions involving low-cost consumer goods." Id., p., 8-9. Fraudulent claims are a valid concern in TCPA class actions given the $500 to $1,500 per call remedy and the Briseno court said nothing to the contrary. See 47 U.S.C. § 227(b)(3); compare to Briseno, p. 17 (citing Mullins v. Direct Digital, LLC, 795 F.3d 654, 667 (7th Cir. 2015) ("In this case, for example, the value of each claim is approximately $70 (the retail price)."). This not a "de minimis monetary recovery." Compare to Briseno, p. 17. Individuals who do not recall receiving an Opt-in Text will no doubt be financially motivated to lie to collect at a minimum $500. Compare to Briseno, p. 17. Here, Plaintiffs ignore that Plaintiff Rodriguez

does not recall receiving an Opt-in Text and, for this reason, certainly cannot complain that her privacy was invaded. And, moreover, Plaintiff Rodriguez has continued to prosecute her claims even though, under governing law, she has no claim because she and her attorneys are no doubt motivated by the damages available under the TCPA.

In addition, in contrast to the facts of Briseno, because of the $500 to $1,500 per call remedy, consumers may be incentivized to file a small claims court action if they, in fact, believe that their privacy was invaded by their receipt of an Opt-in Text. This is particularly true here because Plaintiffs' lack of diligence in recovering evidence from Air2Web or its successor, mGage, has left subclass members very vulnerable to the possibility that they recover $0 and be barred from bringing separate claims.

Rule 23(b)(3)(D) requires "courts to balance the benefits of class adjudication against its costs." Here, the balance weighs in favor of allowing individual plaintiffs who know that they received an Opt-in Text to decide whether to bring suit, which can be brought in a small claims court. "The [TCPA's] statutory remedy is designed to provide adequate incentive for an individual plaintiff to bring suit on his own behalf." Smith, 297 F.R.D. at 469. And, because "[t]he TCPA, unlike many consumer protection statutes, does not provide for attorney's fees," requiring an individual plaintiff to bring a TCPA case in small claims court without an attorney is reasonable. See id.; see also Cellco P'ship v. Wilcrest Health Care Mgmt. Inc., Civil Action No. 09–3534(MLC), 2012 WL 1638056, at *8 (citing 137 Cong. Rec. S16,204 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings)) (explaining that Congress intended plaintiffs to pursue their TCPA claims in state small claims courts); 137 Cong. Rec. 30,821–22 (1991).

III.   CONCLUSION

The overwhelming lack of evidence in this case regarding who was called and whether an ATDS was used, and the risk of fraudulent claims outweigh the benefits of considering common issues in one trial. Rule 23(b)(3) weighs in favor of allowing individual plaintiffs who know that they received an Opt-in Text to decide whether to bring suit. For this reason, bebe submits that class action treatment is not the superior method of

1  adjudication and, in the interest of averting wasteful litigation, both subclasses should be
2  decertified for failure to satisfy Rule 23(b)(3).

Dated: January 27, 2017

PILLSBURY WINTHROP SHAW PITTMAN LLP
MARK E. ELLIOTT (CA Bar No. 157759)
AMY L. PIERCE (CA Bar No. 210539)


By:  /s/ Amy L. Pierce
     Amy L. Pierce
     Attorneys for Defendant BEBE STORES, INC.