UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MELITA MEYER, ET AL.,**<br>Plaintiffs,<br>v.<br>**BEBE STORES, INC.**,<br>Defendant. | Case No. 14-cv-00267-YGR<br><br>**ORDER DENYING BEBE'S MOTION TO STRIKE OR FOR MORE DEFINITE STATEMENT; DENYING MOTION TO DECERTIFY**<br><br>Re: Dkt. No. 115, 116, 117 |

Plaintiffs bring this class action against defendant bebe Stores, Inc. ("bebe") alleging two counts: (i) negligent violations of the Telephone Consumer Protection Act ("TCPA"); and (ii) willful violations of the TCPA. (Dkt. No. 112, "FAC".) To prevail under the TCPA, plaintiffs must establish that a defendant: (i) "made" text message calls (ii) using an automatic telephone dialing system ("ATDS")[1] (iii) without prior express consent. 47 U.S.C. § 227(b)(1). Beginning on October 16, 2013, regulations became effective requiring prior express *written* consent before "deliver[ing] or caus[ing] to be delivered to the person called advertisements or telemarketing messages using an [ATDS]." 47 C.F.R. §§ 64.1200(a)(2), (f)(8). The Court previously certified two classes in this action:

> **1. Post-October 16, 2013 Non-Club bebe Class**
> All persons within the United States who provided their mobile telephone number to bebe in one of bebe's stores at the point-of-sale and were sent an SMS or text message from bebe during the period of time beginning October 16, 2013 and continuing until the date the Class is certified, who were not members of Club bebe during the Class Period.

---

[1] The term ATDS is defined as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator[, and] to dial such numbers." 47 U.S.C. § 227(a)(1).

> **2. Post-October 16, 2013 Club bebe Class**
> All persons within the United States who provided their mobile telephone number to bebe in one of bebe's stores at the point-of-sale and were sent an SMS or text message from bebe during the period of time beginning October 16, 2013 and continuing until the date the Class is certified, who were members of Club bebe during the Class Period.

With regards to the Club bebe Class, the Court instructed plaintiffs to present an amended complaint joining a proper class representative, else the Court would decertify the same. On October 21, 2016, plaintiffs filed an amended complaint naming plaintiff Courtney Barrett as a representative for the Club bebe Class. (*See* FAC.)

Now before the Court are two motions from bebe:[2] (i) motion to decertify both classes; and (ii) motion to strike, or in the alternative for a more definite statement, allegations relating to plaintiff Courtney Barrett. (Dkt. Nos. 115, 116.) With regards to the motion to decertify, bebe argues that the Court should decertify both classes because further discovery has revealed (i) that neither class is ascertainable and (ii) plaintiffs lack common proof as to whether the equipment used was an ATDS. Bebe further argues that the Court should decertify the Club bebe Class on the grounds that plaintiff Barrett is an improper representative. On January 6, 2017, the Court requested supplemental briefing on the effect of the Ninth Circuit's recent decision in *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) on the topic of ascertainability. The parties filed supplemental briefs on January 20 and 27, 2017. (Dkt. Nos. 136, 137.)

Having carefully considered the pleadings, the papers submitted on these motions, and oral arguments held on February 7, 2017, the Court **DENIES** bebe's motions.[3]

---

[2] Defendant bebe also filed a motion regarding its objections to plaintiffs' trial plan. While the Court acknowledges such objections and will consider the same if and when the time comes to prepare for trial, such is not a proper motion and does not at this time require action from the Court. Accordingly, the Court administratively terminates Docket Number 117.

[3] Plaintiffs and bebe each filed two administrative sealing motions (Dkt. Nos. 123, 124, 132, 134). The material in question is subject to an earlier Stipulated Protective Order, allowing the parties to designate certain documents produced in discovery as confidential. (Dkt. No. 53.) The Court finds the requests are sufficiently justified under the applicable "good cause" standard and, therefore, **GRANTS** the motions to seal the designated excerpts and documents in question solely for purposes of resolving the instant motions. *See Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179–80 (9th Cir. 2006). The Court notes that should the parties file motions to seal such documents in the context of a summary judgment motion, it may not grant the same, as those are dispositive motions.

