Payam Shahian (State Bar No. 228406)
pshahian@slpattorney.com
**STRATEGIC LEGAL PRACTICES, APC**
1840 Century Park East, Suite 430
Los Angeles, California 90067
Telephone: (310) 277-1040
Facsimile: (310) 943-3838

Matthew R. Mendelsohn (admitted pro hac vice)
mmendelsohn@mskf.net
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: (973) 228-9898
Facsimile: (973) 228-0303

Thomas A. Kearney (State Bar No. 90045)
tak@kearneylittlefield.com
Prescott W. Littlefield (State Bar No. 259049)
pwl@kearneylittlefield.com
**KEARNEY LITTLEFIELD LLP**
3436 N. Verdugo Rd., Ste. 230
Glendale, California 91208
Telephone: (213) 473-1900
Facsimile: (213) 473-1919

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| MELITA MEYER, SAMANTHA RODRIGUEZ, and COURTNEY BARRETT, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BEBE STORES, INC.<br><br>Defendants. | Case No. 4:14-cv-00267-YGR<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Date:　　　July 18, 2017<br>Time:　　　2:00 p.m.<br>Location:　　Dept. 1, 4th Floor |

**TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................................... 1

II.  STATEMENT OF FACTS ....................................................................................................... 3

    A.   The Meyer, Rodriguez, and Consolidated Actions ..................................................... 3

    B.   The Parties Engaged in Extensive Law and Motion Practice ...................................... 3

    C.   Bebe Filed a Petition with the FCC ............................................................................. 5

    D.   The Parties Engaged in a Full-Day, Arm's-Length Mediation .................................... 5

    E.   The Parties Thoroughly Investigated the Facts and Legal Issues ............................... 5

III. THE SETTLEMENT ................................................................................................................ 6

    A.   The Settlement Class .................................................................................................... 6

    B.   Settlement Payout ........................................................................................................ 6

    C.   Non-Monetary Benefits to Class Members .................................................................. 7

    D.   Class Notice ................................................................................................................. 7

        1.   Settlement Website .......................................................................................... 7

        2.   Email Notice .................................................................................................... 7

        3.   Publication Notice ........................................................................................... 8

    E.   The Claims Process ...................................................................................................... 8

    F.   Objections .................................................................................................................... 9

    G.   Exclusion from the Class ........................................................................................... 10

    H.   Termination of Settlement .......................................................................................... 10

    I.   Scope of Release ........................................................................................................ 10

IV.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND
SHOULD BE PRELIMINARILY APPROVED ................................................................... 10

    A.   The Applicable Legal Standard for Preliminary Approval of Class Action Settlement .... 10

    B.   Liability is Highly Contested and Both Sides Face Significant Challenges in Litigating the
Action ........................................................................................................................ 12

C.    The Settlement is Well Within the Range of Reasonableness.................................13

D.    The Settlement was Reached as the Result of Arm's-Length Negotiation, Without Collusion, With the Assistance of a Mediator.................................................14

E.    Experienced Counsel Have Determined That the Settlement is Appropriate and Fair to the Class.................................................................................................15

F.    The Court Should Provisionally Certify for the Purposes of Settlement a Streamlined Class Definition Based on the Previously-Certified Subclasses.................................15

G.    The Proposed Method of Class Notice is Appropriate.................................17

H.    A Final Approval Hearing Should be Scheduled.................................18

V.    CONCLUSION.................................................................................................18

# TABLE OF AUTHORITIES

CASES

Boyd v. Bechtel Corp., 485 F. Supp. 610 (N.D. Cal. 1979)..............................................................12

Gribble v. Cool Transports Inc., No. CV 06-04863, 2008 WL 5281665 (C.D. Cal. 2008).....................13

Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1998)..........................................................11, 12, 17

In re Global Crossing Sec. and ERISA Litig., 225 F.R.D. 436 (E.D. Pa. 2000) .........................14

In re Mego Fin'l Corp. Sec. Litig., 213 F. 3d 454 (9th Cir. 2000) .............................................14

In re Omnivision Tech., Inc., 559 F. Supp.2 d 1036 (N.D. Cal. Jan. 9, 2008) ...........................14

In re Prudential Sec. Inc. Ltd. Partnerships Litig., 163 F.R.D. 200 (S.D.N.Y. 1995) ...............11

In re Wireless Facilities, Inc. Sec. Litig. II, 253 F.R.D. 607 (S.D. Cal. 2008) ..........................16

Kirkorian v. Borelli, 695 F. Supp. 446 (N.D. Cal.1988).................................................................12

Linney v. Cellular Alaska P'ship, 151 F.3d 1234 (9th Cir. 1998)................................................12

Lo v. Oxnard European Motors, LLC, 2012 WL 1932283 (S.D. Cal. May 29, 2012)................7

Malta v. Fed. Home Loan Mortgage Corp., No. 10-CV-1290 BEN NLS, 2013 WL 444619 (S.D. Cal.
    Feb. 5, 2013)..........................................................................................................................2, 7, 14

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)........................................17

National Rural Tele. Coop. v. DIRECTV, Inc., 221 F.R.D. 523 (C.D. Cal. 2004)....................14

Officers for Justice v. Civil Service Comm'n, 688 F.2d 615 (9th Cir. 1982) .............................11

Philadelphia Hous. Auth. v. Am. ...................................................................................................12

Rose v. Bank of America Corp., No. 11-2390, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014)............2, 14

Silber v. Mabon, 18 F.3d 1449 (9th Cir. 1994) ...........................................................................17