I. **BACKGROUND**

The Court adopts the Background section in its August 22, 2016 Order regarding class certification, and adds the following facts relevant to the instant motions:

Pursuant to the Court's order, plaintiffs filed their FAC joining plaintiff Barrett as a representative for the Club bebe Class. (FAC ¶¶ 37–45.) With regards to Barrett, records show that she signed up for Club bebe in October 2010, and provided a telephone number during the sign-up process. (*See* FAC, ¶ 38; Dkt. No. 124-7 at 2.) However, Barrett returned to a bebe store on December 12, 2013, and in connection with a purchase, provided her mobile telephone number at a point-of-sale ("POS"). (Dkt. No. 116-2 at ¶ 2(k).)[4] Shortly thereafter, plaintiffs allege that bebe sent Barrett the Opt-In Text at issue in this litigation. (FAC ¶ 37.)

II. **MOTION TO DECERTIFY**

A. **Legal Framework**

Federal Rule of Civil Procedure 23(c)(1)(C) provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment." "[A] district court retains the flexibility to address problems with a certified class as they arise, including the ability to decertify." *U. Steel, Paper &Forestry v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation."). "The standard applied by the courts in reviewing a motion to decertify is the same as the standard used in evaluating a motion to certify; namely, whether the requirements of Rule 23 are met." *Cruz v. Dollar Tree Stores, Inc.*, 270 F.R.D. 499, 502 (N.D. Cal. Sept. 9, 2010) (citing *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 410 (C.D. Cal. 2000)).

---

[4] At oral arguments, plaintiffs' counsel confirmed that the number provided in October 2010 was the same number as that provided in December 2013. However, plaintiffs indicate, and bebe did not dispute, that it was not entered into bebe's database as a mobile telephone number in 2010, and was only entered as such when plaintiff Barrett returned to the store and confirmed it as a mobile telephone number at a POS in December 2013. (*See* Dkt. No. 123-7 at 2, Mendelsohn Decl. ¶ 2 (section of database showing the "Create Date" for Barrett's mobile telephone number entry as "12/12/2013"); Dkt. No. 123-8, Mendelsohn Decl. Ex. 1, Agarwal Dep. Tr. 38:4–39:12 (confirming that the "Create Date" field is "the date that the individual provided their cell phone number").)

B.  **Discussion**

  1.  **Motion to Decertify Both Classes**

    a.  *Ascertainability*

In this Court's previous order certifying the two classes at issue here, the Court found that plaintiffs' showing of ascertainability was sufficient upon plaintiffs' representation that they anticipated being able to obtain records from mGage, whom plaintiffs indicated was currently in possession of Air2Web records that could establish class membership. Most recently, bebe contends, plaintiffs conceded that they have been unable to get the requisite documents from mGage and mGage has indicated they may not actually have the ability to produce the same. (Dkt. No. 117-3 at 2.) On such basis, bebe argues that the Court should decertify both classes.

Shortly after bebe filed its motion to decertify, the Ninth Circuit issued a decision in *Briseno* holding that class proponents are not required to demonstrate that there is an administratively feasible way to determine who is in the class in order for the class to be certified. *Briseno*, 844 F.3d at 1126. In so holding, the Ninth Circuit explained that Rule 23's "enumerated criteria already address the policy concerns that have motivated some courts to adopt a separate administrative feasibility requirement, and do so without undermining the balance of interests struck by the Supreme Court, Congress, and the other contributors to the Rule." *Id.* at 1123. The Court asked the parties to file additional briefs discussing the impact of the Ninth Circuit's decision on bebe's motion to decertify.

Despite this recent opinion, bebe continues to argue that the Court should decertify the class due to plaintiffs' inability to obtain such records from mGage. Bebe contends that, although the Ninth Circuit has disavowed the existence of an independent administrative feasibility requirement, Federal Rule of Civil Procedure 23(b)(3)(2) still requires a showing that a class action would be superior to other available methods. Such a requirement, argues bebe, includes an analysis of the "manageability" of the class and requires "courts to balance the benefits of class adjudication against its costs." *See id.* at 1128. In support of its argument, bebe primarily relies on *Smith v. Microsoft Corp.*, 297 F.R.D. 464 (S.D. Cal. 2014), which preceded *Briseno*. In *Smith*, the court refused to certify a TCPA class finding that plaintiff failed to satisfy the superiority