Utility Reform Project v. Bonneville Power Admin., 869 F.2d 437 (9th Cir. 1989)....................11

West Va. v. Chas. Pfizer & Co., 440 F.2d 1079 (2d Cir. 1971).................................................11


STATUTES

Fed. R. Civ. P. 23(c)(2) ...............................................................................................................18

Fed. R. Civ. P. 23(c)(2)(B)..............................................................................17

Fed. R. Civ. P. 23(e) ....................................................................................10

OTHER AUTHORITIES

4 Herbert B. Newberg, Newberg on Class Actions (4th ed. 2002 and Supp. 2004) ...................................11

Manual for Complex Litigation (Fourth) (Fed. Judicial Center 2004) ...........................................11, 12, 18

## I.      INTRODUCTION

Plaintiffs Melita Meyer, Samantha Rodriguez, and Courtney Barrett ("Plaintiffs') seek preliminary approval of a proposed settlement (the "Settlement"), which would resolve Plaintiffs' allegations that Defendant Bebe Stores ("bebe") violated the Telephone Consumer Protection Act ("TCPA") by sending unwanted text messages to consumers. The terms of the Settlement are set forth in the Settlement Agreement and Release (the "Settlement," "Agreement," or "Agr.")[1], attached hereto as Exhibit A to the Declaration of Dara Tabesh ("Tabesh Decl."), filed herewith.

The proposed Settlement is the culmination of nearly three-and-a-half years of vigorously contested litigation. A review of the docket underscores the hard-fought nature of this case, which involved the relation and eventual consolidation of two separate actions, a motion to dismiss and to strike, a motion to stay the litigation pending a ruling by the FCC, a motion for class certification, a motion to decertify the Class, a motion to strike Plaintiffs' class allegations, objections to Plaintiffs' trial plan, as well as a full day of mediation before Judge Fred K. Morrison (ret.). Indeed, so wide-ranging and novel were the issues in this case that they eventually spilled out of the courts and into the jurisdiction of the FCC. During the pendency of this action, Bebe filed a petition with the FCC seeking a retroactive waiver of its TCPA obligations. After full briefing, the petition is still pending before the FCC. All of this activity took place on rapidly-shifting legal terrain, which implicated complex issues residing at the intersection of statutory, regulatory, and case authority.

The resulting Settlement provides substantial benefits to the approximately 38,609 Settlement Class Members. Under the Settlement, each and every Class Member—any person in the United States who provided his or her mobile telephone number to bebe in one of bebe's stores at the point-of-sale between October 16, 2013 and January 21, 2014 and received an SMS or text message from bebe before January 22, 2014—is entitled to a cash payment of $20.

---

[1] Unless otherwise specified, defined terms used in this memorandum are intended to have the same meanings as in the Agreement.

1    This cash-payment Settlement compares favorably with other recent TCPA settlements,

2    especially those in the retail context, where coupon settlements are not uncommon. *See, e.g.*,

3    *Kazemi v. Payless Shoesource, Inc.*, No. 09-5142 (N.D. Cal. 2012) ($25 merchandise certificate

4    per claimant in retail context). *And see Couser v. Comenity Bank*, No. 12-2484, ECF/CM Doc.

5    No. 91 (S.D. Cal. May 27, 2015) (approximately $13.75 per claimant); *In re Capital One TCPA*

6    *Litigation*, No. 12-10064, ECF/CM Doc. No. 329 (N.D. Ill. February 12, 2015) (at least $34.60

7    per claimant); *Rose v. Bank of America Corp.*, No. 11-2390, 2014 WL 4273358, at *10 (N.D.

8    Cal. Aug. 29, 2014) (average of $20 to $40 per claimant); *id.* (referencing *Arthur v. Sallie Mae*

9    TCPA settlement, in which each claimant received approximately $20 to $40); *Malta v. Fed.*

10   *Home Loan Mortgage Corp.*, No. 10-CV-1290 BEN NLS, 2013 WL 444619, at *7 (S.D. Cal.

11   Feb. 5, 2013) (approximately $2 per claimant if all eligible claimants filed claims).

12   That the Settlement benefits are so substantial is particularly notable in light of bebe's

13   uncertain future. Bebe has provided publicly available information to Plaintiffs regarding its

14   significant financial issues, which have resulted in the closing of all physical stores and the

15   termination of the vast majority of employees.

16   Upon a Final Approval Order by the Court, Plaintiffs, on behalf of the proposed

17   Settlement Class Members, will release and dismiss all claims asserted against bebe in this action

18   on the merits and with prejudice.

19   Although Plaintiffs believe that they would prevail at trial—especially given that they

20   have already certified a Rule 23 class and survived a subsequent motion to decertify, motion to

21   strike class allegations, and objections to Plaintiffs' trial plan—Class Counsel has determined

22   that the proposed Settlement is in the best interests of the Class. Plaintiffs also believe that the

23   Settlement is appropriate given the sharply contested issues involved; bebe's financial condition;

24   and the risks, uncertainty, and costs attendant to further litigation. Correspondingly, Defendant

25   has denied all material allegations in the Complaint, and contends that it possesses meritorious

26   defenses to Plaintiffs' claims, but has agreed to settle this action on the terms set forth in the

27   Agreement.

28   Accordingly, Plaintiffs move the Court for an order preliminarily approving

1  the proposed Settlement; provisionally certifying for the purposes of settlement a streamlined

2  class definition based on the previously certified Subclasses; directing dissemination of class

3  notice; and scheduling a final approval hearing.