4

requirement. Specifically, the *Smith* court conducted an analysis balancing several factors, and concluded that a class action would not be superior, in part because no feasible method existed to determine who actually received a text message. *Id.* at 472–73. Similar to the situation at hand, the defendant in *Smith* had produced a list of mobile telephone numbers that were sent text messages. However, the court credited declarations from defendants indicating that at least some of those phone numbers were incapable of receiving texts, and thus, even though the court could determine what numbers were sent texts, one could not actual receipt. *Id.* at 473. Additionally, the court found that asking potential class members to opt-in if they remembered receiving a text would be ineffective, "because it is highly unlikely that, more than five years out, an individual would remember that single unsolicited text message." *Id.*

Such management concerns are alone insufficient to decertify the classes here. The Ninth Circuit specifically noted that it was not clear why "requiring an administratively feasible way to identify all class members at the certification stage is necessary to protect [defendant's] due process rights." *Briseno*, 844 F.3d at 1132. The Ninth Circuit also addressed several of the same concerns bebe has raised: "If the concern is that claimants in cases like this will eventually offer only a 'self-serving affidavit' as proof of class membership, it is again unclear why that issue must be resolved at the class certification stage to protect a defendant's due process rights." *Id.* The Ninth Circuit further explained that defendants can "challenge the claims of absent class members if and when they file claims for damages" explaining that parties have "long relied on 'claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court' to validate claims." *Id.* at 1131 (citation omitted).

Plaintiffs' inability to obtain the actual messaging records from mGage does, however, impact the superiority analysis under Rule 23(b)(3), which was a necessary component of the Court's certification of both classes. Under such analysis, courts consider the following four non-exhaustive factors: (1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class; (3) the desirability of

1   concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to
2   be encountered in the management of a class action.  Fed. R. Civ. P. 23(b)(3)(A)–(D).

3         Contrary to the finding in *Smith*, this Court previously found that the statutory damages
4   provided by the TCPA are "not sufficient to compensate the average consumer for the time and
5   effort that would be involved in bringing small claims against a national corporation."  (Dkt. No.
6   106 at 18 (quoting *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 571–72 (W.D. Wa. 2012)
7   (citing cases))); *see also Whitaker v. Bennett Law, PLLC*, No. 13-CV-3145, 2014 WL 5454398, at
8   *7 (S.D. Cal. Oct. 7, 2014) (finding that given the damages allowed under the TCPA, "requiring
9   the putative class members to adjudicate their claims independently would be too economically
10  burdensome and would deprive many of a chance to recover under the law").  The Court does not
11  now disturb its finding on that factor.  The Court next evaluates whether the benefits of litigating
12  this action as a class outweigh the manageability concerns present here.[5]

13        Here, plaintiffs have presented the Declaration of Randall A. Snyder, an independent
14  telecommunications technology consultant, who avers that the list of telephone numbers that bebe
15  produced in discovery can be readily analyzed "to determine which of these numbers would have
16  been sent a text message."  (Dkt. No. 126 at ¶ 89.)  Mr. Snyder further states that "[t]his analysis
17  will produce a final list of cellular telephone numbers that would have been sent a text message by
18  Air2Web on behalf of [bebe]."  (*Id.*)  Bebe argues that such method would not conclusively
19  determine who received text messages, which would be the only people to whom bebe would be
20  liable, if at all.  Thus, bebe contends, it would be impossible to determine bebe's actual liability in
21  this action because it hinges on how many people actually received text messages during the Class
22  Period.  Although the Court agrees that such issues do present manageability concerns, the Court
23  finds that at this stage, plaintiffs' showing is sufficient to tilt the balance in their favor.  In a case
24  involving the statutory damages at issue here, it is unlikely that individual plaintiffs would actually
25  incur the time and expense to bring these claims.  Thus, but for a class action, such violations of

---

[5] Bebe did not raise arguments with regards to factors two and three of the superiority analysis, and thus, the Court need not address the same.

1  the TCPA may never be brought to light.  *See Briseno*, 844 F.3d at 1128 (discussing need for

2  balancing administrative feasibility against other superiority factors particularly where "there may

3  be no realistic alternative to class treatment").  The Court therefore finds that a class action is the

4  superior method for litigating the issues in this case, and therefore, plaintiffs have satisfied the

5  requirements under Rule 23(b)(3).