4  **II.    STATEMENT OF FACTS**

5      **A.    The *Meyer*, *Rodriguez*, and Consolidated Actions**

6      On January 16, 2014, Plaintiff Melita Meyer filed a complaint in the U.S. District Court

7  for the Northern District of California, alleging that bebe sent text messages to cellular phone

8  numbers using an automatic telephone dialing system without the recipient's prior express

9  consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

10  (*See* ECF/CM Doc. No. 1.) On April 29, 2014, Plaintiff Samantha Rodriguez filed a substantially

11  similar complaint against bebe. (*See id.* Doc. No. 30 at 1:9-23.) On May 16, 2014, Plaintiff

12  Meyer filed a First Amended Complaint alleging further details concerning the circumstances

13  under which bebe sent her a text message. (*See id.* Doc. No. 27.)

14      On June 9, 2014, Plaintiff Rodriguez filed a motion to relate the *Meyer* and *Rodriguez*

15  actions. (*See* ECF/CM Doc. No. 30.) On June 19, 2014, the Court ordered the cases related. (*See*

16  *id.* Doc. No. 38.)

17      On May 27, 2015, Plaintiff Rodriguez filed a motion to consolidate the two actions. (*See*

18  ECF/CM Doc. No. 41.) The Court ordered the cases consolidated on June 12, 2015. (*See id.*)

19      On June 15, 2015, the Parties filed a consolidated complaint. (*See* ECF/CM Doc. No. 77.)

20      On July 6, 2015, bebe answered the Complaint. (*See* ECF/CM Doc. No. 78.) In its Answer, bebe

21  denied Plaintiffs' allegations, denied that Plaintiffs or the putative class have been damaged, denied that

22  Plaintiffs or the putative class are entitled to the relief requested or any other relief, and asserted several

23  affirmative defenses. (*See id.*)

24      **B.    The Parties Engaged in Extensive Law and Motion Practice**

25      On June 16, 2014, bebe filed a motion to dismiss and to strike Plaintiff Meyer's First

26  Amended Complaint. (*See* ECF/CM Doc. No. 35.) On February 2, 2015, after full briefing, the

27  Court denied the motion. (*See id.* Doc. No. 57.)

28

On January 28, 2015, bebe filed a motion to stay the *Meyer* action to permit the FCC to rule on a petition raising the following issue: whether certain equipment used by Air2Web, a third-party with whom bebe contracted to assist with the sending of text messages, constitutes an autodialer within the meaning of the TCPA. (*See* ECF/CM Doc. No. 56.) On March 17, 2015, the Court denied the motion. (*See id.* Doc. No. 66.)

On February 3, 2016, Plaintiffs filed a motion for class certification. (*See* ECF/CM Doc. No. 84.) On August 22, 2016, the Court certified the following class and subclasses:

**1. Post-October 16, 2013 Non-Club Bebe Class**

All persons within the United States who provided their mobile telephone number to bebe in one of bebe's stores at the point-of-sale and were sent an SMS or text message from bebe during the period of time beginning October 16, 2013 and continuing until the date the Class is certified, who were not members of Club bebe during the Class Period.

**2. Post-October 16, 2013 Club Bebe Class**

All persons within the United States who provided their mobile telephone number to bebe in one of bebe's stores at the point-of-sale and were sent an SMS or text message from bebe during the period of time beginning October 16, 2013 and continuing until the date the Class is certified, who were members of Club bebe during the Class Period.

(ECF/CM Doc. No. 106 at 18:23-19:4.) The Court's certification of the Club Bebe Class was conditioned on class counsel's ability to find a proper representative for the class, who met the class definition. (*Id.* at 19:5-6.) The Court further directed Plaintiffs' to file an amended complaint joining a proper class representative for the Club Bebe Class, otherwise the Court would decertify the same. (*Id.* at 19:6-9.) Finally, the Court ordered Plaintiffs to file a trial plan outlining the nature of proof expected to be used at trial, including witnesses and exhibits. (*Id.* at 19:12-13.)

On September 19, 2016, Plaintiffs filed their proposed trial plan. (*See* ECF/CM Doc. No. 108.)

On October 21, 2016, Plaintiffs filed their First Amended Consolidated Complaint, which named Courtney Barrett as a representative for the Club Bebe Class. (*See* ECF/CM Doc. No. 112.)

On November 28, 2016, bebe filed three motions: (1) a motion to strike Plaintiffs' class allegations, (2) a motion to decertify both of Plaintiffs' subclasses, and (3) a motion objecting to Plaintiffs' proposed trial plan. (*See* ECF/CM Doc. Nos. 115-117.) After full briefing on all three of these motions—including a supplemental round of briefing regarding the effect of the *Briseno* case on the motions (see id. Doc. Nos. 136, 137)—the Court denied bebe's motion to strike and motion to decertify and terminated its motion objecting to the proposed trial plan (*see id.* Doc. No. 142).

### C.  Bebe Filed a Petition with the FCC

On November 18, 2016, bebe filed a petition with the FCC seeking a retroactive waiver of its prior express written consent obligations in the instant matter. (*See* Agr. at Recitals, § J.) On January 6, 2017, Plaintiffs filed an opposition to bebe's petition. (*See id.*) On January 23, 2017, bebe filed its reply comments in support of the petition. (*See id.*) The petition is still pending before the FCC.