6      Accordingly, the Court **DENIES** bebe's motion to decertify both classes on these grounds.

### b. Common Proof Regarding Use of ATDS

8  Bebe also argues that both classes should be decertified because plaintiffs have presented

9  no common proof establishing that bebe utilized an ATDS to send text messages during the Class

10  Period.  Plaintiffs counter proffering the declaration of Mr. Snyder, who provides the following

11  opinions with regards to the evidence on the record relating to bebe's use of an ATDS:  Mr.

12  Snyder, who has set forth significant experience in the industry, has opined that the text messages

13  sent to plaintiffs contained a short code number, "42323."  (Dkt. No. 126 at ¶ 59.)  According to

14  Mr. Snyder, text messages containing such short codes can only be "sent by computer equipment;

15  otherwise, the originating address of the mobile-terminated text messages would appear as a

16  standard 10-digit cellular telephone number."  (*Id.*)  Mr. Snyder further opines that the "creation of

17  the SMS communications protocol format and the transmission of the SMS messages that were

18  sent *en masse* occurred in a completely automatic fashion."  (*Id.* at ¶ 60.)  Based on this

19  information and Mr. Snyder's knowledge of Air2Web, he opines that bebe utilized an ATDS to

20  transmit these messages.  (*See id.* at ¶¶ 57–58.)

21  Such a showing at this stage is sufficient to demonstrate that plaintiffs intend to offer proof

22  common to the entire class that bebe utilized an ATDS during the three-month class period.

23  Bebe's contention that such evidence is not probative of bebe's violation of the TCPA does not

24  persuade.  If bebe believes that the evidence is insufficient to establish liability under the TCPA,

25  other procedural mechanisms are available.  Such arguments, however, do not militate towards

26  decertification.  Bebe cannot short-circuit the process by asking the Court to make a factual

27  determination regarding the probative value of plaintiffs' expert's opinions on this record,

United States District Court
Northern District of California

7

particularly where bebe has not even deposed such expert. Accordingly, the Court **DENIES** bebe's motion to decertify both classes on this ground.

### 2. Motion to Decertify Club bebe Class

Finally, bebe also moves to decertify the Club bebe Class on the grounds that plaintiff Barrett is not an appropriate class representative. Specifically, bebe argues that a proper Club bebe Class representative would be an individual who both gave their number to bebe and received a text message from bebe *during* the Class Period itself. Bebe notes that Barrett provided her mobile telephone number to bebe in October 2010 when she first enrolled in Club bebe, not during the Class Period. (Dkt. No. 116-2 at 2.) On this basis, bebe contends that Barrett would not have fallen under the written consent rule promulgated in October 2013, and, therefore, is not similarly situated. Plaintiffs respond with two arguments: first, the class definition is not limited to those who provided a mobile telephone number during the Class Period; and second, even if it were, plaintiff Barrett actually provided such number both before and during the Class Period. As to the second argument, plaintiffs note that, although Barrett provided a telephone phone number to bebe in 2010 as part of her Club bebe membership, it was not until December 12, 2013 that bebe asked Barrett for a mobile telephone number at a POS for the purposes of the text messaging program at issue in this litigation, which, as discussed above, bebe's records confirm.

With regards to plaintiffs' first argument, the Court clarifies that the class definition must necessarily apply only to those who both provided a mobile telephone number and then received a text message during the Class Period. The timing of when a class member provided such number to bebe is relevant to whether they belong to the Class. The Court refused to certify the larger class proposed by plaintiff and only certified the two post-October 2013 classes due to a regulatory change that required consent to be written. For everyone else, the Court found that the "varied scripts and instructions provided to different stores at different times . . . renders the question of consent not one that can be answered on a classwide basis because it would require an individual assessment of what each customer was told." (Dkt. No. 106 at 10.) If plaintiff Barrett had provided her mobile telephone number prior to the Class Period, these very same individualized issues of consent would predominate.