### D.  The Parties Engaged in a Full-Day, Arm's-Length Mediation

On April 7, 2017, the Parties participated in a full day mediation session in San Francisco, California before Hon. Fred K. Morrison (ret.) of JAMS, Inc. (Shahian Decl. ¶ 2; Agr. at Recitals, § N.) The mediation resulted in the Parties reaching a settlement of the claims set forth in the Operative Complaint. (*Id.*) Bebe's financial condition was a substantial factor in the resolution of this matter. (*Id.*)

Only after completely resolving the Class claims did the Parties, with the assistance of Judge Morrison, begin negotiation of attorneys' fees and the Named Plaintiffs' Service Awards. (Shahian Decl. ¶ 3.) The Parties ultimately resolved these issues as well. (*Id.*)

### E.  The Parties Thoroughly Investigated the Facts and Legal Issues

The Parties have conducted an extensive investigation of the facts and relevant legal issues in regard to the claims asserted in the Operative Complaint and bebe's related defenses. (Shahian Decl. ¶ 4; Agr. at Recitals, § O.) The Parties conducted both formal and informal discovery, including but not

limited to propounding and responding to Requests for Production and Interrogatories, and Plaintiffs

deposing bebe's persons most knowledgeable. (*Id.*)

### III.   THE SETTLEMENT

####     A.   The Settlement Class

The terms "Class" or "Class Members" means "all persons in the United States who

provided their mobile telephone number to bebe in one of bebe's stores at the point-of-sale

between October 16, 2013 and January 21, 2014 and received an SMS or text message from bebe

before January 22, 2014. For purposes of this Settlement, Rodriguez is also part of the Class and

a Class Member. Excluded from the Class are bebe's Counsel, officers, directors, employees and

agents." (*See* Agr. at § 1.7.)[2] The Class consists of approximately 38,609 persons.

####     B.   Settlement Payout

Each Authorized Claimant is entitled to a Settlement Payment of $20. (Agr. at § 2.1.) To

be entitled to receive a Settlement Payment, a Class Member must timely submit a valid and

complete Claim Form. *Id.*

Settlement Payments will be made by check to the Authorized Claimants. (Agr. at § 2.1(a).)

Authorized Claimants who receive a Settlement Payment will have ninety calendar days from the date the

Settlement Payment is first issued within which to negotiate the check. (*Id.*) Any Settlement Payment that

is not negotiated within the ninety calendar day period will expire. (*Id.*) Bebe will have no obligation to

reissue a Settlement Payment that is not cashed or that is returned to it as undeliverable, or to escheat any

funds to any state for any uncashed or returned Settlement Payment. (*Id.*)

Plaintiffs will apply for an incentive award for Plaintiff Meyer of $2,000 and for Plaintiff Barrett

of $1,000. (Agr. at § 2.2.)[3] Further, Plaintiffs will apply for attorneys' fees and costs of not more than

$283,000. (*Id.* at § 2.3.)[4] Bebe will pay any incentive award and attorneys' fees and costs separate and

apart from the award to the Class. (*Id.* at §§ 2.2 and 2.3.) If the Court approves the incentive awards and

---

[2] Bebe has represented that it stopped sending text messages on January 21, 2014.
[3] Bebe has agreed to waive its right to seek recovery of its costs against Plaintiff Rodriguez. (Agr. at § 2.2.)
[4] Plaintiffs will file a motion for attorneys' fees and costs 14 calendar days prior to the deadline for Class Members to object to the Settlement. (Agr. at § 2.3.)

attorneys' fees and costs, bebe will pay the amounts approved by the Court within ten court days after both the Final Settlement Date[5] and upon provision of Plaintiff's and Strategic Legal Practices, APC's completed W-9 forms. (*Id.*)

**C.    Non-Monetary Benefits to Class Members**

Class Members (and non-Class Members alike) also benefit from the Settlement because the Settlement will serve as a deterrent to future violations of the TCPA. *See Lo v. Oxnard European Motors, LLC,* 2012 WL 1932283, *2 (S.D. Cal. May 29, 2012); *Malta*, *supra*, 2013 WL 444619.

**D.    Class Notice**

Subject to the Court entering the Preliminary Approval of Class Settlement Order, bebe, which will bear all costs of providing Notice to the Class (Agr. at § 2.4), and the Claims Administrator will provide the Class with notice of the proposed settlement by the following methods.

**1.    Settlement Website**

Unless otherwise ordered by the Court, within 30 calendar days after entry of the Preliminary Approval of Class Settlement Order, the Claims Administrator will set up a Settlement Website. (Agr. at § 3.3(a).) The Settlement Website will post the Operative Complaint, Settlement Agreement, Preliminary Approval of Class Settlement Order, Full Notice, Claim Form, and within three Court days after it is filed, Class Counsel's fee application. (*Id.*) The Settlement Website will be active until at least the Final Settlement Date. (*Id.*) The Settlement Website will be designed and constructed to accept electronic Claim Form submissions. (*Id.*)

**2.    Email Notice**

Unless otherwise ordered by the Court, within 30 calendar days after entry of the Preliminary Approval of Class Settlement Order, bebe will cause an Email Notice to be sent to each Class Member for whom bebe has a valid email address in its customer relationship management database. (Agr. at §

---

[5] The "Final Settlement Date" means two Court days after (a) 31 calendar days after the entry of the Final Order, if no timely motions for reconsideration, appeal, or other effort to obtain review have been filed; or (b) in the event that a motion for reconsideration, appeal, or other effort to obtain review has been initiated, the date after any and all such motions, appeals or other efforts to obtain review have been finally concluded in favor of the Final Order, any mandates have issued and jurisdiction has been returned to the Court, and the Final Order is no longer subject to review, whether by motions, appeal, petitions for rehearing, petitions for rehearing en banc, petitions for certiorari, or otherwise. (Agr. at § 1.13.)