8

With regards to plaintiffs' second argument, however, the Court finds that the relevant date for when plaintiff provided her mobile telephone number to bebe is December 12, 2013, not October 2010. Bebe concedes as much in their motion to decertify: "At that time [i.e. October 2010], bebe point-of-sale software did not include a mobile telephone number field; the mobile telephone number field was later added to facilitate customers initiating their enrollment in bebe's text messaging program." (Dkt. No. 116-1 at 7.) Thus, the relevant interaction here occurred on December 12, 2013, when bebe specifically asked plaintiff Barrett for a mobile telephone number, and then shortly thereafter sent her a text message. Bebe's argument essentially boils down to asking the Court to decide on the merits of their defense: that plaintiff Barrett's enrollment in Club bebe and provision of a mobile telephone number at the time of enrollment constituted consent to receive the text message at issue in this litigation. Whether that is so, however, is not an appropriate argument for class certification purposes, and is better reserved for summary judgment or trial.[6]

### III.  MOTION TO STRIKE OR FOR MORE DEFINITE STATEMENT

#### A.  **Legal Framework**

A court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a [Rule] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)). "Motions to strike 'are generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice.'" *Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873, 879 (N.D. Cal. 2011) (quoting *Rosales v. Citibank, Fed. Sav. Bank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001)).

---

[6] Should the parties bring motions for summary judgment on this issue, the parties should address the Ninth Circuit's recent opinion addressing issues of consent in the context of the TCPA in *Van Patten v. Vertical Fitness Group*, -- F.3d --, 2017 WL 460663 (9th Cir. 2017).

9

Given the disfavored status of Rule 12(f) motions, "courts often require a showing of prejudice by the moving party before granting the requested relief." *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1122 (E.D. Cal. 2012) (quoting *California Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002)). "If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Holmes v. Elec. Document Processing, Inc.*, 966 F. Supp. 2d 925, 930 (N.D. Cal. 2013) (quoting *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004)). Whether to grant a motion to strike is a matter committed to the sound discretion of the district court. *See Whittlestone*, 618 F.3d at 973 (citing *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000)).

Rule 12(e) allows a party to move for a more definite statement before filing a responsive pleading where the original pleading "is so vague or ambiguous that a party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "Rule 12(e) motions are disfavored and rarely granted." *Castaneda v. Burger King Corp.*, 597 F. Supp. 2d 1035, 1045 (N.D. Cal. 2009) (citing *Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999)). "The rule is aimed at unintelligibility rather than lack of detail and is only appropriate when the defendants cannot understand the substance of the claim asserted." *Id.* (citing *Beery v. Hitachi Home Elecs., Inc.*, 157 F.R.D. 477, 480 (C.D. Cal. 1993)). "If the detail sought by a motion for more definite statement is obtainable through discovery, the motion should be denied." *Griffin v. Cedar Fair, L.P.*, 817 F. Supp. 2d 1152, 1156 (N.D. Cal. 2011) (quoting *Castaneda*, 597 F. Supp. 2d at 1045).

B.   **Discussion**

Bebe moves to strike, or in the alternative for a more definite statement, allegations relating to plaintiff Barrett because, as bebe contends, Barrett is not a proper representative of the Club bebe Class. In short, bebe's use of this procedural rule is wholly inappropriate in this context.

With regards to bebe's motion to strike references to Barrett and the Club bebe Class, because the Court has denied bebe's motion to decertify the Club bebe Class and has found that Barrett is a proper representative of the same, the Court **DENIES** bebe's motion to strike.

With regards to bebe's motion for a more definite statement, bebe argues that plaintiffs should provide information as to when Barrett provided her phone number to bebe. Such detail, however, as revealed by the briefing on the instant motions, is obtainable, and, in fact, has been obtained, through discovery. Therefore, a motion for a more definite statement on this issue is unnecessary. *See Griffin*, 817 F. Supp. 2d at 1156. Accordingly, the Court also **DENIES** bebe's motion for a more definite statement.

**IV. CONCLUSION**

For the foregoing reasons, the Court **DENIES** bebe's motion to decertify the Club bebe and Non-Club bebe Classes and bebe's motion to strike or for a more definite statement. The Court **GRANTS** the parties' administrative motions to file certain exhibits and portions of their briefs under seal, only for the purposes of the instant motions.

This Order terminates Docket Numbers 115, 116, 117, 123, 124, 132, and 134.

**IT IS SO ORDERED.**

Dated: February 10, 2017

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**