1  3.3(b).) The Email Notice will provide the web address of the Settlement Website and an email and

2  mailing address to contact the Claims Administrator. (*Id.*)

### 3.   Publication Notice

4     Unless otherwise ordered by the Court, within 30 calendar days after entry of the Preliminary

5  Approval of Class Settlement Order, bebe will cause to be posted an online media notice via an Internet

6  text announcement containing a URL or link to the Settlement Website and appearing through Google

7  Adwords and/or the Yahoo! Bing Network. (Agr. at § 3.3(c).)

### E.   The Claims Process

9     To be eligible to receive a Settlement Payment, Class Members must submit a valid and

10  complete Claim Form to the Claims Administrator no later than the Response Deadline. (Agr. at § 3.6.)[6]

11  The Claim Form may be submitted using the Settlement Website or by email only. (*Id.*) The delivery

12  date is deemed to be the date the Claims Administrator receives the Claim Form, as evidenced by the

13  transmission receipt. (*Id.*) Any Class Member who fails to timely submit a valid and complete Claim

14  Form will not receive any benefits under this Settlement Agreement. (*Id.*) Each Class Member may

15  submit only one Claim Form. (*Id.*)

16     The Claims Administrator will review all submitted Claim Forms for completeness, validity,

17  accuracy, and timeliness, and will reject all Claim Forms that are not complete, valid, accurate, and/or

18  timely.  (Agr. at § 3.7.) The Claims Administrator will verify the validity and accuracy of the Claim

19  Form using information available in bebe's CRM Database and other publicly available information.

20  (*Id.*)

21     If the Parties dispute a Claim Form's completeness, validity, accuracy, and/or timeliness, the

22  Parties will meet and confer in good faith to resolve the dispute.  (Agr. at § 3.8.) Bebe's CRM Database

23  and any report from a third-party entity confirming that a telephone number was not a mobile telephone

24  number during the period of October 16, 2013 through January 21, 2014, will be entitled to a rebuttable

25  presumption of accuracy. (*Id.*)

---

27  [6] The "Response Deadline" means the deadline by which Class Members must deliver
a valid and complete Claim Forms, request exclusion from the Class, and/or make an
objection(s) under this Settlement Agreement. (Agr. at § 1.19.) The Response Deadline will be
28  90 calendar days after entry of the Preliminary Approval of Class Settlement Order. (*Id.*)

If the Court approves the Settlement of this Action, bebe will cause the Settlement Payments to be mailed within 45 calendar days following the Final Settlement Date. (Agr. at § 3.11.)

### F.   Objections

Any Class Member who has not submitted a timely written exclusion request and who wishes to object to the fairness, reasonableness, or adequacy of the Settlement Agreement or the proposed Settlement, must deliver a written objection to the Claims Administrator no later than the Response Deadline. (Agr. at § 3.9.) The delivery date is deemed to be the date the objection is deposited in the U.S. Mail as evidenced by the postmark. (*Id.*) It will be the objector's responsibility to ensure receipt of any objection by the Claims Administrator. (*Id.*) Written objections must include: (a) the name and case number of the Action "*Meyer v. bebe stores, inc., et al.*, Case 14-cv-00267"; (b) the full name, address, and mobile telephone number of the person objecting (email address is optional); (c) the words "Notice of Objection" or "Formal Objection"; and (d) in clear and concise terms, the objection and legal and factual arguments supporting the objection; and (e) facts showing that the person objecting is a Class Member. (*Id.*) The written objection must be signed and dated, and must include the following language immediately above the signature and date "I declare under penalty of perjury under the laws of the United States of America that the foregoing statements regarding class membership are true and correct to the best of my knowledge." (*Id.*)

Any Class Member who submits a written objection has the option to appear at the Fairness Hearing, either in person or through personal counsel hired at the Class Member's expense, to object to the fairness, reasonableness, or adequacy of the Settlement Agreement or the proposed Settlement, or to the award of attorneys' fees. (Agr. at § 3.9.) However, Class Members (with or without their attorneys) intending to make an appearance at the Fairness Hearing must include on the timely and valid written objection a statement substantially similar to "Notice of Intention to Appear." (*Id.*)

If the objecting Class Member intends to appear at the Fairness Hearing through counsel, he or she must also identify the attorney(s) representing the objector who will appear at the Fairness Hearing and include the attorney(s) name, address, phone number, e-mail address, and the state bar(s) to which counsel is admitted. (*Id.*) If the objecting Class Member intends to request the Court to allow the Class Member to call witnesses at the Fairness Hearing, such request must be made in the Class Member's

written objection, which must also contain a list of any such witnesses and a summary of each witness's expected testimony. (*Id.*) Only Class Members who submit timely written objections including Notices of Intention to Appear may speak at the Fairness Hearing. (*Id.*) If a Class Member makes an objection through an attorney, the Class Member will be responsible for his or her personal attorney's fees and costs.  (*Id.*)

### G.   Exclusion from the Class

Class Members may elect not to be part of the Class and not to be bound by this Settlement Agreement or the Settlement. (Agr. at § 3.10.) To make this election, Class Members must send a letter or postcard to the Claims Administrator stating: (a) the name and case number of the Action; (b) the full name, address, and mobile telephone number of the person requesting exclusion; and (c) a statement that he/she does not wish to participate in the Settlement, postmarked no later than the Response Deadline. (*Id.*)

### H.   Termination of Settlement

Despite this Settlement Agreement, if more than 250 Class Members request exclusion, then bebe may, in its sole discretion, at any time before the Fairness Hearing, notify Class Counsel in writing that it has elected to terminate this Settlement Agreement. (Agr. at § 3.10(b).)

### I.   Scope of Release

The scope of the release by all Class Members (other than those who elect not to participate in the Settlement), tracks the scope of the Plaintiff's allegations in the Complaint. (*See* Agr. at § 4.4.) Plaintiff and each Class Member who has not timely requested exclusion from the Class relinquish and discharge each and all of the Released Parties from each of the Released Claims. (*See id.*)

## IV.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE PRELIMINARILY APPROVED

### A.   The Applicable Legal Standard for Preliminary Approval of Class Action Settlement

A class action may not be compromised or settled without the approval of the court. Fed. R. Civ. P. 23(e). The purpose of the Court's preliminary evaluation of the settlement is to determine whether it is within the "range of reasonableness," and thus whether notice to the class of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile. *See* 4 Herbert B.

Newberg, Newberg on Class Actions § 11.25 *et seq.*, and § 13.64 (4th ed. 2002 and Supp. 2004). Thus, the "judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." Manual for Complex Litigation (Fourth) (Fed. Judicial Center 2004) ("Manual") at § 21.632.

As a matter of public policy, settlement is a strongly favored method for resolving disputes. *See Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989); *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). This is especially true in class actions such as this one. As a result, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims." *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995). To make the preliminary fairness determination, courts may consider several relevant factors, including "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status through trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel…" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

Furthermore, courts must give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* at 1027.

In considering a potential settlement, the Court need not reach any ultimate conclusions on the issues of fact and law, which underlie the merits of the dispute, *West Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971), and need not engage in a trial on the merits, *Officers for Justice v. Civil Service Comm'n*, 688 F.2d at 625. Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement…may be submitted to members of the prospective class for their acceptance or rejection." *Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364

(E.D. Pa. 1970). Preliminary approval of the settlement should be granted if there are no "reservations about the settlement, such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, the need for subclasses, or excessive compensation for attorneys." Manual at § 21.632.

The opinion of experienced counsel supporting the Settlement is entitled to considerable weight.[7] The decision to approve or reject a proposed settlement "is committed to the sound discretion of the trial judge[.]" *See Hanlon,* 150 F.3d at 1026. This discretion is to be exercised "in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," which minimizes substantial litigation expenses for both sides and conserves judicial resources. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quotations omitted). Based on these standards, Class Counsel respectfully submit that, for the reasons detailed below, the Court should preliminarily approve the proposed Settlement as fair, reasonable and adequate. (*See* Shahian Decl. ¶ 5.)

## B.    Liability is Highly Contested and Both Sides Face Significant Challenges in Litigating the Action

Although both sides strongly believe in the merits of their respective positions, continuing this Action poses significant risks to both sides. As a threshold matter, bebe has informed Class Counsel of its significant financial issues, including the closing of all physical stores and termination of the vast majority of employees. (*See* Agr. at Recitals, ¶ M; Shahian Decl. ¶ 5.) bebe's financial condition was a substantial factor in the resolution of this matter. (*Id.* at Recitals, ¶ N.)

Moreover, and in addition to consider the general risks attendant to litigating any complex class action, bebe raised a number of substantive defenses to certification and liability: for example, that it did not use an ATDS to send text messages; that Plaintiffs could not prove bebe used an ATDS because its vendor went through bankruptcy and such information was no longer available; and that the method

---

[7] *See, e.g., Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal.1988) (opinion of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of reasonableness).

1 | proposed by Plaintiffs for the identification of people who received text messages is inadequate.(Shahian

2 | Decl. ¶ 5.)

3 |     Further, on November 18, 2016, bebe filed a petition with the FCC seeking a retroactive waiver

4 | of its prior express written consent obligations. (*See* Agr. at Recitals, § J; Shahian Decl. ¶ 5.) The petition

5 | is still pending before the FCC. (*Id.*) Were the FCC to grant the petition, bebe would no doubt argue that

6 | Plaintiffs would be barred, as a matter of law, from demonstrating that bebe failed to obtain prior written

7 | consent as a matter of law and, in turn, would be barred from establishing bebe's liability under the

8 | TCPA. (*Id.*)

9 |     Thus, in considering the Settlement, Plaintiffs and Class Counsel carefully balanced the risks of

10 | continuing to engage in protracted and contentious litigation, against the benefits to the Class, including

11 | the significant Settlement Fund and the deterrent effects it would have. Similarly, Defendant recognizes

12 | the risks of trying this case on the merits.

13 |     Because of the costs, risks to both sides, and delays of continued litigation, the Settlement

14 | presents a fair and reasonable alternative to continuing to pursue this Action.

15 | **C.    The Settlement is Well Within the Range of Reasonableness**

16 |     As noted above, each Class Member is entitled to a cash payment of $20. This settlement is well

17 | within the range of reasonableness and therefore should be approved.

18 |     First, the Settlement was negotiated at arm's-length by counsel well-versed in class litigation,

19 | particularly with respect to consumer protection issues, and is therefore entitled preliminarily to "a

20 | presumption of fairness." *Gribble v. Cool Transports Inc.*, No. CV 06-04863, 2008 WL 5281665, at *9

21 | (C.D. Cal. 2008).

22 |     Second, the parties engaged in extensive bargaining over the merits and value of Plaintiff's

23 | claims and Guess's defenses. Class Counsel reviewed a significant quantity of evidence produced by

24 | Guess during the course of discovery and settlement discussions.

25 |     Third, the Settlement compares favorably with other recent TCPA settlements, especially those

26 | in the retail context (as here). *See, e.g.*, *Kazemi v. Payless Shoesource, Inc.*, No. 09-5142 (N.D. Cal.

27 | 2012) ($25 merchandise certificate per claimant). *And see Couser v. Comenity Bank*, No. 12-2484,

28 | ECF/CM Doc. No. 91 (S.D. Cal. May 27, 2015) (approximately $13.75 per claimant); *In re Capital One*

1 │ *TCPA Litigation*, No. 12-10064, ECF/CM Doc. No. 329 (N.D. Ill. February 12, 2015) (at least $34.60

2 │ per claimant); *Rose*, 2014 WL 4273358, at *10 (average of $20 to $40 per claimant); *id.* (referencing

3 │ *Arthur v. Sallie Mae* TCPA settlement, in which each claimant received approximately $20 to $40);

4 │ *Malta*, 2013 WL 444619, at *7 (approximately $2 per claimant if all eligible claimants filed claims).

5 │ 　　　　Fourth, the benefit that each Class Member will receive is fair, appropriate, and reasonable given

6 │ the purposes of the TCPA and in light of the anticipated risk, expense, and uncertainty of continued

7 │ litigation. Although the TCPA provides for statutory damages of $500 for each violation, TCPA

8 │ defendants invariably contend that the Due Process Clause precludes the award of anything more than a

9 │ nominal amount. Further, it is well settled that a proposed settlement may be acceptable even though it

10 │ amounts to only a small percentage of the potential recovery that might be available to the class members

11 │ at trial.[8]

12 │ 　　　　Fifth, the Class Members will also benefit from the deterrent effect of this TCPA Settlement.

13 │ This Action will provide substantial benefits to the Class Members, both monetarily and through its

14 │ deterrent effect on other businesses that engage in similar conduct.

15 │ 　　　　Given the favorable terms of the Settlement and the manner in which these terms were

16 │ negotiated, the proposed Settlement should be viewed, at least preliminarily, as a fair, reasonable, and

17 │ adequate compromise of the issues in dispute.

18 │ **D.    The Settlement was Reached as the Result of Arm's-Length
19 │         Negotiation, Without Collusion, With the Assistance of a
       │         Mediator**

20 │ 　　　　The proposed Settlement is the result of extensive formal and informal investigations into the

21 │ facts and legal issues (including the review of voluminous documents produced through formal

22 │ discovery as well as produced informally, and depositions of bebe's corporate representatives) and

23 │

24 │ ────────────────
       │ [8] *See e.g., National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D.
       │ Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it
25 │ amounts to only a fraction of the potential recovery"); *In re Global Crossing Sec. and ERISA
       │ Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a
26 │ relatively small percentage of the most optimistic estimate does not, in itself, weigh against
       │ the settlement; rather, the percentage should be considered in light of strength of the claims");
27 │ *In re Omnivision Tech., Inc.*, 559 F. Supp.2 d 1036, 1046 (N.D. Cal. Jan. 9, 2008) (court-
       │ approved settlement amount that was just over 9% of the maximum potential recovery, which
       │ the court found was a "substantial achievement on behalf of the class"); *In re Mego Fin'l
28 │ Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000).

arm's-length negotiations before a well-respected mediator, Hon. Fred Morrison (ret.) of JAMS. *See also In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) (settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair."); *National Rural Telecommunications Cooperative v. DIRECTV, Inc.,* 221 F.R.D. 523, 527 (C.D. Cal. 2004) (same) (citing 5 Moore's Federal Practice, § 23.85[2][e] (Matthew Bender 3d. ed.)). Moreover, only after the Class claims were resolved did the Parties begin negotiation of attorneys' fees and the Named Plaintiffs' Service Awards.

After reaching an agreement in principle to settle the case, the Parties engaged in further, extensive discussions that were necessary to determine the details surrounding the Settlement. The time and effort spent on settlement negotiations militate in favor of preliminary approval of the proposed Settlement, as they strongly indicate the absence of any collusion.

### E.   Experienced Counsel Have Determined That the Settlement is Appropriate and Fair to the Class

Plaintiffs hired counsel experienced in complex class action litigation.  Class Counsel has extensive experience in class actions, as well as particular expertise in class actions relating to consumer protection claims. (*See* Shahian Decl. ¶¶ 12-15; Mendelsohn Decl. ¶¶ 3-5; Littlefield Decl. ¶¶ 3-4; and Tabesh Decl. ¶¶ 3-5.) Counsel for bebe similarly possesses extensive experience based upon a long track record in litigating complex class actions.[9] Class Counsel believe that under the circumstances, the proposed Settlement is fair, reasonable, and adequate and in the best interest of the Class Members. (*See* Shahian Decl. ¶ 5.)

### F.   The Court Should Provisionally Certify for the Purposes of Settlement a Streamlined Class Definition Based on the Previously-Certified Subclasses

On August 22, 2016, the Court certified the following two Subclasses:

**1. Post-October 16, 2013 Non-Club Bebe Class**

All persons within the United States who provided their mobile telephone number to bebe in one of bebe's stores at the point-of-sale and were sent an SMS or text message

---

[9] *See, e.g.*, https://www.pillsburylaw.com/en/lawyers/amy-pierce.html.

from bebe during the period of time beginning October 16, 2013 and continuing until the date the Class is certified, who were not members of Club bebe during the Class Period.

**2. Post-October 16, 2013 Club Bebe Class**

All persons within the United States who provided their mobile telephone number to bebe in one of bebe's stores at the point-of-sale and were sent an SMS or text message from bebe during the period of time beginning October 16, 2013 and continuing until the date the Class is certified, who were members of Club bebe during the Class Period.

For the purpose of streamlining and facilitating the implementation of the Settlement, however, the Court should re-state these two Subclasses as a single Class, as follows: "all persons in the United States who provided their mobile telephone number to bebe in one of bebe's stores at the point-of-sale between October 16, 2013 and January 21, 2014 and received an SMS or text message from bebe or on its behalf before January 22, 2014, and who have not validly 'opted-out.'" The new definition merely combines the prior Subclasses into a single Class and modifies the time period to comport with the time period in which bebe sent text messages.

Although two Subclasses were necessary at the time of certification to address certain legal issues relating to consent, the distinction is irrelevant to the claims process: a person who provided his or phone number at the point of sale and received a text message during a certain time period is a Class Member regardless of whether he or she was a member of Club bebe. Indeed, maintaining two Subclasses is not only unnecessary, it is likely to confuse Class Members and unduly complicate claims administration.

Courts have long acknowledged the propriety of class certification for purposes of a class action settlement. *See In re Wireless Facilities, Inc. Sec. Litig. II,* 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes"). Like any other class certification decision, certification of a class for settlement purposes requires a determination that the requirements of Rule 23 are met. *Id.*

Here, the Court has already certified two Rule 23 Subclasses.  The new Class definition and the old Subclass definitions are not materially different. Thus, the Court should provisionally certify the

1  reformulated Class definition for settlement purposes for the same reasons it certified the original

2  Subclasses on August 22, 2016.

3  ### G.   The Proposed Method of Class Notice is Appropriate

4  Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to

5  class members the "best notice practicable" under the circumstances. Rule 23(c)(2)(B) does not require

6  "actual notice" or that a notice be "actually received." *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir.

7  1994). Notice need only be given in a manner "reasonably calculated, under all the circumstances, to

8  apprise interested parties of the pendency of the action and afford them an opportunity to present their

9  objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "Adequate notice

10  is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.[10]

11  Pursuant to Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class

12  members who would be bound by the proposal." The notice must concisely and clearly state in plain,

13  easily understood language: (i) the nature of the action; (ii) the definition of the class; (iii) the class

14  claims, issues, or defenses; (iv) that class members may enter an appearance through counsel if the

15  member so desires; (v) that the court will exclude from the class any member who requests exclusion,

16  stating when and how members may elect to be excluded; (vi) the time and manner for requesting

17  exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R.

18  Civ. P. 23(c)(2)(B).

19  Here, the Settlement Website, Email Notice, and Publication Notice meet all of these

20  requirements. (*See* Agr. § 3.3.)

21  In addition, the Settlement Website will allow potential class members to access (and print) the

22  Complaint, Settlement Agreement, Preliminary Approval Order, Full Notice, Claim Form, and, within

23  three Court days after it is filed, Class Counsel's fee application. (*See* Agr. at § 3.3(a).) It will also allow

24  them to determine whether they are Class Members, and will inform them of their right to object to the

25  settlement or opt out. (*See id.*)

26

27

28  _____

[10] bebe will bear all costs of providing Notice to the Class. (*See* Agr. § 24.)

17

Any Class Members who wish to exclude themselves from the Settlement by opting-out or who wish to object to the fairness of the Settlement, must to do so within the respective Deadlines, which are 90 days after entry of the Preliminary Approval Order. (*See* Agr. at §§ 1.19, 3.9, 3,10.) *See Torrisi*, 8 F.3d at 1374-75; Fed. R. Civ. P. 23(c)(2); Manual, at § 30.21.

This Notice program is designed to meaningfully reach the largest possible number of Class Members, identified through the Guess's records.[11] Accordingly, the various forms of Notice here satisfy due process, serve as the best notice practicable under the circumstances, and constitute due and sufficient notice.

## H.   A Final Approval Hearing Should be Scheduled

The last step in the settlement approval process is the formal Fairness Hearing or Final Approval Hearing, at which time the Court may hear all evidence and arguments, for and against, to evaluate the proposed Settlement. Class Counsel request that the hearing be held not before 120 days after the date of entry of the Preliminary Approval Order, to allow sufficient time for providing Class Notice and to accommodate the 90-day claims period.

## V.   CONCLUSION

The Parties respectfully request that the Court enter an order preliminarily approving the proposed Settlement; provisionally certifying the new Class definition for the purposes of settlement; preliminarily approving the Notice; and scheduling a final approval hearing.

Dated:  June 13, 2017                              Respectfully submitted,


                                                   By:   /s/
                                                         Dara Tabesh
                                                         EcoTech Law Group, P.C.
                                                         Attorneys for Plaintiffs

---

[11] No later than ten calendar days before the Fairness Hearing, Guess and the Claims Administrator will file with the Court and serve upon Class Counsel, who will then file, a declaration confirming that notice to the Class has been provided in accordance with the Agreement. (Agr. § 3.5.)